UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | Case No: 1:21-cr-598-PLF |
| v. | : | |
| | : | Judge Paul L. Friedman |
| TERENCE SUTTON, et al. | : | |
| | : | Status: October 4, 2021 |
| Defendants. | : | |

## OPPOSITION TO GOVERNMENT'S MOTION FOR PROTECTIVE ORDER

Comes now Officer Terence D. Sutton, Jr., through counsel HANNON LAW GROUP, LLP, and respectfully requests that the Court deny in part the Government's Motion for a Protective Order Governing Discovery and compel the immediate disclosure of discovery. In support of this motion, undersigned counsel states the following:

### BACKGROUND

Officer Sutton appears before this Court having been indicted on one count of Murder in the Second Degree, in violation of D.C. Code § 22-2103; one count of Conspiracy, in violation of 18 U.S.C. § 371; and one count of Obstruction of Justice, in violation of 18 U.S.C. §§ 1512(b)(3), (2). Officer Sutton was arraigned on September 24, 2021. The Court released Officer Sutton pending trial, subject to conditions. In advance of the initial status hearing scheduled for October 4, 2021, the Government filed a motion requesting a protective order governing all discovery in the case. The Government does not explain the necessity for the protective order beyond the usual personal information contained in documents.

1

According to the indictment, Officer Sutton,[1] Lt. Zabavsky[2], and others were on duty in the Fourth District (hereinafter "4D") on October 23, 2020.  Officer Sutton was in an unmarked vehicle with three other officers, and Lt. Zabavsky was alone in a marked police vehicle.  Karon Hylton-Brown drove a rental Revel scooter without a helmet on the sidewalk.  Driving a moped on the sidewalk and riding a moped without a helmet are municipal traffic violations.  When Sutton and Zabavsky attempted to initiate a stop of Mr. Hylton-Brown, he rode ahead of them, sometimes out of sight.  Officers continued to attempt to stop Mr. Hylton-Brown.  Mr. Hylton-Brown was never travelling more than 30 mph.[3]  The Government alleges that at points in time, Officer Sutton was travelling 45 mph, though he never overtook Mr. Hylton-Brown.

Ultimately, Mr. Hylton-Brown exited an alleyway into traffic and was struck by an oncoming civilian vehicle.  According to the Government, the attempt to stop Mr. Hylton-Brown lasted roughly three minutes.  Mr. Hylton-Brown was transported to the hospital.  Having concluded his responsibilities at the scene, Officer Sutton turned off his body worn camera and returned to the 4D stationhouse.  The indictment alleges that officers did not learn of the serious nature of Mr. Hylton-Brown's injuries for roughly 30 minutes before Lt. Zabavsky called the major crash unit.  All of these events occurred on the evening of October 23, 2020, after 10 p.m.

The unsealed indictment and related DOJ press release[4] followed a lengthy period of time and repeated communication between the prosecutors and counsel for Officer Sutton.

---

[1] In October 2021, Officer Sutton was assigned to the 4D Crime Suppression Team (CST).

[2] In October 2021, Lt. Zabavsky supervised 4D CST officers.

[3] Revel mopeds have a maximum speed of 30 mph. *See* https://gorevel.com/mopeds/moped.

2

Undersigned counsel conveyed information to the Government that is not included in the indictment. Specifically, prior to approaching Mr. Hylton-Brown, Officer Sutton spoke with another officer in the area. That officer reported to Officer Sutton that Mr. Hylton-Brown was involved in an altercation earlier that day. The other officer observed Mr. Hylton-Brown leave the area and return to the area. Based on this information, Officer Sutton, who was familiar with Mr. Hylton-Brown, became concerned that he might have returned with a weapon. At that time, officers were posted in the area due to high crime. The officer who informed Officer Sutton of Mr. Hylton-Brown's behavior that night was also familiar with Mr. Hylton-Brown, having seen him in the area and having previously arrested him.

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 16, the Government is required to "produce, upon the defendant's request, any documents and data that are material to preparing the defense." *United States v. Cudd*, 2021 WL 1564493, at *2 (D.D.C. Apr. 21, 2021) (quoting *United States v. Dixon*, 355 F. Supp. 3d 1, 3 (D.D.C. 2019)). Only for good cause, the Court may "deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d). The Government bears the burden of showing good cause. *See United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018) (citation omitted). Once good cause has been shown, the Court has "vast" discretion to fashion an appropriate protective order. *See id.* at 251 (citing *United States v. O'Keefe*, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007)).

