1           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA
2    _____

3    United States of America,      ) Criminal
                                     ) No. 1:21-cr-00598-PLF
4                  Plaintiff,        )
                                     ) **Initial**
5    vs.                             ) **Appearance/Arraignment**
                                     )
6    Terence Sutton, et al.          ) Washington, D.C.
                                     ) September 24, 2021
7                  Defendants.       ) Time:  2:02 p.m.
     _____

8
              Transcript of **Initial Appearance/Arraignment**
9                        Held Before
        The Honorable Magistrate Judge Zia M. Faruqui
10              United States Magistrate Judge

11   _____

                    A P P E A R A N C E S
12
     For the Plaintiff:       **Ahmed M. Baset**
13                            **Risa Berkower**
                              UNITED STATES ATTORNEY'S OFFICE
14                            FOR THE DISTRICT OF COLUMBIA
                              555 4th Street, Northwest
15                            Washington, D.C. 20530

16   For the Defendant Terence Sutton:
                              **J. Michael Hannon**
17                            HANNON LAW GROUP
                              333 8th Street, Northeast
18                            Washington, D.C. 20002

19   For the Defendant Andrew Zabavsky:
                              **Christopher A. Zampogna**
20                            ZAMPOGNA, P.C.
                              1776 K Street, Northwest, Suite 700
21                            Washington, D.C. 20006

22   Also Present:           Christine Schuck, Pretrial Services
                             Officer
23
     Proceedings reported by FTR Gold Electronic Recording Software.
24   _____

25

1       Transcribing Stenographic Court Reporter:
                                Nancy J. Meyer
2                               Registered Diplomate Reporter
                                Certified Realtime Reporter
3                               333 Constitution Avenue, Northwest
                                Washington, D.C. 20001
4                               202-354-3118

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    P R O C E E D I N G S

2              THE COURTROOM DEPUTY:  This is Criminal Case 21-598,

3    Defendants No. 1 and 2.  The United States of America v.

4    Terence Sutton and Andrew Zabavsky.  The defendants are present

5    by video.

6              The matter is set for return on arrest warrant, initial

7    appearance, and arraignment.

8              Mr. Sutton and Mr. Zabavsky -- I'm sorry if I

9    mispronounced your name -- please raise your right hand.

10              (Oath administered to both defendants.)

11             THE COURTROOM DEPUTY:  Mr. Sutton?

12             DEFENDANT SUTTON:  I do.

13             THE COURTROOM DEPUTY:  Mr. Zabavsky?

14             DEFENDANT ZABAVSKY:  I do.

15             THE COURTROOM DEPUTY:  Thank you.

16             THE COURT:  This is Judge Faruqui.

17             Good afternoon, Mr. Sutton.  And please help me to say

18   your last name.  Is that right, Mr. Zabavsky?  Is that how you

19   say it?

20             DEFENDANT ZABAVSKY:  That's correct.

21             THE COURT:  Okay.  Great.  Thanks so much.

22             Very important -- you know, normally we'd be in person.

23   We're going to talk about that in a second here, but I can't

24   raise -- it's harder to read people online.  And so if you have

25   any questions or concerns, I need you to speak up during this
```

1    proceeding.  Let me know.  It's my job to make sure your

2    constitutional rights are protected.  Obviously you-all have

3    counsel who I will make sure are put on the record quickly,

4    that they are represented; but, regardless, it is also my job

5    to do that.  So I would ask, if you have any confusion, please

6    let me know.  If you have any (indiscernible due to poor audio

7    quality), please let me know.

8         I'm going to preserve your right to remain silent, which

9    I'll brief you about shortly, but you still have the absolute

10   right to speak.  And so I'm relying on you both -- and you

11   promised under oath -- if you have a question or concern,

12   you'll speak up.

13        Mr. Sutton?

14            DEFENDANT SUTTON:  Yes, sir.

15            THE COURT:  Okay.  Mr. Zabavsky?

16            DEFENDANT ZABAVSKY:  Yes, sir.

17            THE COURT:  Okay.  Great.

18        Now, next, speaking of which, being remote, it's

19   important that we first get out of the way that you're

20   comfortable having this hearing via audio and video.  The --

21   due to the pandemic and CARES Act, the law Congress passed

22   permits us to do so, as well as an order from the Chief Judge

23   in this court.

24        So I want to first confirm for the record, Mr. Sutton,

25   that you consent to this hearing taking place via audio/video.

1          DEFENDANT SUTTON:  Yes, sir.

2          THE COURT:  Thanks so much.

3      Mr. Zabavsky.

4          DEFENDANT ZABAVSKY:  I've got the audio but not video

5  right now (indiscernible due to poor audio quality).

6          THE COURT:  Okay.  We can see you, but you can't see

7  us?

8          DEFENDANT ZABAVSKY:  There you go.  I got it now.

9          THE COURT:  All right.  Thanks so much.  And so you

10  consent going forward by this format?

11      Do you consent to go forward by audio and video?

12          DEFENDANT ZABAVSKY:  Yes.

13          THE COURT:  All right.  Thanks so much.

14      The purpose of this proceeding today is an initial

15  appearance.  I'm going to inform you as to the charges that

16  have been brought against you.  I will next inform you of your

17  rights, as well as obligations that the government has, after

18  which we will discuss possible requests in terms of release

19  conditions or if the government has any differing questions in

20  terms of pretrial release or detention.

21      Finally, I will then arraign you, given that we have

22  received an indictment here, if your counsel is prepared and

23  has an opportunity to review the indictment with you.  If not,

24  we can set that for a later dated.  Finally, we will coordinate

25  with Ms. Lavigne-Rhodes to see if we've got a next hearing or

1   even a district judge assigned on this matter.

2        But to begin with, I'll start by informing you of the

3   charges.  It is a -- the indictment charges both conspiracy in

4   violation of 18 U.S.C. 371, and that is -- when I go through

5   these penalties, it's important that you understand this.  You

6   are presumed innocent.  And so as I go through them and tell

7   you, in fact, what you could be facing, that just means

8   those -- what anyone could face.  That doesn't mean that I

9   expect you to face those charges and will be sentenced here on

10  them; because, remember, I believe that you're innocent.  If I

11  didn't believe you're innocent, I could not, in fact, have this

12  job nor could a district judge in this matter.  But as I go

13  through, I will tell you what the penalties are, and you must

14  understand that is the ceiling of the punishment that anyone

15  could face with those charges.

16       So I'm going to start with you, Mr. Sutton.  Your first

17  charge is Count 1, conspiracy in violation of 18 U.S.C. 371,

18  which carries with it a punishment of a fine as well as

19  title -- as well as imprisonment of not more than five years.

20  In addition, there's an obstruction of justice charge and

21  carries with it a fine as well, as well as imprisonment of not

22  more than 20 years, or both.

23       Mr. Zabavsky, you face the same two charges, as well as

24  another charge of murder in the second degree in violation of

25  D.C. Code 22-2103.  That is punishable by not less than --

