**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | Case No. 21-cr-598-PLF-01 |
| | : | |
| TERENCE SUTTON and | : | Hon. Paul L. Friedman |
| ANDREW ZABAVSKY, | : | |
| | : | |
| Defendants. | : | |

**TERENCE D. SUTTON, JR.'S SECOND MOTION TO COMPEL DISCOVERY**

Comes now Officer Terence D. Sutton, Jr., through counsel HANNON LAW GROUP, LLP, and respectfully requests that the Court order the Government to produce documents which evidence the following:

> 1. Authority of Acting U.S. Attorney Channing D. Phillips to sign the Indictment returned by the Grand Jury;
>
> 2. That USAO, DOJ, the FBI, and/or the Grand Jury were investigating possible violations of 18 U.S.C. § 242;
>
> 3. Whether the Grand Jury was asked to return an Indictment including a charge of violating 18 U.S.C. § 242, and any vote on such an Indictment;
>
> 4. The notification requirements contained in Justice Manual 8-3.120;
>
> 5. Whether this case was determined to be one of national interest pursuant to Justice Manual 8-3.130;
>
> 6. Notices and approvals required by Justice Manual 8-3.140.

This information was requested from the Government on January 30, 2021. (*See* Letter from HLG, Exhibit A). Counsel for the Government declined to produce any documents related to Nos. 1 and 3-6. As for No. 2, Counsel stated that responsive information is contained in the discovery provided by the Government.

**INTRODUCTION**

The Department of Justice vests the power to investigate and prosecute civil rights cases with the Assistant Attorney General for the Civil Rights Division. The investigation and prosecution of civil rights cases – which include those against law enforcement officers – is highly regulated by the Department through the mandates contained in its *Justice Manual*, formerly known as the *U.S. Attorneys' Manual*. The *Justice Manual* establishes expectations among law enforcement officers and their attorneys that such cases are treated by the Department as matters of "national interest."

The Indictment in this case is categorized by the *Justice Manual* as a case of "national interest." Officer Sutton contends that under these recognized guidelines, Acting U.S Attorney Channing D. Phillips must receive express authority from the Assistant Attorney General for the Civil Rights Division to sign the Indictment in this case. Counsel for Officer Sutton have asked the Government to provide evidence that the series of authorizations and approvals mandated by the *Justice Manual* have been followed in this case. The Government has refused to provide this information or deny its existence.

Officer Sutton contends that the existence or absence of such authorizations is a matter for discovery. If these processes have not been followed in this case, Officer Sutton is entitled to present a motion for dismissal of the Indictment on these grounds.

**FACTUAL BACKGROUND**

*Justice Manual* 8-1.010 states that the Assistant Attorney General for the Civil Rights Division is responsible for conducting, handling, and supervising civil rights matters. The Justice Manual goes on to describe the reason and methods for handling civil rights cases:

> Because of the sensitive nature of the constitutional and statutory issues involved and the desirability of uniform application of federal law in this field, close

> consultation between United States Attorney's Offices and the Civil Rights Division on civil rights matters is essential. Civil Rights Division attorneys may conduct investigations and litigation in conjunction with the United States Attorney's Offices. Civil Rights Division attorneys will maintain close contact and consult with the United States Attorney's Offices on a continuing basis.

*Justice Manual* at 8-1.010. (Attached as Exhibit B). Included among the civil rights laws overseen by the Civil Rights Division are 18 U.S.C. § 241 (Conspiracy against rights), and 18 U.S.C. § 242 (Deprivation of rights under color of law), commonly utilized against law enforcement and correctional officers. *Id.*

The *Justice Manual* at 8-3.100 discusses the coordination of civil rights cases between the Civil Rights Division and United States Attorneys' Offices. (Attached as Exhibit C). 8-3.120 then states the following:

> At the outset of a criminal investigation initiated by a United States Attorney's Office *that may implicate federal criminal civil rights statutes*, including human trafficking and involuntary servitude statutes, 18 U.S.C. §§ 1581 to 1594, and in no event later than ten days before the commencement of the examination of witnesses before a grand jury, the United States Attorney's Office shall advise the Civil Rights Division in writing of the new investigation. The notification should be in writing and contain the following information: (1) identity of the targets of the investigation; (2) the factual allegations under investigation; (3) the statutes that may have been violated; (4) *the United States Attorney's Office's assessment of the significance of the case and whether the case is one of "national interest,"* as defined below; and (5) the United States Attorney's Office's proposed staffing of the matter, including whether a Civil Rights Division attorney should be assigned to work directly on the matter. *The United States Attorney's Office will advise the Civil Rights Division as the case develops of new information* relating to the United States Attorney's Office's assessment of the case and whether it is one of "national interest."

(Emphasis supplied). *Justice Manual* 8-3.130 defines cases of "national interest", concluding: "A case involving a violation of the federal criminal civil rights laws resulting in death is presumed to be a case of national interest." The Assistant Attorney General for the Civil Rights Division shall determine, after consultation with the United States Attorney, whether a case is one of "national interest" under criteria which include the presumption quoted above. *Id.*

3

*Justice Manual* 8-3.140 provides that in a case of "national interest", a United States Attorney must obtain prior approval from the Civil Rights Division to indict. The United States Attorney must provide the Civil Rights Division with a copy of the indictment and a prosecution memorandum before presenting the indictment to a grand jury. *Id*. Even if a case is not one of "national interest", the Assistant Attorney General for the Civil Rights Division may still disapprove the prosecution. *Id*. In all cases, a decision to prosecute must meet the standards contained in *Justice Manual* 9-27.220, including that the prosecution would serve a "substantial federal interest."

## ARGUMENT

Local Rule of Criminal Procedure 5.1 requires the Government to produce "all information 'favorable to an accused' that is 'material either to guilt or to punishment' under *Brady v. Maryland*, 373 U.S. 83, 87 (1963)." Further, LCrR 5.1 provides: "This requirement applies regardless of whether the information would itself constitute admissible evidence." Such information includes anything that would contribute to an affirmative defense.

