**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
FILED UNDER SEAL**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | Case No. 21-cr-598-PLF-01 |
| | : | |
| TERENCE SUTTON and | : | Hon. Paul L. Friedman |
| ANDREW ZABAVSKY, | : | |
| | : | **FILED UNDER SEAL** |
| Defendants. | : | |

## OPPOSITION TO GOVERNMENT'S MOTION TO DISQUALIFY COUNSEL

Comes now Officer Terence D. Sutton, Jr., through counsel HANNON LAW GROUP, LLP, and respectfully requests that the Court deny the Government's Motion to Disqualify Counsel. This motion is filed under seal in keeping with the Court's sealed order. In support of this motion, undersigned counsel states the following:

### BACKGROUND

1. Mr. Sutton appears before this Court having been indicted on one count of Second Degree Murder in violation of D.C. Code § 22-2103; one count of Obstruction of Justice in violation of 18 U.S.C. § 1512(b)(3); and one count of Conspiracy to Obstruct Justice, in violation of 18 U.S.C. § 371.

2. These charges arise from an incident alleged to have occurred on October 23, 2020, in which Karon Hylton-Brown was fatally struck by a civilian vehicle.

3. Officer Sutton appeared for arraignment on September 24, 2021, and for an initial status hearing on October 4, 2021. In the early hours of October 4th, the Government served undersigned counsel with a copy of a Motion to Disqualify Counsel filed under seal, based upon dual representation of Officer Sutton and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1

▇▇▇▇. This motion followed shortly after HANNON LAW GROUP filed a motion to modify conditions of release which sharply attacked the Government's theory of the case and challenged representations made by AUSA Ahmed Baset at the initial appearance of Officer Sutton.

4. The motion to disqualify was also filed almost eight months after the Government was first aware of the dual relationship. The motion to disqualify was also filed after the Government made no objection to Mr. Hannon's entry of appearance, and after the Government assured Magistrate Judge Feruqui that its discovery materials would be promptly delivered to Mr. Hannon.

## FACTUAL BACKGROUND

*October 23rd Incident*

The Government, in its motion to disqualify, continues its mantra that four members of the Fourth District Crime Suppression Team ("CST") engaged in an "unauthorized pursuit" in violation of MPD General Orders which "caused" the death of Karon Hylton-Brown. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

The Government in its Indictment theory apparently seeks to enshrine the right of known drug-dealers to flee lawful traffic stops with impunity. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[1] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

2

▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇ The conduct of officers in this case is indistinguishable from the conduct of officers who attempt lawful traffic stops where the motorist's flight does not result in a fatal accident. Indeed, the United States Attorney's Office papers gun and drug cases on a regular basis with no regard to whether officers violated MPD General Orders in effectuating the stop, the ensuing search, and arrest.

***Government's Theory of Disqualification***

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The Government's theory appears to be that conducting a "traffic stop" is impermissible if the subjective intent of the officers is to determine whether Hylton-Brown was armed as they suspected. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████ As the Government must acknowledge – but has failed to do so in the Indictment or in its motion papers – "the last version of the report" attributed to Sutton ██████████ was an entirely incomplete draft of a document left open in the MPD Cobalt reporting system.  The officers never completed the report because they were ordered to stop once the full measure of Hylton-Brown's injuries were learned from the hospital.

████████████████████████████████████████████████████
████████████████████████████████████████████████████ If the Government does not call ██████████, certainly Officer Sutton will.

***Government's Investigation***

Officer Terence D. Sutton, Jr., retained HANNON LAW GROUP to represent him through the National Fraternal Order of Police Legal Plan, for which HANNON LAW GROUP has been a member of its panel of counsel for over 15 years.  Subsequently, ██████████ also sought to retain HANNON LAW GROUP ██████████████████████.  Attorneys with

HANNON LAW GROUP appropriately investigated ████████████ in determining whether a joint representation was appropriate. HANNON LAW GROUP determined that ████████████████████████████████████████████████████████████████████████████████████████████████. Accordingly, ███████ were appropriately advised in writing of the potential for unforeseen conflicts and that joint representation entailed a waiver of confidentiality of one to the other through counsel.

Between October 23, 2020, and the unsealing of the indictment on September 24, 2021, the Government and undersigned counsel had multiple, and totally one-sided, conversations regarding the Government's investigation. Some of these conversations involved HANNON LAW GROUP's representation of Officer Sutton. Other times, these conversations involved HANNON LAW GROUP's representation of ████████████. In its motion, the Government claims it was unaware of this dual representation until June 18, 2021. This is not true. AUSA Risa Berkower may have been unaware since she had no communication with HANNON LAW GROUP before that date; however, the more junior AUSA Ahmed Baset certainly knew of the joint representation as he was the sole and single point of contact before that date. In addition he was copied on an email in which attorney Harrison Richards indicated that he represented Officer Sutton on February 26, 2021. *See* Exhibit B. Attorney Richards wrote to inform an IAD agent that he would be representing Officer Sutton in their proceedings, and the agent responded by copying AUSA Baset.

