**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 21-cr-598-PLF** |
| | : | |
| **v.** | : | |
| | : | |
| **TERENCE SUTTON,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT SUTTON'S**
**MOTION TO COMPEL DISLOSURE OF REQUESTED DISCOVERY**

The United States of America, by and through its undersigned attorneys, respectfully opposes defendant Sutton's Motion to Compel Disclosure of Requested Discovery. (Sealed Filing, January 25, 2022.) The discovery requests at issue cover twelve broad categories of information, including grand jury material and large swaths of information from MPD, among other things. These requests are overbroad, seek either non-discoverable information or information that is not discoverable at this time, and, in one instance, demand information that has already been produced.[1] As explained below, because these requests seek information that is targeted at irrelevant, collateral issues—rather than a defense to the conduct the jury will be charged to judge—the motion should be denied.

**LEGAL STANDARD**

A. Compelling the Disclosure of Grand Jury Information

Under Fed. R. Crim. P. 6(e)(3)(E), the Court may permit disclosure of grand jury information if a defendant establishes "that a ground may exist to dismiss the indictment because

---

[1] On October 15, 2021, the defendant sent the government a discovery demand seeking nineteen categories of information. The government responded in a letter on November 9, 2021 that accompanied a discovery production made on the same day. The defendant's initial request contained different numbering than in the instant motion; the government will address the defendant's requests as numbered in the motion for clarity of the record.

of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E). However, "[i]n this

circuit, a defendant must show a 'particularized need' for disclosure" under this Rule. *United

States v. Wright*, 234 F.Supp.3d 45, 47 (D.D.C. 2017) (citing *United States v. Naegele*, 474 F.

Supp. 2d 9, 10 (D.D.C. 2007)). As the court in *Wright* explained,

> This particularized need requires a "factual basis"—"conclusory or speculative
> allegations of misconduct" do not suffice. *Naegele*, 474 F.Supp.2d at 10. The threshold
> for such a showing is very demanding, and the disclosure of grand jury information is
> "exceedingly rare." *Id.* at 11.

234 F. Supp. 3d at 47-48 (denying defendant's motion to compel discovery); *see United States v.

Tajideen*, 319 F. Supp. 3d 445, 473 (D.D.C. 2018) (same, noting "the exceedingly high burden"

required for such a disclosure).

### B. Disclosure Under Rule 16(a)(1)(E)(i)

Rule 16 provides for broad discovery by a criminal defendant, but it is not boundless.

Rather, discovery is limited to "material" information, which is evidence that "enable[]s the

defendant significantly to alter the quantum of proof in his favor." *United States v. Marshall*, 132

F.3d 63, 68 (D.C. Cir. 1998). While establishing materiality "is not a heavy burden," and includes

both exculpatory and inculpatory information, it still requires "a strong indication that [the

evidence] will play an important role in uncovering admissible evidence, aiding witness

preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v.

Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (quotation marks omitted).

## ARGUMENT

Defendant Sutton seeks to compel a wide range of information: additional grand jury

material (requests 1 and 2); extensive materials from MPD's files (requests 3, 5, 8, 9, 11, and 12);

information concerning public protests and alleged threats involving MPD officers that post-date

the crimes charged in the indictment (requests 4 and 6); premature PPMS information (request 7);

and materials from defendant Sutton's personnel file (request 10), which have already been produced. Because these various requests are overbroad, seek either non-discoverable information or information that is not presently discoverable, and with respect to request 10, seek information that was already disclosed, the motion should be denied.

A. Grand Jury Material: Requests 1 and 2

Defendant Sutton seeks two types of grand jury material: audio recordings of witness testimony, and grand jury material concerning the presentation of civil rights charges. Because the defendant articulates no particularized need for either of these two requests, the motion should be denied.

First, with regard to the grand jury audio recordings, the defense has already been provided with the transcripts of all witnesses who testified—most of whom were MPD officers—and apparently has contacted at least some of these witnesses in connection with preparing defendant Sutton's defense. While the audio recordings do constitute Jencks Act material that the government will provide for any grand jury witness who is called in the government's case in chief at trial, there is no basis for disclosing this additional grand jury material at this time. The defendant bases his request on the fact that witnesses were asked leading questions, or were occasionally interrupted during questioning, however, none of this is unusual for grand jury practice where the rules of evidence do not apply and the grand jury's time is limited. Significantly, despite apparent meetings with witnesses about their testimony, the defense has identified no instance where a witness has alleged that the transcript does not accurately reflect his or her actual testimony.

