UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 21-0598 (PLF) |
| ) | |
| TERENCE SUTTON, ) | |
| and ) | |
| ANDREW ZABAVSKY, ) | |
| ) | |
| Defendants. ) | |

OPINION AND ORDER

Defendants Terence Sutton and Andrew Zabavsky have separately filed motions for bills of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. See Zabavsky's Motion for a Bill of Particulars ("Zabavsky Mot.") [Dkt. No. 113]; Officer Sutton's Motion for a Bill of Particulars ("Sutton Mot.") [Dkt. No. 118]. The motions request that the Court direct the government to provide a long list of particulars regarding all three counts in the indictment. The United States opposes the motions, asserting that the indictment "provides the defendant[s] with substantial detail about the proof underlying the charges," and that defendants have received "extensive, well-organized discovery." Government's Opposition to Zabavsky's Motion for a Bill of Particulars ("Gov't Opp. Zabavsky") [Dkt. No. 119] at 1; see also Government's Opposition to Sutton's Motion for a Bill of Particulars ("Gov't Opp. Sutton") [Dkt. No. 129] at 1. For the following reasons, the Court concludes that the indictment provides

sufficient detail to allow the defendants to understand the charges against them and adequately prepare for trial. The Court therefore will deny Mr. Sutton and Mr. Zabavsky's motions in full.[1]

## I. BACKGROUND

On September 23, 2021, a grand jury indicted Metropolitan Police Department ("MPD") officers Terence Sutton and Andrew Zabavsky, charging conspiracy, in violation of 18 U.S.C. § 371, and obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3). Indictment at 1. Mr. Sutton was also charged with second degree murder in violation of D.C. Code § 22-2013. Id.

The thirteen-page, fifty-paragraph speaking indictment alleges that on the evening of October 23, 2020, Mr. Sutton engaged in a police vehicular pursuit of Karon Hylton-Brown. See Indictment at ¶¶ 1-2. The indictment states that Mr. Sutton caused Mr. Hylton-Brown's death by engaging in a reckless pursuit that ended in a fatal traffic collision. Id. It further alleges that between October 23, 2020, and October 24, 2020, in order to prevent an internal investigation and referral to federal authorities for a criminal civil rights investigation, Mr. Sutton and Mr. Zabavsky conspired to hide from MPD officials the circumstances of the pursuit and collision. Id. at ¶¶ 3, 31 The government represents that it has provided defendants with discovery, "includ[ing], among other things, grand jury testimony from the more than 20 witnesses who testified during the investigation; reports of witness interviews and the

---

[1]  The Court has reviewed the following documents in connection with the pending motion: Indictment [Dkt. No. 1]; Zabavsky's Motion for a Bill of Particulars ("Zabavsky Mot.") [Dkt. No. 113]; Officer Sutton's Motion for a Bill of Particulars ("Sutton Mot.") [Dkt. No. 118]; Government's Opposition to Zabavsky's Motion for a Bill of Particulars ("Gov't Opp. Zabavsky") [Dkt. No. 119]; Zabavsky's Reply to Government's Opposition to Motion for a Bill of Particular ("Zabavsky Reply") [Dkt. No. 124]; Government's Opposition to Sutton's Motion for a Bill of Particulars ("Gov't Opp. Sutton") [Dkt. No. 129]; and Officer Sutton's Reply in Support of Motion for a Bill of Particulars ("Sutton Reply") [Dkt. No. 133].

contemporaneous notes of those interviews taken by the investigating agents; photographs and written reports from the crash scene; body-worn cameras (BWC) from the MPD officers involved in this incident and the officers who responded to the scene; video from various surveillance cameras that captured portions of the police chase, including traffic cameras and security cameras from businesses and homes; MPD policies concerning police chases, use of force, and the handling of traffic crash scenes; and the training received by both defendants on these topics, and; a list of possible witnesses." Gov't Opp. Sutton at 2.

On January 5, 2022, Mr. Zabavsky filed a motion for a bill of particulars requesting that the Court direct the government to provide additional information, or particulars, regarding Counts Two and Three of the aforementioned indictment. See Zabavsky Mot. Mr. Zabavsky argues that the information sought in his motion "is absolutely necessary to permit [him] to adequately prepare a defense." Id. at 5. On January 18, 2022, Mr. Sutton filed a similar motion requesting particulars relating to all three counts in the indictment. See Sutton Mot. Mr. Sutton similarly argues that "the indictment raises factual questions that will hinder [his] ability . . . to prepare for trial, and in particular prepare a motion to dismiss." Id. at 10-11.

