UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
UNITED STATES OF AMERICA        )
                               )
     v.                         )          Criminal No. 21-0598 (PLF)
                               )
TERENCE SUTTON                  )
   and                          )
ANDREW ZABAVSKY,                )
                               )
             Defendants.        )
_____)
```

<u>OPINION</u>

Defendants Terence Sutton and Andrew Zabavsky have filed several motions to compel discovery, requesting that the Court order the government to produce a wide variety of documents and materials.  The Court will reserve ruling on Mr. Sutton's Fourth Motion to Compel Disclosure of Requested Discovery [Dkt. No. 146], his Fifth Motion to Compel Disclosure of Requested Discovery [Dkt. No. 152], and his Sixth Motion to Compel Disclosure of Requested Discovery [Dkt. No. 153].  This Opinion will address the remainder of the motions to compel discovery.  After careful consideration of the parties' arguments and the entire record in this case, the Court will grant in part and deny in part Mr. Sutton's third Motion to Compel Disclosure of Requested Discovery [Dkt. No. 122].  It will deny in their entirety his Second Motion to Compel Discovery [Dkt. No. 40] and Mr. Zabavsky's First Motion to Compel Disclosure of Requested Discovery [Dkt. No. 130].[1]

---

[1]     The documents and the exhibits attached thereto that the Court has considered in connection with the pending motions include:  Indictment [Dkt. No. 1]; Mr. Sutton's Second Motion to Compel Discovery ("Sutton 2d Mot.") [Dkt. No. 40]; the Government's Opposition to Motion to Compel ("Opp. to Sutton 2d Mot.") [Dkt. No. 47]; Mr. Sutton's Reply to the

I. BACKGROUND

On September 23, 2021, the grand jury returned an indictment charging Mr. Sutton with one count of murder in the second degree, in violation of D.C. Code § 22-2103, and charging both Mr. Sutton and Mr. Zabavsky with one count of conspiracy, in violation of 18 U.S.C. § 371, and one count of obstruction of justice, in violation of 18 U.S.C. §§ 1512(b)(3), 2. See Indictment ¶¶ 29, 31, 50.  As relevant to Mr. Sutton's second motion to compel discovery, the indictment bears the ink signature of former Acting United States Attorney Channing D. Phillips.  Id. at 13.

The indictment alleges that on October 23, 2020, Mr. Sutton, an officer of the District of Columbia Metropolitan Police Department ("MPD"), caused the death of Karon Hylton-Brown by recklessly pursuing him in a police vehicle for several blocks and through back alleyways at high speeds.  See Indictment ¶¶ 1-2, 10-12, 20-27.  Mr. Hylton-Brown, who was riding a rental moped, was mortally wounded when he exited an alleyway and was hit by oncoming traffic, suffering severe head trauma; he died two days later.  See id. ¶¶ 13, 18, 28. The indictment also alleges that Mr. Sutton and his supervisor, Andrew Zabavsky, conspired to cover up Mr. Sutton's involvement in these events by, among other things, willfully neglecting

---

Government's Opposition to His Second Motion to Compel Discovery ("Reply ISO Sutton 2d Mot.") [Dkt. No. 53]; Mr. Sutton's Notice of Supplemental Authority ("Suppl. to Sutton 2d Mot.") [Dkt. No. 120]; Mr. Sutton's Motion to Compel Disclosure of Requested Discovery ("Sutton 3d Mot.") [Dkt. No. 122]; the Government's Opposition to Defendant Sutton's Motion to Compel Disclosure of Requested Discovery ("Opp. to Sutton 3d Mot.") [Dkt. No. 134]; Mr. Sutton's Reply in Support of Third Motion to Compel Disclosure of Requested Discovery ("Reply ISO Sutton 3d Mot.") [Dkt. No. 142]; Mr. Zabavsky's First Motion to Compel Disclosure of Requested Discovery ("Zabavsky Mot.") [Dkt. No. 130]; the Government's Opposition to Defendant Zabavsky's Motion to Compel Disclosure of Requested Discovery ("Opp. to Zabavsky Mot.") [Dkt. No. 144]; Mr. Zabavsky's Reply to Government's Opposition to Defendant Zabavsky's First Motion to Compel Disclosure of Requested Discovery ("Reply ISO Zabavsky Mot.") [Dkt. No. 155]; Mr. Sutton's Motion for a Bill of Particulars ("Sutton Mot. for BOP") [Dkt. No. 118]; and the Government's Opposition to Sutton's Motion for a Bill of Particulars ("Opp. to Sutton Mot. for BOP") [Dkt. No. 129].

to collect and preserve evidence at the site of the collision and providing misleading and incomplete details of the incident to their superiors.  See id. ¶¶ 33-48.  According to the indictment, the defendants obfuscated "the circumstances of the traffic collision leading to Hylton-Brown's death, to prevent an internal investigation of the incident and referral of the matter to federal authorities for a criminal civil rights investigation."  Id. ¶ 32.

On October 4, 2021, the Court denied Mr. Sutton's first motion to compel discovery.  See October 4, 2021 Minute Order.  Mr. Sutton filed his second motion to compel discovery on October 15, 2021, and his third motion to compel discovery on January 25, 2022. See Sutton 2d Mot.; Sutton 3d Mot.  Mr. Zabavsky filed a motion to compel discovery, his first and only so far, on February 11, 2022.  See Zabavsky 1st Mot.  The government opposes the vast majority of the defendants' individual requests for discovery but has noted that some of the requested documents and materials either have already been produced or will be produced closer to trial.  See, e.g., Opp. to Sutton 3d Mot. at 10-11; Opp. to Zabavsky 1st Mot. at 3-5, 7.  The motions are fully briefed, and the Court heard oral argument on Mr. Sutton's second motion to compel discovery on January 25, 2022.  See January 25, 2022 Minute Entry.  The motions to compel discovery that are the subject of this Opinion therefore are now ripe for resolution.

## II.  LEGAL STANDARD

Rule 16 of the Federal Rules of Criminal Procedure provides, in pertinent part:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

FED. R. CRIM. P. 16(a)(1)(E) (emphasis added).  Under Rule 16, evidence is material to preparing

a defense "as long as there is a strong indication that it will play an important role in uncovering

admissible evidence, aiding witness preparation, corroborating testimony, or assisting

impeachment or rebuttal."  United States v. Marshall, 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting

United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993)).  Material evidence "is not limited to

evidence that is favorable or helpful to the defense and does not immunize inculpatory evidence

from disclosure."  United States v. Safavian, 233 F.R.D. 12, 15 (D.D.C. 2005).  A defendant's

burden to demonstrate materiality is not a "heavy" one, see United States v. Slough, 22 F. Supp.

3d 1, 4 (D.D.C. 2014), and the government "cannot take a narrow reading of the term 'material'

in making its decisions on what to disclose under Rule 16," United States v. Safavian, 233

F.R.D. at 15.  Indeed, "Rule 16 is intended to provide a criminal defendant 'the widest possible

opportunity to inspect and receive such materials in the possession of the Government as may aid

him in presenting his side of the case.'"  Id. (quoting United States v. Poindexter, 727 F. Supp.

1470, 1473 (D.D.C. 1989)).

　　　　Nevertheless, to be material the evidence must "bear 'more than some abstract

logical relationship to the issues in the case."  United States v. Slough, 22 F. Supp. 3d at 5

(quoting United States v. Marshall, 132 F.3d at 69).  Moreover, the evidence sought must "be

related 'to refutation of the government's case in chief,' and not 'to establishment of an

independent . . . bar to the prosecution.'"  United States v. Apodaca, 287 F. Supp. 3d 21, 39

(D.D.C. 2017) (quoting United States v. Rashed, 234 F.3d 1280, 1285 (D.C. Cir. 2000)); see also

United States v. Armstrong, 517 U.S. 456, 462 (1996).

　　　　Rule 6 of the Federal Rules of Criminal Procedure permits the disclosure of grand

jury materials "at the request of a defendant who shows that a ground may exist to dismiss the

indictment because of a matter that occurred before the grand jury." Fed. R. Crim.

P. 6(e)(3)(E)(ii).  To obtain such disclosure, a defendant must carry the "heavy burden of

showing 'that a <u>particularized need</u> exists' that 'outweighs the policy of secrecy'" of grand jury

materials.  <u>United States v. Apodaca</u>, 287 F. Supp. 3d at 47.  "This particularized need requires a

'factual basis'—'conclusory or speculative allegations of misconduct' do not suffice."  <u>United</u>

<u>States v. Wright</u>, 234 F. Supp. 3d 45, 47 (D.D.C. 2017) (quoting <u>United States v. Naegele</u>, 474 F.

