UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 21-0598-1 (PLF) |
| TERENCE SUTTON, | ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM OPINION AND ORDER

Defendant Terence Sutton has filed a motion for reconsideration of a portion of this Court's opinion granting in part and denying in part Mr. Sutton's third motion to compel discovery. See Mr. Sutton's Motion for Reconsideration of the Court's Order of April 22, 2022, and Supplemental Brief in Response to Order ("Sutton Mot. for Reconsideration") [Dkt. No. 171]. In its April 22, 2022 opinion, the Court reserved ruling on the question whether certain MPD Internal Affairs Division ("IAD") pursuit investigations were discoverable under Rule 16 of the Federal Rules of Criminal Procedure, reasoning that the pursuit investigations may be "material" to preparing Mr. Sutton's defense only to the extent that they were reasonably accessible to him before October 23, 2020, and therefore may have influenced his state of mind while pursuing Mr. Hylton-Brown. See United States v. Sutton, Criminal No. 21-0598, 2022 WL 1202741, at *11-12 (D.D.C. Apr. 22, 2022). Mr. Sutton now argues that the IAD pursuit investigations are discoverable for a different reason: because they are relevant to establishing the applicable standard of care that a "reasonably prudent police officer" must exercise. See Sutton Mot. for Reconsideration at 2-3.

After careful consideration of the parties' arguments, the applicable case law, and the entire record in this case, the Court will grant in part Mr. Sutton's motion for reconsideration and order the government to produce all IAD vehicular pursuit investigations from the five years prior to October 23, 2020, subject to the confidentiality considerations discussed below.[1]

## I. BACKGROUND

On January 25, 2022, Mr. Sutton filed his third motion to compel discovery, seeking the production of various internal MPD documents and materials. See Sutton 3d Mot.; Opp. to Sutton 3d Mot. In that motion, Mr. Sutton requested the production of the "[a]nnual compendium[s]/report[s] of Pursuit Investigations for the past 10 years maintained by MPD Internal Affairs Division ("IAD"), and all IAD Pursuit Investigations for the recent years for which a compendium/report is not available." Sutton 3d Mot. at 2. Mr. Sutton argued that these documents were discoverable because they illustrate "[h]ow the various elements of fact in this case are historically viewed by MPD." Id. at 15. The government opposed the motion, arguing that the charges against Mr. Sutton do not require an "evaluation of his conduct relative to other officers through history" and that, in any event, Mr. Sutton "had no knowledge" of the IAD pursuit investigations. Opp. to Sutton 3d Mot. at 7-8.

---

[1] The documents and the exhibits attached thereto that the Court has considered in connection with the pending motion include: Mr. Sutton's Motion to Compel Disclosure of Requested Discovery ("Sutton 3d Mot.") [Dkt. No. 122]; the Government's Opposition to Defendant Sutton's Motion to Compel Disclosure of Requested Discovery ("Opp. to Sutton 3d Mot.") [Dkt. No. 134]; Mr. Sutton's Reply in Support of Third Motion to Compel Disclosure of Requested Discovery [Dkt. No. 142]; Mr. Sutton's Motion for Reconsideration of the Court's Order of April 22, 2022, and Supplemental Brief in Response to Order ("Sutton Mot. for Reconsideration") [Dkt. No. 171]; the Government's Supplemental Brief Concerning Defendant Sutton's Discovery Request #8 ("Gov't Supplemental Brief") [Dkt. No. 172]; the Government's Response to Defendant Sutton's Motion for Reconsideration ("Opp. to Sutton Mot. for Reconsideration") [Dkt. No. 180]; and Mr. Sutton's Reply In Support of His Motion for Reconsideration of the Court's Order of April 22, 2022 ("Sutton Reply") [Dkt. No. 181].

In its opinion of April 22, 2022, this Court reserved ruling on Mr. Sutton's request. See United States v. Sutton, 2022 WL 1202741, at *12. Looking to the definition of second degree murder under D.C. law, the Court observed:

> Second degree murder "can only be found where the perpetrator of the act [himself] 'was subjectively aware that his or her conduct created an extreme risk of death or serious bodily injury, but engaged in that conduct nonetheless.'" Jennings v. United States, 993 A.2d 1077, 1080 (D.C. 2010) (quoting Comber v. United States, 584 A.2d 26, 39 (D.C. 1990) (en banc)). This in turn "may be shown by a 'gross deviation from a reasonable standard of care' or by other acts that may lead the finder of fact to determine that the 'defendant was aware of a serious risk of death or serious bodily harm.'" Id. (quoting Comber v. United States, 584 A.2d at 39).