"Ordinarily, 'broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.'" *Id.* (quoting *United States v.*

---

[4] *See* https://www.justice.gov/usao-dc/pr/two-officers-indicted-charges-death-20-year-old-karon-hylton-brown.

*Wecht*, 484 F.3d 194, 211 (3d Cir. 2007)).  Protective orders are used to resolve discovery disputes and expedite the flow of discovery.  *See id.* at 252 (citations omitted); *United States v. McCaughey*, 2021 WL 1564463 at *2 (D.D.C. Apr. 21, 2021) (granting Government's protective order over defense objection because it would expedite the "staggering" amount of discovery related to the investigation into the January 6th protest).  While blanket protective orders may facilitate large scale disclosures, they can be "overbroad and unnecessary." *United States v. Smith*, 985 F. Supp. 2d 506, 545 (S.D.N.Y 2013) (citations omitted).  Even where courts grant blanket protective orders, "the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remain on the party seeking the order." *See Wecht*, 484 F.3d at 211.

Good cause requires a particularized, specific showing which is dependent on the nature and type of protective order.  *See Dixon*, 355 F. Supp. 3d at 2 (citing *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012)).  In making the determination of whether good cause exists, courts have considered whether (1) disclosure of the materials in question would pose a hazard to others; (2) the defendant would be prejudiced by a protective order, and (3) the public's interest in disclosure outweighs the possible harm.  *See id.* at *4 (citation omitted); *see also United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) ("Among the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger of perjury or witness intimidation, and the protection of information vital to national security.").

*Johnson* reflects an appropriate response to the Government's request for blanket protective orders.  In *Johnson*, the court found the Government had not shown good cause for a blanket protective order governing body worn cameras and required a more limited order be agreed to by the parties in keeping with the court's findings.  *See* 314 F. Supp. 3d at 253, 257.

There, the Government argued that body worn camera footage generally contains sensitive information and the body worn camera in the case showed the arrest of an unrelated individual. *See* 314 F. Supp. 3d at 253. Rather than granting a blanket protective order over body worn camera, the court directed the Government to redact any information it has a legal basis to redact and to request a protective order over any specific items it did not have a legal basis to withhold. *See id.* at 254. The court also rejected the Government's request that body worn camera could not be used by counsel in other cases, shown to counsel's colleagues at the Federal Public Defender office, shown to Johnson and third parties,[5] and retained following a dismissal or acquittal. *See id.* 256-57. Specifically, the Court stated that "defense counsel may show the body-worn camera footage to any person, without express authorization from the Court, where doing so reasonably can be expected to further the investigation of Mr. Johnson's case and the preparation of his defense." *Id.* at 256.

## ARGUMENT

In Officer Sutton's case, the Government seeks a blanket protective order despite admitting that the discovery in the case is "straightforward." *See* Gov't Mot for Protective Order 2 ("[Discovery in this matter] generally entails the following types of materials: (a) officer reports and notes; (b) medical records; (c) body worn camera (BWC) videos; (d) crime scene and autopsy photographs; (e) surveillance videos; (f) grand jury transcripts and exhibits; (g) GPS data; (h) phone records; (i) employment personnel files; (j) MPD policy and training materials."). The Government does not assert that the discovery is especially voluminous or complicated. To the contrary, all of the relevant conduct appears to take place on the evening of October 23, 2020, after 10 p.m. Further, this required disclosure is not occurring close in time to the incident.

---

[5] The court did find the government had shown good cause for a protective order limiting the disclosure of the body worn camera to the public at large. *See Johnson*, 314 F. Supp. at 257.

The Government has had almost one year to review evidence in the case and identify specific items that are appropriate for a protective order, rather than claiming a default protective order to all materials.