```
1              UNIDENTIFIED MALE SPEAKER:  Your Honor, I think
2    you're -- well, go ahead.  Sorry.
3              MR. BASET:  I apologize for interjecting; but,
4    actually, Mr. Zabavsky is not charged with the murder.  It is
5    Defendant Sutton.
6              THE COURT:  Mr. Sutton.  I apologize.  Mr. Sutton --
7    I got those turned around.
8         Mr. Sutton, you have the additional charge of the
9    Count 1, murder in the second degree.  That's 22-2103.  It's
10   punishable by not more than 30 years of imprisonment, no more
11   than life imprisonment without release, or it may impose a
12   prison sentence of 40 years, only in accordance with certain
13   D.C. Code statutory provisions.  And so just -- again, sorry
14   for that confusion.
15        That's Mr. Sutton, has the three charges.  Mr. Zabavsky
16   has the two charges of conspiracy and obstruction of justice.
17             MR. BASET:  Your Honor, if I may, just to clarify.
18   The maximum charge for second-degree murder should carry, I
19   believe, 40 years of maximum incarceration as opposed to 30.
20             THE COURT:  Understood.  Okay.  Thanks so much.
21             MR. BASET:  Thank you.
22             THE COURT:  Thanks, Mr. Baset.
23        The maximum term of imprisonment is not -- not in excess
24   of 40 years.
25        Next, I want to advise you of your rights.  You have the
```

1   right to remain silent, to begin with.  That means

2   (indiscernible due to poor audio quality) nothing to any law

3   enforcement officer when these matters are pending before you.

4   (Indiscernible due to poor audio quality) say to a law

5   enforcement officer can be used against you in this proceeding

6   or in future proceedings.  (Indiscernible due to poor audio

7   quality) if you've already said something to a law enforcement

8   officer, you need say nothing more to them.

9        First, Mr. Sutton, do you understand that?

10        DEFENDANT SUTTON:  Yes, sir.

11        THE COURT:  Mr. Zabavsky, do you understand that

12   right?

13        DEFENDANT ZABAVSKY:  Yes, sir.

14        THE COURT:  Okay.  Great.

15        Next, I need to inform you of your right to appointment

16   of counsel.  You have the right to counsel to represent you in

17   these matters.  I understand that you have counsel retained,

18   and so I'll inquire quickly from you about that.  But just

19   understand at all times you have the right to an attorney to

20   represent you.  If you cannot afford to hire an attorney, I

21   will appoint one for you at the government's expense.

22        Mr. Sutton, I understand you have retained counsel; is

23   that right?

24        DEFENDANT SUTTON:  Yes, sir.

25        THE COURT:  And, Mr. Zabavsky, I understand you have

1    retained counsel; is that right?

2              DEFENDANT ZABAVSKY:  Yes, sir.

3              THE COURT:  Great.  If we could please have counsel

4    introduce their appearance, beginning with the counsel for

5    Mr. Sutton.

6              MR. HANNON:  Good afternoon, Your Honor.  This is

7    J. Michael Hannon, and I represent Officer Sutton and will

8    enter my appearance electronically as soon as I'm able.

9              THE COURT:  Thanks so much.  Yeah, the case was

10   obviously under seal.  So I know no one was able to enter their

11   appearance, but thank you so much, Mr. Hannon, for letting me

12   know.  We will go forward with you representing Mr. Sutton

13   going forward.

14             And counsel for Mr. Zabavsky.

15             MR. ZAMPOGNA:  Yes, Your Honor.  Good afternoon.  My

16   name is Christopher Zampogna, and I represent Mr. Zabavsky.

17   And I will be entering my appearance as well shortly.

18             THE COURT:  Great.  Thanks so much, Mr. Zampogna.

19             MR. ZAMPOGNA:  Thank you, Your Honor.

20             THE COURT:  Same for you.  I appreciate -- I know

21   it's hard to jump on these things when the matters are sealed,

22   but thank you for getting on it and being ready to take on the

23   case.

24             Mr. Sutton, Mr. Zabavsky, I'm going to be talking to

25   your lawyers now, primarily.  However, that does not mean that

1    you can't speak.  I just want to make sure we are respecting

2    your right to remain silent and that we are ensuring that you

3    are not jeopardizing your defense, but if you have any

4    questions or concerns, just let me know.  I can always put you

5    in a breakout room with your counsel or take whatever steps are

6    necessary to make sure you understand what is going on.

7         Do you understand that, Mr. Sutton?

8         DEFENDANT SUTTON:  Yes, sir.

9         THE COURT:  Thanks.

10        Mr. Zabavsky, does that make sense to you?

11        DEFENDANT ZABAVSKY:  Yes, sir.

12        THE COURT:  Okay.  Great.  Thank you.

13        Next I want to warn the government pursuant to Rule 5(f)

14   of the Rules of Criminal Procedure that they must turn over all

15   exculpatory evidence as that term is defined in *Brady v.*

16   *Maryland* and its related cases.  Failing to do so in a timely

17   manner may result in sanctions, including exclusion of

18   evidence, adverse jury instructions, dismissal of charges, and

19   contempt proceedings.

20        It's important that you understand what that means,

21   Mr. Sutton, Mr. Zabavsky.  That means that if the government

22   has evidence that's helpful to your case, they must turn it

23   over quickly.  They cannot sit on it.

24        I next want to turn to the request in terms of release

25   and/or detention by the government.  Mr. Baset or Ms. Berkower,

1    whoever will be speaking on behalf of the government, if you

2    can -- we can start with Mr. Sutton and indicate what are

3    the -- your requests as to pretrial release (indiscernible due

4    to poor audio quality).

5              MR. BASET:  Your Honor, thank you.  Ahmed Baset on

6    behalf of the United States.

7              Our request is that this Court place Defendant Sutton on

8    electronic home monitoring to ensure the safety of the

9    community.  We further believe that he should not be allowed to

10   possess any firearms, a standard that he -- any travel outside

11   of the jurisdiction be done by notifying pretrial services

12   first, and that he should report as required by pretrial and

13   follow any other recommendations that they set.

14             Furthermore, we are requesting that there be a

15   geographic stay-away for Mr. Sutton to stay away from the

16   Fourth District, the location where he was responsible for

17   patrolling.  We also are requesting that there be a no-contact

18   order regarding the witnesses in this case.  And to facilitate

19   that, we are prepared to provide the Court and the parties with

20   a sealed list of those names of the witnesses that we ask not

21   be shared publicly at this time.

22             THE COURT:  Okay.  And for -- who do we have for

23   pretrial?  Is it Ms. Schuck?

24             THE PRETRIAL SERVICES OFFICER:  Good afternoon,

25   Your Honor.  Christine Schuck, pretrial services.

1          THE COURT:  Great.  Thanks so much.

2      Ms. Schuck, any concerns about any conditions that

3  you've heard or any conditions you'd like added or anything

4  you'd just like to add for the record?

5          THE PRETRIAL SERVICES OFFICER:  Nothing additional,

6  Your Honor.

7          THE COURT:  Thanks so much.

8      Mr. Hannon, I'll start with you then since we're talking

9  about your client, Mr. Sutton.  Any concerns about the

10  conditions of release as stated by the government?

11          MR. HANNON:  Thank you, Your Honor.

12      Despite ongoing communications with Mr. Baset,

13  Ms. Berkower, for probably a year, I'm surprised to hear the

14  litany of -- of items that they asked to impose.  That wasn't

15  previously shared with me.  So let me address -- address just a

16  few of those.

17      The electronic monitoring, I assume that there's no

18  requirement that they suggest he remain in his home while he's

19  on electronic monitoring.

20          MR. BASET:  Your Honor, if I -- if I may clarify.  In

21  light of when we spoke, our request is that he be in home

22  confinement, electronic home confinement, yes.

23          THE COURT:  So I just want to make sure, Mr. Baset.

24  So there's home detention and home incarceration.  Home

25  incarceration means the defendant can only leave to attend

1    court proceedings and medical appointments.  Home detention

2    allows the defendant to still leave for religious obligations

3    or -- in addition to any employment that they may have.  And

4    both require typically, although not always, GPS monitoring.

5           So are you asking for home detention or home

6    incarceration?

7                MR. BASET:  We are requesting home detention.

8                THE COURT:  Okay.  Thank you.

9           So, Mr. Hannon, thanks for clarifying.  So you heard the

10   government's request is to home detention, which will allow

11   your client to leave for employment, religious, medical, or

12   court appearances; and otherwise that he is, in fact, to stay

13   in his residence at all times and would, in fact, in addition,

14   have GPS monitoring.

15               MR. HANNON:  Your Honor, that's, in our opinion,

16   onerous and entirely unnecessary.

17          We arranged to have him interviewed by Ms. Schuck today

18   so you would have her views on matters.  He is a

19   12-and-a-half-year veteran of the Metropolitan Police

20   Department.  Today he continues suspended with pay.  He resides

21   in a home in Laurel, Maryland.  He grew up in Prince George's

22   County.  He has an aunt who lives near him.  His mother lives

23   in Ocean View, Delaware, which is approximately 120 miles from

24   his home.

25          Requiring Officer Sutton to remain in his home would

1    make it very difficult for him to cooperate with us in the

2    preparation of his defense.  I really am -- am quite disturbed

3    that this litany of conditions were not presented to me by

4    Mr. Baset earlier.  Expressly, last night he indicated that

5    they were not asking for any detention, and I took that, I

6    think, reasonably, as no objection to personal recognizance.