On October 31, 1985, the Honorable Gerhard A. Gesell issued a Memorandum Opinion in the case of Ronald Perholtz which addresses the issue before this Court. Perholtz had challenged the indictment returned against him because it was not signed by "the attorney for the government" as required by Fed. R. Crim. Pro. 7(c). Judge Gesell reviewed evidence from the grand jury proceeding, and on this issue wrote:

> The Chief of the Criminal Division, by the regular policy and practice in the United States Attorneys Office has been and is authorized to sign the name of the United States Attorney, followed by his initials, as was done here. More formality in this obvious delegation might be desirable, but its absence clearly does not make the indictment defective. The signature of the attorney for the government merely attests to the authenticity of the indictment and the prosecutor's concurrence in its return. An authorized assistant may sign the United States Attorney's name and technical challenges to the signature on a valid indictment do not make the indictment defective.

4

*United States v. Perholtz*, 622 F. Supp. 1253, 1262 (D.D.C. 1985).

A few pearls can be taken from this decision: first, whoever the signatory of the indictment may be, that person must be authorized to sign the indictment; second, the court may examine available information to determine whether the signatory is authorized to sign the indictment. So too in *United States v. Newman*, the trial court accepted evidence that the signatory of the indictment was properly authorized. 468 F.2d 791, 794 (5th Cir. 1972). Hence, Officer Sutton is entitled to learn from the evidence sought whether the Acting U.S. Attorney in this case has been authorized by the Department of Justice Civil Rights Division to sign the Indictment.

In this case, this is not a merely technical claim. A merely technical violation of Rule 7(c) does not require dismissal of the indictment in the absence of prejudice. *Abramson v. United States*, 326 F.2d 565, 567 (5th Cir. 1964). This is so because the signature of the "attorney for the government" merely signifies that the indictment is authenticate. *United States v. Perholtz*, 622 F. Supp. at 562. However, as Judge Gesell observed, the signature of the attorney for the government also "attests to . . . the prosecutor's concurrence in its return." *Id*. Officer Sutton – upon production of such discovery – should be permitted to argue that he is prejudiced if the indictment has not been authorized in this case through the highest levels of the Department of Justice as required by the *Justice Manual*. The Department declares that "[b]ecause of the sensitive nature of the constitutional and statutory issues involved and the desirability of uniform application of federal law in this field, close consultation between United States Attorney's Offices and the Civil Rights Division" must take place in cases involving law enforcement officers.

Officer Sutton should be afforded the discovery he seeks. If the proper authorizations have been obtained, then he may have no claim to dismiss the indictment. On the other hand, disclosure of this information does not harm the Government. If the authorizations have not

taken place, then Officer Sutton should be able to present a motion to dismiss the indictment

with a fulsome discussion of the prejudice to him.  We are aware that the Government will argue

that the *Justice Manual* does not create substantive rights for criminal defendants.  However, it is

premature to decide whether that is true in this instance.

 WHEREFORE, Officer Sutton requests that the Court order the Government to produce

the documents listed in the proposed order filed herewith.

Dated: October 15, 2021     Respectfully submitted,

        HANNON LAW GROUP, LLP

        *s/J. Michael Hannon*
        J. Michael Hannon, #352526
        Rachel E. Amster, #1618887
        333 8th Street, NE
        Washington, DC 20002
        Tel: (202) 232-1907
        Fax: (202) 232-3704
        jhannon@hannonlawgroup.com
        ramster@hannonlawgroup.com

        *Attorneys for Defendant Terence D. Sutton, Jr.*

# EXHIBIT A

J. MICHAEL HANNON *
DANIEL S. CROWLEY *†‡
ANN-KATHRYN SO §†
    PARTNERS
───────────────

HARRISON E. RICHARDS ||
KIERAN L. REILLY*
RACHEL E. AMSTER
    ASSOCIATES

# HANNON LAW GROUP, LLP
## COUNSELORS AND ATTORNEYS AT LAW
### 333 8TH STREET NE
### WASHINGTON, DC 20002
EST. MARCH 17, 2006

─────────

T (202) 232-1907 │ F (202) 232-3704
www.hannonlawgroup.com

WILLIAM CLAYTON BATCHELOR *†
    OF COUNSEL
───────────────

* ALSO ADMITTED IN MARYLAND
† ALSO ADMITTED IN VIRGINIA
‡ ALSO ADMITTED IN MASSACHUSETTS
§ALSO ADMITTED IN NEW JERSEY
|| ADMITTED IN VIRGINIA ONLY; UNDER
SUPERVISION OF J. MICHAEL HANNON

September 30, 2021

**VIA ELECTRONIC TRANSMISSION ONLY**

Risa Berkower
Ahmed Baset
Assistant United States Attorneys
Public Corruption and Civil Rights Section
U.S. Attorney's Office,
555 4th Street, NW
Washington, D.C.  20001

Re:    Officer Terrence D. Sutton, Jr.; Discovery Demand Letter No. 1

Dear Ms. Berkower and Mr. Baset:

Provide all documents, as defined in **Fed. R. Civ. P. 34(a)(1)**, which reflect any of the following:

1. Documents which evidence the authority of Acting U.S. Attorney Channing D. Phillips to sign the Indictment returned by the Grand Jury;

2. Documents indicating that USAO, DOJ, the FBI, and/or the Grand Jury were investigating possible violations of 18 U.S.C. § 242;

3. Documents indicating whether the Grand Jury was asked to return an Indictment including a charge of violating 18 U.S.C. § 242, and any vote on such an Indictment;

4. Documents reflecting the notification requirements contained in Justice Manual 8-3.120;

5. Documents related to the determination whether this case is one of national interest pursuant to Justice Manual 8-3.130;

6. Documents related to the notices and approvals required by Justice Manual 8-3.140.

Thank you for your courtesy.