Therefore, the Government knew or should have known when its investigator approached ████████████ that HANNON LAW GROUP also represented Officer Sutton. ████████

then directed investigators to his attorneys with HANNON LAW GROUP, which apparently was never communicated appropriately to AUSA Berkower.

Throughout its investigation, the Government attempted to pick off ▆▆▆▆▆ ▆▆▆▆▆ to become witnesses against Officer Sutton. ▆▆▆▆▆ and ▆▆▆▆▆, both represented by counsel, ▆▆▆▆▆ ▆▆▆▆▆



The Government similarly approached ▆▆▆▆▆. Attorneys at HANNON LAW GROUP scheduled a conference call for June 18, 2021, specifically to include Assistant United States Attorney Risa Berkower along with Ahmed Baset. At that telephonic meeting, Mr. Hannon immediately informed AUSA Berkower that HANNON LAW GROUP also represents Officer Sutton, noting that under such circumstances Mr. Baset's offer of a "Queen for a Day" deal to ▆▆▆▆▆ might be untimely. Ms. Berkower was surprised, and promptly reported that she could employ several actions to require withdrawal of HANNON LAW GROUP from the joint representation. To clarify the issue, undersigned counsel asked if the Government would explain their prosecution theory that would create criminal liability or a conflict. The Government refused to entertain such a discussion, and has consistently refused to engage in any dialogue with counsel regarding their thoughts about the case, including conflict.

HANNON LAW GROUP promptly advised ▆▆▆▆▆ of the potential conflict that the Government was attempting to create. Out of an abundance of caution, HANNON LAW

GROUP arranged for ▮▮▮▮ to consult with attorney Stuart Fisk Johnson as to whether ▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮ to continue in the joint representation with HANNON LAW GROUP.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Undersigned counsel now presumes the Government's theory of criminal liability ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

As previously stated, on the record and heretofore unrebutted by the Government, there is a viable Rule 12 motion in this case because the Government has obtained an indictment on a novel theory of criminal recklessness. The Government has also failed to affirm that the Indictment has been authorized by the Civil Rights Division as required by the *Justice Manual*. HANNON LAW GROUP remains of the view that no conflict between representation of ▮▮▮ ▮▮▮ and Officer Sutton ever appeared to exist during the course of representation of either ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And this remains the position of both HANNON LAW GROUP and both its clients: the Government's theory of liability is unsustainable on the law and the facts.

## ARGUMENT

"In all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the defendant's right to counsel of choice. *See United States v. Crowder*, 313 F. Supp. 3d 135, 141 (D.D.C. 2018) (citing U.S. Const. amend. VI; *Wheat v. United States*, 486 U.S. 153, 158–59 (1988)). We acknowledge that where the Government alerts the Court to a potential conflict of interest, the Court must act prudentially as a keeper of the integrity of the criminal justice system. One factor for the Court to consider is that the Government may manufacture a conflict to prevent a particular defense counsel from representing a defendant. *Wheat*, 486 U.S. at 163. In considering whether the Government's motion in this case is pretextual to rid itself of a worthy opponent, it is appropriate for the Court to consider the timing and the language of the motion. While this is not a close

case for disqualification, the timing of the Government's motion would militate against disqualification. The Government attorneys did not breathe a word of this disqualification issue to Magistrate Judge Feruqui or in its initial pleadings directed to this Court. Nor did the Government indulge in professional courtesies notifying undersigned counsel of its intentions upon the return of the Indictment or sooner. Therefore, the late filing of the motion to disqualify is either an unpardonable oversight or a litigation strategy struck upon over the weekend of October 2-3, 2021.

As for the language of the Government's motion, an attorney of ordinary prudence typically asks the Court to take note of a possible conflict, as the Court and not the Government is the ultimate judge of the ethics of the attorneys appearing before it. That is not the case here, as the Government spins a tale of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ While one finds it difficult to understand this clause, its import is that representations of undersigned counsel are some form of chicanery. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

We also acknowledge that analysis of a potential conflict is two pronged, and requires the Court to consider: (1) "whether a violation of an applicable Rule of Professional Conduct has occurred or is occurring, and, (2) if so, whether such violation provides sufficient grounds for

9

disqualification." *See Crowder*, 313 F. Supp. 3d at 141 (quoting *Headfirst Baseball LLC v. Elwood*, 999 F.Supp.2d 199, 204 (D.D.C. 2013)). In making disqualification determinations, courts in this district follow the District of Columbia Rules of Professional Conduct. *See id.* (citing LCrR 57.26(a)).