At the same time, disclosing all of these audio recordings will be extremely burdensome for the government. During the course of reviewing materials for this case, the government learned

that the grand jury audio recordings captured whispered, privileged conversations among counsel at the government's counsel table.  After consulting with litigation support staff, undersigned counsel learned that redacting this privileged material will take extensive time and resources, and in some instances it may not be possible to fully redact the material without altering the audio from the witness.  While the government recognizes that the Jencks Act will require the government to make these redactions and disclose the audio for testifying witnesses prior to trial, these redactions are extremely time-consuming to complete.  In light of the burdens of these redactions, as well as the absence of any particularized need for the audio recordings of every grand jury witness, no disclosure is appropriate beyond the government's routine compliance with the Jencks Act for the witnesses who will be called during the government's case.

The defendant also failed to show particularized need for grand jury materials concerning the presentation of charges in this case; indeed, this information simply is not relevant to any issue in this case.  Counts Two and Three of the indictment allege that the defendant conspired to, and did, engage in misleading conduct concerning the fatal traffic collision that killed Karon Hylton-Brown to prevent an internal MPD investigation into the incident and referral of the matter to federal authorities for a criminal civil rights investigation.  As the Court noted during the January 25, 2022 hearing on the defendant's previous motion to compel, this does not require the government to prove anything about whether there was, in fact, a criminal civil rights investigation, or a grand jury investigation of such charges.  Rather, the government must prove the defendant obstructed justice in order to *prevent* such an investigation.  Tr. Jan. 25, 2022, at 37:3-11.  Given the limited nature of this charge, it is of no moment whether any civil rights charges were ultimately presented to the grand jury, nor is there any demonstrated particularized need for this additional grand jury information.  The motion for these materials should therefore be denied.

B.   Irrelevant MPD Information: Requests 3, 5, 8, 9, 11, and 12

The defendant seeks to compel a large volume of information from MPD, much of which is wholly irrelevant to this case.   Specifically, he requests "all information relating to the investigation into the Kennedy Street crew over the last five years, with specific mention of related incidents, related arrest, related charges, and suspected and confirmed members of the Kennedy Street crew" and "All MPD intel and/or bulletins regarding the Kennedy Street Crew" (request 3); the "location of any and all cameras maintained by the MPD and other Law Enforcement Agencies, including FBI, to monitor the Kennedy Street area" as well as "all recordings from these cameras in the government's possession," (request 5); an "annual compendium/report of Pursuit Investigations for the past 10 years maintained by MPD Internal Affairs Division ("IAD"), and all IAD Pursuit Investigations for the recent years for which a compendium/report is not available," (request 8); "All MPD Form 163s reported by Officer Terence D. Sutton, Jr. for all time," (request 9); "All MPD Officer Safety Bulletins for the Fourth District," (request 11); and "all documents saved in the G-Drive for every CST officer or supervisor on any computer in the CST office prepared between 10:00 pm. On October 23 to 10:00 pm October 24," (request 12).   Because these requests are overbroad and seek irrelevant, immaterial information, the motion should be denied.

1.   Request 3: Information Concerning the Kennedy Street Crew

The defendant seeks to compel five years' worth of law enforcement information concerning the Kennedy Street crew, including "related incidents, related arrests, related charges, and suspected and confirmed members of the Kennedy Street Crew" as well as "all MPD intel and/or bulletins regarding" this group.   The request is grossly overbroad, seeks information that is irrelevant to defending the charged crimes, and should thus be denied.

In a November 9, 2021 letter responding to this demand, the government agreed to provide information "in the possession of the U.S. Attorney's Office, to the extent it exists, concerning Karon Hylton-Brown in relation to investigations into the Kennedy Street Crew." The government is still in the process of gathering this information, and will produce it once it is complete. Beyond this, however, the demand seeks wholly irrelevant information. The defendant claims that this information is necessary because "the officers' judgments and decisions require reference to long-term investigation into the KDY crew," and "are appropriately contextualized by the larger investigative priorities of MPD." Mot. to Compel, at 17. This overlooks the terms of the indictment, which charges the defendant with driving with conscious disregard for an extreme risk of death or bodily harm to Hylton-Brown. General investigative information about the Kennedy Street Crew, beyond any information that may relate specifically to Hylton-Brown (whom the defendant knew and had a history with), is wholly irrelevant to the defendant's driving decisions on the night of this incident. There is no basis to grant the defendant's request beyond the information the government has already agreed to provide.