## II.  LEGAL STANDARD

Under the Federal Rules of Criminal Procedure, a "court may direct the government to file a bill of particulars." FED. R. CRIM. P. 7(f). A bill of particulars is a formal written statement by the government that provides details of the charges in the indictment. 1 CHARLES ALAN WRIGHT & ANDREW D. LEIPOLD, FEDERAL PRACTICE AND PROCEDURE § 130 (4th ed. 2021). "[R]equests for bills of particulars are [] far from routine." Id.; see also United States v. Sepulveda, 15 F.3d 1161, 1192 (1st Cir. 1993) ("Motions for bills of particulars are seldom employed in modern federal practice."). "[I]t is within the discretion of the trial court to

determine whether a bill of particulars should be provided, and the court should grant a motion for a bill of particulars to the extent it believes it is necessary to allow the defendants to adequately prepare for and avoid surprise at trial." United States v. Bazezew, 783 F. Supp. 2d 160, 167 (D.D.C. 2011) (emphasis added).

A bill of particulars may not be used by a defendant as a discovery tool or a device to preview the government's evidence or theory of the case. United States v. Sanford Ltd., 841 F. Supp. 2d 309, 316 (D.D.C. 2012). A bill of particulars is instead "designed to limit and define the government's case," id. (quoting United States v. Baker, Crim. No. 08-0075, 2010 WL 936537, at *2 (M.D. Pa. Mar. 15, 2010)), and "enable the defendants to better understand the substance of the charges against them and to prepare their defenses," United States v. Bazezew, 783 F. Supp. 2d at 167; United States v. Mejia, 448 F.3d 436, 445 (D.C. Cir. 2006). Courts tend to grant bills of particulars in cases where the indictment alleges criminal activity that spans a significant period of time and involves voluminous discovery, multiple actors, and complex transactions. See, e.g., United States v. Trie, 21 F. Supp. 2d 7, 22 (D.D.C 1998).

In ruling on a motion for a bill of particulars, "[t]he Court must strike a prudent balance between the legitimate interests of the government and the defendant." United States v. Manafort, Crim. No. 17-0201-01, 2018 WL 10394893, at *1 (D.D.C. June 12, 2018) (quotations omitted). Specifically, the court accounts for "the government's need to avoid prematurely disclosing evidentiary matters to the extent that it will be unduly confined in presenting its evidence at trial." United States v. Sanford Ltd., 841 F. Supp. 2d at 316 (quotations omitted). Courts weigh "the complexity of the crime charged, the clarity of the indictment, and the degree of discovery and other sources of information otherwise available to the defendants." WRIGHT & LEIPOLD, supra, § 130.

III. DISCUSSION

Mr. Sutton and Mr. Zabavsky's motions include a combined forty-six requests relating to all three counts in the indictment. See Zabavsky Mot at 1-2; Sutton Mot. at 4-8. For the reasons detailed below, none of the requested information is "necessary to allow the defendants to adequately prepare for and avoid surprise at trial." United States v. Bazezew, 783 F. Supp. 2d at 167. All forty-six requests are therefore denied.

*A. Requests Pertaining to Count One – Second Degree Murder*

Mr. Sutton's motion includes the following twenty-five requests relating to Count One, which charges Mr. Sutton with second degree murder:

> 1. With respect to Count One, each point in time at which the government alleges Officer Sutton engaged in conduct in violation of any MPD General Order and the manner in which that conduct violated the General Order.
>
> 2. With respect to Count One, the evidence that indicates officers were engaged in a lawful Terry stop under MPD General Orders on October 23, 2020.
>
> 3. With respect to Count One, evidence as to specific moments when the government contends Officer Sutton was not engaged in the lawful performance of police duties on October 23-24, 2020.
>
> 4. With respect to Count One, the nature of any and all evidence on which the government intends to rely that Officer Sutton had notice that a violation of General Order 301.03 would constitute second-degree murder.
>
> 5. With respect to Count One, the nature of any evidence on which the government intends to rely to prove that Officer Sutton was trained on General Order 301.03.
>
> 6. With respect to Count One, identity of any MPD officer that has been subject to criminal prosecution for violation of General Order 301.03, as well as the case number.