Supp. 2d 9, 10 (D.D.C. 2007)).  "The threshold for such a showing is very demanding, and the

disclosure of grand jury information is 'exceedingly rare.'"  <u>Id</u>. (quoting <u>United States v.</u>

<u>Naegele</u>, 474 F. Supp. 2d at 11).

### III.  DISCUSSION

*A.  Mr. Sutton's Second Motion to Compel Discovery*

In his second motion to compel discovery, Mr. Sutton requests the production of

documents that evidence the following:

1.  Authority of Acting U.S. Attorney Channing D. Phillips to sign
the Indictment returned by the Grand Jury;

2.  That USAO, DOJ, the FBI, and/or the Grand Jury were
investigating possible violations of 18 U.S.C. § 242;

3.  Whether the Grand Jury was asked to return an Indictment
including a charge of violating 18 U.S.C. § 242, and any vote on
such an Indictment;

4.  The notification requirements contained in Justice Manual
8-3.120;

5.  Whether this case was determined to be one of national interest
pursuant to Justice Manual 8-3.130;

6.  Notices and approvals required by Justice Manual 8-3.140.

Sutton 2d Mot. at 1.  For the following reasons, the Court concludes that the requested materials are not discoverable under the Federal Rules and therefore will deny Mr. Sutton's second motion to compel discovery.[2]

### 1. Discovery Requests Related to the Government's Alleged Failure to Comply with DOJ Policies

All six requests in Mr. Sutton's second motion to compel discovery pertain to Mr. Sutton's allegation that the government failed to comply with DOJ policies governing the investigation and prosecution of civil rights cases.  Mr. Sutton's suspicions relate to the policies set forth in the Justice Manual – a document "prepared under the supervision of the Attorney General and under the direction of the Deputy Attorney General" that "provides internal DOJ guidance."  Justice Manual § 1-1.200.  Specifically, he conjectures that former Acting U.S. Attorney Phillips did not coordinate with or receive express authorization from the Assistant Attorney General for the Civil Rights Division before signing the indictment in this case.  See Sutton 2d Mot. at 2.  Mr. Sutton argues that, if that were true, he would be entitled "to present a motion for dismissal of the Indictment."  See Sutton 2d Mot. at 2.

---

[2]      In his second motion to compel discovery, Mr. Sutton seems to rely on Brady v. Maryland, 373 U.S. 83 (1963), for the applicable legal standard.  See Sutton 2d Mot. at 4; see also LCrR 5.1(a) (requiring the government to "make good-faith efforts to disclose [Brady] information to the defense as soon as reasonably possible after its existence is known, so as to enable the defense to make effective use of the disclosed information in the preparation of its case.").  Pursuant to Brady and its progeny, "the government must disclose any evidence in its possession that is favorable to the accused and material either to a defendant's guilt or punishment."  United States v. Trie, 21 F. Supp. 2d 7, 23 (D.D.C. 1998); see also United States v. Safavian, 233 F.R.D. at 16-17 (noting that Brady covers both exculpatory and impeachment evidence) (citing United States v. Bagley, 473 U.S. 667, 676-77 (1985)).  As described herein, the discovery Mr. Sutton requests is at best neutral or speculative – not favorable – and Mr. Sutton therefore is not entitled to it under Brady.  See United States v. Flynn, 411 F. Supp. 3d 15, 28 (D.D.C. 2019) ("Under Brady, 'the Government has no duty to disclose evidence that is neutral, speculative, or inculpatory, or evidence that is available to the defense from other sources.'" (quoting United States v. Pendleton, 832 F.3d 934, 940 (8th Cir. 2016))).

To support such a motion, Mr. Sutton moves to compel discovery regarding the government's investigation and decision to prosecute this case.  In Requests 1 and 4 through 6, he seeks documents regarding former Acting U.S. Attorney Phillips's authority to sign the indictment, as well as documents concerning the government's compliance with several provisions of the Justice Manual requiring coordination between the U.S. Attorney's Office and the Civil Rights Division in certain cases deemed to be of "national interest."  See Sutton 2d Mot. at 1 (citing Justice Manual §§ 8-3.120-.140).  And in Requests 2 and 3, he seeks documents demonstrating whether the government investigated and considered prosecuting Mr. Sutton for willful deprivation of federal rights under color of law in violation of 18 U.S.C. § 242, which he argues would have triggered former Acting U.S. Attorney Phillips's obligation to coordinate activities with the Civil Rights Division.  See Sutton 2d Mot. at 1.

Mr. Sutton has not met his burden under Rule 16 of the Federal Rules of Criminal Procedure to demonstrate that any of the documents he requests are "material" to preparing his defense.  First, Mr. Sutton suggests that the requested documents are necessary to support a contemplated motion to dismiss the indictment, not to "refute any of the government's direct evidence against the defendants."  United States v. Apodaca, 287 F. Supp. 3d at 41.  As the D.C. Circuit has recognized, Rule 16(a)(1)(E) does not apply when the defendant seeks discovery relating "not to refutation of the government's case in chief but to establishment of an independent . . . bar to the prosecution."  United States v. Rashed, 234 F.3d at 1285.  Mr. Sutton's broad requests simply are not tailored to developing the evidentiary record for his defense, and they therefore fall outside the permissible scope of discovery under Rule 16.

Second, even assuming that materials unrelated to rebutting the government's case-in-chief were discoverable by Mr. Sutton, the Court does not see how they could

meaningfully advance the defense of his case.  See FED. R. CRIM. P. 16(a)(1)(E)(i).  Without

deciding the merits of a motion to dismiss that Mr. Sutton has not yet filed, the Court thinks it

highly unlikely that Mr. Sutton could successfully obtain dismissal of the indictment by showing

that the government failed to comply with internal DOJ policies set forth in the Justice Manual.

       Mr. Sutton points to three provisions in the Justice Manual that he argues create

prosecutorial obligations that, if not complied with, warrant dismissal of the indictment.  These

three provisions govern the coordination of activities between a United States Attorney's Office

and the Civil Rights Division to enforce the federal civil rights laws.  See Justice Manual

§ 8-1.010 ("Because of the sensitive nature of the constitutional and statutory issues involved

and the desirability of uniform application of federal law in this field, close consultation between

the United States Attorney's Offices and the Civil Rights Division on civil rights matters is

essential."); see also id. § 8-3.100 ("The Civil Rights Division and the United States Attorneys'

Offices will work as partners to ensure a vigorous national civil rights enforcement program.").

       First, section 8-3.120 requires a U.S. Attorney's Office, at the outset of a criminal

investigation that may implicate federal criminal civil rights statutes – "and in no event later than

ten days before the commencement of the examination of witnesses before a grand jury" – to

notify the Civil Rights Division in writing of the new investigation and to provide, among other

things, an "assessment of the significance of the case and whether [it] is one of 'national

interest.'"  Justice Manual § 8-3.120.[3]  Second, section 8-3.130 requires the Assistant Attorney

---

[3]      The Justice Manual provides:

      A case of "national interest" is one that presents important public
      policy considerations; a case that presents a novel issue of law; a
      case that because of peculiar facts and circumstances may set
      important precedent; a case with simultaneous investigations in
      multiple districts . . . ; a case with international or foreign policy

General for the Civil Rights Division, after receiving such notification and after consulting with the referring U.S. Attorney, to "determine whether a case is of 'national interest.'" Id. § 8-3.130. Whether a case has been designated as of national interest may affect staffing decisions – for example, whether the U.S. Attorney's Office and the Civil Rights Division will jointly serve as co-counsel in the investigation and prosecution of the case. See id. Third, the U.S. Attorney must obtain prior authorization from the Civil Rights Division to seek an indictment for a criminal civil rights case if it has been deemed to be of national interest. See id. § 8-3.140; see also id. (requiring the U.S. Attorney's Office to provide the Civil Rights Division a copy of the proposed indictment and any prosecutive memorandum at least ten business days before presenting the indictment to the grand jury).