United States v. Sutton, 2022 WL 1202741, at *12. Focusing on the subjective component of this mens rea element, the Court reasoned that "the IAD pursuit investigations may be relevant only insofar as they were accessible to Mr. Sutton and [therefore] may have informed his subjective awareness of the risk of death or serious bodily injury to third persons [based on] other officer pursuits in comparable circumstances." Id.

On May 31, 2022, at the Court's request, the government and Mr. Sutton separately filed supplemental briefs in response to the Court's order. See Sutton Mot. for Reconsideration; Gov't Supplemental Brief. The government represented that "annual compendiums [of IAD pursuit investigations] were not prepared in the ten years prior to the incident in this case" and therefore there were none to produce. Gov't Supplemental Brief at 1. It also asserted that Mr. Sutton had access to just one IAD vehicular pursuit investigation from 2019, which the government agreed to produce. See id. By contrast, Mr. Sutton asked the Court to reconsider its prior reasoning and hold that the IAD pursuit investigations are discoverable "regardless of whether they 'would have been accessible to Mr. Sutton.'" Sutton Mot. for Reconsideration at 1-2. He argued that the IAD pursuit reports should be produced because they

"speak to the standard of care of prudent police officers" generally, id. at 2, and they may inform the jury's view of whether Mr. Sutton's conduct was committed with "malice aforethought" under the District of Columbia second degree murder statute, id. at 5; see Sutton Reply at 1-2.

## II.  DISCUSSION

Mr. Sutton now argues that the IAD pursuit investigations are "material to preparing [his] defense" under Rule 16(a)(1)(E)(i) of the Federal Rules of Criminal Procedure because they "reflect upon the objective reasonableness" of Mr. Sutton's conduct in pursuing Mr. Hylton-Brown.  See Sutton Mot. for Reconsideration at 3, 5.

Under D.C. law, to prove second degree murder, the prosecution must establish that the defendant acted with "malice aforethought."  One way to prove this is to show that the defendant acted with a "depraved heart" – that is, that the defendant engaged in conduct that "involve[s] such a wanton and willful disregard of an unreasonable human risk as to constitute malice aforethought even if there is not actual intent to kill or injure."  Comber v. United States, 584 A.2d at 38-39; see 2 WHARTON'S CRIMINAL LAW § 21:7 (16th ed. 2021) ("The defendant does not intend to kill.  The actor is indifferent as to whether death results, or the actor may even hope that it will not result.").  To act with a "depraved heart," the perpetrator of the act must be "subjectively aware that his or her conduct create[s] an extreme risk of death or serious bodily injury, but engage[] in that conduct nonetheless."  Jennings v. United States, 993 A.2d at 1080 (quoting Comber v. United States, 584 A.2d at 39).

Whether a particular defendant acted with a "depraved heart" "may be shown by a 'gross deviation from a reasonable standard of care' or by other acts that may lead the finder of fact to determine that the 'defendant was aware of a serious risk of death or serious bodily harm.'"  Jennings v. United States, 993 A.2d at 1080 (quoting Comber v. United States, 584

4

A.2d at 39) (emphasis added); see also United States v. Lucas, 447 F.2d 338, 370 (D.C. Cir. 1971) (per curiam) ("[E]vidence demonstrating that an act was 'done so recklessly or wantonly as to manifest depravity of mind and disregard of human life' satisfies the malice requirement for second degree murder."); McClurkin v. United States, 472 A.2d 1348, 1357-58 (D.C. 1984) ("Implied malice may be inferred from the circumstances of the killing, such as . . . when an act which imports danger to another is done so recklessly or wantonly as to manifest disregard for human life."). Malice "may be established by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." United States v. Water, 413 F.3d 812, 817 (8th Cir. 2005) (internal quotation omitted).

Thus, whether conduct was done with a "depraved heart" turns on whether the defendant was subjectively aware of the risk created by his or her conduct. See Comber v. United States, 584 A.2d at 39. But whether there was a "gross deviation from a reasonable standard of care" – a potential predicate of that subjective inquiry – is necessarily objective: What is the applicable standard of care, and did the defendant grossly deviate from it? See id.