As its basis for a blanket protective order, the Government states "the referenced materials contain sensitive information such as: (a) personal identity information as identified in Rule 49.1 of the Federal Rules of Criminal Procedure, as well as telephone numbers, email addresses, driver's license numbers, and similar unique identifying information; (b) information that may jeopardize witness security; (c) photographs of and private conversations with individuals on BWC that do not appear to be related to the criminal conduct in this case; (d) medical or mental health information, (e) grand jury materials protected under Rule 6(e) of the Federal Rules of Criminal Procedure; (f) personnel and employment information; and (g) materials that have been used, and will continue to be used, to train MPD members on internal sources and methods of operation and investigation." *See* Gov't Mot for Protective Order 3. However, the Government does not specify which concerns apply to which items or categories of evidence. These generic claims do not show good cause for a blanket protective order.

**1. The Government has not specific witness safety concerns.**

The Government only makes a speculative claim that evidence in the case implicates security concerns of witnesses. The vast majority of the Government's witness list is law enforcement and includes only four civilian witnesses. Officer Sutton does not oppose a limitation on the dissemination of information like home addresses, personal phone numbers, social security numbers, email addresses and similar information. However, it is not clear all of the discovery implicates these concerns. While Officer Sutton has received death threats, there is no evidence that he poses a danger to the witnesses in this case. Although this case has been pending for a year, there is no claim that Officer Sutton interfered with or threatened any

witnesses in the case. The Government has conceded this is not a real concern in not requesting detention.

Some of the identified discovery does not obviously implicate any witness concerns. The Government has not shown any reason to restrict the use of MPD policy and training materials. These materials would not contain any information specific to this or any witnesses in the case. Similarly, the Government offers no explanation for GPS data implicating witness concerns or what kind of protected information it might contain. The inclusion of these materials in the requested protected order evidence the Government's routine reliance on blanket protective orders without giving real attention to the particularities of the discovery.

Medical records, employment personnel files, and autopsy photos implicate a specific set of privacy concerns. However, the Government has not clearly articulated what in these disclosures necessitates the protective order. Again, there is no opposition to limitations on certain personally identifying information. However, if there is relevant information in the records, the Government has offered no real justification for limiting its use. Absent personally identifying information, the Government has not indicated how these disclosures implicate witness security.

Body worn camera, crime scene photos, and surveillance video are not appropriate for the Government's blanket protective order request. The relevant time period covered by body worn camera and surveillance video in this case is relatively brief. The interaction between Officer Sutton and Mr. Hylton-Brown took place over a few minutes and all of the interactions took place in public places. There is no reason to limit the use of these recordings which only show places that were in clear view of the public. The Government suggests that there may be conversations captured on BWC that do not relate to this case. Again, the defense does not

7

object to limitations on the disclosure of a limited set of personal information. Apart from the suggestion that some parts of the video may lack relevance to the case, the Government has not shown anything that would implicate witness security. There is no evidence whatsoever that Officer Sutton has or would use this information to compromise witnesses in this case.

Phone records as well as officer reports and notes seem likely to contain names of witnesses and specific contact information for them. However, outside of the already uncontested limitation on disclosure of phone numbers, addresses and the like, the Government does not explain why this information requires limitations on disclosure outside of court. If there is relevant substantive information contained in phone records or officers' interview notes, there is no identified reason that Officer Sutton and the defense team should not be able to discuss them as needed.

Unlike collected evidence, grand jury transcripts and exhibits are unlikely to contain non-relevant information to the case. The Government offers no reason for limitation on sworn testimony of mostly law enforcement witnesses. Many of these people are known to Officer Sutton. Officer Sutton has diligently followed limitations on communications with witnesses as part of his pretrial release conditions. The Government has already announced its version of events. If there is evidence tending to contradict their version, there is no identified reason for Officer Sutton to be limited in discussing those facts.

**2. Officer Sutton would be prejudiced by the protective order.**

Officer Sutton would be prejudiced by the proposed blanket protective order. The proposed protective order would limit his ability to discuss or contest in his personal life the Government's version of events based on any exculpatory disclosures that are made. It limits his ability to discuss the case with his family and friends who are supporting him through this

process. While the Government has issued a press release, Officer Sutton would not similarly be able to comment on the Government's evidence under the proposed protective order. This could further impact Officer Sutton's ability to seek employment, to the extent that he needs to explain the ongoing proceedings.