7        So unless he has some additional information that would

8    suggest that it's necessary to have Officer Sutton either

9    confined to his home for temporary periods of time or long-term

10   periods of time, I -- I see no justification for that.  It will

11   cause us and witnesses to have to travel.  It would cause

12   difficulty with him communicating with us.  For example, we

13   have a meeting scheduled with him for this Monday at my office,

14   and on -- I'm just -- just very surprised at that particular

15   condition.

16       I also don't believe there's any need for any no-contact

17   order with the witnesses.  Other witnesses --

18           THE COURT:  Let's take it, if we can, one at a time,

19   because -- it's no problem.  We'll go through them all.  So

20   let's start with just home detention so that way it's just

21   easier for me to sort through as we go back and forth.

22       So I want to be clear on a couple things.  One is I

23   understand and appreciate your frustration.  I mean, I think if

24   the government is right, even if they had told you that they

25   weren't going to seek any conditions, that ultimately they can

1    change their mind.  And I understand that that's not ideal from

2    your -- your perspective.  However, you know, it's their right

3    to do so; just like it's your right to object.

4         And I want to focus in on the conditions.  I want to be

5    very clear, though, that home detention permits your client to

6    leave his residence to come to any meetings or things of that

7    nature.  So witness meetings or preparation and the like, he

8    would be able to still do that.

9         And so I'm going hear from Mr. Baset, and I'm going to

10   come back to you because I want to make sure I understand what

11   the burden is that's being placed on him for home detention,

12   outside of the obvious and that it is inconvenient to be in

13   your home, but it needs to be something more than that.  And

14   so -- just like it needs to be something more that Mr. Baset is

15   asking for, we need to understand why -- what he thinks the

16   danger that can only be mitigated -- that what -- what it is or

17   what the flight risk is.

18        And so I'll come back to you, Mr. Hannon, but I do

19   believe that the initial concern that you've raised would be

20   addressed by home detention, having exception for attorney

21   appointments or things related to that, and we can certainly

22   carve out, as we need to.

23        So, Mr. Baset, I'm going to ask you to please set aside

24   whatever may have happened beforehand and just focus in on now

25   why you believe that home detention is appropriate, in

1     particular.

2          As I understand it, this offense conduct occurred -- it

3     sounds like you've had communications with Mr. Hannon for a

4     while and that the defendant has been out on his own personal

5     recognizance for a while, and so what is the danger that you

6     believe can only be mitigated through home detention?

7          MR. BASET:  We certainly do recognize that the

8     defendant has remained out in the community for the last

9     11 months, since this investigation started.  However, after

10    the return of the indictment by the grand jury yesterday, he

11    now sits charged with very serious offenses that reflect a

12    significant danger to the community, to include the charge

13    second-degree murder.

14         That is something that reflects further that he had a

15    conscious disregard of the risk that his conduct placed on

16    Karon Hylton's life.  And that's a conscious disregard and --

17    and something that remains a danger to the community, even if

18    he no longer is wearing a uniform.

19         And so moreover, even beyond that, he exemplified

20    through his conduct a serious abuse of the public's trust

21    and -- when he conspired to obstruct justice.  And despite

22    losing his police powers as a result of this indictment, those

23    are dangers that still exist.

24         And so while the Bail Reform Act does not contemplate a

25    confined -- detention under these circumstances, which is what

1    we'd agreed we would not be seeking today, we do believe that

2    to ensure the community's safety, electronic -- or, rather,

3    home detention is the appropriate route.

4         THE COURT:  Can you just give me some facts to

5    support your concerns on how the obstruction of justice

6    demonstrates -- I mean, can you give me some facts related to

7    that alleged conduct and why you think that demonstrates maybe

8    that the defendant is not going to comply with other conditions

9    and why we need home detention?

10        MR. BASET:  Well, in this case he used his authority

11   and power and conspired to ensure that -- or at least try to

12   ensure that the evidence in this case would not exist; that

13   this was a case that could be covered up.  He interfered

14   deliberately with that investigation, and this is an

15   investigation that continues to the very day of trial.  And so

16   we do still have concerns about those risks still existing to

17   this day.

18        THE COURT:  Okay.  Understood.

19        All right.  Mr. Hannon, I'm happy to hear from you as to

20   officer -- about what the government stated or just also my

21   questions that I asked that you address.

22        MR. HANNON:  Thank you, Your Honor.

23        I had -- have had an opportunity to read the indictment,

24   although quite briefly.  And, of course, if I had known we had

25   been talking about this issue, I might have made alternative

1   arrangements, for example, to provide custody and the like, and

2   I'd be more prepared to address the arguments about the risks

3   that the -- the alleged acts in the indictment pose to the

4   community.  But having read the indictment, it's very difficult

5   for me to address what Mr. Baset has to say without presenting,

6   to a certain extent, our side of the -- of the argument.

7         This is a probable cause indictment.  We don't know how

8   the grand jury was charged in this case.  This is a situation

9   where they do not report in the indictment that the decedent

10  was an active member of the Kennedy Street drug crew that

11  operates an open-air drug market on Kennedy Street between 5th

12  and 8th Street in the northwest of the District of Columbia and

13  that that crew, of which he's a significant member, has been

14  operating for many years, including during his juvenile time on

15  the street working for that crew, during which time he was

16  caught with a pistol on two occasions and convicted once as a

17  juvenile.

18        And this was -- this was known to the police officers.

19  And at the time of the offense, he had six criminal cases

20  pending in Superior Court of the District of Columbia, and as a

21  consequence, the portrayal of the conduct in the indictment

22  doesn't take into account what we have shared with the

23  government; and that is that under the Metropolitan Police

24  Department general orders, the -- the crime suppression team,

25  which was on the street because of the presence of

1   Mr. Hylton-Brown and others, had an obligation to observe and

2   take police action when they became aware of the need for it.

3         Under the Metropolitan Police Department general order

4   that is not mentioned in the indictment, there's an obligation

5   to conduct a *Terry* stop of an individual that the police

6   believe is armed or may be in the process of committing a

7   crime.  It is -- it is called articulable suspicion.  And the

8   lieutenant, who stands before you down in the cell block,

9   received information, along with the other officers, that

10  Mr. Hylton-Brown had been seen in the area early -- earlier and

11  having a physical and voice altercation with competitors in the

12  drug market there.

13        And these officers saw him leave the scene and return on

14  a moped and were concerned that he had returned armed and --

15  that he had returned armed to cause havoc and seek revenge on

16  the -- his competitors who were operating in that area.

17        And in -- when that occurred and that information

18  (indiscernible due to poor audio quality) to all of these

19  officers, Lieutenant Zabavsky, as he was obligated to do,

20  directed the officers to -- to do just that:  to conduct a

21  *Terry* stop of Mr. Hylton-Brown to determine whether he was

22  armed.

23        And that is what resulted in what the government

24  continually calls a pursuit because that language suits their

25  terms rather than following him in an effort to conduct a

1    lawful *Terry* stop.  And in the course of that, it was not the

2    conduct of any of the police that caused the death, but his --

3    riding his moped down an alley without braking into the

4    oncoming traffic on Kennedy Street; without turning and looking

5    and seeing what was there to see.

6         And I have shared with the government -- and I would ask

7    Mr. Baset to tell me otherwise.  I am unaware -- and I was in

8    the U.S. Attorney's Office for many years.  I am unaware of any

9    case in the history of the District of Columbia where a law

10   enforcement officer has been criminally charged because a -- an

11   individual believed to be in possession of a weapon, were

12   dealing drugs, have essentially caused his own death.

13        So I realize that Your Honor doesn't want to hear too

14   much back and forth on the indictment, but I -- this is in the

15   face of 12 and a half years of distinguished service, not just

16   with the Metropolitan Police Department, but with the

17   Fourth District.  And I can tell you that individuals who know

18   Officer Sutton from his work in that neighborhood have reached

19   out to him and have commiserated with him over the difficulties

20   that he's facing on suspension, and that he's missed.  And that

21   he's missed because the people in that neighborhood are tired

22   of the drug activity that takes place there.

23        I think that the indictment is what it is.  He has an