Sincerely,

*s/ J. Michael Hannon*

J. Michael Hannon

# EXHIBIT B

| 8-1.010 | General |
| 8-1.100 | Statutes and Executive Orders Administered by the Civil Rights Division |

## 8-1.010 - General

Subject to the general supervision of the Attorney General and under the direction of the Associate Attorney General on civil matters and the Deputy Attorney General on criminal matters, the Assistant Attorney General for the Civil Rights Division is responsible for conducting, handling, and supervising civil rights matters, as more particularly described in 28 C.F.R. § 0.50. The Civil Rights Division consists of the following Sections: Administrative Management, Appellate, Criminal, Disability Rights, Educational Opportunities, Employment Litigation, Federal Coordination and Compliance, Housing and Civil Enforcement, Immigrant and Employee Rights, Policy and Strategy, Special Litigation, and Voting.

Because of the sensitive nature of the constitutional and statutory issues involved and the desirability of uniform application of federal law in this field, close consultation between United States Attorney's Offices and the Civil Rights Division on civil rights matters is essential. Civil Rights Division attorneys may conduct investigations and litigation in conjunction with the United States Attorney's Offices. Civil Rights Division attorneys will maintain close contact and consult with the United States Attorney's Offices on a continuing basis.

Any statements issued to the press in connection with civil rights investigations, litigation, or trial should be coordinated through the Department of Justice's Office of Public Affairs and the Assistant Attorney General for the Civil Rights Division, and the relevant United States Attorney's Office, where such an office is involved.

[updated March 2018]

## 8-1.100 - Statutes and Executive Orders Administered by the Civil Rights Division

The following is a list of federal statutes, executive orders, and regulations administered by the Civil Rights Division.

A. **CIVIL STATUTES.** 8 U.S.C. § 1324b (Immigration and Nationality Act's anti-discrimination provision); 15 U.S.C. §§ 1691 to 1691f (Equal Credit Opportunity Act); 18 U.S.C. § 248 (Freedom of Access to Clinic Entrances Act); 20 U.S.C. §§ 1681 to 1688 (Title IX of the Educational Amendments of 1972), 1706 to 1710 (Equal Educational Opportunities Act of 1974); 29 U.S.C. §§ 794 to 794g (Section 504 of the Rehabilitation Act of 1973); 34 U.S.C. § 12601 (Pattern or Practice of Unlawful Conduct by Law Enforcement or in the Administration of Juvenile Justice), 10228 (Safe Streets Act); 38 U.S.C. §§ 708(c) and 4301 to 4335 (USERRA); 42 U.S.C. §§ 1997 to 1997j (Civil Rights of Institutionalized Persons Act), 2000a to 2000a-6 (Title II of the Civil Rights Act of 1964), 2000b to 2000b-3 (Title III of the Civil Rights Act of 1964), 2000c to 2000c-9 (Title IV of the Civil Rights Act of 1964), 2000d to 2000d-7 (Title VI of the Civil Rights Act of 1964), 2000e to 2000e-7 (Title VII of the Civil Rights Act of 1964), 2000h-2 (Title IX of the Civil Rights Act of 1964),

2000cc to 2000cc-5 (Religious Land Use and Institutionalized Persons Act), 2000ff to 2000ff-11 (Genetic Information Nondiscrimination Act), 3601 to 3619 (Fair Housing Act), 12101 to 12213 (Americans with Disabilities Act); 50 U.S.C. §§ 3901 to 4043 (Servicemembers Civil Relief Act), 52 U.S.C. §§ 10101 (Civil Rights Act of 1957), 10301 to 10702 (Voting Rights Act of 1965); 20101 to 20107 (Voting Accessibility for the Elderly and Handicapped Act of 1984), 20301 to 20311 (Uniformed and Overseas Citizens Absentee Voting Act of 1986), 20501 to 20511 (National Voter Registration Act of 1993), 20701 to 20706 (Civil Rights Act of 1960),21081 to 21085, 21111 (Help America Vote Act of 2002).

B. **CRIMINAL STATUTES.** 18 U.S.C. §§ 241 (Conspiracy against rights), 242 (Deprivation of rights under color of law), 243 (Exclusion of jurors on account of race or color), 244 (Discrimination against person wearing uniform of armed forces), 245 (Federally protected activities), 246 (Deprivation of relief benefits), 247 (Damage to religious property; obstruction of persons in the free exercise of religious beliefs), 248 (Freedom of access to clinic entrances), 249 (Hate crime acts), 594 (Intimidation of voters), 875 (Interstate communications), 876 (Mailing threatening communications), 1351 (Fraud in foreign labor contracting), 1504 (Influencing juror by writing), 1508 (Recording, listening to, or observing proceedings of grand or petit juries while deliberating or voting), 1510 (Obstruction of criminal investigations), 1519 (Destruction, alteration, or falsification of records in federal investigations and bankruptcy), 1531 (Partial Birth Abortion Act), 1581 (Peonage), 1582 (Vessels for slave trade), 1583 (Enticement into slavery), 1584 (Involuntary servitude), 1585 (Seizure, detention, transportation or sale of slaves), 1586 (Service on vessels in slave trade), 1587 (Possession of slaves aboard vessel), 1588 (Transportation of slaves from United States), 1589 (Forced labor), 1590 (trafficking with respect to servitude), 1592 (Document servitude), 1593 (Restitution), 1593A (Benefitting financially from trafficking), 1594 (General provisions, including attempts and conspiracies), 1597 (Unlawful conduct with respect to immigration documents), 1621-1623 (Perjury), 2421 (Transportation for purposes of prostitution); 42 U.S.C. § 300a-8 (Coerced abortion or sterilization through threatened loss of federal benefit), 2000e-8 and e-10 (Certain wrongdoing by EEOC), 3631 (Criminal provisions of Fair Housing Act); 52 U.S.C.A. § 10307 (Refusal of person, acting under color of law, to permit vote of qualified voter), 10308, 10501-10503, 10505 (Relating to voting), 10701 (Enforcement of 26th Amendment), 20701 and 20702 (Related to record keeping in elections).