The applicable rule under the D.C. Rules of Professional Conduct is Rule 1.7: "a lawyer shall not advance two or more adverse positions in the same matter." R. 1.7(a). The prohibition under Rule 1.7(a) "relates only to actual conflicts of positions, not to mere formalities. For example, a lawyer is not absolutely forbidden to provide joint or simultaneous representation if the clients' positions are only nominally but not actually adverse. … If no actual conflict of positions exists with respect to a matter, the absolute prohibition of paragraph (a) does not come into play." R. 1.7, Comment 6.

In our motion to modify the pleading schedule, we alerted the Government to the recent D.C. Bar Ethics Opinion 380 issued in January of this year, of which the Government makes no comment. Two sections of that recent opinion are relevant here:

> In D.C. Legal Ethics Opinion 232 (Multiple Clients/Criminal Matters), the Committee considered another context in which a client-witness conflict might arise in another client's unrelated matter. The specific inquiry involved a lawyer seeking to represent a client-witness in asserting his Fifth Amendment rights not to testify in a murder case against a current client of the lawyer's partner who was represented in the murder case by another law firm. Neither the murder case defendant nor the client-witness wanted the witness to testify. The Committee concluded that there was no conflict under Rule 1.7(b)(1) on the facts of the inquiry because the assertion of Fifth Amendment rights was not adverse to the interests of the murder-case defendant. In the words of Rule 1.7(b)(1), there was no adversity of the "positions" of the witness and the defendant.

*Id.* at 5.

> The question then arises whether all cross-examinations of a client-witness who would testify adversely to a client-party on direct examination are conflicted under Rule 1.7(a), which prohibits only advancing "two or more adverse positions in the same manner." The Committee concludes that there may be circumstances

> in which a lawyer could cross examine a client-witness who testifies adversely to a client-party on direct examination without running afoul of Rule 1.7(a) with the informed consent of both the client-witness and client-party.

*Id*. at 6.

In our view, this timely mandate by the D.C. Bar should settle the question. There is no conflict, because the interests of ▓▓▓▓▓ and Officer Sutton remain aligned.

While the Government directs the Court to language in *Wheat* which describes the Court's "substantial latitude in refusing waivers of conflicts", Mot. to Disqualify Counsel at 12, *Wheat* is not so demanding and its practical import is that a trial court has wide discretion either to disqualify or not to disqualify in favor of the defendant's Sixth Amendment rights. In upholding the district court's rejection of a waiver, the Supreme Court stated, "Other district courts might have reached differing or opposing conclusions with equal justification, but that does not mean that one conclusion was right and the other 'wrong.'" *Wheat*, 486 U.S. at 164. Four justices also dissented, stating "the District Court could have insured against the possibility of any conflict of interest without wholly depriving petitioner of his constitutional right to the counsel of his choice. … Had the District Court allowed the addition of [petitioner's preferred counsel] and then ordered that he take no part in the cross-examination of [the client-witness], any possibility of a conflict would have been removed." *Wheat*, 486 U.S. at 168-171 (5-4 decision) (Marshall, J., dissenting).

Therefore, in making its determination, the Court "must recognize a presumption in favor of … counsel of choice." *Id.* at 164; *see Crowder*, 313 F. Supp. 3d at 141 ("Disqualification is highly disfavored, and any motion to disqualify counsel is therefore examined with a skeptical eye."). If the Court identifies a conflict, it must balance these Sixth Amendment and judicial interests when deciding whether disqualification is proper. *Crowder*, 313 F. Supp. 3d at 142

(citing *Lopesierra–Gutierrez*, 708 F.3d at 200). "The outcome of that balance turns on the nature and extent of the conflict." *Id.* at 142 (quoting *Lopesierra–Gutierrez*, 708 F.3d at 200)).

Finally, undersigned counsel have actively and aggressively addressed the claims of the Government despite our distaste for the strategy. We take very seriously such claims, and just as we facilitated "conflict counsel" when the Government ▮▮▮▮ so too have we prepared for the Court's inquiry if necessary in this case. Once again, ▮▮▮ agrees with the assessment of HANNON LAW GROUP; yet, he is also consulting with Stuart Fisk Johnson on this newly raised conflict issue. Similarly, Officer Sutton agrees with our assessment; yet, he too has consulted with attorney Carmen D. Hernendez. Should the Court believe a personal inquiry of Officer Sutton and ▮▮▮ is required, they shall be available to participate in that process with the advice of conflict counsel.

WHEREFORE, Officer Sutton requests that the Court deny the Government's Motion to Disqualify Counsel.

Dated: October 19, 2021

Respectfully submitted,

HANNON LAW GROUP, LLP

*s/J. Michael Hannon*
J. Michael Hannon, #352526
Rachel E. Amster, #1618887
333 8th Street, NE
Washington, DC 20002
Tel: (202) 232-1907
Fax: (202) 232-3704
jhannon@hannonlawgroup.com
ramster@hannonlawgroup.com

*Attorneys for Defendant Terence D. Sutton, Jr.*