2. Request 5: The location of all law enforcement cameras used to monitor the Kennedy Street Area

The defendant seeks information that identifies all law enforcement cameras that are used to monitor the Kennedy Street Area. This request should be denied as overbroad and irrelevant. As detailed in the indictment, the defendant is charged with obstruction of justice by, among other things, intentionally choosing not to collect relevant evidence at the crash scene. Because of this, the investigation into this incident has entailed piecing together any and all video evidence that could be found of this incident. To date, the government has collected and disclosed all video footage of this incident of which the government is aware, including law enforcement cameras. This includes the BWC from MPD officers who were involved in the police chase of Hylton-

6

Brown and who arrived at the crash scene and MPD traffic camera footage from several intersections along the chase route that captured relevant footage before, during, and after this incident.  Surveillance footage from an array of private homes and businesses was also provided. There is no other video of this incident known to the government.  As such, there is no basis to compel the additional information the defendant seeks.

3.  Requests 8, 9, and 11: Ten Years' Worth of IAD Reports of Pursuit Investigations, All of the Defendant's Arrest Reports Throughout His MPD Career, and All Fourth District MPD Officer Safety Bulletins

The defendant seeks ten years' worth of IAD reports concerning officer pursuit investigations, all arrest reports prepared by the defendant throughout his entire career at MPD, and all Fourth District Officer Safety Bulletins, without any limiting date range.  The defendant asserts that a decade of IAD reports are material to his defense because "how the various elements of fact in this case are historically viewed by the Internal Affairs Division is the heart of Officer Sutton's defense," (Mot. to Compel, at 15); that his prior arrest reports "for all time" are material because "the government would call into question [his] investigative integrity as an officer" (*Id*. at 18); and that MPD Safety Bulletins are material because they are "information known to officers which informs their practices and judgments." (*Id*. at 17.)  These requests should be denied as vastly overbroad and wholly irrelevant.

The indictment charges the defendant with driving with conscious disregard for the safety of Karon Hylton-Brown, causing a collision that killed him, and covering up the circumstances of the crash to avoid any investigation into the matter.  It does not require adjudication of defendant's "integrity" or evaluation of his conduct relative to other officers throughout history.  The defendant's driving decisions on the night of this incident, and the choices he made at the scene of the collision and at the police station to mislead his commanding officer about what happened, are

7

at the crux of these charges.  Broader inquiries into years' worth of IAD investigations into other officers' traffic collisions (about which the defendant had no knowledge), or the defendant's policework on other occasions (as documented in his arrest reports for other cases), or MPD Fourth District Safety Bulletins generally are wholly irrelevant to adjudicating the charged crimes. Because all of these requests are vastly overbroad and seek no material information, they should be denied.

    4.  <u>Request 12: All Documents Saved on Thirteen MPD Computers for a 24-hour period</u>

The defendant asserts that the government should obtain and disclose the full data from 13 MPD computers during a 24-hour period.  In its November 9, 2021 response to this request, the government asked the defendant for additional information to narrow the set of potentially responsive information,[2] but the defendant provided no response.  Instead, the defendant now asserts that all of the information on these 13 computers is necessary because "the government has accused Officer Sutton of obstruction of justice in his preparation of an incomplete and draft traffic accident report," "[t]he draft report can be accessed from any computer in the CST office, and any officer can make contributions to the report," and "[t]here is currently no evidence of who made the entries on the draft report."  Mot. to Compel, 12.

This characterization of the facts is simply not correct and based on pure speculation that someone other than defendant Sutton was responsible for the report entries referenced in Count Two of the indictment.  The defense has been provided with the accounts of two witnesses (including the detailed, sworn statement of one of defense counsel's former clients, who defense counsel represented at the time the account was provided) that establish that defendant Sutton

---

[2] Specifically, the government wrote, "It is unclear to us how every document saved on these computers for a 24-hour period is relevant to the charges in the Indictment.  Please provide further details concerning the set of documents that you believe are relevant to this case."

wrote the draft report.  Moreover, obtaining the full content of 13 MPD computers for a 24-hour period would generate a vast universe of information that is wholly irrelevant to this incident and would raise innumerable security and privacy concerns—all in pursuit of a baseless conspiracy theory that someone other than the defendant logged into an MPD computer and drafted the false report.  Such an overly broad and burdensome demand, rooted in rank speculation, should be denied.