7. With respect to Count One, any evidence that Officer Sutton violated any constitutional rights of Mr. Hylton-Brown.

8. With respect to Count One, any evidence that MPD General Orders afforded Mr. Hylton-Brown any right to be free from arrest for his conduct.

9. With respect to Count One, whether probable cause existed for the arrest of Mr. Hylton-Brown for any offense, regardless of any requirement for a warrant or restriction on an actual arrest imposed by MPD General Orders.

10. With respect to Count One, an identification of every moment in time that the government alleges Officer Sutton was engaged in a "police vehicular pursuit" and the nature of any evidence that supports the allegation.

   a. With respect to Count One, state with specificity the evidence which indicates Officer Sutton violated any part of General Order 301.03 and how such evidence proves a violation of General Order 301.03

11. With respect to Count One, whether "pursue", "pursued", and "pursuing" are interchangeable with "engaged in a 'police vehicular pursuit'" in every instance used in the Indictment. See Indictment ¶¶ 8, 10, 11, 24, 26(d), 27.[2]

12. With respect to Count One whether the government contends that "pursuing" as used on General Order No. 301.03, Pt. IV.F, which prohibits "pursuing a vehicle for the purpose of affecting a stop for a traffic violation", is a reference to engaging in a police vehicular pursuit, or prohibits police from following a vehicle whose driver declines to stop when officers signal the driver to stop.

13. With respect to Count One, all evidence that shows the speed of Officer Sutton's vehicle at all moments during the three minutes preceding the death of Mr. Hylton-Brown including the length of time Ofc. Sutton remained at speeds over the speed limit.

---

[2] Request 11 is now moot. In the government's opposition to Mr. Sutton's motion for a bill of particulars, the government stated that "[t]he government does not object to answering defense Request 11, which asks the government to confirm whether the use of the terms 'pursue', 'pursued', and 'pursuing' in Count One are interchangeable with the use of the phrase 'engaged in a 'police vehicular pursuit'' in every situation. The government confirms that these terms are used interchangeably." Gov't Opp. Sutton at 7.

14. With respect to Count One, all evidence that Officer Sutton's conduct at any given point in time on October 23, 2020 was not authorized by DCMR §§ 18-2002.1-2002.3.

15. With respect to Count One, the nature of any and all evidence on which the government intends to rely to show the mens rea of Officer Sutton for second-degree murder.

16. With respect to Count One, the nature of any and all evidence that shows Officer Sutton "accelerated behind Hylton-Brown as Hylton-Brown approached the alleyway's exit."

17. With respect to Count One, all evidence which the government contends proves that Ofc. Sutton caused Mr. Hylton-Brown's death.

18. With respect to Count One, all evidence that Mr. Hylton-Brown was engaging in criminal or traffic offenses.

19. With respect to Count One, all evidence that Mr. Hylton-Brown's death was not due to his failure to wear a helmet.

20. With respect to Count One, the nature of any and all evidence that shows that Officer Sutton caused Mr. Hylton-Brown to drive his moped into the striking vehicle.

21. With respect to Count One, evidence that at the time of his death, Mr. Hylton-Brown was violating a lawful order of the police to stop.

22. With respect to Count One, all evidence that Officer Sutton had notice that his conduct would constitute second-degree murder.

23. With respect to Count One, all evidence that Mr. Hylton-Brown did not act willfully, voluntarily, and of his own free accord.

24. With respect to Count One, all evidence that had Mr. Hylton-Brown complied with all police orders, his death would not have occurred

25. With respect to Count One, all evidence that Officer Sutton knew or should have known that Mr. Hylton-Brown would drive his moped into an on-coming vehicle.

Sutton Mot. at 4-7.

Judges in this district have repeatedly made clear that "[a] bill of particulars is not a discovery tool or a devise [sic] for allowing the defense to preview the government's theories or evidence." United States v. Sanford Ltd., 841 F. Supp. 2d at 316; accord United States v. Mostofsky, Crim. No. 21-0138, 2021 WL 3168501, *1 (D.D.C. July 27, 2021); United States v. Ramirez, 54 F. Supp. 2d 25, 29 (D.D.C. 1999). Mr. Sutton nevertheless seeks all sorts of evidentiary material to develop his defense, including "all evidence" of his speed of travel (Request No. 13); evidence that Mr. Sutton "accelerated behind Hylton-Brown as Hylton-Brown approached the alleyway's exit" (Request No. 16); evidence that Mr. Sutton caused Mr. Hylton-Brown's death (Request No. 17); and evidence that Mr. Sutton caused Mr. Hylton-Brown to drive into the striking vehicle (Request No. 20). Sutton Mot. at 6; see also Gov't Opp. Sutton 3-4.