Even assuming, as Mr. Sutton argues, that this case is one of national interest and that the government did not adhere to these three Justice Manual provisions before obtaining the indictment, Mr. Sutton has not demonstrated how the requested discovery would aid him in moving to dismiss the indictment. This is because the Justice Manual expressly "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." Justice Manual § 1-1.200; see also United States v. Blackley, 167 F.3d 543, 549 (D.C. Cir. 1999) ("[V]iolations of Manual policies by DOJ attorneys or other federal prosecutors afford a defendant no enforceable

---

implications; a case that is urgent or sensitive; or a case that substantially affects the uniform application of the law. A case involving a violation of the federal criminal civil rights laws resulting in death is presumed to be a case of national interest.

Justice Manual § 8-3.130 (emphasis added). And the Justice Manual identifies 18 U.S.C. § 242, which criminalizes the willful deprivation of civil rights under color of law, as a "principal criminal [civil rights] statute[] whose enforcement is overseen by the Civil Rights Division." Justice Manual § 8-3.010.

rights.").  Thus, even if Mr. Sutton obtained discovery that tended to show that former Acting

U.S. Attorney Phillips did not receive prior authorization from the Civil Rights Division before

seeking the indictment in this case, such evidence would not support a dismissal of the

indictment and therefore would be immaterial to his defense.

As Judge Amy Berman Jackson recognized in the <u>Manafort</u> case, regulations like

the Justice Manual "are not substantive rules that create individual rights; they are merely

statements of internal departmental policy."  <u>United States v. Manafort</u>, 312 F. Supp. 3d 60, 75-

79 (D.D.C. 2018) (denying the defendant's motion to dismiss the indictment, which was

premised on the government's alleged violation of the DOJ Special Counsel Regulations); <u>see</u>

<u>also</u> <u>In re United States</u>, 197 F.3d 310, 311, 315-16 (8th Cir. 1999) (quashing two subpoenas of

DOJ officials because the defendant had not made a sufficient showing that the government's

alleged violation of the death penalty protocol, an internal DOJ policy that likely did not create

"any substantive or procedural rights enforceable by a defendant," entitled him to any relief).

And contrary to defense counsel's suggestions at the January 25, 2022 motions hearing, there

appears to be no other use for the requested discovery than to support such a meritless motion to

dismiss.  The government's alleged non-compliance with the Justice Manual would not assist in

"uncovering admissible evidence, aiding witness preparation, corroborating testimony, or

assisting impeachment or rebuttal" because it is irrelevant to the factual allegations of Mr.

Sutton's charges.  <u>United States v. Marshall</u>, 132 F.3d at 68.

Separately, Mr. Sutton relies heavily on Judge Gesell's decision in <u>United States</u>

<u>v. Perholtz</u>, 622 F. Supp. 1253 (D.D.C. 1985), to argue that the Court may permit the requested

discovery to determine whether former Acting U.S. Attorney Phillips was "authorized to sign the

indictment."  Mot. at 5.  But that case does not support Mr. Sutton's broad request for discovery.

Indeed, Perholtz was not even a case resolving a discovery dispute.  There, Judge Gessell

considered the government's motion to permit the grand jury foreman to affix his signature to the

superseding indictment nunc pro tunc when it was discovered that the foreman had inadvertently

failed to sign the superseding indictment after it was returned by the grand jury.  See United

States v. Perholtz, 622 F. Supp. at 1261; see also FED. R. CRIM. P. 6(c) ("The foreperson . . . will

sign all indictments.").  Finding that the omission was "merely an oversight" and a clerical error,

the court permitted the foreman to do so.  See United States v. Perholtz, 622 F. Supp. at 1261-62

(noting that the grand jury foreman's signature is a "formality").[4]  The court went on to explain

that the similar requirement that an indictment be "signed by the attorney for the government"

was also merely a technical requirement that "attests to the authenticity of the indictment and the

prosecutor's concurrence in its return."  Id. at 1262 (quoting FED. R. CRIM. P. 7(c)); see also id.

("[T]echnical challenges to the signature on a valid indictment do not make the indictment

defective.").

Simply put, Perholtz does not support the searching discovery that Mr. Sutton

seeks.  For one, the issues in this case are clearly different – Mr. Sutton does not dispute that the

indictment in this case was properly signed by the grand jury foreperson and former Acting U.S.

Attorney Phillips.  See Indictment at 13.  And insofar as Mr. Sutton relies on Perholtz to argue

that discovery is needed to explore whether the government's alleged failure to comply with the

ministerial dictates of the Justice Manual rendered the indictment invalid, such a reading is

---

[4]     Moreover, the record was clear that the indictment was properly returned by the grand jury, see United States v. Perholtz, 622 F. Supp. at 1261-62 (emphasizing that the superseding indictment was valid, in spite of any technical oversights, because it was "voted by more than twelve ordinary citizens after the actual terms of the indictment were fully presented to them" (citing Gaither v. United States, 413 F.2d 1061, 1066-71 (D.C. Cir. 1969))).

inconsistent with the law, which provides that the Justice Manual sets forth internal department policy, not enforceable individual rights that would support a motion to dismiss the indictment.

To the extent that Mr. Sutton requests grand jury materials in Requests 2 and 3 in support of his planned motion to dismiss, he has not demonstrated a "particularized need" for them under Rule 6(e) of the Federal Rules of Criminal Procedure.  See United States v. Apodaca, 287 F. Supp. 3d at 47.  Materials tending to show that the government was investigating or considering prosecuting Mr. Sutton under 18 U.S.C. § 242 for willful deprivation of federal rights under color of law – which in turn might have triggered the policies of coordination set forth in the Justice Manual – would nevertheless fail to establish a basis for dismissing the indictment.  See FED. R. CRIM. P. 6(e)(3)(E)(ii).  As explained above, the policies set forth in the Justice Manual do not create enforceable rights.  See United States v. Blackley, 167 F.3d at 549. There therefore is no need for Mr. Sutton to have access to grand jury materials that might show the extent of the government's investigation or prosecution of a criminal civil rights statute.  In addition, Mr. Sutton has failed to articulate any need for grand jury material in light of the substantial grand jury material that already has been produced by the government.  See October 5, 2021 Order [Dkt. No. 30] (authorizing the government to produce Rule 6(e) materials to Mr. Sutton and Mr. Zabavsky); see also Opp. to Sutton 2d Mot. at 4.

In sum, Mr. Sutton has failed to demonstrate – under either Rule 16 or Rule 6(e) of the Federal Rules of Criminal Procedure – that he is entitled to discovery regarding the government's alleged failure to comply with Justice Manual policies, specifically, those relating to former Acting U.S. Attorney Phillips's authority to sign the indictment.

2.  Discovery Requests Related to Any Criminal Civil Rights Investigation of Mr.
Sutton's Conduct

At the January 25, 2022 motions hearing, Mr. Sutton for the first time raised a

new basis for his requests for documents.  Focusing on the third count of the indictment for

obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3), Mr. Sutton argues that discovery is

needed to explore whether there ever was a federal civil rights investigation of his alleged

misconduct.  If there was not, he asserts, Count Three of the indictment should be dismissed

because there would be no "federal nexus" between Mr. Sutton's alleged misconduct –

knowingly hindering the collection of evidence and obfuscating the cause and severity of Mr.

Hylton-Brown's injuries – and an impending or ongoing federal criminal civil rights

investigation to support a charge of obstruction of justice.  United States v. Williams, 825 F.

Supp. 2d 128, 137-38 (D.D.C. 2011) (holding that, to convict a defendant of obstruction of

justice, the jury must find that there was a federal nexus, that is, it was "reasonably likely" that a

relevant communication would have been communicated to the authorities).[5]

The argument has no merit.  The defendants are charged with violating 18 U.S.C.

§ 1512(b)(3), which provides:

> Whoever knowingly uses intimidation, threatens, or corruptly
> persuades another person, or attempts to do so, or engages in
> misleading conduct toward another person, with intent to . . .
> hinder, delay, or prevent the communication to a law enforcement
> officer or judge of the United States of information relating to the
> commission or possible commission of a Federal offense . . . shall
> be fined under this title or imprisoned not more than 20 years, or
> both.

---

[5]      Because this argument was raised by Mr. Sutton for the first time at oral
argument, the Court need not consider it.  See United States v. Southerland, 486 F.3d 1355, 1360
(D.C. Cir. 2007); see also Silver v. Internal Revenue Serv., 531 F. Supp. 3d 346, 360 n.5 (D.D.C.
2021) ("[G]enerally, arguments raised for the first time at oral argument are forfeited." (quoting
Physicians for Social Resp. v. Wheeler, 956 F.3d 634, 647 (D.C. Cir. 2020))).  But it will address
the merits nevertheless.