The purpose of an IAD pursuit investigation of a particular police officer is to assess whether that officer violated MPD General Orders setting forth policies that govern when and how officers may engage in vehicular pursuits. See Opp. to Sutton Mot. for Reconsideration at 2; see also MPD General Order No. 301.03 § II (Feb. 25, 2003) [Dkt. No. 150] at 20 ("The policy of the Metropolitan Police Department is that members who initiate a pursuit shall exercise caution and operate their vehicle in a safe manner while engaged in the vehicular pursuit."). Furthermore, the violation of an MPD General Order "is a factor the jury can consider in determining whether the officer [grossly deviated] from the [reasonable] standard of

5

care." Tillery v. District of Columbia, 227 A.3d 147, 152 n.17 (D.C. 2020) (internal quotation omitted).  Because IAD pursuit investigations construe and apply the MPD General Orders to a range of pursuits – including circumstances in which IAD investigators ultimately find that an officer engaged in misconduct that warrants discipline – the IAD pursuit investigations may illuminate the contours of the reasonable standard of care that applied to Mr. Sutton as he pursued Mr. Hylton-Brown on October 23, 2020.

The Court is persuaded that the requested IAD pursuit investigations are "material" to preparing Mr. Sutton's defense.  See FED. R. CRIM. P. 16(a)(1)(E)(i); see also United States v. Safavian, 233 F.R.D. 12, 15 (D.D.C. 2005) ("Rule 16 is intended to provide a criminal defendant 'the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case." (quoting United States v. Poindexter, 727 F. Supp. 1470, 1473 (D.D.C. 1989))).  The IAD pursuit investigations may assist Mr. Sutton in presenting his defense and may assist the jury in determining whether Mr. Sutton grossly deviated from a reasonable standard of care when he pursued Mr. Hylton-Brown in his police vehicle.  See Jennings v. United States, 993 A.2d at 1080; see also United States v. Williams, 342 F.3d 350, 356 (4th Cir. 2003) ("Whether malice is present in a given case must be inferred by the jury from the whole facts and circumstances surrounding the killing." (internal quotation omitted)).

The Court therefore will grant Mr. Sutton's request in part and require the government to produce all vehicular pursuit investigations maintained by the MPD Internal Affairs Division that relate to pursuits that occurred between October 23, 2015, and October 23,

2020.[2] Because IAD pursuit investigations are generally "kept confidential," Gov't Supplemental Brief at 3, and often contain the personal identifying information of complainants, officers, and investigators, the Court will direct the parties to meet and confer to determine the appropriate confidentiality protocols for the production of these materials.

### III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Mr. Sutton's Motion for Reconsideration of the Court's Order of April 22, 2022, and Supplemental Brief in Response to Order [Dkt. No. 171] is GRANTED IN PART; it is

FURTHER ORDERED that the government shall produce to Mr. Sutton all vehicular pursuit investigations maintained by the MPD Internal Affairs Division that relate to pursuits that occurred between October 23, 2015, and October 23, 2020; it is

FURTHER ORDERED that counsel for Mr. Sutton and the government shall meet and confer to determine the appropriate confidentiality protocols for the production of the IAD vehicular pursuit investigations; and it is

FURTHER ORDERED that the government shall file an affidavit or declaration, signed by an official with personal knowledge of IAD's investigation procedures of vehicular

---

[2] The government has represented that no annual compendiums or reports relating to the IAD pursuit investigations were "prepared, issued, or published by IAD," Gov't Supplemental Brief at 2, despite IAD's express obligation to "[p]repare an annual report relating the findings of Department vehicular pursuit investigations," MPD General Order 301.03 § VI.I.3. The Court therefore will direct the government to file an affidavit or declaration, signed by an official with personal knowledge of IAD's investigation procedures of vehicular pursuits, attesting to the fact – if indeed accurate – that no annual compendiums or reports relating to the IAD pursuit investigations have been prepared for the last five years and further explaining whether the types of information sought by Mr. Sutton are available from another source or in some other form.

pursuits, attesting to the fact – if indeed accurate – that no annual compendiums or reports relating to the IAD pursuit investigations have been prepared for the last five years and further explaining whether the types of information sought by Mr. Sutton are available from another source or in some other form.

      SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE: July 20, 2022