The protective order also encourages defense counsel to police the defendant's use of the information relevant to his case. This has a detrimental impact on the attorney-client relationship, which is especially important in criminal cases. The Government would require defense counsel to enforce this order. Additionally, requiring defense counsel to issue this order to witnesses during the investigation of the case complicates otherwise delicate conversations. To the extent that defense counsel needs to consult with colleagues and law enforcement professionals regarding cases of this type or the impact of evidence on the case, the order entirely limits undersigned counsel's ability to do so. All of these negative impacts on case preparation prejudice Officer Sutton.

Moreover, MPD has proposed to withhold Officer Sutton's compensation during the pendency of this case. The protective order would prevent Officer Sutton's counsel from demonstrating to the Chief of Police that he is innocent.

**3. There is a strong public interest in the discovery.**

Finally, there is significant public interest in the materials that the Government has not yet disclosed. This is a case of immense public interest. There has already been significant media coverage and social media posting on the underlying events.[6] There was also a protest at

---

[6] *See, e.g.*, Peter Hermann et al., *Police video shows fatal crash As D.C. officers attempt to stop moped driver*, Wash. Po. (Oct. 29, 2020), https://www.washingtonpost.com/local/public-safety/karon-hylton-crash-body-camera/2020/10/29/132727f6-19e2-11eb-befb-8864259bd2d8_story.html; *DC Officers Indicted in Karon Hylton-Brown Death*, NBC

9

the 4D station that resulted in clashes between officers and protestors.[7]  Misinformation has also been circulated, including that Officer Sutton hit Mr. Hylton-Brown with his car.[8]  In response to this allegation, body worn camera footage was released by MPD which showed that Officer Sutton was a significant distance away from Mr. Hylton-Brown when he was struck by a civilian vehicle.  Now, the indictment and DOJ press release omit significant information related to this case.

Additionally, undersigned counsel has represented law enforcement officers for 30 years all over the country in a variety of circumstances.  Counsel also represents law enforcement officers through the National Fraternal Order of Police.  Counsel often presents and participates in professional programs with law enforcement.  These contacts are a great source of information, and law enforcement officers all over the country are watching this case.  These officers and undersigned counsel have an interest in promoting the quality of law enforcement activity and the new trends in policing the police. The Government's assessment of the evidence in this case is of major consequence nationwide.  The proposal of a blanket protective order is seen by law enforcement as a gag order, precluding law enforcement and the public from understanding and evaluating the action of the Department of Justice in this matter.

---

Washington (Sept. 24, 2021), https://www.nbcwashington.com/news/local/dc-officers-indicted-in-karon-hylton-browns-death/2812333/.

[7] See Jess Arnold et al., *Police use flashbangs, spray irritants as protests heat up over fatal moped crash*, WUSA9 (Oct. 27, 2020), https://www.wusa9.com/article/features/producers-picks/protesters-demand-body-cam-video-after-dc-man-dies-in-crash-during-police-chase/65-a73615e2-a39f-4773-974f-c8ce3ea3cfbc.

[8] "This is the Officer Terrance Sutton who hit the back of a moped while Karon was driving and it resulted in Karon's death…" See Maureen (@maubrown42), Twitter (Oct. 27, 2020.11:33 AM), https://twitter.com/maubrown42/status/1321112684134359040.

Finally, in addition to DOJ's press release, prior to the indictment in this case the family of Mr. Hylton-Brown held a press conference. A D.C. City Council member held a press conference. "Wanted Posters" depicting Officer Sutton have been circulated in the community, and residents of the Kennedy Street area held a walk for eradication of crime in that neighborhood. Putting a blanket over the facts of this case deprives the public of vital information related to the prospective safety of our City.

**WHEREFORE,** Officer Sutton requests that the Court deny the Government's Motion for a Protective Order and compel the timely disclosure of discovery in this case.

Dated: October 2, 2021

Respectfully submitted,

HANNON LAW GROUP, LLP

*s/J. Michael Hannon*

J. Michael Hannon, #352526
Rachel E. Amster, #1618887
333 8th Street, NE
Washington, DC 20002
Tel: (202) 232-1907
Fax: (202) 232-3704
jhannon@hannonlawgroup.com
ramster@hannonlawgroup.com

*Attorneys for Defendant Terence D. Sutton, Jr.*