24   opportunity, obviously, to -- to speak and put on evidence

25   against the allegations that Mr. Baset sees here.  I don't -- I

1  don't, quite frankly, see anything, even viewed in the light

2  most favorable to the government in the indictment, which would

3  suggest to Your Honor that he needs to essentially be

4  incarcerated in his home.

5          MR. BASET:  Your Honor, if I may clarify.

6          THE COURT:  Sure, Mr. Baset.

7          MR. BASET:  Number one, there's absolutely no

8  evidence that Mr. Hylton possessed a gun, let alone a weapon

9  that night, that would have justified a *Terry* stop.

10         Number two, besmirching Mr. Hylton's character in this

11  hearing does nothing to address why Mr. Sutton should not

12  remain on home detention and why he remains a danger to the

13  community and what we can do to ensure that that no longer

14  exists.

15         It's not Mr. Hylton who is indicted by a grand jury on

16  the charge of second-degree murder and obstruction of justice

17  and conspiring to obstruct justice.  It's Mr. Sutton.  And so

18  besmirching Mr. Hylton's character does nothing to address

19  that, nor does it do anything to address his conduct from that

20  day that we are here to understand how we can keep the

21  community safe from.

22         So our request, again, is that there be home detention.

23  And, frankly, if there's any issue in his ability to prepare

24  for his defense, certainly we're happy to -- to -- to address

25  that.  But when it comes to the community safety, again,

1    Mr. Hylton has nothing to do with that.  And he's not here

2    today to threaten the community, as Mr. Hannon has indicated

3    that is his history, which has nothing to do with our hearing

4    today.

5            THE COURT:  Thanks so much, Mr. Baset.  I appreciate

6    both of your arguments.

7        I would agree with Mr. Baset; that Mr. Hannon, you know,

8    from my perspective in terms of the detention hearing, one of

9    the release conditions, the defendant is both -- presumed

10   innocent.  That is absolutely correct, but the decedent in this

11   case, the victim, is also not on trial.  And so I don't need to

12   get into nor hear anything about what has happened with him,

13   the basis of which your affirmative defenses might be, should

14   you seek to make any.

15       But I understand what you're saying.  You're trying to

16   show the nature and circumstance of the offense.  I'll take

17   that under advisement.  I've heard enough as to this category,

18   and I will -- why don't I go on to the next one.

19       So the no contact, Mr. Hannon, please continue with

20   that.

21            MR. HANNON:  As far as I know, the witnesses here are

22   all police officers and colleagues of Officer Sutton, and we

23   intend in preparation for trial to continue to interview them

24   and talk with them, and in some instances we may enlist to do

25   that with the presence of Mr. Sutton.  And they also are

1    providing Mr. Sutton with a significant source of support as he

2    goes through this difficult time.

3         I can represent to you that there were eight law

4    enforcement officers out there that night, none of whom are

5    indicted, who I believe Mr. Baset knows, shares Officer

6    Sutton's view of the conduct that they were supposed to be

7    engaging in that evening; and that those officers of the

8    Fourth District, as well as (indiscernible due to poor audio

9    quality) ought to be able to have contact with Officer Sutton

10   so that he doesn't become a pariah and he doesn't become

11   isolated from his community and friends and those people who

12   not just can help him with evidence in this case, but to

13   support him emotionally as he responds to something that he

14   believes is -- is a tragic sort of double cross of his

15   commitment to law enforcement.

16        THE COURT:  Mr. Baset, can you explain the reasons

17   for your request for no contact?

18        MR. BASET:  Yes.  The -- the double cross is the

19   abuse of his badge in carrying out the conduct that he did.

20   Now, he still -- having access to the very individuals that are

21   working with him in that community that are interacting with

22   that community is -- is highly problematic.  We are certainly

23   appreciative and understand that somebody needs emotional

24   support from friends and family and colleagues, and that's not

25   what we are intending to do.

1    We are intending to preserve the integrity of this

2  investigation, one of which Mr. Sutton is charged with a

3  conspiracy to obstruct justice, which is to undermine the very

4  judicial system of using -- again, for not providing

5  information to law enforcement in this system.  And so for him

6  to then continue to contact the witnesses that have -- that are

7  in this case that we've identified, we believe, would -- would

8  undermine the integrity of this investigation and -- and the

9  opportunity for success at trial, especially considering,

10  again, that he is indicted on the charge of obstruction of

11  justice.

12            THE COURT:  Okay.  Thank you.

13        Mr. Hannon, your next objection as to any other

14  conditions of release?

15            MR. HANNON:  I would ask it be included in his

16  release that he may, on his own volition, without having to go

17  to the Court for an alteration of the conditions of release,

18  travel as necessary to Ocean View, Maryland [sic], to visit

19  with his mother who's quite ill.  And in addition, his father

20  passed away a year ago, and he has been engaging in that

21  activity, essentially providing the only support for his mother

22  from the family.  So I would ask that that be an exception to

23  the travel restriction and that he not have to come back to the

24  Court in order to go and see his mother.

25            DEFENDANT SUTTON:  Your Honor, I -- I just want to

1    make a correction.  It's Ocean View, Delaware, and -- and it

2    was my stepfather that passed.  And, you know, she's -- she's

3    alone now, so...

4              THE COURT:  Thank you, Mr. Sutton.

5              MR. HANNON:  I understand.

6              THE COURT:  Thank you, Mr. Sutton.  I appreciate it.

7    I'm sorry for your loss.

8         Mr. Hannon, is there -- I think -- are all those the

9    conditions that you had objections to?  Is there anything else

10   (indiscernible due to poor audio quality)?

11             MR. HANNON:  (Indiscernible due to poor audio

12   quality).

13             THE COURT:  Stay-away order (indiscernible due to

14   poor audio quality) district or (indiscernible due to poor

15   audio quality).

16             MR. HANNON:  Your Honor, I don't know whether you're

17   familiar with the publicity that has accompanied this case, but

18   Officer Sutton has been the subject of death threats that have

19   arisen from the Kennedy Street gang and others since this

20   occurred, and he does lawfully possess in his home weapons, and

21   I would ask that he not be prohibited from possessing weapons

22   in his home.

23             THE COURT:  Understood.  Anything else?

24             MR. HANNON:  I would include on the no-contact order

25   him not going to the Fourth District.  Again, it seems --

1    Mr. Baset, I guess, is presuming that somehow or another other

2    police officers will be corrupted in their testimony in this

3    case by Officer Sutton, which I think is appalling.

4            THE COURT:  Understood.

5        Mr. Baset, anything in particular as to the 4D stay-away

6    that you want to speak about?

7            MR. BASET:  No.  I think we've made our point on

8    that.

9            THE COURT:  I think so too.

10       And any other issues or concerns about the no firearm

11   request?

12           MR. BASET:  We don't believe any different

13   application in release conditions should apply for Mr. Sutton

14   with any other similarly situated defendant in his position.

15           THE COURT:  Great.  Thanks so much.

16           MR. BASET:  We --

17           THE COURT:  Go ahead.

18           MR. BASET:  Your Honor, if I may -- and maybe this is

19   not the time to raise it, but at some point we'd like to flag

20   the fact that there is an active arrest warrant for Mr. Sutton

21   at this moment, which remains unaddressed at this point.  So I

22   do want to flag that for Your Honor.

23           THE COURT:  So has he not self-surrendered, or

24   what -- have you not worked out with Mr. Hannon --

25           MR. BASET:  Unfortunately not.  We did reach out to

1    Mr. Hannon yesterday to arrange for the logistics --

2              THE COURT:  That's fine and --

3              MR. BASET:  -- for his self-surrender.

4              THE COURT:  Understand.

5         So, Mr. Hannon, are you planning to have your client

6    self-surrender today, or what's the -- what are you hoping to

7    do here?

8              MR. HANNON:  I'm sorry, Your Honor, to have to say

9    that Mr. Baset and I had an agreement and then it turns out we

10   didn't have an agreement, but --

11             THE COURT:  That happens all the time with the way --

12   that's okay.  So I just want to know, what's your plan going

13   forward?

14             MR. HANNON:  What -- what I asked the Court to do --

15   and what I thought we had an agreement on last night -- was

16   that Officer Sutton appear before you today virtually.  We

17   would ask you, because he's making this appearance voluntarily,

18   to quash the arrest warrant.

19        Then the next issue is the booking of Officer Sutton.  I

20   do not want Officer Sutton to come into the District of

21   Columbia without me being there, and I am not there now, today.

22   I will be there Monday.  And my proposal that I thought had

23   been acceptable to Mr. Baset was to ask the Court -- and, of

24   course, we're not trying to bind the Court -- is to ask the

25   Court, in addition to quashing the arrest warrant, to sign a

1    booking order to -- for Officer Sutton to present himself to

2    the Marshals Service there on Monday for booking, after which

3    he would come to my office and we would begin our work on this

4    case.