The Civil Rights Division shares enforcement responsibility under certain statutes with the Criminal Division, generally depending upon whether the matter involves discrimination or intimidation on account of race, or, in the case of those statutes dealing with obstruction of justice, relates to civil rights litigation. *See* 28 C.F.R. §§ 0.50 and 0.55. The Criminal Division's Child Exploitation and Obscenity Section has responsibility for enforcing 18 U.S.C. § 1591 when the violation involves minor victims. The Civil Rights Division has enforcement responsibility for § 1591 in cases involving sex trafficking of adults and international sex trafficking. The Criminal Division's Organized Crime and Gang Section has responsibility for enforcing 18 U.S.C. §§ 841-848, 924, 1503, 1509, 1511-1513, 1952, and 2241-2248. The Civil Rights Division has enforcement responsibility for those statutes only where the defendant or target of the investigation is a state actor, as part of a civil rights investigation. The Criminal Division's Fraud Section has responsibility for enforcing Title 18, United States Code Section 1001. The Civil Rights Division only has responsibility under 18U.S.C. § 1001 with respect to false official statements made in connection with alleged violations of federal civil rights statutes. The Criminal Division's Human Rights and Special Prosecutions Section has responsibility for enforcing 8 U.S.C. §§ 1324, 1324c, and 1328, and for enforcing 18U.S.C. §§ 2241-2248 with respect to sexual abuse in the Special Maritime and Territorial Jurisdiction of the United States. The Civil Rights Division has enforcement responsibility under 8 U.S.C. §§ 1324, 1328 and 18 U.S.C. §§ 1351, 1546, 1952, 2421 where such violations are in connection with human trafficking or other criminal civil rights violations, and over §§ 2241-2248 in cases involving sexual abuse in federal prisons.

C. **EXECUTIVE ORDERS.** Executive Orders 11246 (Affirmative Suits Against Federal Government Contractors), 12250 (Title VI of the Civil Rights Act), 13160 (Title VI of the Civil Rights Act), and 13166 (Title VI of the Civil Rights Act).

D. **CODE OF FEDERAL REGULATIONS.** 28 C.F.R. §§ 35.101 to 35.190 (Title II of the Americans with Disabilities Act); 28 C.F.R. §§ 36.101 to 36.608 (Title III of the Americans with Disabilities Act); 28 C.F.R. §§ 42.101 to 42.112 (Department of Justice Title VI implementing regulations); 28 C.F.R. §§ 42.201 to 42.215 (Safe Streets Act implementing regulations); 28 C.F.R. §§ 44.101 to 44.305 (regulations implementing Immigration and Nationality Act's anti-discrimination provision); 28 C.F.R. §§ 54.100 to 54.605 (Department of Justice Title IX implementing regulations); 28 C.F.R. §§ 51.1 to 51.67 (Procedures for the Administration of Section 5 of the Voting Rights Act); 28 C.F.R. §§ 55.1 to 55.24 (Implementation of the Provisions of the Voting Rights Act

Regarding Language Minority Groups); 38 C.F.R. §§ 4301 to 4323 (USERRA Enforcement).

[updated March 2018]

‹ Title 8: Civil Rights                                      up                          8-2.000 - Enforcement Of Civil Rights Civil Statutes ›

# EXHIBIT C

An official website of the United States government  Here's how you know ⌄

| | |
|---|---|
| 8-3.010 | Introduction |
| 8-3.100 | Coordination of Activities |
| 8-3.120 | Staffing Cases |
| 8-3.130 | Cases of National Interest |
| 8-3.140 | Advance Notice/Prior Approvals of Indictments |
| 8-3.141 | Certification Provisions |
| 8-3.142 | Coordination of Immunity Requests and Requests for Juvenile Certification |
| 8-3.150 | Declinations |
| 8-3.160 | Appeals |
| 8-3.170 | Cooperation with State Prosecutions |
| 8-3.180 | Subpoenas Issued to FBI Agents or Other Federal Agents |
| 8-3.190 | Notification to Parties of Closing File |
| 8-3.195 | Production or Disclosure in Federal And State Proceedings of Material or Information in Civil Rights Division Files |
| 8-3.200 | Prior Approvals |
| 8-3.300 | Neutral and Objective Criteria for Guiding Prosecutorial Discretion |
| 8-3.400 | Prosecution of Customers Involved in Federal Sex Trafficking Offenses |
| 8-3.500 | Collection of Special Assessments and Restitution for Offenses under Chapters 77, 109A, 110, and 117, and 8 U.S.C. § 1324 |

## 8-3.010 - Introduction

The United States Attorneys and the Civil Rights Division share responsibility for enforcement of criminal civil rights statutes. The Assistant Attorney General for the Civil Rights Division and the Civil Rights Division's Criminal Section oversee that enforcement. The principal criminal statutes whose enforcement is overseen

by the Civil Rights Division are 18 U.S.C. § 241 (Conspiracy to Injure Citizens in the Exercise of Federal Rights); 18 U.S.C. § 242 (Willful Deprivations of Federal Rights Under Color of Law); 18 U.S.C. § 245 (Interference with Federally Protected Activities); 18 U.S.C. § 247 (Damage to Religious Property); 18 U.S.C. § 248 (Freedom of Access to Clinic Entrances); 18 U.S.C. § 249 (Hate Crime Prevention Act); 42 U.S.C. § 3631 (Interference with Fair Housing Activities); 18 U.S.C. § 1581 (Peonage); 18 U.S.C. § 1584 (Involuntary Servitude); 18 U.S.C. § 1589 (Forced Labor); 18 U.S.C. § 1590 (Trafficking with Respect to Servitude); 18 U.S.C. § 1591 (Sex Trafficking); 18 U.S.C. § 1592 (Document Servitude), and 18 U.S.C. § 1594(a), (b), and (c) (Attempting and Conspiring to Violate Trafficking Statutes). United States Attorneys' Offices, working in coordination with the Civil Rights Division, are jointly responsible for enforcement of criminal civil rights statutes in their individual districts.