C.  Public Protests and Alleged Threats that Post-Date the Charged Crimes: Requests 4 and 6

The defendant seeks generalized discovery concerning public protests that occurred in the Fourth District in the wake of Mr. Hylton-Brown's death, as well as "all MPD intel" concerning alleged threats to the defendant and other Fourth District officers.  The defendant claims that this information—which all post-dates the charged crimes—is discoverable because "the community response to MPD and Officer Sutton following this incident involved potential witnesses . . . as well as potential witnesses to other previous interactions between Officer Sutton and Mr. Hylton-Brown."  Mot. to Compel, at 17.  If any government trial witness was involved in this activity in a manner that resulted in an arrest, a conviction, or in a fashion that suggests bias against the defendants (or in favor of the government), then the government will make appropriate disclosures prior to trial.

Beyond this very limited universe of information, however, the remainder of these demands are wholly irrelevant to any defense for the charged crimes.  This request seeks discovery about events that did not even occur until after the charged crimes, at a time when the defendant had been placed on administrative leave and was not present at the Fourth District police station.  The crimes in the indictment occurred during a discrete period of time:  a police chase that lasted several minutes and resulted in a fatal collision, and then a cover-up that spanned the subsequent

hours.  Public protests in the days and weeks afterward are simply not relevant to any cognizable defense for the charged conduct, and the defendant's demand for this information foreshadows a trial strategy aimed at distracting the jury from the factual issues it will be charged with resolving. Because such information is neither material to any possible defense nor does it bear on any proof at trial, the motion should be denied.

      D.  <u>Premature PPMS Information: Request 7</u>

      While acknowledging that "such information is usually disclosed close to trial," the defense seeks immediate disclosure of PPMS information—that is, officer-witnesses' employment-related *Giglio* information—on the ground that the government relied on MPD officer witnesses' testimony in seeking an indictment in this case.  Mot. to Compel., at 11.  The defendant argues that early disclosure is necessary here because "this case is different in kind from any other prosecution against a civilian or officer," and "the government advances a novel theory of criminal liability for officers performing their duties on the job."  *Id.*  The defense further alludes to plans to use witness officers' PPMS information to attack the indictment in a motion to dismiss.  *Id.*

      The defendant's characterization of the government's case as "novel" is not accurate, nor does it provide a basis for early disclosure of officer witnesses' *Giglio* information.  The defendant is charged with driving in a manner that consciously disregarded an extreme risk of harm to Mr. Hylton-Brown in violation of D.C. law, and then intentionally covering up (and conspiring with his co-defendant to cover up) what happened.  As discussed at the January 25, 2022 hearing on the defendant's prior motion to compel, there is nothing novel about prosecuting a police officer for a crime he committed while on duty.  Tr. Jan. 25, 2022, at 41:2-42:9.  The government has produced training records that show the defendant was trained on the law concerning police pursuits, and the fact that non-compliance could result in criminal or civil liability.  At the same time, the

defendant has failed to articulate any connection between the early disclosure of officer witnesses' PPMS material and any conceivable motion to dismiss.  And, significantly, witnesses' credibility questions are well beyond the ambit of a motion to dismiss.  This request fails to meet even the most basic standard for Rule 16 materiality.  The motion for early production of this information should be denied.

    E.  <u>Materials from Defendant Sutton's Personnel File: Request 10</u>

        Finally, the defendant seeks to compel production of materials from his MPD personnel file:  "all MPD Form 751s for Officer Terence D. Sutton, Jr. for all time."  As explained in the government's November 9, 2021 written response to the defendant's discovery demand, to the extent any such forms exist for this defendant, they were produced on October 5, 2021.  During the investigation into this case, the government obtained the defendant's entire employment file from MPD.  That file was included in the government's initial disclosure on October 5, 2021.  Accordingly, there is no more information in the government's possession to produce.

## **CONCLUSION**

The defendant's discovery requests seek broad swaths of irrelevant information about collateral issues that are not material to any defense of the charged crimes.  The defendant's motion to compel should therefore be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052


By:   */s/ Risa Berkower*_____
AHMED BASET
IL Bar No. 6304552
RISA BERKOWER
NY Bar No. 4536538
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-7097 (Baset)
         (202) 252-6782 (Berkower)
Email:  Ahmed.Baset@usdoj.gov
         risa.berkower@usdoj.gov