These requests circumvent the procedures laid out in the Federal Rules of Criminal Procedure for obtaining documents or information that may be "material to preparing the defense." See FED. R. CRIM. P. 16(a)(1)(E)(i). Rule 16 provides detailed and specific instructions for obtaining "oral statement[s]," "written or recorded statement[s]," "defendant's prior record," and "documents and objects." See FED. R. CRIM. P. 16(a)(1)(A)-(B), (D)-(E). In fact, the government asserts that Mr. Sutton has already been provided such materials, including "[body-worn cameras], radio recordings, surveillance video, and GPS data to understand how the vehicular pursuit [and] crash . . . transpired." Gov't Opp. Sutton at 10. Mr. Sutton, like all defendants in criminal cases, must proceed through the normal procedural channels of litigation.

Mr. Sutton instead argues that "it is not sufficient for the government to respond to a motion for a bill of particulars by pointing to the voluminous discovery already provided." Sutton Mot. at 9 (quoting United States v. Bazezew, 783 F. Supp. 2d at 168). The quote from

8

Bazezew seems particularly inapposite in this case. In Bazezew, the "voluminous discovery" pertained to an indictment that alleged a conspiracy spanning a period of about twenty-five days and involving twenty-one co-conspirators. See United States v. Bazezew, 783 F. Supp. 2d at 162-63, 168. The Court granted the motion for a bill of particulars after emphasizing lengthy gaps in time between the overt acts of alleged co-conspirators set forth in the indictment. See id. at 168-69 (concluding that the indictment "charges that while the conspiracy began on September 3, 2009, none of the 16 remaining defendants [who had not pled guilty] took an overt act in furtherance of the conspiracy until [at least eight days later]"). Here, in contrast, Mr. Sutton alone is charged with second degree murder, there are no co-conspirators, and the factual allegations with respect to the murder charge span just a short three-minute time frame. See Indictment at ¶ 26. The indictment already includes details about "the defendant's various directions of travel, speeds at given points, and a description of the final seconds of the pursuit before the crash." Gov't Opp. Sutton at 9 (citing Indictment at ¶¶ 26-28).

Mr. Sutton's requests also extend beyond the factual allegations in the indictment and seek to "preview the government's evidence" regarding Mr. Sutton's mens rea and Mr. Hylton-Brown's conduct leading up to the collision. See United States v. Sanford Ltd., 841 F. Supp. 2d at 316. For example, Mr. Sutton requests "all evidence " of Mr. Sutton's mens rea for second degree murder (Request No. 15); evidence that Mr. Sutton had "notice that his conduct would constitute second degree murder" (Request No. 22); and evidence that Mr. Sutton's had knowledge that Mr. Hylton-Brown would drive into oncoming traffic (Request No. 25). Sutton Mot. at 6-7; see also Gov't Opp. Sutton at 3. Mr. Sutton also seeks "all evidence" that "Mr. Hylton-Brown was engaging in criminal or traffic offenses" (Request No. 18); evidence that "Mr. Hylton-Brown's death was not due to his failure to wear a helmet" (Request No. 19); and

9

evidence that "Mr. Hylton-Brown did not act willfully, voluntarily, and of his own accord" (Request No. 23). Sutton Mot. at 6; see also Gov't Opp. Sutton at 4. Although this information arguably may help Mr. Sutton in preparing his defense, "the question is not whether the information sought would be beneficial to the defendant, but whether it is necessary" to understand the charges against him. United States v. Sanford Ltd., 841 F. Supp. 2d at 322 (quoting United States v. Diaz, 303 F. Supp. 2d 84, 89 (D. Conn. 2004)).