18 U.S.C. § 1512(b)(3) (emphasis added).  By its own terms, the statute criminalizes obstructing

the transmission of information about an actual or <u>potential</u> federal offense to a relevant legal

authority.  <u>See</u> <u>United States v. Ring</u>, 628 F. Supp. 2d 195, 220 (D.D.C. 2009) ("There need only

be 'the <u>possible</u> existence of a federal crime and a defendant's intention to thwart an inquiry into

that crime.'" (quoting <u>United States v. Ronda</u>, 455 F.3d 1273, 1288 (11th Cir. 2006))).  It does

not require that any federal civil rights investigation actually have occurred or that the existence

of one be pled in the indictment.  Thus, by the statute's terms, a prosecution and conviction for

obstruction of justice is not conditioned on a federal civil rights investigation or prosecution ever

coming into fruition.  <u>See</u>, <u>e.g.</u>, <u>United States v. Guadalupe</u>, 402 F.3d 409, 411 (3d Cir. 2005)

(concluding that proving a violation of Section 1512(b)(3) "does not depend on the existence or

imminency of a federal investigation").

        Moreover, the indictment itself does not allege that there ever was a federal civil

rights litigation of Mr. Sutton's conduct.  Rather, it alleges that Mr. Sutton engaged in

misleading conduct with the intent to hinder the communication of information to authorities

who <u>might</u> investigate the matter as a civil rights violation.  <u>See</u> Indictment ¶ 32 (alleging that

Mr. Sutton and Mr. Zabavsky hid from MPD officials "the circumstances of the traffic collision

leading to Karon Hylton-Brown's death, to prevent an internal investigation of the incident and

referral of the matter to federal authorities for a criminal civil rights investigation."); <u>see</u> <u>also</u> <u>id</u>.

¶ 14 (noting that MPD's Internal Affairs Division "is responsible for making referrals to federal

authorities for investigations of potential criminal civil rights violations").  Thus, whether the

U.S. Attorney's Office, the Civil Rights Division, the FBI, or the grand jury in fact investigated

or considered possible violations of 18 U.S.C. § 242, <u>see</u> Sutton 2d Mot. at 1, is not relevant to

the obstruction of justice charge in Count Three.  Discovery regarding the existence of such an

investigation therefore is not material to Mr. Sutton's defense.  See FED. R. CRIM. P. 16(a)(1)(E).

### B.  Mr. Sutton's Third Motion to Compel Discovery

In his third motion to compel discovery, Mr. Sutton requests the production of the

following:

> 1.   Audio recording of the grand jury testimony for all witnesses who testified in the grand jury in relation to this case.
>
> 2.   All recordings of the government's presentation of charges to the grand jury.
>
> 3.   All information relating to the investigation into the Kennedy Street Crew over the last five years, with specific mention of related incidents, related arrests, related charges, and suspected and confirmed members of the Kennedy Street Crew.  All MPD intel and/or bulletins regarding the Kennedy Street Crew.
>
> 4.   All MPD intel regarding threats to Officer Sutton and other Fourth District officers related after Mr. Hylton-Brown's death and up to the present.
>
> 5.   Location of any and all cameras maintained by the MPD and other Law Enforcement Agencies, including FBI, to monitor the Kennedy Street area.  All recordings from these cameras in the government's possession.
>
> 6.   Police video from the riots that occurred outside the MPD's Fourth District Headquarters on October 27-28, 2020.
>
> 7.   All Personnel Performance Management System ("PPMS") reports for all officer witnesses in this case.
>
> 8.   Annual compendium/report of Pursuit Investigations for the past 10 years maintained by MPD Internal Affairs Division ("IAD"), and all IAD Pursuit Investigations for the recent years for which a compendium/report is not available.
>
> 9.   All MPD Form 163s reported by Officer Terrence D. Sutton, Jr., for all time.
>
> 10. All MPD Form 751s for Officer Terence D. Sutton, Jr., for all time.

11. MPD Officer Safety Bulletins for the Fourth District.

12. All documents saved in the G-Drive for every CST [Crime Suppression Team] officer or supervisor on any computer in the CST office prepared between 10:00 p.m. on October 23 to 10:00 p.m. October 24.

Sutton 3d Mot. at 1-2.  For the following reasons, the Court will grant Requests 9, 11, and 12 in part, as limited herein, reserve ruling on Request 8, and deny the remainder of his requests.[6]

1.  Discovery Requests for Audio Recordings of Grand Jury Proceedings

Mr. Sutton seeks to compel two different categories of audio recordings of portions of the grand jury proceedings in this case.  In Request 1, he seeks the audio recordings of all grand jury witness testimony, the written transcripts of which have already been produced by the government.  See Sutton 3d Mot. at 9; Opp. to Sutton 3d Mot. at 3.  Although he acknowledges that "it is not common practice . . . to disclose the audio along with the transcripts," Mr. Sutton argues that the recordings nevertheless should be produced to permit his counsel to "know[] the tone of answers provided in the grand jury and how credible the testifying witnesses sounded in their response."  Sutton 3d Mot. at 10; see also id. at 11 ("The audio will be necessary to prevent the kind of impeachment or rehabilitation which may be unfair to the witness.").  The government concedes in its response that the audio recordings constitute Jencks Act material that will be provided after a corresponding witness testifies in the government's case in chief.  See Opp. to Sutton 3d Mot. at 3-4.  It argues, however, that the immediate

_____

[6]     In its response to Request 10, the government noted that it previously produced Mr. Sutton's "entire employment file from MPD," which should have included all of his Form 751s.  Opp. to Sutton 3d Mot. at 11; see also Opp. to Sutton Mot. for BOP at 10 (noting the government produced "training records for both defendants . . . , which includes training they would have received about how to engage in a vehicular pursuit, investigate a crime scene, and how the use of force can trigger a federal criminal civil rights investigation").  Given this representation, the government suggested that the request need not be "compelled by the Court at this time."  Reply ISO Sutton 3d Mot. at 2 n.1.  The Court therefore will not address Request 10.

disclosure of the recordings is unnecessary and inconsistent with the Jencks Act.  See id.

Moreover, the government argues that the production of the recordings would be "extremely

burdensome" because they also capture privileged conversations of government counsel that

would require substantial effort to redact.  Id.  In reply, Mr. Sutton argues that the apparent

burden in redacting privileged information is an insufficient reason not to produce the audio

recordings and that immediate disclosure is necessary "so the defense has equal strategic

understanding of these witnesses' testimony."  Reply ISO Sutton 3d Mot. at 4.[7]

   The Court will deny Request 1, which effectively ignores the applicable legal

standards governing the disclosure of witness statements.  Rule 16 of the Federal Rules of

Criminal Procedure expressly "does not authorize the discovery or inspection of statements made

by prospective government witnesses except as provided by the Jencks Act, 18 U.S.C. § 3500."

United States v. Safavian, 233 F.R.D. at 15-16 (citing FED. R. CIM. P. 16(a)(2)); see also 18

U.S.C. § 3500(a) ("In any criminal prosecution brought by the United States, no statement or

report in the possession of the United States which was made by a Government witness or

prospective Government witness (other than the defendant) shall be the subject of subp[o]ena,

discovery, or inspection until said witness has testified on direct examination in the trial of the

case." (emphasis added)).  To overcome this bar – and to compel the disclosure of witness

statements before trial – a defendant must demonstrate that "(1) portions of those statements

---

[7]   To the extent that the government argues that the audio recordings are not
discoverable because their production would require burdensome redaction of privileged
conversations, such a concern cannot overcome a party's legitimate request for material
discovery.  See United States v. O'Keefe, Criminal No. 06-0249, 2007 WL 1239204, at *2
(D.D.C. Apr. 27, 2007) ("[B]urdensomeness and logistical difficulty – while factors to be
considered both by defendants in framing discovery requests and by courts in resolving
discovery disputes – cannot drive the decision whether items are 'material' to preparation of the
defense.").  But, as discussed herein, there is no such legitimate request here.

contain the substance of any relevant written or oral statements made by the defendant that are disclosable under Rule 16(a)(1)(A) or (B); or (2) they are exculpatory or favorable, so-called Brady material." United States v. Safavian, 233 F.R.D. at 16. Neither of these exceptions applies here. See United States v. Sitzmann, 74 F. Supp. 3d 128, 140 (D.D.C. 2014) (denying request for grand jury testimony where neither exception to Rule 16 applied). Mr. Sutton has not demonstrated that he is entitled to the audio recordings of the grand jury testimony under Rule 16 or that it constitutes exculpatory or impeachment material under Brady or Giglio v. United States, 405 U.S. 150, 154-55 (1972).