5        I, quite frankly, don't understand why submitting those

6    requests to Your Honor at this time is not something that's

7    agreeable to Mr. Baset, but I'll let him speak for himself.

8        I must also say that they caused the indictment to be

9    unsealed and released so that the presses were -- that we've

10   already been receiving many phone calls from the press.  I

11   don't know what sort of activities that's going to spawn in the

12   Kennedy Street area, but I do not want Officer Sutton to come

13   into the District of Columbia today without my presence.

14           THE COURT:  Okay.  Mr. Baset, I just -- I don't want

15   to get into the reasons why.  I just need to know what -- what

16   is your position as to the defendant's self-surrendering on

17   Monday at, you know, whatever, 9:30 in the morning.  We can set

18   a time.  You are not requesting that, and you're requesting --

19   and you have an arrest warrant and you know where he is.  So

20   certainly (indiscernible due to poor audio quality) execute

21   them.  I have no involvement in how you enforce your arrest

22   warrants.

23           MR. BASET:  Well, we do oppose any request to quash

24   the arrest warrant.  We do not believe that Mr. Sutton, again,

25   should be treated any differently than any other defendant who

1    stands charged of second-degree murder and obstruction of

2    justice.  We reached out to Mr. Hannon to facilitate

3    Mr. Sutton's self-surrender in lieu of actually having to

4    execute the arrest.  Mr. Hannon indicated that's not possible

5    because of his unavailability, but we do not believe that a

6    defendant has a Sixth Amendment right to counsel being present

7    with him during a routine booking process.

8        Mr. Hannon has indicated some concern about Mr. Sutton's

9    safety, but to be clear, the KDY crew that he references is

10   nowhere near the federal courthouse where -- where we are

11   asking for Mr. Sutton to turn himself into authorities, which

12   we have indicated should have occurred this afternoon at the

13   federal courthouse.

14       Moreover, we have tried to facilitate this in a manner

15   such that Mr. Sutton is not processed through the central cell

16   block, which would expose him, potentially, and -- and the cell

17   block to particular risks.  The way we've arranged for this is

18   for the U.S. marshals to facilitate this at the courthouse.

19   And so that's why we reached out to Mr. Hannon to facilitate

20   that.  He indicated that he would not oblige and would not

21   provide any sort of reason for why his client couldn't be

22   available for the booking today as, for instance, Defendant

23   Zabavsky is.  We are prepared to execute the warrant, if

24   necessary.

25       THE COURT:  So, Mr. Hannon, you've heard from the

1    government.  I will tell you that I'm not inclined to quash my

2    own arrest warrant.  I think it's the government's right to

3    seek an arrest warrant when they've returned an indictment.  If

4    you have any authority to show me otherwise, but there's --

5    that flows from the indictment.

6         I understand your frustration because you thought that

7    you had something worked out, and I understand that, but it

8    looks like the government, for whatever reason, may or may

9    not -- I don't know.  I don't need to know whether or not they

10   have or have not changed their position, but their position is

11   that there's an operative arrest warrant.  It's out there.  So

12   I would suspect that it's -- it behooves your client to try to

13   come now to the courthouse and get this resolved as opposed to

14   waiting until Monday, because it sounds like then he may, in

15   fact, be picked up.

16        If you have a basis under the law to quash that, other

17   than just that you think there's -- I understand.  I mean, I'm

18   not -- I'm not undercutting any of the unfairness that is

19   perceived by you and your client in that you feel like there's

20   been a bait and switch.  I don't know that that, in my mind, is

21   not a basis to quash my arrest warrant.  So if you have

22   something else, I'm happy to hear from you.  You're welcome to

23   file something, and -- but as I understand it, I mean,

24   Mr. Baset has indicated they're prepared to execute it.

25        So I think that if we can work something out here where

1   you can get your client to come in today -- perhaps we'll hear

2   from Mr. Baset if he's willing to (indiscernible due to poor

3   audio quality), but if not, then, you know, I'll leave it as it

4   is.

5          MR. HANNON:  I'm sorry, Your Honor, again, to engage

6   you in this, but there was also the assurance that the arrest

7   warrant wouldn't be executed.  But I made it clear to Mr. Baset

8   that the decision is yours, and I'm going to abide by your

9   decision.  My -- my view of it is that he has made his

10  appearance; that this is authorized under the rules of the

11  court that you have the right to quash the arrest warrant and

12  issue a booking order for Monday, which was our original

13  agreement.

14        If you -- if you are unwilling to do that, Your Honor,

15  then Officer Sutton will be down at the courthouse to be booked

16  today.  I -- I --

17        THE COURT:  Thank you, Mr. Hannon.

18        No, I understand your frustration, and I am -- I

19  appreciate you not trying to draw me into this.  And I'm --

20  would just remind the parties this is the beginning of a long

21  time that you-all have to be working together, and I understand

22  that this is -- understandably, these are very serious

23  allegations, and there -- if someone worked in a very sensitive

24  role and so why both of you feel like it is difficult to

25  negotiate without there being acrimony.  But you're going to

1   have to work together to try to continue to move this case

2   forward, and so I hope that both of you will demonstrate a

3   great professionalism and you will continue to do so.

4        Mr. Baset, sounds like you wanted to add something, but

5   I don't know that there's a necessity.  My point is, thus, the

6   arrest warrant is operative.  Mr. Sutton is -- I believe, per

7   Mr. Hannon's comment then, will be driving as soon as the call

8   is over to go turn himself in.  Is that sufficient from your

9   end that you're not en route seeking to arrest him --

10        MR. BASET:  We will not be seeking.  Of course, if he

11   violates the law and -- and he's stopped by law enforcement, we

12   can't stop that, but we are not actively seeking to enforce it,

13   with the understanding that he is turning himself in this

14   afternoon.

15        THE COURT:  Okay.  Thank you.

16        Is there anything else outside of the conditions of

17   release we've already spoken about, Mr. Hannon, or anything

18   else so far?  And obviously there's a lot of issues.  So

19   anything else you want to bring up, please do.

20        MR. HANNON:  Nothing on the conditions of release,

21   but I would like to comment that I think Your Honor has the

22   authority to provisionally quash the arrest warrant pending his

23   appearance and the assurance to you by the U.S. marshals that

24   he's surrendered himself here in the courthouse today.

25        THE COURT:  Understood.  Well, I think that while I

1    have authority over my warrant, I believe that it's

2    unnecessary to do so here because Mr. Sutton is going to be

3    coming down to the courthouse.  It sounds like Mr. Baset is --

4    as with Mr. Zabavsky, has -- will indicate to his agents that

5    he's working with that they not take any further actions.  So

6    I think that it's sufficient as is (indiscernible due to

7    poor audio quality) follow the law and make sure that when

8    he's coming down here he does so in a safe manner and follow

9    any applicable rules in terms of traffic or any other

10   ordinance.

11       Okay.  Anything else besides that then, Mr. Hannon?

12           MR. HANNON:  No, Your Honor.  Thank you.

13           THE COURT:  Okay.  I'm going to come back to his

14   conditions of his release after I hear next -- I want to hear

15   from Mr. Baset what your conditions of release you're seeking

16   for Mr. Zabavsky are.

17           MR. BASET:  We, for Mr. Zabavsky, are requesting high

18   intensity supervision.

19           THE COURT:  Okay.  And can you -- I'm happy to hear

20   from Ms. Schuck, just so we can make sure we're all on the same

21   page.  Ms. Schuck, can you review what high intensity

22   supervision would be as to Mr. Zabavsky?

23           THE PRETRIAL SERVICES OFFICER:  Good afternoon,

24   Your Honor.  Christine Schuck, pretrial services.

25       First, pretrial just needs to note that we were not at

1    this time able to verify Mr. Zabavsky's address.  So he is not

2    eligible for the High Intensity Supervision Program.  But the

3    High Intensity Supervision Program entails -- it is a

4    (indiscernible due to poor audio quality) based program that

5    utilizes GPS monitoring and requires that the individual report

6    to pretrial services as directed.  Also encompasses drug

7    testing and other conditions deemed appropriate by the Court.

8              THE COURT:  And just so I understand, Ms. Schuck, I

9    know that you can still -- or I can still impose the same

10   conditions, but as I understand it, it would not be called high

11   intensity supervision but essentially be the same thing.  I

12   wanted to confirm that.

13             And then, secondly, I wanted to -- sorry.  Second, I

14   wanted to confirm whether if the defendant does have his

15   residence and things confirmed during the pendency of his

16   supervision, could he then be put into the official High

17   Intensity Supervision Program?

18             THE PRETRIAL SERVICES OFFICER:  Yes, Your Honor.

19   Based on what we have in our report, he would be able to

20   provide us documentation of his address, and then we would be

21   able to place him formally into the High Intensity Supervision

22   Program.  It's just that at this time, we were not able to

23   verify either through a reference or documentation.