[updated March 2018]

---

## 8-3.100 - Coordination of Activities

The Civil Rights Division and the United States Attorneys' Offices will work as partners to ensure a vigorous national civil rights enforcement program. The purpose of this chapter is to provide guidance to the United States Attorneys and the Criminal Section of the Civil Rights Division in carrying out their responsibilities in the investigation and prosecution of violations of criminal civil rights statutes in a manner that (1) encourages initiative on the part of individual United States Attorneys' Offices and draws upon their litigation expertise and knowledge of the local community; and (2) utilizes the trial expertise and institutional knowledge of the Criminal Section of the Civil Rights Division. Cooperative prosecutions and investigations utilizing attorneys from both the Criminal Section and the United States Attorneys' Offices can be particularly successful and can provide valuable benefits in the enforcement of these statutes. When it is appropriate for either the Civil Rights Division or a United States Attorney's Office to act independently on a matter in a particular district, the office initiating the activity should ensure that the other office is notified in advance. Specifically, prior to initiating any significant activity in a district, the Civil Rights Division shall provide notice to the designated contact attorney for the United States Attorney's Office. Similarly, United States Attorneys' Offices shall advise the Civil Rights Division of matters not already being monitored by the Civil Rights Division that appear likely to result in inquiries to the Civil Rights Division.

United States Attorneys' Offices and attorneys from the National Security Division should consult with the Civil Rights Division in any case involving an act of domestic terrorism in which the underlying incident was motivated in whole or in part (or is suspected of being motivated in whole or in part) by one of the bias motivations listed in any federal hate crime statute, 18 U.S.C. §§ 245, 247, 249 or 42 U.S.C. § 3631. The Civil Rights Division should also be consulted on any domestic terrorism case in which the underlying act was motivated in whole or in part by the perpetrator's views or beliefs about reproductive health services, as such motivation falls under Freedom of Access to Clinic Entrances, 18 U.S.C. § 248, enforced by the Civil Rights Division.

[updated March 2018]

---

## 8-3.120 - Staffing Cases

Subject to the general principles contained herein, either the Civil Rights Division or a United States Attorney's Office may investigate and prosecute on its own any type of criminal civil rights violation.

At the outset of a criminal investigation initiated by a United States Attorney's Office that may implicate federal criminal civil rights statutes, including human trafficking and involuntary servitude statutes, 18 U.S.C. §§ 1581 to 1594, and in no event later than ten days before the commencement of the examination of witnesses before a grand jury, the United States Attorney's Office shall advise the Civil Rights Division in writing of the new investigation. The notification should be in writing and contain the following information: (1) identity of the targets of the investigation; (2) the factual allegations under investigation; (3) the statutes that may have been violated; (4) the United States Attorney's Office's assessment of the significance of the case and whether the case is one of "national interest," as

defined below; and (5) the United States Attorney's Office's proposed staffing of the matter, including whether a Civil Rights Division attorney should be assigned to work directly on the matter. The United States Attorney's Office will advise the Civil Rights Division as the case develops of new information relating to the United States Attorney's Office's assessment of the case and whether it is one of "national interest."

When an attorney from the Criminal Section of the Civil Rights Division is jointly working on a case, notification to that attorney is sufficient. If there is no attorney from the Criminal Section assigned to the case, notification should be made to the Deputy Chief who has supervisory authority over cases in the district conducting the investigation or to the Principal Deputy Chief. In cases involving human trafficking or involuntary servitude, notification under this provision shall be made to the Criminal Section's Human Trafficking Prosecution Unit at HTPU@usdoj.gov.

Similarly, at the outset of a criminal investigation initiated by the Civil Rights Division, the Division should notify the United States Attorney(s) for the district(s) in which the conduct occurred in writing of the new investigation, containing the above information.

In cases involving sex trafficking of minors in violation of 18 U.S.C. § 1591, the Child Exploitation and Obscenity Section of the Criminal Division should also be notified.

The staffing proposal of the United States Attorney will be given deference by the Civil Rights Division. If the Civil Rights Division does not express disagreement with a staffing proposal by the United States Attorney within three business days, the proposal is deemed acceptable. The Assistant Attorney General of the Civil Rights Division retains the final and on-going authority to determine the staffing of any criminal civil rights matter that is being handled jointly.

[updated March 2018] [cited in JM 8-3.200; JM 9-2.400; JM 9-75.030]

## 8-3.130 - Cases of National Interest

A case of "national interest" is one that presents important public policy considerations; a case that presents a novel issue of law; a case that because of peculiar facts and circumstances may set important precedent; a case with simultaneous investigations in multiple districts (unless the United States Attorney's Office in each district and the Civil Rights Division conclude that national interests are not involved); a case with international or foreign policy implications; a case that is urgent or sensitive; or a case that substantially affects the uniform application of the law. A case involving a violation of the federal criminal civil rights laws resulting in death is presumed to be a case of national interest.

The Assistant Attorney General for the Civil Rights Division, after consultation with the United States Attorney, shall determine whether a case is of "national interest," considering the factors listed above. In a case of national interest, the Assistant Attorney General, after consultation with the United States Attorney, may require the United States Attorney's Office and the Civil Rights Division to participate jointly as co-counsel from the initiation of the investigation through prosecution. The Assistant Attorney General for the Civil Rights Division, after consultation with the United States Attorney, shall take into consideration all of the circumstances, including the experience of the particular United States Attorney's Office and the efficient use of government resources in making staffing decisions. The Assistant Attorney General for the Civil Rights Division, after consultation with the United States Attorney's Office, may also determine that a case is best staffed by attorneys only from the United States Attorney's Office or only from the Civil Rights Division.

In a case of national interest or that is presumptively of national interest, the United States Attorney's Office in the relevant district, the FBI, and the Civil Rights Division should consult and coordinate with each other before any press conference is held or before any statement is made to the media.

[updated March 2018]

## 8-3.140 - Advance Notice/Prior Approvals of Indictments

United States Attorneys need not obtain prior authorization by the Civil Rights Division to indict criminal civil rights cases, including human trafficking or involuntary servitude cases, unless the case has been deemed by the Assistant Attorney General for the Civil Rights Division as a case of national interest or unless approval is necessary due to a statutory certification requirement. *See* Section 8-3.141. However, prior to presenting any civil rights case for indictment, the United States Attorney's Office shall provide written notification to the Civil Rights Division of the intention to seek an indictment or to file a felony information. This notification should occur at least 10 business days before the indictment will be presented to the grand jury, except in emergencies when time is of the essence. The notification should be accompanied by a copy of the proposed indictment and a prosecutive memorandum. United States Attorneys' Offices are encouraged to provide even earlier notice as a general practice in order to take full advantage of the expertise of the Civil Rights Division.