Mr. Sutton's motion also includes over a dozen requests that pertain to official MPD policies and Mr. Sutton's performance of his duties as a law enforcement officer. For example, he requests evidence that that he "had notice that a violation of MPD General Order 301.03 would constitute second degree murder" (Request No. 4); evidence that he "was trained in General Order 301.03" (Request No. 5); and "an identification of every moment in time" that he was engaged in a "police vehicular pursuit" (Request No. 10). Sutton Mot. at 4; see also Gov't Opp. Sutton at 4. Mr. Sutton argues that these requests should be granted because "this is an unprecedented prosecution" and that "the particulars are necessary to clarify the indictment's treatment of Ofc. Sutton's status as an officer, the weight of MPD General Orders, and the fact that no constitutional violations occurred." Sutton Mot. at 11. In contrast, the government asserts that "[t]he Indictment does not treat Defendant Sutton's police officer status as a shield from criminal prosecution for violating the law [and] does not render it 'novel,' nor does it provide a basis for granting the broad discovery the defendant seeks through a motion under Rule 7(f)." Gov't Opp. Sutton at 13-14.

The "novelty" of the criminal prosecution aside, these requests seek to preview the government's trial strategy and theory of its case and to expose how the government plans to navigate the nuanced issue of Mr. Sutton's role as a police officer. Furthermore, evidence such

as whether the defendants "were engaged in a lawful Terry stop under MPD General Orders on October 23, 2020" or "violated any constitutional rights of Mr. Hylton-Brown" are legal issues that have no relevance to the sufficiency of the charge of second degree murder as set forth in the indictment. See Sutton Mot. at 4 (Request Nos. 2, 7). The Court therefore concludes that providing these "particulars" is far from "necessary," United States v. Bazezew, 783 F. Supp. 2d at 167, and in fact directly undermines the purpose of a bill of particulars to "limit and define the government's case," United States v. Sanford Ltd., 841 F. Supp. 2d at 316.

### B. Requests Pertaining to Counts Two and Three – Conspiracy and Obstruction of Justice

Mr. Sutton and Mr. Zabavsky's motions include a combined twenty-three requests relating to Counts Two and Three of the indictment, which charge Mr. Sutton and Mr. Zabavsky with conspiracy to obstruct justice and obstruction of justice. Mr. Sutton's requested particulars are listed below:

> 26. With respect to Count Two, the identities of the officials from whom the government alleges Ofc. Sutton sought to hide the circumstances of the crash and the correlated conduct with regard to each official.
>
> 27. With respect to Count Two, the date, time, and nature of the earliest statement and/or event upon which the prosecution will rely to prove that the conspiracy existed. (Duplicative of Mr. Zabavsky's Request No. 1).
>
> 28. With respect to Count Two, the nature of any and all statements and/or events, other than those already contained in the indictment, upon which the prosecution intends to rely to prove that the conspiracy existed. (Duplicative of Mr. Zabavsky's Request No. 2).
>
> 29. With respect to Count Two, the date, time, and nature of the earliest statement and/or event upon which the prosecution will rely to establish when each defendant joined the conspiracy. (Duplicative of Mr. Zabavsky's Request No. 3).

11

    30. With respect to Count Two, the date, time and nature of the earliest statement and/or event upon which the prosecution will rely to establish when Officer Sutton joined the conspiracy. (Duplicative of Mr. Zabavsky's Request No. 4).

    31. With respect to Count Two, all co-conspirator statements the government intends to introduce at trial.

    32. With respect to Count Two, the nature of any evidence on which the government intends to rely on that shows Officer Sutton intended to prevent an internal MPD investigation.

    33. With respect to Count Two, any evidence on which the government intends to rely to prove Officer Sutton sought to impede the referral of the matter to federal authorities for a criminal civil rights investigation.

    34. With respect to Count Two, any evidence the government intends to rely on to show that an internal MPD investigation would lead to a federal civil rights investigation.

    35. With respect to Count Two, identify all federal civil rights statutes that would have been investigated.

    36. With respect to Count Two, any evidence that a federal civil rights statute was violated.

    37. With respect to Count Two, any and all evidence the government intends to rely on as an overt act in furtherance of the Conspiracy not already listed in the indictment.

    38. With respect to counts Two and Three, the nature of any evidence on which the government intends to rely to show that Officer Sutton had knowledge of the commission and possible commission of a federal offense.