In Request 2, Mr. Sutton seeks the audio recordings of the government's presentation of claims before the grand jury, arguing that the audio recordings are necessary to permit him (and the Court) to understand the government's theory of the case and "how it intends to prove the[] counts" of the indictment. Reply ISO Sutton 3d Mot. at 6-7. By illuminating the "unusual nature of this case," he continues, such discovery "could serve as grounds for dismissal" of Mr. Sutton's charges. Sutton 3d Mot. at 13. Mr. Sutton recognizes that under Rule 6(e) of the Federal Rules of Criminal Procedure he must demonstrate a "particularized need" that "outweighs the strong interest in maintaining the secrecy of the grand jury proceedings." United States v. Naegele, 474 F. Supp. 2d at 10 (internal quotation omitted). The government's explanation of its case to the grand jury is immaterial to Mr. Sutton's ability to bring a motion to dismiss the indictment or to mounting a defense. See United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 107 (D.D.C. 2012) (noting that "[t]he operative question [for a motion to dismiss the indictment] is whether the allegations [in the four corners of the indictment], if proven, would be sufficient to permit a jury to find that the crimes charged were committed"); see also United States v. Apodaca, 287 F. Supp. 3d at 49-50 (denying motion for in

camera review of grand jury materials where "the indictment has already been deemed facially valid, which undermines [the defendant's] theory that the grand jury instructions may have been incomplete"); United States v. Trie, 23 F. Supp. 2d 55, 62 (D.D.C. 1998) (denying request for disclosure of instructions to the grand jury where "the indictment is facially valid"; "the mere suspicion that the grand jury may not have been properly instructed with respect to [a] legal definition . . . is insufficient to establish that [the defendant] is entitled . . . to disclosure of grand jury materials"). Mr. Sutton has given the Court no reason why the audio recordings – let alone the written transcripts – of the government's presentation of charges to the grand jury would be central or even relevant to a motion to dismiss the indictment. The Court will deny Request 2.[8]

### 2.  Discovery Requests Related to the Kennedy Street Crew

Mr. Sutton also requests information relating to the investigation of the Kennedy Street Crew, a local street gang of which Mr. Hylton-Brown allegedly was a member. See Sutton Mot. for BOP at 3 (suggesting that local MPD officers knew of Mr. Hylton-Brown's "participation in the Kennedy Street Crew's drug enterprise"). In Request 3, Mr. Sutton seeks all available information regarding the Kennedy Street Crew and its activities during the past five years; and in Request 5, he seeks information about and recordings of police video surveillance of the area in which the Kennedy Street Crew operates. See Sutton 3d Mot. at 16-18. He also seeks, through Request 11, general safety bulletins about the Fourth District, the police district in which the incident occurred. See id. at 16-17.

---

[8]     To the extent that Mr. Sutton argues that these audio recordings are necessary to understand how the government intends to prove the existence of a federal civil rights investigation, see Sutton 3d Mot. at 13, the Court has already explained that such a question is immaterial to Mr. Sutton's defense. See supra Section III.A.2.

The government represents that it will produce materials responsive to Request 3 to the extent that they implicate Mr. Hylton-Brown, but it opposes producing anything else, asserting that "[g]eneral investigative information about the Kennedy Street Crew . . . is wholly irrelevant to the defendant's driving decisions on the night of th[e] incident."  Opp. to Sutton 3d Mot. at 6.  In response, Mr. Sutton argues that information about the Kennedy Street Crew is "necessary to appropriately contextualize officers' [and presumably Mr. Sutton's] judgments and decisions in interacting with the KDY crew."  Reply ISO Sutton 3d Mot. at 7; see Sutton 3d Mot. at 17.

Having carefully considered the case law governing second degree murder in the District of Columbia, which both parties agree is at issue in Request 3, the Court concludes that general investigative information about the Kennedy Street Crew is not "material" to the defense and therefore not discoverable.  See FED. R. CRIM. P. 16(a)(1)(E)(i).  Under D.C. law, "[w]however with malice aforethought . . . kills another, is guilty of murder in the second degree."  D.C. Code § 22-2103; see also Jones v. United States, 828 A.2d 169, 180 (D.C. 2003) ("The elements of second-degree murder . . . are (1) that the defendant inflicted an injury or injuries upon the deceased from which the deceased died; (2) that the defendant, at the time he so injured the deceased, acted with malice; and (3) that the defendant did not injure the deceased in the heat of passion caused by adequate provocation.").  "Malice aforethought" can be satisfied in one of four ways.  See Jennings v. United States, 993 A.2d 1077, 1080 (D.C. 2010).  As relevant here, the government alleges – and may prove – that Mr. Sutton acted with malice aforethought because he subjectively knew that his conduct "created an extreme risk of death or serious bodily injury, but engaged in that conduct nonetheless."  Williams v. United States, 858 A.2d 984, 998 (D.C. 2004) (quoting Comber v. United States, 584 A.2d 26, 39 & n.12 (D.C. 1990) (en banc));

20

see also Indictment ¶ 29 (alleging that Mr. Sutton "act[ed] with conscious disregard of an extreme risk of death or serious bodily injury to Karon Hylton-Brown"). "[M]alice 'may be found where conduct is reckless and wanton, and a gross deviation from a reasonable standard of care, or [of] such a nature that a jury is warranted in inferring that the defendant was aware of a serious risk of death or serious bodily harm.'" Comber v. United States, 584 A.2d at 39 (quoting Logan v. United States, 483 A.2d 664, 671 (D.C. 1984)); accord Wilson-Bey v. United States, 903 A.2d 818, 838 n.36 (D.C. 2006).

General investigative information about the Kennedy Street Crew is not relevant to determining whether Mr. Sutton acted with conscious disregard of a serious risk of death or serious bodily harm when he allegedly chased Mr. Hylton-Brown through back alleyways at high speeds, leading to Mr. Hylton-Brown's death. The conduct of the Kennedy Street Crew is wholly unrelated to Mr. Sutton's subjective knowledge of whether he was driving dangerously on the night of the incident. Nor do the general activities of the Kennedy Street Crew or investigations of it alter the reasonable standard of care applicable to Mr. Sutton such that his alleged conduct would be less of a "gross deviation" than otherwise. Jennings v. United States, 993 A.2d at 1080 (quoting Comber v. United States, 584 A.2d at 39).[9] Thus, rather than appropriately "contextualiz[ing]" the actions of Mr. Sutton on the night in question, Reply ISO

---

[9]      Discovery about the Kennedy Street Crew is equally irrelevant to whether the death of Mr. Hylton-Brown was "justified, excused, or committed under recognized circumstances of mitigation." Comber v. United States, 584 A.2d at 40-41 ("The absence of justification, excuse, or mitigation is . . . an essential component of malice, and in turn of second-degree murder, on which the government bears the ultimate burden of persuasion."). Even assuming that Mr. Hylton-Brown was a member of the Kennedy Street Crew, Mr. Sutton offers no argument – and the Court can think of none – that would justify or excuse a reckless disregard for Mr. Sutton's life because of the unrelated, prior conduct of other gang members.

Sutton 3d Mot. at 7, discovery about the activities of the Kennedy Street Crew would produce nothing related to the proper issues before the Court and the jury.

Similarly, Mr. Sutton's Request 5 is overbroad to the extent that it seeks recordings from "any and all cameras" maintained by law enforcement to monitor the Kennedy Street area, without any restrictions as to time or subject matter.  Sutton 3d Mot. at 17-18.  The government has represented that it already has "collected and disclosed all video footage of th[e] incident of which the government is aware, including law enforcement cameras," Opp. to Sutton 3d Mot. at 6-7, and Mr. Sutton makes no attempt to demonstrate how any other video evidence of the Kennedy Street area on unspecified days and nights, including the location of law enforcement video cameras, would alter the "quantum of proof" in any way, let alone "in his favor."  United States v. Apodaca, 287 F. Supp. 3d at 39 (quoting United States v. Libby, 429 F. Supp. 2d 1, 7 (D.D.C. 2006)).  The Court therefore will deny Request 5 in full.