24             THE COURT:  Understood.  And, Mr. Baset, you're not

25   asking for any curfew or anything like that with this

1    electronic home monitoring?  It's simply electronic home

2    monitoring for location purposes?

3            MR. BASET:  That's right.  We -- we do have the

4    standard request, similar to that which we made for

5    Defendant Sutton, to include not possessing any firearms or

6    noting to pretrial services if he intends to leave the

7    jurisdiction and -- as well as the geographic stay-away from

8    the Fourth District, in addition to no contact with any

9    witnesses in this case.

10           THE COURT:  Okay.  Understood.  Thank you.

11       Mr. Zampogna, you've heard from pretrial services, as

12   well as from Mr. Baset, about the conditions of release that

13   have been discussed.  I want to hear what you have in response.

14           MR. ZAMPOGNA:  Thank you, Your Honor.

15       Yeah, I'll start, I guess, with the first point, which

16   is the GPS monitoring.  I would seek -- show -- we concede my

17   client has voluntarily come in today.  He is not any kind of

18   flight risk.  He's been a police officer for 19 years, served

19   distinguished in all that time.

20       He -- he -- he lives in the District.  I know they

21   didn't say that, but which also leads me to another point.

22   We're worried about his safety as well, and I really don't want

23   to have that address released, if there's a way not to release

24   that address to the public.  That's just a request I have.  I

25   know it's not exactly within the confines of this argument, but

1    somewhat related.

2         And he leaves the District to see mother in Pennsylvania

3    near -- I believe it's Harrisburg -- Harrisburg and Gettysburg

4    frequently and, frankly, wishes to go there not just to --

5    she's very sick.  He takes care of her.  He can speak to her

6    actual illness.  I don't know the details.  But also just to be

7    away from the press and the threats.  He would like to go

8    there, frankly, more often than be in the District as well.  So

9    I don't think the GPS would be necessary for him for those

10   reasons.

11        He can call in and give his location.  So I'll -- I

12   guess I'll just go with that first point.  I know you want to

13   go point by point.  So I'll stop talking.

14             THE COURT:  Thanks so much, Mr. Zampogna.

15        Ms. Schuck, anything as to this defendant in terms of

16   location monitoring?  Does pretrial have a position?

17             THE PRETRIAL SERVICES OFFICER:  If Your Honor is

18   going to utilize the High Intensity Supervision Program, we

19   would request either Your Honor place him on a curfew, home

20   incarceration, or home detention.  What is referred to as the

21   stand-alone monitoring option, which is being referred to by

22   the government, is not utilized by this office and the

23   United States District Court.

24             THE COURT:  Understood.  Thank you, Ms. Schuck.

25        Mr. Baset, any reason why you think -- or why do you

1 think that electronic monitoring is necessary here?  I'm happy

2 to hear -- obviously somewhat -- there be some repetition from

3 the previous defendant, but happy to hear it again to the

4 extent you want to (indiscernible due to poor audio quality).

5    MR. BASET:  Indeed, our position is that this is an

6 appropriate release condition given the sway in authority that

7 Defendant Zabavsky had at the time and continued to up until

8 yesterday in that very community of the Fourth District.

9   Suffice to say, our indictment lays out that much of

10 what Officer Sutton did that day would not have, in large part,

11 been possible absent Lieutenant Zabavsky's authorization or

12 support, if not outright assistance, into conspiring to cover

13 up the offense for which he directly was involved in; that

14 would be Defendant Sutton.

15   And so he still has a -- kind of a sway in that

16 community, a tremendous power in that community, even though he

17 no longer wears the badge.  But he's still employed at MPD.

18 And -- and at the end of the day, too, Lieutenant Zabavsky has

19 remained making decisions in that community that affect

20 people's lives up until yesterday.

21   And so our concern stems from his ability to continue to

22 have an impact on the community to this day and -- and -- and

23 charges that he's been indicted on reflect potential

24 willingness to continue to do that.

25    THE COURT:  Understood.  Thank you, Mr. Baset.

1          And so just so I understand, was the defendant working

2      in his official capacity until this indictment was returned, or

3      has he been on leave for the past 11 months, or how has that

4      been handled?

5              MR. BASET:  Defendant Zabavsky has, we understand,

6      remained employed in full capacity up until yesterday.

7              THE COURT:  Is that true for Mr. Sutton as well, to

8      the best of your knowledge?

9              MR. BASET:  No, that is not true of Mr. Sutton.  He,

10     I believe, the very night of this incident was no longer

11     working in a full capacity at MPD.

12             THE COURT:  Okay.

13             UNIDENTIFIED MALE SPEAKER:  (Indiscernible due to

14     poor audio quality).

15             THE COURT:  Sure.  Yeah, what's --

16             UNIDENTIFIED MALE SPEAKER:  I'm sorry.  That was my

17     phone.  That showed up.  I apologize.

18             THE COURT:  No, no, no.  You're fine.

19         Anything else from your end, Mr. Baset, as to this

20     condition, the electronic monitoring?

21             MR. BASET:  I apologize.  I did not hear your last

22     question, Your Honor.

23             THE COURT:  No problem.  Yeah.  I said anything else

24     as to electronic monitoring from your end, Mr. Baset?

25             MR. BASET:  No, Your Honor.  Thank you.

1      THE COURT:  Mr. Zampogna, anything on electronic

2  monitoring, or we can go onto the next --

3      MR. ZAMPOGNA:  We can go -- yeah.  Well, I mean, I

4  guess the only point I would say is my client -- I don't want

5  to speak for him entirely about what he plans to do, but he

6  wishes, as I said, to not even be in the community given what's

7  just taken place.  He wishes to be with his mother most of the

8  time, who is about a hundred miles or so away, you know.  So --

9      THE COURT:  Just to be clear, he's not going to

10  relocate there, though?  He wants to keep his current residence

11  but, in addition, just be able to go there; is that right?

12      MR. ZAMPOGNA:  I believe -- yes, I think.  I think

13  he's prepared -- he hasn't moved his things, you know.

14      THE COURT:  Right.

15      MR. ZAMPOGNA:  I don't know.  I could ask him, if

16  that -- if that would help, but -- but -- but, yeah, I know

17  that's where he wishes to be.  Like, as soon as this over, if

18  he's released, he wishes to go there --

19      THE COURT:  I understand.

20      MR. ZAMPOGNA:  -- just to let you know.  So that's

21  the only thing I would add.

22      I guess the other point, the drug testing, I don't see

23  that being necessary.  My client has no drug history.  You

24  know, he's a police officer.  He's -- has to submit to testing

25  anyways, I believe, in that capacity, has never had any

1    problems with it.  So I don't see why that's even necessary.  I

2    know -- high intensity, maybe it's a requirement, but -- so I

3    just put that out there, Your Honor, as going point by point.

4    So I'll stop with that condition as -- that's my point.

5              THE COURT:  Okay.  Mr. Baset, just wanted to note

6    there is -- anything you want to add to that?  I mean, that's a

7    standard condition, and it's strictly drug testing as directed

8    by pretrial services, and so I don't know -- we've never

9    imposed it when someone has no past history of drug use and

10   pretrial doesn't usually direct it in that case.

11             Anything you want to add?

12             MR. BASET:  No, Your Honor.

13             THE COURT:  Thank you.

14             Mr. Zampogna, any other conditions of release?  His

15   stay-away order, it sounds like it's not an issue since your

16   client wants to stay away largely from the whole district, but

17   I'm happy to hear about that or as to the no contact.

18             MR. ZAMPOGNA:  Yeah.  I guess as far as the no

19   contact, similar to what other counsel has stated, defense

20   counsel, he does gain support from those, even though he was

21   the sergeant [sic].  So he may want and wish to interact with

22   them.  I've never asked him if they help him with regards to

23   his family.

24             So I think he would like to continue to interact with

25   others in -- in the police department; in addition, to speak

1   with them for a number of reasons.

2        So I would just skip to that one.  I don't believe he

3   has a problem -- I just have to check with the distance and

4   where his house is, because, frankly, I don't know, you know,

5   the house and -- I know I'm addressing two points.  I

6   apologize, Your Honor, but we can always skip to that.  That

7   would be the only thing I would say as far as that point goes.

8   I don't think he has a problem with that, as you suggested.

9        Thank you, Your Honor.

10        THE COURT:  All right.  Mr. Baset, anything else on

11   this on your end?

12        MR. BASET:  Well, with respect to the no contact with

13   the witnesses on the witness list, we are particularly

14   concerned considering that defendant is a boss.  He was

15   actually a -- for many of these individuals -- supervising

16   figure for them.  He was their boss for some of them.  So in

17   particular, as he remains employed with the MPD, we are

18   concerned and -- about any ability for Defendant Zabavsky to

19   reach out to any of those individuals.

20        THE COURT:  Okay.  Thanks so much.

21        I'm going to take a ten-minute recess and then come back

22   and rule on this.  It's 2:55 almost now.  So let's just plan --

23   you're welcome to turn off the camera or whatever you want to

24   do and just plan at 3:05 to be back on.

25        MS. BERKOWER:  Your Honor, very briefly.