Even in those cases in which the United States Attorney's Office need not obtain prior authorization to indict, if there exists a significant issue affecting the Department of Justice's enforcement of federal civil rights laws, then the Assistant Attorney General for the Civil Rights Division may exercise the ultimate authority to disapprove the prosecution.

If prior approval to indict a civil rights matter is required because the case has been deemed by the Assistant Attorney General for the Civil Rights Division to be a case of national interest or because there is a statutory certification requirement, the United States Attorney's Office will provide to the Civil Rights Division a copy of the proposed indictment and any prosecutive memorandum at least 10 business days in advance of the time when the indictment will be presented to the grand jury. The Civil Rights Division will communicate its authorization decision within 10 business days of receipt of the proposed indictment, unless certification by ranking Department officials is required by law, 18 U.S.C. §§ 245, 247, and 249.

When an attorney from the Criminal Section of the Civil Rights Division is jointly working on a case, or has been formally assigned to assist with legal issues, the indictment may be sent to the attorney assigned to the case. If there is no attorney in the Criminal Section formally assigned to the case, notification should be made to the Deputy Chief with supervisory authority over cases from the district seeking indictment approval or to the Principal Deputy Chief. In cases involving human trafficking or involuntary servitude, notification under this provision shall be made to the Criminal Section's Human Trafficking Prosecution Unit at HTPU@usdoj.gov.

[updated March 2018] [cited in JM 8-3.200]

---

## 8-3.141 - Certification Provisions

Several federal hate crime statutes require certification from the Attorney General or from his or her designee before prosecution may be undertaken. *See* 18 U.S.C. §§ 245, 247, and 249. The Assistant Attorney General for the Civil Rights Division has been delegated this certification authority. *See* 28 C.F.R. § 0.50 (delegating authority for §§ 245 and 249); Attorney General Order No. 2048-96, Delegation of Authority to Authorize the Initiation of Prosecutions under 18 U.S.C § 247 (delegating authority for § 247). No indictment, information, or criminal complaint under these statutes may issue without such certification.

When an attorney from the Criminal Section of the Civil Rights Division is jointly working on a case with attorneys from a United States Attorney's Office, or when an attorney from the Criminal Section of the Civil Rights Division has been formally assigned to assist the United States Attorney's Office with legal issues, the request for certification may be sent to the attorney assigned to the case who will then provide advice and assistance in the certification process. If there is no attorney in the Criminal Section formally assigned to the case, the request for certification should be sent to the Deputy Chief with supervisory authority over cases from the district seeking certification or the request may be sent to the Principal Deputy Chief. In cases charging conspiracies to violate these statutes or solicitations to violate these statutes, notice should be given to the Criminal Section and may be provided in the same manner.

[added March 2018]

**8-3.142 - Coordination of Immunity Requests and Requests for Juvenile Certification**

Any time a United States Attorney's Office submits a request, in accordance with §§ 9-23.100 *et seq*. of the United States Attorney's Manual (JM), to immunize a witness in a civil rights case, including in a human trafficking case, the request should be coordinated through the Criminal Section of the Civil Rights Division. In cases in which an attorney from the Criminal Section is jointly working a case with attorneys from a United States Attorney's Office, or when an attorney from the Criminal Section of the Civil Rights Division has been formally assigned to assist the United States Attorney's Office with legal issues, coordination with the assigned attorney is sufficient. If there is no attorney from the Criminal Section formally assigned to the case, the request should be sent in advance to the Deputy Chief with supervisory authority over cases from the district seeking immunity or the request may be sent to the Principal Deputy Chief.

Similarly, any time a United States Attorney's Office requests authorization to proceed against a juvenile subject in a civil rights case, in accordance with §§ 9-8.000 of the JM, that request should be coordinated through the Criminal Section, either through an attorney assigned to the case, or through the appropriate Deputy Chief or through the Principal Deputy Chief.

Any time a United States Attorney's Office requests authorization to prosecute a case after a state prosecution, in accordance with the dual prosecution policy (Petite Policy) set forth in § 9-2.031 of the JM, in a case involving civil rights charges, including human trafficking charges, that request should be coordinated through the Criminal Section, either through an attorney assigned to the case, or through the appropriate Deputy Chief or through the Principal Deputy Chief.

[added April 2018]

---

## 8-3.150 - Declinations

The United States Attorneys' Offices may decline cases by orally advising the FBI or other lead federal investigative agency of the declination. The declination should then be reflected in the investigative report submitted by the FBI or other lead federal investigative agency.

In all cases resulting in death, the Civil Rights Division will obtain the concurrence of the United States Attorney's Office before closing any such case.

Ultimate declination authority in any case arising under the federal civil rights laws resides with the Assistant Attorney General for the Civil Rights Division. While cases should be declined after coordination between the Civil Rights Division and the United States Attorneys' Offices, a declination by a United States Attorney's Office does not bind the Civil Rights Division.

[updated March 2018]

---

## 8-3.160 - Appeals

Appeals in civil rights cases are supervised by the Appellate Section of the Civil Rights Division. Additional information regarding notification and coordination between United States Attorneys' Offices and the Civil Rights Division of appeals of civil rights cases in which the United States participates as a party and as amicus curiae are set forth in §§ 8-2.150 and 8-2.170 of the JM. For responsibilities of United States Attorneys' Offices in the handling of criminal appeals, *see* JM 2-3.210.

[updated March 2018]

## 8-3.170 - Cooperation with State Prosecutions

Frequently, conduct which deprives persons of federally protected rights in violation of federal law also violates state law. In such cases, where state and local authorities undertake prosecution in state courts, it is Department of Justice policy to cooperate with the local prosecutor unless there is a good faith basis that is supported by the law, the facts, or other established Department of Justice Policy, to disagree with the state's decision to prosecute or with its conduct of a prosecution.

Any release of reports of investigative materials should be undertaken in accordance with 28 C.F.R. Part 16 and §§ 1-6.000 *et seq.* of the JM.