Sutton Mot. at 7-8. Four of Mr. Zabavsky's requests are virtually identical to Mr. Sutton's requests. Compare Zabavsky Mot. at 1-2 (Request Nos. 1, 2, 3, 4) with Sutton Mot. at 7 (Request Nos. 27, 28, 29, 30). Mr. Zabavsky also included the following four non-duplicative requests:

12

>  5. With respect to Count Three, the date and nature of the earliest statement/event upon which the prosecution will rely to prove the obstruction of justice.
>
>  6. With respect to Count Three, the nature of any and all overt actions by Zabavsky on October 24 upon which the prosecution will rely to prove the obstruction of justice.
>
>  7. With respect to Count Three, the exact communication which Zabavsky hid to prevent an internal investigation of the incident.
>
>  8. With respect to Count Three, the date and nature of the most recent statement/event upon which the prosecution will rely to prove the obstruction of justice.

Zabavsky Mot. at 2.

For many of the same reasons as those discussed above, Mr. Sutton and Mr. Zabavsky fail to show that any of these requests are "necessary to . . . adequately prepare for and avoid surprise at trial." See United States v. Bazezew, 783 F. Supp. 2d at 167. Like Mr. Sutton's requests pertaining to Count One, the remaining requests do not belong in a bill of particulars; rather the information requested should be sought through Rule 16 discovery requests. Furthermore, defendants' arguments about the specificity of the indictment have even less merit for the conspiracy and obstruction charges, which by their nature are necessarily quite detailed. The conspiracy charge in the indictment contains four specific "manner and means" and twenty overt acts that Mr. Sutton and Mr. Zabavsky allegedly took in furtherance of the conspiracy. Indictment at ¶¶ 33-48. The D.C. Circuit does not require any more specificity about the time and place of a conspiracy or when defendants entered and exited an alleged conspiracy to be set out in an indictment. United States v. Butler, 822 F.2d 1191, 1194 (D.C. Cir. 1987); accord United States v. Sanford Ltd., 841 F. Supp. 2d at 317-18. Similarly, this Court has held that "[t]o require the government to identify all alleged overt acts . . . in

13

furtherance of the alleged conspiracies would be a heavy burden indeed and not essential to the preparation of a defense." United States v. Trie, 21 F. Supp. 2d at 23.[3]

The indictment in this case includes over twenty paragraphs that detail the "manner and means" and overt acts that Mr. Sutton and Mr. Zabavsky took in furtherance of the conspiracy. See Indictment at ¶¶ 34-48. It includes allegations that the defendants "[d]elay[ed] notification of the traffic collision to MPD officials and, in turn, federal authorities; [c]ontroll[ed] the law enforcement response to the traffic crash scene; [w]illfully neglect[ed] to collect and preserve relevant evidence; and, [w]ithh[eld] information from the Watch Commander and mis[led] him about the circumstances of the traffic collision." Indictment at ¶ 33. The indictment also goes into detail about the overt acts taken in furtherance of the conspiracy, and even provides a list of statements that the defendants made at the Fourth District police station when they met with the Watch Commander. See Indictment at ¶ 46 ("[Mr. Sutton and Mr. Zabavsky] portrayed the incident as a brief attempted traffic stop; [Mr. Sutton] minimized his conduct, saying that he did not engage in a vehicular pursuit . . . [Mr. Zabavsky] said that Hylton-Brown had been drunk and had been slurring his words; and, [Mr. Sutton and Mr. Zabavsky] withheld all information about Hylton-Brown's serious injuries."). These allegations, among others, demonstrate that the government has already met the "heavy burden"

---

[3] Courts also routinely deny bills of particulars in cases where defendants are not charged with a conspiracy that spans a significant duration of time or does not include multiple unnamed co-conspirators. See, e.g., United States v. NYNEX Corp, 781 F. Supp. 19, 21 (D.D.C. 1991) (denying a motion where the charge "does not involve a complex, longstanding conspiracy; it is a relatively simple charge of violating the decree over a defined period of time."); United States v. Sanford, 841 F. Supp. 2d at 318 (denying a bill of particulars where the entire conspiracy occurred on "a ship [] in the middle of the sea, [where] there is a finite number of people on board and a finite list of crew members"); but see United States v. Bazezew, 783 F. Supp. 2d at 168 (granting in part a bill of particulars to require the government to disclose the identities of sixteen alleged co-conspirators).

required for a conspiracy charge, and the requests therefore seek information that is "not essential to the preparation of a defense." United States v. Trie, 21 F. Supp. 2d at 23.