3.  Discovery Requests for Impeachment Materials for Police Officer Witnesses

Through Request 7, Mr. Sutton seeks the immediate production of the personnel data – specifically, the Personnel Performance Management System ("PPMS") reports – of all officer witnesses in this case.  See Sutton 3d Mot. at 10-11; see generally United States v. Kingsbury, 325 F. Supp. 3d 158, 160 (D.D.C. 2018) (describing PPMS data); Buie v. District of Columbia, 327 F.R.D. 1, 6 n.2 (D.D.C. 2018) (same).  Both he and the government agree that PPMS data is generally treated as impeachment material that "is usually disclosed close to trial or before a particular witness testifies in a hearing."  Sutton 3d Mot. at 11; see Opp. to Sutton 3d Mot. at 10-11; see also Giglio v. United States, 405 U.S. at 154-55; LCrR 5.1(c) ("As impeachment information . . . [is] dependent on which witnesses the government intends to call at trial, . . . the government [need not] disclose such information before a trial date is set.").

22

Mr. Sutton argues that the government should disclose officer witnesses' PPMS data now, however, because the government relied on "various officers' opinions . . . to support its theory of prosecution [in presenting its case] to the grand jurors" and because the impeachment material "will be relevant to the defense's impending Motion to Dismiss to the extent the government intends to rely on officers' testimony." Sutton 3d Mot. at 11. Neither of these arguments is persuasive. The government's burden to establish probable cause before the grand jury is independent of its ultimate burden to prove guilt beyond a reasonable doubt at trial. See United States v. Sells Eng'g, Inc., 463 U.S. 418, 423 (1983) (noting that the grand jury "serves the dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions" (internal quotation omitted)). The fact that the government relied on officer testimony to establish probable cause before the grand jury does not alone make impeachment evidence pertaining to that testimony "material to preparing the defense" for trial. FED. R. CRIM. P. 16(a)(1)(E)(i). And a motion to dismiss the indictment requires a court to accept the facts alleged in the indictment as true to assess the adequacy of the indictment "on its face," United States v. Bowdoin, 770 F. Supp. 2d 142, 145-46 (D.D.C. 2011), so the credibility of any officer witness testimony is immaterial to resolving such a motion. The Court will deny Request 7.

### 4.  Discovery Requests Related to Historical MPD Records

Mr. Sutton also seeks the production of internal MPD records that he argues would provide historical context to Mr. Sutton's actions. See Sutton 3d Mot. at 13-18. Although his arguments in support of these requests are meandering and without support from any case law whatsoever, the Court will grant Requests 9 and 11 in part. In addition, for the reasons described herein, the Court will reserve ruling on Request 8.

In Request 8, Mr. Sutton seeks the annual compendiums and reports of "pursuit investigations" prepared by MPD's Internal Affairs Division from the past ten years as well as any other IAD pursuit investigations from that time period that were not compiled into such compendiums or reports.  Sutton 3d Mot. at 13-16; Reply ISO Sutton 3d Mot. at 8-10.  He asserts that these documents, which detail police investigations of officer-involved pursuits, illustrate "[h]ow the various elements of fact in this case are historically viewed by [MPD]."  Sutton 3d Mot. at 15.  The government responds that Mr. Sutton misconstrues the charges against him, which do not require an "evaluation of his conduct relative to other officers throughout history," and that, in any event, Mr. Sutton "had no knowledge" of these reports.  Opp. to Sutton 3d Mot. at 7-8.

Second degree murder "can only be found where the perpetrator of the act [himself] 'was subjectively aware that his or her conduct created an extreme risk of death or serious bodily injury, but engaged in that conduct nonetheless.'"  Jennings v. United States, 993 A.2d at 1080 (quoting Comber, 584 A.2d at 39).  This in turn "may be shown by a 'gross deviation from a reasonable standard of care' or by other acts that may lead the finder of fact to determine that the 'defendant was aware of a serious risk of death or serious bodily harm.'"  Id. (quoting Comber, 584 A.2d at 39).  In the Court's view, the IAD pursuit investigations may be relevant only insofar as they were accessible to Mr. Sutton and may have informed his subjective awareness of the risk of death or serious bodily injury to third persons from other officer pursuits in comparable circumstances.

What is not clear, however, is the extent to which the various documents requested – IAD pursuit investigations and any annual compendiums or reports thereof from the ten years prior to October 23, 2020 – would have been accessible to Mr. Sutton.  On the one

hand, the government suggests that these documents are confidential and not generally shared with MPD officers, and it argues that Mr. Sutton therefore could not have been aware of their contents.  See Opp. to Sutton 3d Mot. at 8.  On the other hand, Mr. Sutton asserted at the April 13, 2022 status conference that the IAD used to publish the annual compendiums and reports of IAD pursuit investigations on an internal website accessible to MPD officers, including Mr. Sutton.  Because the parties have provided scant explanation and no evidence in support of their conflicting views, the Court will seek additional briefing from the parties on this issue in order to determine which of these requested documents, if any, were reasonably accessible to Mr. Sutton.

Mr. Sutton also seeks through Request 9 copies of all MPD Form 163s – reports prepared by MPD officers that recount arrests – that he has prepared throughout his career as an MPD officer.  See Sutton 3d Mot. at 18.  The Court agrees with the government that Mr. Sutton's "investigative integrity as an officer" is not at issue in this case.  Id.; see Opp. to Sutton 3d Mot. at 7.  But Mr. Sutton is correct that these reports might be relevant to the extent that they "would illustrate [his] standard for report drafting."  Reply to Sutton 3d Mot. at 10.   Pertinent to the charges of conspiracy and obstruction of justice, the government alleges that Mr. Sutton acted to hide the circumstances of Mr. Hylton-Brown's death by, among other things, "draft[ing] a traffic crash report that minimized the extent of the observable injuries to Hylton-Brown."  Indictment ¶ 47.  Although the government's contention that Mr. Sutton knowingly obfuscated his role in Mr. Hylton-Brown's death turns on significantly more than the preparation of a police report, see id. ¶¶ 34-46, 48, Mr. Sutton's prior reports may elucidate whether the report at issue was consistent in terms of quality with his prior work product or whether it uncharacteristically "minimized" important details.  The Court will grant Request 9 in part to require the government to produce Mr. Sutton's MPD Form 163s from the five years prior to October 23, 2020.

In Request 11, Mr. Sutton seeks "MPD Officer Safety Bulletins for the Fourth District," the police district where Mr. Sutton was assigned.  Sutton 3d Mot. at 16-17; <u>see</u> Indictment ¶ 6.  Mr. Sutton argues that these safety bulletins, which presumably updated officers about developments in the police district, are relevant because they informed officers' "practices and judgments," Sutton 3d Mot. at 17, and they "combat the government's characterization" that Mr. Sutton pursued Mr. Hylton-Brown "solely for the purpose of issuing a traffic ticket."  Reply ISO Sutton 3d Mot. at 10.  To the extent Mr. Sutton was aware of the contents of any specific bulletins, officer safety bulletins setting forth MPD standard practices and alerting officers to specific incidents and dangers in the community may possibly have influenced Mr. Sutton's decision to pursue Mr. Hylton-Brown for "[d]riving a moped on the sidewalk and riding a moped without a helmet."  Indictment ¶ 10.  These safety bulletins may also have affected Mr. Sutton's judgment regarding the manner and speed with which he pursued Mr. Hylton-Brown and whether he was "aware of a serious risk of death or serious bodily harm."  <u>Jennings v. United States</u>, 993 A.2d at 1080 (internal quotation omitted).  Such bulletins, however, are only relevant to the extent that they were accessible to Mr. Sutton leading up to the night of the incident – so that he may have been aware of their contents – and therefore reasonably may have influenced his conduct.[10]  With the understanding that the officer safety bulletins were made available to all officers, the Court will grant Request 11 in part to require the government to produce all MPD officer safety bulletins for the Fourth District from the year prior to October 23, 2020.

---

[10]     The extent of Mr. Sutton's knowledge of the officer safety bulletins' contents, and whether they in fact informed his conduct, can be explored during direct and cross-examination of Mr. Sutton at trial.

5.  Discovery Requests Related to Threats and Protests in Response to the
Incident

Mr. Sutton seeks discovery related to incidents that occurred in the wake of Mr.

Hylton-Brown's death.  See Sutton 3d Mot. at 17.  First, in Request 4, he seeks "MPD intel

regarding threats to Officer Sutton and other Fourth District officers related after Mr. Hylton-

Brown's death."  Id.  Second, in Request 6, he seeks video of anti-police protests that occurred

outside of MPD Fourth District headquarters in response to Mr. Hylton-Brown's death.  See id.