```
 1                    THE COURT:  Yes.

 2                    MS. BERKOWER:  I wanted to clarify just something

 3        with regard to the maximum penalties for the second-degree

 4        murder charge.

 5                    THE COURT:  Sure.

 6                    MS. BERKOWER:  I know -- I apologize for jumping in

 7        here, but I didn't want to --

 8                    THE COURT:  Oh, please do, Ms. Berkower.

 9                    MS. BERKOWER:  The statutory maximum is life

10        imprisonment.  However, a sentence above 40 years requires a

11        finding of aggravating circumstances.  So I know we had

12        mentioned the 40 years.  I just wanted to make it clear that --

13        that the statutory maximum penalty actually provides for above

14        40 years should certain aggravating circumstances be proven.

15        Thank you.

16                    THE COURT:  Okay.  Great.  Thank you.

17               All right.  So we'll be in recess.  We'll come back at

18        3:05.

19                    (Recess taken.)

20                    THE COURT:  Thanks so much.  Ms. Lavigne-Rhodes, if

21        you can recall the case, please.

22                    THE COURTROOM DEPUTY:  Recalling Criminal Case

23        21-598, Defendants 1 and 2.  The United States v. Terence

24        Sutton and Andrew Zabavsky.

25                    THE COURT:  Thanks so much.  Thanks for your
```

1    patience.

2         I am ready to impose conditions of release.  I have

3    spoken to pretrial services to review their understanding of

4    what your requests are and how they would mesh with the

5    monitoring that they have.  I, again, reviewed the pretrial

6    services report to begin with.

7         I'll note that the pretrial services report indicates

8    that based on -- I'll start with Mr. Sutton -- with the charged

9    conduct that there are no conditions or combination of

10   conditions that can reasonably assure the defendant's

11   appearance or safety for the community.

12        So pretrial services is -- requests are directed

13   (indiscernible due to poor audio quality) suggested detention

14   here.  The United States has not asked for detention.  It asked

15   for a lesser restriction.

16        So then I next go to their request.  The request is for

17   home detention, and with the understanding that home detention

18   means for certain purposes that you can leave your residence,

19   but largely, other than that, you are at home 24 hours a

20   day/7 days a week.  And so I think about then what has occurred

21   in the intervening time, from the time Mr. Sutton was put on

22   leave, the instance in question, and the fact the indictment

23   that was returned yesterday, but also understanding that the

24   indictment does change the dynamics.

25        What Mr. Sutton faces is the potential for life

1    imprisonment, although he is, in fact, presumed innocent.  That

2    cannot be stated enough.  That every defendant who comes before

3    me, I believe that they're innocent.  I could not believe that

4    nor do I deserve to do this job, but I do believe that because

5    it's the number one thing I have to believe.

6         The Bail Reform Act requires me to weigh the evidence in

7    front of me, to consider that.  And that's what I'm doing here.

8    So I look at the fact that -- you know, the case law is clear.

9    When someone is indicted, it changes the dynamics.  There's no

10   longer a possibility that they won't be charged; and, you know,

11   as stressful and difficult as that might be, that time

12   beforehand, everything changed once the defendant was subject

13   to an indictment.

14        I do believe that home detention is appropriate.

15   However, I think there are carve-outs that we can make for

16   Mr. Sutton.  I believe that in addition to these traditional

17   allowances for the defendant, with pretrial service's

18   permission, to attend religious services, preparing his

19   defense, meet with his lawyers -- as the lawyer says, if they

20   want to meet at his office or a third-party location -- all of

21   those things he can do.

22        In addition, the defendant is allowed to travel to his

23   mother's residence and stay overnight with advance approval

24   from pretrial services and must attend -- abide by the home

25   detention restrictions while at his mother's residence.  So I

1   believe that Mr. Sutton then can go to his mother's residence

2   based on this language and can stay there overnight.  Again,

3   you would be subject to the same restrictions of:  not being

4   able to leave his mother's residence unless it was to attend

5   meetings with his lawyers, medical appointments, or religious

6   services, or employment.  Again, you must seek permission from

7   pretrial.  You don't need to seek permission from the Court.

8   That would be home incarceration.  So I'm not putting the most

9   stringent restrictions in place.

10          I understand that you've been in the public for about

11  11 months.  And during that time, there's no indication from

12  the government that you posed a danger.  However, I do believe

13  that there are grave concerns I have that stem from the

14  obstruction of justice charge.  I read the conduct as alleged

15  in the indictment as egregious.  And if that conduct is, in

16  fact, true -- which I do believe that it's not now, but I have

17  to still weigh it as I put in place any conditions of release.

18          (Indiscernible due to poor audio quality) there was a

19  conspiracy, as noted by Mr. Baset, to hide the truth about what

20  happened here, where there was, undoubtedly, a victim and a

21  victim is -- by their nature -- in this instance who is dead.

22  There's nothing that I can say that effectively captures the

23  tragic nature of that situation.

24          So here, as I review that, I think that the obstruction

25  of turning off the body-worn camera, which -- destruction

1    arguably of evidence by running over evidence, then meeting

2    with a supervisor and talk about how to handle this situation;

3    all of these things to me indicate a decision that once a

4    person is caught, that they then will take grave response or

5    the -- or have the response that they're willing to bend the

6    rules to try to protect themselves.  Prior to the indictment

7    being in place, I don't think there was a triggering event that

8    could, again, cause further obstruction.  So I think it's not

9    surprising that nothing may have happened in the last

10   11 months.

11        But as of yesterday, something has happened.  Something

12   that faces the defendants both with a potentially grave

13   sentence, a sentence of which could motivate them to engage in

14   behavior that is obstructive, and I think for that reason, the

15   obstruction -- not the danger -- is the reason why I believe

16   that it is appropriate to put the defendant in home detention.

17        It's also why I believe it's appropriate for the

18   defendants to have a no-contact and stay-away order from the

19   Fourth District and from the -- any witnesses to this case

20   Mr. Baset and Ms. Berkower want to present.  The Court does not

21   need that.  You can provide that to Ms. Schuck, as well as to

22   Mr. Hannon and Mr. Zampogna as to who those people are.

23        I believe that the defendants absolutely have a right to

24   seek counseling and support from friends and family members.

25   There are colleagues I'm sure that they have outside of who are

1      witnesses to this case.  Mr. Baset, I would just direct you to,

2      please -- as you indicated, you will make the most restrictive

3      list of people possible.

4           Certainly their counsels are able to interview and speak

5      to people and prepare your defense.  That is -- is something of

6      a constitutional right.  However, you do not have the authority

7      to contact anyone directly of those people, because doing so, I

8      think, again, because of the obstructive conduct, gives me

9      grave concerns.  I think it's not -- I think it's not a risk

10     that could -- can be sufficiently mitigated any other way.

11          And it sounds like, again, there were other people who

12     are part of this incident that occurred, and the indictment

13     charges that both persons known and unknown and persons charged

14     and uncharged were part of this.  And so I can't have any

15     surety as to whether or not there are other people who still

16     may be willing to engage in obstructive conduct.  So all I can

17     do to preserve your right and the right of the public and the

18     right of the government to have a fair trial, is that there is

19     no contact with those people.  I believe these restrictions are

20     the least restrictive conditions.

21          I will not subject Defendant Sutton -- it wasn't a

22     request, but I will not subject him to drug testing.  I believe

23     he has an expired passport.  He is forbidden from finding or

24     that -- I'm sorry.  He's expressly -- expressly forbidden for

25     applying for a new passport.  He should find that old passport

1    and turn it into his counsel, who will then turn it over to

2    pretrial services.

3         He is not permitted to travel, obviously, because he's

4    on home detention, but he should not travel outside of the --

5    he's -- out of two places; right?  Your mother's residence and

6    your current residence.  Any time you want to go to your

7    mother's residence, you have to seek permission from pretrial

8    services.  Any time you want to go to religious services, meet

9    with your lawyers, or anything else, you must seek pretrial

10   services' permission.  You cannot travel outside of that.

11        In addition, the defendant is not to have a -- a firearm

12   or a -- an explosive device.  I understand and appreciate the

13   defendant's concern about his safety.  That is why the police

14   are available.  If at any moment he feels unsafe, he should

15   dial 911 and seek protection.  That is entirely reasonable on

16   his -- for him like anyone else, that they feel unsafe, that's

17   what they're to do, but he cannot simply take the law into his

18   own hands.

19        And given the conduct in question, I'm even more

20   concerned by deputizing the defendant, to then giving him a

21   firearm.  If someone, in fact, comes and says something

22   offensive or threatening, he has to do what anyone else will

23   do, which is to attempt to make themselves safe and seek from

24   authorized law enforcement protection.

25        I believe that allowing the defendant to go stay at his

1    mother's residence is important.  It sounds like she needs

2    care, and he is an important support to her; and that she will

3    be an important support to him during this very difficult time

4    for him.

5         Mr. Baset, are there any other conditions as to

6    Mr. Sutton, or do you feel that sufficiently is covering it?

7              MR. BASET:  We do.  We would just request that -- and

8    confirm that the -- given the sensitive nature of the witness

9    list we intend to provide to the parties and pretrial, that

10   that list not be shared outside of the defense team and --

11   and -- and pretrial.

12             THE COURT:  So certainly will not be shared outside

13   of pretrial.

14        Mr. Hannon, the government can move for a protective

15   order if they -- we could go through that process, but at this

16   time they're saying they want to give you the witness list as

17   quickly as possible with the request that you and your client

18   not share that with anyone outside of just your law firm or who

19   is -- that's preparing for the legal defense.  Is that fine by

20   your end, Mr. Hannon?

21             MR. HANNON:  Yes, sir.

22             THE COURT:  Thank you so much, sir.

23        Anything else, Mr. Baset?

24             MR. BASET:  Nothing further.  Thank you.

25             THE COURT:  Ms. Schuck, anything else as to -- sir,

1   I'll come to you, but one second, Mr. Hannon.

2        Ms. Schuck, anything else as to the conditions of

3   release from pretrial's end, as you have suggested?

4        THE PRETRIAL SERVICES OFFICER:  No, Your Honor.

5   Pretrial will just note that in -- if the -- if the defendants

6   are unable to report to our offices today by 4:45 p.m., they

7   will not be placed on GPS monitoring until Monday, the 27th.

8        THE COURT:  Okay.  Mr. Sutton, how long will it take

9   you about to drive in to the courthouse?

10       DEFENDANT SUTTON:  I'm about an hour, but Friday

11  traffic, so I -- I will be cutting it very, very -- very, very

12  close.

13       THE COURT:  Understood.  All right.  Let me come back

14  to that in a minute.

15       Mr. Hannon, there was something else you want to add?

16       MR. HANNON:  Yes.  I think you said, Your Honor, an

17  exception to the home detention is attendance at employment, if

18  he has employment?

19       THE COURT:  That's right.  Mr. Hannon, I now

20  understand that he's not currently able, sounds like, to be

21  employed by the Metropolitan Police Department.  However, if he

22  finds other employment, he would have to notify pretrial

23  services.  They would then confirm that, and then he'd be able

24  to travel to that employment.

25       MR. HANNON:  Thank you, sir.