[updated March 2018]

## 8-3.180 - Subpoenas Issued to FBI Agents or Other Federal Agents

Occasionally FBI agents, or other federal agents, are subpoenaed to appear to testify in local proceedings or even in federal proceedings to which the United States is not a party. Quite often the subpoena is issued on behalf of a state defendant in a criminal case seeking to obtain the results of an FBI investigation into alleged police mistreatment of the defendant. This can also arise with regard to other federal agents in prosecutions relating to human trafficking.

The Department of Justice's policy is generally to resist such a subpoena except where the agent can give eyewitness fact testimony like any other witness. *See* 28 C.F.R. Part 16 and §§ 1-6.100 *et seq.* of the JM. There may be unique and limited circumstances in which the FBI (or other federal agency), the Criminal Section of the Civil Rights Division, and the United States Attorney's Office all agree that testimony of an agent is in the interest of justice. In such a case, the agent may testify. In all cases involving requests for testimony in cases related to civil rights investigations or prosecutions, it is expected that the Civil Rights Division, the relevant United States Attorney's Office, and the FBI will consult. In no event should any component represent to a court or defense counsel that an agent will provide testimony without consultation with the other components.

When subpoenas are issued to Department of Justice attorneys or agents for either testimony or records in any civil rights matter, the Assistant Attorney General for the Civil Rights Division has ultimate authority to determine the Department of Justice's position regarding compliance with the subpoena. Any motions to quash or related proceedings should be handled by the United States Attorney's Office in consultation with the Civil Rights Division. In cases involving a request for records authored by the FBI, the FBI must be consulted before decisions are made about whether the records are turned over.

[updated March 2018]

## 8-3.190 - Notification to Parties of Closing File

Because criminal civil rights cases often spark intense public interest, it is often the practice to send case-closing notification letters in cases closed without indictment or prosecution. The practice of sending notification letters of case closings is particularly encouraged in cases of police misconduct and other cases involving law enforcement officer subjects.

It is important that United States Attorneys' Offices advise the Criminal Section as soon as possible of any matters involving police misconduct (or other criminal civil rights cases in which a subject acted under color of law) that they believe may have prosecutive merit. This notification should occur not more than 30 days after receipt of the final FBI report in the matter. The Criminal Section of the Civil Rights Division will not send notification letters if a United States Attorney's

Office has expressed an interest in investigating or prosecuting non-civil rights charges against the subject or subjects, unless the letter has been expressly authorized by the United States Attorney's Office.

In some rare, high profile, or complex matters, attorneys from the Civil Rights Division and the United States Attorney's Office may elect to meet with families of a victim to explain the basis for a closing decision. United States Attorneys' Offices who wish to employ such a procedure in a particular case should consult with the Criminal Section well in advance.

[updated April 2018]

## 8-3.195 - Production or Disclosure in Federal And State Proceedings of Material or Information in Civil Rights Division Files

General procedures to be followed by Department of Justice employees in responding to demands for Department of Justice information in federal and state proceedings are contained in 28 C.F.R. Part 16 and in §§ 1-600 *et seq*. of the JM.

[updated March 2018] [cited in JM 8-2.190]

## 8-3.200 - Prior Approvals

| 8-3.120 | At the outset of a criminal investigation initiated by a United States Attorney's Office that may implicate federal criminal civil rights statutes, including human trafficking and involuntary servitude statutes, and in no event later than ten days before the commencement of the examination of witnesses before a grand jury. | Civil Rights Division must be advised in writing. |
|---|---|---|
| 8-3.120 | In cases involving sex trafficking of minors in violation of 18 U.S.C. § 1591. | Notify the Child Exploitation and Obscenity Section of the Criminal Division. |
| 8-3.140 | Indictments of civil rights cases deemed by the Assistant Attorney General, Civil Rights Division, to be of national interest, or as required by statute. | The Civil Rights Division must provide authorization prior to indictment, information, or complaint. |

[updated April 2018]

## 8-3.300 - Neutral and Objective Criteria for Guiding Prosecutorial Discretion

Government Attorneys shall enforce 18 U.S.C. § 249 in a neutral and objective manner. All prosecutions shall comport with the Principles of Federal Prosecution set forth in JM Chapter 9-27.000. Attorneys for the government are particularly instructed to follow the dictates of JM 9-27.260, which prohibits attorneys for the government from being influenced in making prosecution decisions by any subject's race, religion, sex, national origin, or political association, activities or beliefs. In addition, government attorneys should not be influenced by a subject, victim, or witness's sexual orientation, gender identity, or disability, except to the extent such characteristic is relevant to a determination whether the statute has been violated.

Section 249 requires that attorneys for the government consider whether evidence is sufficient to prove that a criminal act identified by the statute occurred because of the actual or perceived race, religion, gender, national origin, sexual orientation, gender identity, or disability of any person. In no case, however, shall the government attorney be influenced by his or her own personal feelings concerning the subject or the subject's associates; the victim or the victim's associates; or a witness or a witness's associates. Nor shall the attorney for the government be influenced by the effect the decision to prosecute (or not to prosecute) may have on the attorney's own professional or personal circumstances. *See* JM 9-27.260. No attorney for the government may make prosecution or declination decisions based solely upon the speech or expressive conduct of a subject, victim, or witness. Nor shall any attorney for the government make such prosecution or declination decisions based solely upon such a person's affiliation with any group advocating for or against rights of persons with the characteristic identified by statute. Such factors may be considered only to the extent that they inform a reasoned, neutral decision about whether § 249—or any other criminal statute—has been violated.

In choosing to pursue a prosecution under this statute, the primary responsibility of Government attorneys shall be to seek justice. A government attorney shall file only those charges which he or she reasonably believes can be substantiated at trial through admissible evidence. Charging and declination decisions should be made based upon the facts and totality of the circumstances in each individual case.