Mr. Sutton further argues that "the particulars requested relating to Counts 2 and 3, are aimed at understanding charges which point to a federal civil rights investigation where no such charge is listed in the indictment, and the government has all but stated that such charges were never seriously considered." Sutton Reply at 7. His motion therefore requests specific information about the underlying civil rights investigation, including evidence that "an internal MPD investigation would lead to a federal civil rights investigation" and that "a federal civil rights statute was violated." Sutton Mot. at 8 (Request Nos. 34, 36).[4] He contends that this information is necessary because "[t]he Indictment offers no evidence of a connection, or perceived connection by Ofc. Sutton, between an MPD internal investigation and a federal civil rights investigation." Sutton Mot. at 3.

This argument has no merit for two reasons. First, the obstruction statute in this case requires no such evidence. 18 U.S.C. § 1512(b)(3) punishes one who

> knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . .

18 U.S.C. § 1512(b)(3) (emphasis added). This statute does not require that any federal civil rights investigation actually have occurred, let alone that the existence of one be pled in the indictment. Rather, the government need only prove "the possible existence of a federal crime

---

[4]   Mr. Zabavsky does not join in these requests.

15

and a defendant's intention to thwart an inquiry into that crime." United States v. Ring, 628 F. Supp. 2d 195, 220 (D.D.C. 2009) (quoting United States v. Ronda, 455 F.3d 1273, 1288 (11th Cir. 2006)). Whether the U.S. Attorney's Office, the Civil Rights Division, the FBI, or the grand jury in fact investigated possible federal civil rights violations is not at issue with respect to Mr. Sutton's obstruction of justice charge, and it need not be pled in the indictment or supplied in a bill of particulars. Thwarting an investigation before it can begin is sufficient for an obstruction of justice charge.

Second, Mr. Sutton conflates the requirements for an indictment with the burden of proof required at trial. In an indictment, the government must "suppl[y] [the defendant] with the essential facts and elements of the crimes charged" and "track the language of [the statute]." United States v. Saffarinia, 422 F. Supp. 3d 269, 277 (D.D.C. 2019) (citing United States v. Knight, Crim. No. 12-0367, 2013 WL 3367259, at *4 (E.D. Pa. July 3, 2013)). A defendant charged with obstruction of justice must be able to "reasonably infer how their allegedly obstructive conduct impeded . . . an investigation into their activities." Id. Mr. Sutton nevertheless seeks information about how the government will prove the elements of obstruction at trial, including evidence "that shows Officer Sutton intended to prevent an internal MPD investigation" (Request No. 32) and evidence that "Officer Sutton had knowledge of the commission and possible commission of a federal offense" (Request No. 38).

As discussed above, the indictment contains over twenty paragraphs that detail the "manner and means" and overt acts that Mr. Sutton and Mr. Zabavsky took in furtherance of the conspiracy to obstruct justice. See Indictment at ¶¶ 34-48. The indictment also alleges the following:

> [Mr. Sutton and Mr. Zabavsky's] actions delayed, and could have prevented, notifications to MCS and the Internal Affairs Division

16

(IAD), which is responsible for making referrals to federal authorities for investigations of potential criminal civil rights violations.

Indictment at ¶ 14. This specific allegation "track[s] the language" of the statute, United States v. Saffarinia, 422 F. Supp. 3d at 277, which criminalizes activity that "delay[s], or prevent[s] the communication . . . of information relating to the commission or possible commission of a Federal offense," 18 U.S.C. § 1512(b)(3) (emphasis added). In conjunction with the "manner and means" and overt acts detailed throughout the indictment, this allegation provides enough context for Mr. Sutton and Mr. Zabavsky to "reasonably infer how their allegedly obstructive conduct impeded" a federal civil rights investigation. United States v. Saffarinia, 422 F. Supp. 3d at 277. Mr. Sutton's requests therefore reach beyond the scope of the indictment and do not belong in a bill of particulars.

## IV. CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that Mr. Zabavsky's [Dkt. No. 113] Motion for a Bill of Particulars is DENIED; and it is

FURTHER ORDERED that Mr. Sutton's [Dkt. No. 118] Motion for a Bill of Particulars is DENIED.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 4/21/22