The government concedes that the requested materials, to the extent that they reveal that "any

government trial witness was involved in [such] activity in a manner that resulted in an arrest, a

conviction, or in a fashion that suggests bias against the defendants (or in favor of the

government)," are impeachment material that would be disclosed before trial.  Opp. to Sutton 3d

Mot. at 9; see also LCrR 5.1(c).  It objects to the remainder of the requests as "wholly irrelevant

to any defense for the charged crimes."  Opp. to Sutton 3d Mot. at 9.

The Court agrees with the government and therefore will deny Requests 4 and 6.

Individual and community responses to Mr. Hylton-Brown's death – even those that are

unquestionably criminal – are not relevant to whether Mr. Sutton committed second degree

murder or obstructed justice.  See Indictment ¶¶ 29, 31, 50; see also FED. R. EVID. 401

("Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it

would be without the evidence; and (b) the fact is of consequence in determining the action.").

Perhaps Mr. Sutton is correct that threats to police officers may shed light on "the relationship

between law enforcement and [Kennedy Street Crew] members."  Sutton 3d Mot. at 10.  But, as

noted above, see supra Section III.B.2, that background information does not make it more or

less likely that Mr. Sutton was acting with wanton disregard of human life, that he caused the

death of Mr. Hylton-Brown, or that he thwarted an inquiry into a potential federal offense.  See

27

Jennings v. United States, 993 A.2d at 1080; United States v. Ring, 628 F. Supp. 2d at 220.[11]

The only relevance is the impact this information may have on the credibility of witnesses the

government calls at trial.

6. Discovery Requests for Documents Saved on Police Computers the Night of
the Incident

Finally, in Request 12, Mr. Sutton seeks all electronic documents saved on the 13

computers housed in the MPD office that were prepared during the 24-hour period between

10:00 p.m. on October 23, 2020, and 10:00 p.m. on October 24, 2020.  See Sutton 3d Mot.

at 11-12.  In his view, all of these files – no matter who prepared them or when they were

prepared – are relevant because they would establish whether anyone other than Mr. Sutton

"ma[d]e contributions to the report."  Id. at 12; see also Reply ISO Sutton 3d Mot. at 8.  The

Court agrees that, to the extent that the government attempts to prove the obstruction of justice

and conspiracy charges using the allegedly misleading police report, the prosecution must prove

that Mr. Sutton was in fact its author (i.e., that the allegedly false and misleading statements were

his).  See United States v. Hawkins, 185 F. Supp. 3d 114, 124 (D.D.C. 2016) (noting that, "[t]o

prove a violation of § 1512(b)(3), the government must establish beyond a reasonable doubt that

the defendant knowingly and willfully . . . engaged in misleading conduct toward another

person" (quoting United States v. Veal, 153 F.3d 1233, 1253 (11th Cir. 1998), overruled on other

grounds by Fowler v. United States, 563 U.S. 668 (2011))).  Nevertheless, Mr. Sutton's request

---

[11]     Mr. Sutton also claims that the video of the anti-police protests should be
produced to permit him "to identify any witnesses he would seek to interview prior to trial."
Sutton 3d Mot. at 10-11.  Such a blatant "fishing expedition," without even the barest of
explanations as to how protesters may have any relevant information about the government's
charges against Mr. Sutton, will be denied.  See United States v. Palfrey, 530 F. Supp. 2d 343,
344-45 (D.D.C. 2008) (quashing subpoenas that sought telephone records to identify individuals
who "could be" witnesses).

is overbroad because it would sweep in numerous files unrelated to that purpose.  The Court

therefore will grant Request 12 in part to require the government to search for and produce any

files that might tend to show that someone other than Mr. Sutton contributed to or altered the

allegedly misleading police report.[12]

### C.  Mr. Zabavsky's Motion to Compel Discovery

In his motion to compel discovery, Mr. Zabavsky requests that the government

produce:

1.  Any and all electronic files related to this case, including:

   a.  Files generated by the Total Station's data collector;
   b.  All computed-aided design files generated;
   c.  All electronic raw and processing files from any Leica 3D
   scanner, Cyclone, and Faro scanner, if used;
   d.  All electronic files created by any device during any
   acceleration testing;
   e.  All electronic files and paper printouts created from any
   and all computer programs or devices during your investigation
   and analysis in this case;
   f.  All digital photographs taken during the investigation in this
   case;
   g.  All field notes; and
   h.  Electronic imaging files and reports of any Air Bag Control
   Module or Powertrain Control Module, if used.

2.  Any and all handwritten notes and papers related to this case,
   including handwritten field notes created during the on-scene
   investigation and testing, handwritten papers or notes produced
   during the investigation and analysis of this case, and all detailed
   and supplemental reports prepared during the investigation and
   analysis of this case.

3.  The names, titles, and phone numbers of each person involved
   in investigating the incident from the Department of Justice's Civil

---

[12]      In its opposition, the government noted that "[t]he defense has been provided with
the accounts of two witnesses . . . that establish that defendant Sutton wrote the draft report."
Opp. to Sutton 3d Mot. at 8-9.  Mr. Sutton's point is that he may not have been the <u>only</u> one to
have contributed to the report.  It may very well be the case that there are no files that support
Mr. Sutton's speculation, but the government must produce any that it may find.

Rights Division, including a description of the investigative role of
each person, the time each person was made aware of the
investigation, and the time period each person worked on the
investigation.

4.   The names, titles, and phone numbers of each person involved
in investigating the incident from the Metropolitan Police
Department's Internal Affairs, including a description of the
investigative role of each person, the time each person was made
aware of the investigation, and the time period each person worked
on the investigation.

5.   All reports related to Major Crash Section investigations over
the last five years, including details of when the incidents occurred,
when Major Crash Section was notified of these crashes, and how
long after any crash an ambulance was called.

6.   All reports related to Department of Justice Civil Rights
Investigations in the last five years that involved vehicular pursuits
or homicides, including details of when the incident that led to the
investigation occurred, when the Civil Rights Division was
informed, and when the Civil Rights Division's investigation
began.

7.   Any and all evidence or testimony that could support the
positions taken by Andrew Zabavsky in this case, or challenge the
positions taken by the Government.

See Zabavsky Mot. at 1-3; see also Opp. to Zabavsky Mot. at 3 (summarizing the categories of

electronic data sought in Request 1).  For the following reasons, the Court will deny Mr.

Zabavsky's motion to compel discovery in full.

### 1.   Discovery Requests for "All Electronic Files" and "All Handwritten Notes and Papers"

First, in Requests 1 and 2, Mr. Zabavsky seeks "[a]ny and all electronic files" and

"[a]ny and all handwritten notes and papers" related to this case.  Zabavsky Mot. at 1-2.  In an

effort to "narrow" the scope of his requests, he enumerates particular types of electronic files and

handwritten papers that he seeks, including electronic "scanning" data of the crime scene,

vehicle data from Mr. Sutton's and Mr. Zabavsky's police cars from the night of Mr. Hylton-

Brown's death, photographs and field notes taken during the on-scene investigation, and handwritten notes taken during the investigation and analysis of the case.  See id.; see also Opp. to Zabavsky Mot. at 3-5.  In support these requests, Mr. Zabavsky notes only that vehicle data "will help the defense determine the veracity of the government's claims about the speed of each vehicle at the time of collision, the location of each vehicle, and more."  Zabavsky Mot. at 4.