```
 1              THE COURT:  Absolutely.
 2          So I just want to confirm -- and maybe we can talk to
 3     the U.S. marshal, but is the defendant able to still be
 4     processed --
 5          Mr. Zabavsky, can you call one of the marshals over that
 6     are -- ask them to come over.  Thank you, sir.
 7          Mr. Sutton, it sounds like it will take him about -- if
 8     he gets in here around, like, 4:45 or 5:00, I understand you
 9     won't be able to be put on location monitoring -- but will you
10     still be able to process him today, sir?
11              THE CORRECTIONS OFFICER:  Yes, Your Honor.  If he
12     makes it before 5 o'clock, he should be good to go.
13              THE COURT:  Okay.
14              THE CORRECTIONS OFFICER:  Even a little bit after
15     5:00.
16              THE COURT:  Thank you, sir.  I appreciate it.
17          So, Mr. Hannon, anything else as to conditions of
18     release?  I understand and I'll note your objection to the
19     record that you've already stated as to them.  Anything else?
20              MR. HANNON:  No.  Thank you, Your Honor.
21              THE COURT:  Okay.  Mr. Sutton, do you understand the
22     conditions of release that we've discussed?
23              DEFENDANT SUTTON:  Yes, sir.  I believe I
24     (indiscernible due to poor audio quality).
25              THE COURT:  Okay.  And will you follow those
```

1      conditions of release?

2              DEFENDANT SUTTON:  Yeah.  No contact with any of my

3      colleagues?

4              THE COURT:  That is correct.

5              DEFENDANT SUTTON:  May I -- okay.  Yeah, I

6      understand.  I mean, that was my only support (indiscernible

7      due to poor audio quality) officer, you know, (inaudible),

8      but --

9              THE COURT:  I want to make sure I understand.

10     Mr. Baset, when you -- when you -- no contact with colleagues,

11     you're talking only at the Fourth District or are you saying

12     all Metropolitan Police officers, because --

13             MR. BASET:  No.  Our request specifically is the

14     witnesses in the witness list that we're providing.

15             THE COURT:  So, Mr. Sutton, it's not everyone at 4D

16     even.  It's just there's going to be a list of names and

17     that -- so any other police officers along there, certainly

18     anyone outside of -- I believe 4D would be on that, but anyone

19     at 4D, it's only a limited list of people.  So if there are

20     people on there, Mr. Sutton -- let me be very clear.  If

21     there's someone on there you feel like, hey, I really need to

22     talk to that person, let Mr. Hannon know.  And Mr. Hannon can

23     make a motion to me and we can have a hearing, because you have

24     a right to have people support you.

25             You have a right -- you're presumed innocent.  So you

1    have a right to talk to people and get the help that you need.

2    Let's just start with their list and then work our way down.

3    There may not be an issue.  I don't know not having seen that

4    list.  Does that make sense to you?

5            DEFENDANT SUTTON:  Yes, sir.

6            THE COURT:  Okay.  Great.

7            DEFENDANT SUTTON:  Is -- as far as the 5 o'clock, I

8    mean, I'm cutting it very, very close.

9            THE COURT:  Yeah, that's -- I -- I heard the deputy

10   say that he can still -- a little bit extra, so my -- what I'd

11   like to do is swear you into the conditions of release right

12   now and then just get you on the road; okay?

13           DEFENDANT SUTTON:  Okay.

14           THE COURT:  Okay.  So you understood the conditions

15   of release.  Remember, the main one is just you have to ask

16   permission from pretrial before you're going anywhere.  You've

17   got pretrial services.  Your lawyer, Mr. Hannon, will help you,

18   also coordinate with them, but that's the main thing you need

19   to do; okay?

20           DEFENDANT SUTTON:  Yes -- yes, sir.  And they're

21   going to give me all the information I need to -- to get in

22   contact with the pretrial?

23           THE COURT:  Ms. Schuck, can you give the number for

24   pretrial services, just so he can have it written down?

25           MR. HANNON:  I have it, Your Honor.

1          THE COURT:  Okay.  Mr. Hannon has it as well,

2     Mr. Sutton, so you can call him; okay?

3          DEFENDANT SUTTON:  Okay.

4          THE COURT:  I just want to warn you what happens if

5     you don't follow the conditions of release.  You could face a

6     bench warrant, revocation of your release.  You could be held

7     pending trial, and you could face contempt charges.  There's

8     two particular conditions of release I want you to be sure of.

9          One is that you have to appear at future proceedings.

10     Usually we're via audio and video; however, it's not always the

11     case, but if you don't, you could face those penalties as well

12     as an additional charge for failure to appear.

13          If you commit another crime while on supervision,

14     federal, state, or local crime, you would face the same

15     penalties, as well as you could face additional penalty of --

16     greater sentence while on supervision.  Do you understand those

17     warnings?

18          DEFENDANT SUTTON:  Yes, sir.

19          THE COURT:  Ms. Lavigne-Rhodes, could you please

20     swear in the defendant to the conditions of release.

21          THE COURTROOM DEPUTY:  Mr. Sutton, please raise your

22     right hand.

23          (Oath administered to Defendant Sutton.)

24          DEFENDANT SUTTON:  I do.

25          THE COURTROOM DEPUTY:  Thank you.

1          THE COURT:  Great.  Thanks so much.

2      Do we have a next date set, Ms. Lavigne-Rhodes?

3          THE COURTROOM DEPUTY:  Yes.  October 4th at 2:00 p.m.

4  before Judge Friedman.

5          THE COURT:  Judge Friedman, that's right.  Thank you.

6      Mr. Baset, do you have any requests in addition for this

7  defendant?

8          MR. BASET:  Not at this time, Your Honor.

9          THE COURT:  Okay.  Thank you.

10      Mr. Hannon, I'm going to excuse your client then, and

11  you as well, so that you can get on the road and come down to

12  the courthouse to be processed.  You will not be subject to

13  location monitoring until Monday at -- 9:30 in the morning he

14  needs to be there, does that sound good, Ms. Schuck, or is it

15  by 10:00?  What did you say?

16          THE PRETRIAL SERVICES OFFICER:  9:00 a.m., please,

17  Your Honor.

18          THE COURT:  9:00 a.m.  And if you can be there at --

19          THE PRETRIAL SERVICES OFFICER:  And I'll reach out to

20  defense counsel.

21          THE COURT:  Okay.  Great.  And to get the location

22  monitoring set up.  During that time over the weekend,

23  Mr. Sutton, you're subject to the same requirements.  You just

24  won't have the location monitoring; okay?

25          DEFENDANT SUTTON:  Okay.

1          MR. HANNON:  Mr. -- Your Honor, may -- may you direct

2     the clerk to enter a nonguilty -- a not guilty plea and ask for

3     a speedy trial.

4          THE COURT:  Okay.  I want to go ahead and arraign you

5     now, Mr. Sutton.  An arraignment is a brief proceeding, but

6     it's an important to your time as an innocent person.  In fact,

7     I enter your plea of not guilty.

8          Mr. Hannon, are you seeking a formal reading of the

9     indictment?

10          MR. HANNON:  No, Your Honor.

11          THE COURT:  Okay.  The defendant has waived formal

12     reading.  And how does your -- you've already stated your

13     client pleads not guilty.  So I will, in fact, enter a plea of

14     not guilty as to all charges in the indictment.  Your

15     constitutional, as well as your statutory rights, have been

16     asserted.  And so it's my job, Mr. Sutton, and your --

17     Judge Friedman to make sure that those rights are protected,

18     and we will do so.  If at any time you're concerned about

19     what's going on, please do raise those concerns with your

20     lawyer, as well as with Judge Friedman; okay?

21          DEFENDANT SUTTON:  Yes, sir.

22          Only one question I -- I have is if I get down there

23     and -- and they say it's too late or something, you know --

24          THE COURT:  Just let me know.  Mr. -- I'll provide

25     Mr. Hannon off-line my number.  I'm not going anywhere; okay?

1       DEFENDANT SUTTON:  Okay.  Great.  I'll -- I'll get

2    dressed and -- and -- and head out.

3           THE COURT:  Okay.  Thanks so much, Mr. Sutton.

4           (Indiscernible simultaneous cross-talk.)

5           DEFENDANT SUTTON:  I'm going to district court;

6    right?

7           THE COURT:  That's right.  333 Constitution Avenue.

8           DEFENDANT SUTTON:  Thank you, sir.

9           THE COURT:  All right.  Mr. Baset?

10          MR. BASET:  Our request is to exclude time under the

11   Speedy Trial Act until October 4th.

12          THE COURT:  Okay.  What's your basis?

13          MR. BASET:  We believe that the ends of justice

14   are -- require it -- or -- or would warrant it at this time.

15   We are in the midst of providing discovery and additional

16   information.  And at this time that would be (indiscernible

17   due to poor audio quality).

18          THE COURT:  Mr. Hannon, do you have a position:

19   consent or object?

20          MR. HANNON:  I object.  I don't see any unusual

21   nature in the filing.  It's pretty routine.

22          THE COURT:  So, Mr. Baset, what is the discovery and

23   when are you turning it over?  Have you turned over discovery

24   yet?

25          MR. BASET:  We intend to provide it early next week

1    or some point early next week, subject to a protective order

2    that we will be providing to counsel very shortly, but we

3    intend to provide substantial discovery very early next week

4    that would predate the October 4th date that's been set by the

5    Court at this moment.  I -- roughly ten days now.  So...

6            THE COURT:  And what is the volume of the discovery?

7            MR. BASET:  It is -- it's substantial in terms of

8    video and surveillance, and there are a number of transcripts

9    as well, but it is substantial.  It's not, you know, terabytes

10   or anything, but it is substantial.

11           THE COURT:  Okay.  I find that this is in the

12   interest of justice to exclude time between now and the

13   October hearing date.  I think it's a brief time that allows

14   the government to prepare its discovery and turn it over.  I

15   think it gives the parties an opportunity also to make sure

16   that a protective order can be put in place; that there are

17   sensitivities that are unique to this case that we may need to

18   ensure that the protective order has a broad scope.

19           I think there's complexity to the charges that are in

20   place and -- in terms of the obstruction and the charge of

21   second-degree murder that warrant the finding of exclusion of

22   time.  I think doing so outweighs the right of the public and

23   the defendant to a speedy trial.

24           Mr. Baset, anything else?

25           MR. BASET:  I'd -- I -- to clarify, I do want to note

1     that I -- when you're asking the question of how substantial

2     discovery is, I will note that while we intend to provide it

3     early next week, it is -- there is, you know, volumes, but we

4     do believe it is straightforward, though, and it is not such

5     that it would take an elaborate amount of time.  So I do want

6     to clarify that point.

7              THE COURT:  Understood.  Well, yeah, I think

8     Judge Friedman will have questions, and I would urge you that

9     the discovery better be, you know, timely produced, because I

10    don't know that he will then want to exclude time if it's not

11    done so by the October hearing date.

12             MR. BASET:  Absolutely.

13             THE COURT:  Anything else?

14             MR. BASET:  Nothing further.

15             THE COURT:  Mr. Hannon, anything else on your end?

16             MR. HANNON:  No.  Thank you, Judge.

17             THE COURT:  Thank you so much.

18        Mr. Sutton, you're excused, as are you, Mr. Hannon.

19    Please, you know, make your way safely to the courthouse.  I'll

20    be here, and Mr. Hannon will reach out to me if you have any

21    problems.

22             DEFENDANT SUTTON:  Thank you.

23             THE COURT:  All right.  Mr. Hannon, you have our

24    email address?  That's the best way to reach us.

25             MR. HANNON:  I do.  I have your chambers address.

1          THE COURT:  Yes.  All right.  Great.  I'll be

2     monitoring that if there's any issues.

3          (REPORTER'S NOTE:  Further proceedings were heard in

4     the above-mentioned matter, which were not requested to be

5     transcribed.)

1                          CERTIFICATE

2              I do hereby certify that the foregoing is a true,

3      correct, and complete transcript of the audio-recorded

4      proceedings in this matter, audio recorded on September 24,

5      2021, and transcribed from the audio recording to the best of

6      my ability, and that said transcript has been compared with the

7      audio recording.

8              Dated this 2nd day of October, 2021.

9

10                           /s/ Nancy J. Meyer
                             Nancy J. Meyer, Official Court Reporter
11                           Registered Diplomate Reporter
                             Certified Realtime Reporter
12                           333 Constitution Avenue Northwest
                             Washington, DC 20001
13                           202-354-3118
                             nancy_meyer@dcd.uscourts.gov
14

15

16

17

18

19

20

21

22

23

24

25