[updated March 2018]

---

### 8-3.400 - Prosecution of Customers Involved in Federal Sex Trafficking Offenses

It is the policy of the Department of Justice to reduce demand for sex trafficking by prosecuting those who engage in commercial sex with victims of sex trafficking, in addition to those who otherwise perpetrate or facilitate human trafficking offenses, in accordance with the Principles of Federal Prosecution (Justice Manual 9-27.000). Such prosecutions can be brought under a variety of federal statutes, including 18 U.S.C. § 1591(a) (which provides a penalty for those who, among other things, recruit, entice, obtain, patronize, or solicit an individual for commercial sex, knowing or in reckless disregard that the individual is a victim of sex trafficking); 18 U.S.C. § 2251 (criminalizing the production of child sexual abuse material); and 18 U.S.C. §§ 2421-2423 (criminalizing travel, transportation, and enticement or coercion of victims to engage in prostitution).

[added December 2020]

---

### 8-3.500 - Collection of Special Assessments and Restitution for Offenses under Chapters 77, 109A, 110, and 117, and 8 U.S.C. § 1324

The Domestic Trafficking Victims' Fund ("Fund") was established by the Justice for Victims of Trafficking Act. *See* 18 U.S.C. § 3014(c). Money collected from a $5,000 special assessment on offenders convicted of human trafficking, sexual assault, child sexual exploitation, and alien smuggling is placed into the Fund for grants to programs that assist victims of those crimes. *Id.* §§ 3014(a), (e), (h). The Fund is scheduled to expire on September 30, 2021, but may be extended by Congress. *Id.* § 3014(a). Prosecutors handling sentencings after that date should confirm whether the Fund has been extended. In an effort to continue to support the Fund, all Department attorneys handling cases in which a special assessment is required should use their best efforts to collect the assessment imposed under section 3014(a). Because payment of the special assessment is mandatory unless the defendant is indigent, Department attorneys should make every effort to identify and provide sufficient facts to allow courts to determine the defendant's ability to pay forthwith the $5,000 special assessment established in section 3014(a), or alternatively, identify and provide facts and information about the defendant's ability to pay the assessment in the future. Department attorneys should present information relevant to the defendant's current and future ability to pay a special assessment to the district court through the United States Probation Department, so it may be included in the pre-sentence report. In addition, Department attorneys should include this same information in any

sentencing memorandum or pleadings filed with the district court.  If the defendant is non-indigent, Department attorneys should consult with their component's financial litigation coordinator to provide the district court with a suggested payment plan for the defendant to pay the assessment.

Furthermore, Department attorneys shall pursue restitution and forfeiture orders for victims. Both restitution and forfeiture are mandatory – regardless of the defendant's ability to pay – for these crimes.  *See, e.g.*, 18 U.S.C. § 1593 (restitution for human trafficking victims); 18 U.S.C. § 2248 (restitution for sexual assault victims); 18 U.S.C. § 2259 (restitution for victims of child sexual abuse material); 18 U.S.C. § 2429 (restitution for victims of transportation, travel, and enticement and coercion offenses); and 18 U.S.C. § 3663A (restitution for crimes of violence and Title 18 offenses against property – including by fraud or deceit).  *See also* 18 U.S.C. § 1594 (forfeiture for human trafficking victims)[1]; 18 U.S.C. § 2253 (forfeiture for victims of child sexual abuse material).  In fact, restitution and forfeiture are not mutually exclusive but are complementary of each other.  By statute, judges are required to order both, where applicable and appropriate.  *See* Fed. R. Crim. P. 32.2(b)(1)(A) (forfeiture); 18 U.S.C. §3556 (2013) (restitution).  In human trafficking cases, restitution is mandatory even if the victim engaged in illegal conduct as a result of being trafficked.  Even when restitution is not mandatory, the sentencing court may require restitution in accordance with a plea agreement (18 U.S.C. § 3663A(a)(3)), or pursuant to the court's discretion (18 U.S.C. § 3663).  The court may also require restitution as a condition of probation or supervised release (18 U.S.C. §§ 3563(b)(2); 3583(d)).  Department employees' obligations with regard to forfeiture, ensuring victims obtain restitution, and best practices for doing so are addressed in the Attorney General Guidelines for Victim-Witness Assistance, in particular, Article V.H, *available at* https://www.justice.gov/sites/default/files/olp/docs/ag_guidelines2012.pdf, and in Justice Manual 9-16.320 (Plea Agreements and Restitution). Additionally, Department attorneys should consult with their component's financial litigation or asset forfeiture coordinators to ensure that any and all authorized collection methods and remedies are used to satisfy the special assessment and provide victims with full and timely restitution.  *See* 18 U.S.C. § 3771(a)(6).

---

[1] On May 29, 2015, the Justice for Victims of Trafficking Act (Pub. L. 114-22, May 29, 2015, 129 Stat. 227), was enacted.  As a result, 18 U.S.C. § 1594 directs the Attorney General to pay victim restitution orders in cases where a forfeiture occurs pursuant to § 1594.  *See* 18 U.S.C. § 1594(f)(1).

[added December 2020]

‹ 8-2.000 - Enforcement Of Civil Rights Civil Statutes                    up                    Title 9: Criminal ›

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :
      :
      :
      v.      :    Case No. 21-cr-598-PLF-01
      :
TERENCE SUTTON and      :    Hon. Paul L. Friedman
ANDREW ZABAVSKY,      :
      :
      Defendants.      :

## ORDER ON SECOND MOTION TO COMPEL

Upon consideration of Defendant Sutton's Second Motion to Compel Discovery, it is

**HEREBY ORDERED** that the motion is **GRANTED**; and it is further

**ORDERED** that the Government shall produce to Defendant Sutton within 5 days all

documents which reflect the following:

1. Authority of Acting U.S. Attorney Channing D. Phillips to sign the Indictment returned by the Grand Jury;

2. That USAO, DOJ, the FBI, and/or the Grand Jury were investigating possible violations of 18 U.S.C. § 242;

3. Whether the Grand Jury was asked to return an Indictment including a charge of violating 18 U.S.C. § 242, and any vote on such an Indictment;

4. The notification requirements contained in Justice Manual 8-3.120;

5. Whether this case was determined to be one of national interest pursuant to Justice Manual 8-3.130;

6. Notices and approvals required by Justice Manual 8-3.140.

**IT IS SO ORDERED** this ___ day of October, 2021.

          _____
          PAUL L. FRIEDMAN
          **SENIOR DISTRICT COURT JUDGE**