In response, the government notes that it has already provided Mr. Zabavsky with substantial discovery responsive to his requests.  See Opp. to Zabavsky Mot. at 3-5.  According to the government, and uncontested by Mr. Zabavsky, the government has produced "substantial, if not full discovery related to Leica [laser] scans taken at the crash scene, including all raw and technical data"; "all available data for the unmarked MPD vehicle driven by defendant Terrence [sic] Sutton, entailing a report generated by the vehicle 'black box'"; "all digital photographs and electronic versions of notes taken by police officers"; and "virtually every discoverable report, note, and witness statement . . . , [including] the reports and handwritten field notes of on-scene police officers and Department of Forensic Sciences field technicians, supplemental reports created by officers and investigating agents, notes and reports of witness interviews, and grand jury transcripts."  Id.; see also Opp. to Sutton Mot. for BOP at 10 (noting that the government has produced "[body worn camera], radio recordings, surveillance video, and GPS data to understand how the vehicular pursuit, crash, subsequent investigation, and assignment of report-writing transpired; . . . statements from other officers concerning the nature of the on-scene investigation and updates the defendants received from an officer at the hospital about Mr. Hylton-Brown's rapidly deteriorating medical condition . . . ; the BWC audit logs for the officers involved in the collision showing when they accessed key BWC recordings in the aftermath of

the crash; and statements from the defendants' watch commander concerning the lack of information he received from the defendants concerning this incident").[13]

Insofar as the government has already provided substantial discovery in response to Mr. Zabavsky's enumerated requests, Requests 1 and 2 are denied as moot.  See United States v. Oseguera Gonzalez, 507 F. Supp. 3d 137, 169-70 (D.D.C. 2020) (denying discovery requests as moot where the "defendant ha[d] already received extensive discovery . . . relevant to the issue of notice" and the government represented it would produce any additional relevant evidence "if it [wa]s ever identified"); see also Pinson v. U.S. Dep't of Just., Civil Action No. 12-1872, 2017 WL 6883924, at *1 (D.D.C. June 26, 2017) (denying motions to compel discovery as moot where the government agreed to produce responsive discovery).  Comparing Mr. Zabavsky's enumerated requests and the government's representations, there seem to be no requests for electronic files and handwritten papers that have not been complied with by the government.  For each of Mr. Zabavsky's requests for any electronic files or handwritten papers pertaining to the crash, the immediate police response, and the subsequent investigation, the government represents that it has produced materials responsive to each of them, including investigative materials from the crash site – like body-worn camera footage, photos, technical vehicular data, and computer-generated images and models that recreate the incident – as well as

---

[13]     The government also represents that both Mr. Sutton's and Mr. Zabavsky's police vehicles "will be made available to the defense for inspection."  Opp. to Zabavsky Mot. at 4.  On April 12, 2022, Mr. Sutton filed a sixth motion to compel discovery, arguing that the government had failed to schedule a date on which the defendants could inspect the vehicles.  See Mr. Sutton's Sixth Motion to Compel Disclosure of Requested Discovery [Dkt. No. 153] at 1.  At the April 13, 2022 status conference, the government represented that it will make the vehicles available to the defendants within the next few months after finalizing the logistics for doing so.

responding officers' and investigators' notes and analysis of the case.  See Opp. to Zabavsky

Mot. at 3-5.  The Court therefore will deny Requests 1 and 2.[14]

### 2.  Discovery Requests for Information About Persons Involved in Investigating the Incident

In Requests 3 and 4, Mr. Zabavsky seeks the identities of and information about

any individuals from the Department of Justice Civil Rights Division or the MPD Internal

Affairs Division who investigated the death of Mr. Hylton-Brown.  See Zabavsky Mot. at 5.[15]

Like Mr. Sutton, Mr. Zabavsky argues that this information is "material" to his defense because

he has been indicted for allegedly obstructing "the investigation that ultimately brought charges

against him."  Id.  This misconstrues the charges against Mr. Zabavsky, which allege not that he

obstructed an ongoing investigation of Mr. Hylton-Brown's death but that he "prevent[ed] an

internal investigation of the incident and referral of the matter to federal authorities for a criminal

civil rights investigation."  Indictment ¶¶ 32, 50.  As discussed at length, see supra Section

III.A.2, the government does not allege – and the conspiracy and obstruction of justice charges

contained in the indictment do not require – the existence of any IAD or DOJ investigation.

Therefore, even assuming that the IAD or DOJ did ultimately investigate the death of Mr.

---

[14]     If Mr. Zabavsky identifies any yet unproduced categories of electronic files or handwritten notes or papers to which he believes he is entitled, he of course may request their production and would bear the burden of demonstrating how they would be "material to preparing [his] defense."  FED. R. CRIM. P. 16(a)(1)(E)(i); see also United States v. Slough, 22 F. Supp. 3d at 4-5 (observing that the movant bears the burden of demonstrating that the requested discovery bears "more than some abstract logical relationship to the issues in the case" (internal quotation omitted)).

[15]     The government represents that the identities of the IAD investigators involved in this case have already been revealed through "the production of unredacted reports, notes, and other investigative materials, which includes the investigators' names," Opp. to Zabavsky Mot. at 7, rendering those portions of Mr. Zabavsky's requests that seek that already-disclosed material moot.  See United States v. Oseguera Gonzalez, 507 F. Supp. 3d at 170.

Hylton-Brown for potential federal civil rights violations, details about those investigations are irrelevant to the charges in this case and therefore are not "material to preparing the defense." FED. R. CRIM. P. 16(a)(1)(E)(i).  The Court therefore will deny Requests 3 and 4.

       3.  Discovery Requests for Investigation Reports of Arguably Analogous Cases

          Through Requests 5 and 6, Mr. Zabavsky asks for all MPD Major Crash Section investigations and all DOJ Civil Rights Division investigations from the last five years involving "vehicular pursuit or homicides."  Zabavsky Mot. at 5-6.  In other words, Mr. Zabavsky seeks discovery relating to law enforcement investigations of accidents entirely unrelated to the death of Mr. Hylton-Brown.  He asserts that these reports are material to preparing his defense because they "could be used to help establish that [he] was acting within the norm of his profession during the incident in question."  Id. at 6.

          The Court does not see how that could be so.  Mr. Zabavsky "was a lieutenant [who] supervised the Fourth Police District's CST [Crime Suppression Team] officers," Indictment ¶ 7, not a member of the MPD Major Crash Section or the DOJ Civil Rights Division. It is unclear how investigative reports prepared by the MPD Major Crash Section or the DOJ Civil Rights Division – distinct law enforcement agencies with distinct investigative duties – would have influenced Mr. Zabavsky's independent obligations to collect and preserve evidence and to accurately report the circumstances of an officer-involved death.

          Moreover, Mr. Zabavsky is charged with conspiracy and obstruction of justice for his individual conduct "to prevent an internal investigation of the incident and referral of the matter to federal authorities for a criminal civil rights investigation," including "[d]elaying notification of the traffic collision to MPD officials and, in turn, federal authorities," "[w]illfully neglecting to collect and preserve relevant evidence" of the traffic crash scene, and

"[w]ithholding information from the [MPD] Watch Commander and misleading him about the circumstances of the traffic collision."  Id. ¶¶ 32-33, 50.  The investigative reports of unrelated vehicular incidents, each with their own unique facts, would not help Mr. Sutton to rebut any of the government's allegations specific to the circumstances of Mr. Hylton-Brown's death.  See United States v. Apodaca, 287 F. Supp. 3d at 39 ("[T]he government must disclose Rule 16 evidence only if such evidence enables the defendant significantly to alter the quantum of proof in his favor.").  The Court will deny Requests 5 and 6.

### 4.  Discovery Requests for Brady Material

Finally, in Request 7, Mr. Zabavsky seeks the production of all exculpatory material.  Zabavsky Mot. at 6.  He concedes that his request "is a mere statement of a request for Brady materials which the government was previously required to turn over to the defense" that is "potential[ly] moot[]."  Id.; Reply ISO Zabavsky Mot. at 5; see also Transcript of September 24, 2021 Arraignment [Dkt. No. 33] at 10:13-19 (warning the government of its obligation to "turn over all exculpatory evidence").  The United States is already subject to an ongoing duty to disclose exculpatory material (including impeachment material) to Mr. Zabavsky "as soon as reasonably possible after its existence is known, so as to enable the defense to make effective use of the disclosed information in the preparation of its case."  LCrR 5.1(a).  Because Mr. Zabavsky's request seeks only to enforce a preexisting duty of the United States, it will be denied as moot.  See United States v. Oseguera Gonzalez, 507 F. Supp. 3d at 170.[16]

---

[16]     As the United States acknowledges, the obligation to "provide potentially exculpatory material . . . is an ongoing one to which the government [must] continue to abide."  Opp. to Zabavsky Mot. at 8; see United States v. Safavian, 233 F.R.D. at 16.

IV.  CONCLUSION

For the reasons set forth in this Opinion, the Court will DENY Mr. Sutton's

Second Motion to Compel Discovery [Dkt. No. 40]; GRANT IN PART and DENY IN PART

Mr. Sutton's Motion to Compel Disclosure of Requested Discovery [Dkt. No. 122]; and DENY

Mr. Zabavsky's First Motion to Compel Disclosure of Requested Discovery [Dkt. No. 130].  An

Order consistent with this Opinion shall issue this same day.

SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  April 22, 2022