UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 21-0598-1 (PLF) |
| ) | |
| TERENCE SUTTON, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

Defendant Terence Sutton has filed several motions to compel discovery, requesting that the Court order the government to produce a wide variety of documents and materials. This Court previously denied Mr. Sutton's second motion to compel discovery in its entirety and granted in part and denied in part his third motion to compel discovery. See United States v. Sutton, Crim. No. 21-0598, 2022 WL 1202741, at *17 (D.D.C. Apr. 22, 2022); see also United States v. Sutton, Crim. No. 21-0598, 2022 WL 2828995, at *4 (D.D.C. July 20, 2022) (granting Mr. Sutton's motion for reconsideration). This Opinion will address Mr. Sutton's fourth and fifth motions to compel discovery. After careful consideration of the parties' arguments and the entire record in this case, the Court will deny in their entirety both Mr. Sutton's Fourth Motion to Compel Disclosure of Requested Discovery [Dkt. No. 146] and his Fifth Motion to Compel Disclosure of Requested Discovery [Dkt. No. 152].[1]

---

[1] The documents and the exhibits attached thereto that the Court has considered in connection with the pending motions include: Indictment [Dkt. No. 1]; Mr. Sutton's Fourth Motion to Compel Disclosure of Requested Discovery ("Sutton 4th Mot.") [Dkt. No. 146]; the Government's Opposition to Defendant Sutton's Fourth Motion to Compel Disclosure of Requested Discovery ("Opp. to Sutton 4th Mot.") [Dkt. No. 148]; Mr. Sutton's Reply in Support of His Fourth Motion to Compel Disclosure of Requested Discovery ("Reply ISO Sutton 4th

I.  BACKGROUND

This opinion assumes familiarity with the case and therefore includes only the factual and procedural history that is relevant here.  See generally United States v. Sutton, 2022 WL 1202741, at *1-2.

Mr. Sutton, an officer of the District of Columbia Metropolitan Police Department ("MPD"), has been charged by indictment with one count of murder in the second degree, in violation of D.C. Code § 22-2103, one count of conspiracy to obstruct justice, in violation of 18 U.S.C. § 371, and one count of obstruction of justice, in violation of 18 U.S.C. §§ 1512(b)(3), 2. The indictment alleges that on October 23, 2020, Mr. Sutton caused the death of Karon Hylton-Brown by engaging in a reckless vehicular pursuit that resulted in a fatal traffic collision.  See Indictment ¶¶ 1-2, 10-13, 18, 20-28.  Pertinent to Mr. Sutton's motions to compel discovery, the indictment suggests that Mr. Sutton knowingly violated MPD policy (set forth in an internal "General Order") prohibiting officers from "pursuing a vehicle for the purpose of [e]ffecting a stop for a traffic violation."  Id. ¶ 8; see also General Order No. 301.03 § IV.F (Feb. 25, 2003) [Dkt. No. 150] at 22.[2]  The indictment further alleges that, after the crash, Mr. Sutton and his supervisor, Andrew Zabavsky, conspired to conceal the circumstances of the pursuit and collision from MPD officials. See id. ¶¶ 33-48.

---

Mot.") [Dkt. No. 150]; Mr. Sutton's Fifth Motion to Compel Disclosure of Requested Discovery ("Sutton 5th Mot.") [Dkt. No. 152]; the Government's Opposition to Defendant Sutton's Fifth Motion to Compel Disclosure of Requested Discovery; Mr. Sutton's Reply in Support of His Fifth Motion to Compel Disclosure of Requested Discovery ("Reply ISO Sutton 5th Mot.") [Dkt. No. 170]; Mr. Sutton's Motion for Reconsideration of the Court's Order of April 22, 2022, and Supplemental Brief in Response to Order ("Sutton Suppl. Brief") [Dkt. No. 171]; and Government's Supplemental Brief Concerning Sutton's Discovery Request #8 [Dkt. No. 172].

2        Page number citations to documents that the parties have filed refer to those that the Court's electronic case filing system automatically assigns, except for citations to trial transcripts, in which case page number citations refer to the original page and line numbers.

Mr. Sutton filed his fourth motion to compel discovery on March 16, 2022, and his fifth motion to compel discovery on April 12, 2022. See Sutton 4th Mot.; Sutton 5th Mot. The government opposes all of Mr. Sutton's individual requests but notes that some of the requested documents and materials are discoverable and will be produced closer to trial. See, e.g., Opp. to Sutton 4th Mot. at 6. Both motions are now fully briefed and ripe for resolution.

## II. LEGAL STANDARD

Rule 16 of the Federal Rules of Criminal Procedure provides, in pertinent part:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

FED. R. CRIM. P. 16(a)(1)(E) (emphasis added). Under Rule 16, evidence is material to preparing a defense "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." United States v. Marshall, 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993)). Material evidence "is not limited to evidence that is favorable or helpful to the defense and does not immunize inculpatory evidence from disclosure." United States v. Safavian, 233 F.R.D. 12, 15 (D.D.C. 2005); see also United States v. Oseguera Gonzalez, 507 F. Supp. 3d 137, 168 (D.D.C. 2020) ("Rule 16(a)(1)(E) applies equally to exculpatory and inculpatory evidence, since 'it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths.'" (quoting United States v. Marshall, 132 F.3d at 67)).

3

A defendant's burden to demonstrate materiality is not a "heavy" one, see United States v. Slough, 22 F. Supp. 3d 1, 4 (D.D.C. 2014), and the government "cannot take a narrow reading of the term 'material' in making its decisions on what to disclose under Rule 16," United States v. Safavian, 233 F.R.D. at 15.  Indeed, "Rule 16 is intended to provide a criminal defendant 'the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case.'"  Id. (quoting United States v. Poindexter, 727 F. Supp. 1470, 1473 (D.D.C. 1989)).

Nevertheless, "Rule 16 does not authorize a blanket request to see the prosecution's file."  United States v. Oseguera Gonzalez, 507 F. Supp. 3d at 168 (quoting United States v. Maranzino, 860 F.2d 981, 985-86 (10th Cir. 1988)).  To be material, the requested evidence must "bear 'more than some abstract logical relationship to the issues in the case.'" United States v. Slough, 22 F. Supp. 3d at 5 (quoting United States v. Marshall, 132 F.3d at 69). Moreover, the evidence sought must "be related 'to refutation of the government's case in chief,' and not 'to establishment of an independent . . . bar to the prosecution.'"  United States v. Apodaca, 287 F. Supp. 3d 21, 39 (D.D.C. 2017) (quoting United States v. Rashed, 234 F.3d 1280, 1285 (D.C. Cir. 2000)); accord United States v. Oseguera Gonzalez, 507 F. Supp. 3d at 168; see also United States v. Armstrong, 517 U.S. 456, 462 (1996).

III.  DISCUSSION

A.  Mr. Sutton's Fourth Motion to Compel Discovery

In his fourth motion to compel discovery, Mr. Sutton requests that the government:

> 1.  Identify all cases where a federal prosecutor's office charged a law enforcement officer with any homicide offense in relation to a police car chase where a vehicular accident occurred in the course of the chase.

4

2. Identify all cases where a federal prosecutor's office charged a law enforcement officer with only a state (including territories and the District of Columbia) criminal offense in relation to a police car chase where a vehicular accident occurred in the course of the chase.

3. Provide recording or summaries of any statements made by prosecutors in USAO-DC to MPD officers regarding car chases and/or MPD General Order No. 301.03.

4. Identify all cases where USAO-DC brought charges against the suspect, either in D.C. Superior Court or U.S. District Court for D.C., after police engaged in a chase to effectuate a traffic stop since MPD General Order No. 301.03 went into effect.

5. Identify all cases where a law enforcement officer violated MPD General Order No. 301.03 and USAO did or did not bring criminal charges against the law enforcement officer involved.

6. Provide documents including memoranda and declination letters drafted by any section of the USAO which relate to an assessment of criminal prosecution of law enforcement for car chases and/or violations of MPD General Order No. 301.03.

7. Provide any USAO policies and guidance which instruct AUSA to screen cases for police conduct which violates MPD General Orders.

8. Provide any DOJ or USAO policies or guidance which precludes filing charges against a suspect because an investigating officer violated MPD General Orders.

9. Provide recordings or summaries of any/all statements by prosecutors to MPD officers regarding the criminal implications of MPD General Orders.

10. Provide notice pursuant to Rule 404(b) of the Federal Rules of Evidence for any evidence of any other crime, wrong, or act that the government intends to offer at trial, and provide all discoverable information and evidence pertaining to any uncharged misconduct that the government would be required to provide if the uncharged misconduct was actually charged.

11. List all law enforcement officers that the government plans to call and disclose pertinent Brady information from the personnel files of those officers if they were involved in the charged incident and related investigation.

> 12. Pursuant to Brady and its progeny, provide all information relating to government agreements/deals with any witnesses in this case.
>
> 13. Pursuant to Brady and its progeny, provide all evidence of bias of government witnesses.
>
> 14. Pursuant to Brady and its progeny, provide all evidence of misconduct by government witnesses.
>
> 15. Pursuant to Brady and its progeny, provide all contradictory or inconsistent statements and all documentation of such by prosecutors and law enforcement from interviews with government witnesses in this case.
>
> 16. Pursuant to Brady and its progeny, provide all Statements of potential witnesses not called to testify.
>
> 17. Pursuant to Brady and its progeny, provide all Expert reports inconsistent with the government case or tends to support the defense case.

See Sutton 4th Mot. at 1-2. For the following reasons, the Court will deny Mr. Sutton's fourth motion to compel discovery in its entirety.

### 1. Discovery Requests for Information Regarding Unrelated Cases and General DOJ and MPD Policies or Guidance

Across Requests 1 through 9, Mr. Sutton seeks information regarding the prior treatment of police vehicular pursuits by federal prosecutors' offices – including the U.S. Attorney's Office for the District of Columbia – in circumstances unrelated to this case. In addition to a number of these requests being overbroad, most relate to the prosecutorial discretion that underlies the decision to charge an officer based upon the evidence of alleged criminal conduct presented in his or her individual case. For example, in Requests 1, 2, and 4 through 6, Mr. Sutton asks the government to identify all other circumstances where a police officer has been investigated or prosecuted by the U.S. Attorney's Office for the District of Columbia or other federal prosecutor for participating in a fatal police car chase or for violating

6

MPD policies regarding the pursuit of fleeing suspects.  See Sutton 4th Mot. at 1.  And in Requests 3 and 7 through 9, he seeks internal DOJ policies regarding the prosecution of police officers as well as any communications between federal prosecutors and MPD officers regarding the potential consequences of violating MPD policies.  See id. at 1-2.  The government opposes the requests, arguing that they are all "immaterial to the questions whether Defendant Sutton committed the second-degree murder and cover-up with which he is charged."  Opp. to Sutton 4th Mot. at 3.  The Court will deny Requests 1 through 9 in full.

Mr. Sutton first argues that these discovery requests are "material" to his defense because they will demonstrate that the "indictment is novel."  Sutton 4th Mot. at 6-8; see also Reply ISO Sutton 4th Mot. at 5 ("The discovery sought by Ofc. Sutton will show that no similar case has ever been prosecuted by the federal government.").  Mr. Sutton also suggests that such discovery would support either a motion to dismiss the second degree murder charge because that charge seeks to "apply[] a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope," Reply ISO Sutton 4th Mot. at 3-4 (quoting United States v. Lanier, 520 U.S. 259, 266 (1997)), or a motion to dismiss the indictment in its entirety on a theory of qualified immunity, see id. at 4-5 (citing Bushrod v. District of Columbia, 521 F. Supp. 3d 1, 20-21, 30 (D.D.C. 2021)).[3]  As explained

---

[3]  On June 29, 2022, Mr. Sutton filed two motions to dismiss the indictment, one of which raised both of these arguments.  See Mr. Sutton's Motion to Dismiss the Indictment Pursuant to FED. R. CRIM. P. 12(b)(3)(B)(v) [Dkt. No. 188] at 4, 18-20 (arguing that Mr. Sutton must have been afforded "fair notice" that his conduct was criminal in order to be criminally charged with murder); see also id. at 10-17 (arguing that Mr. Sutton cannot be criminally prosecuted unless he violated the constitutional rights of Mr. Hylton-Brown).  On August 3, 2022, the Court issued its oral ruling denying Mr. Sutton's motion to dismiss the indictment pursuant to FED. R. CRIM. P. 12(b)(3)(B)(v) in its entirety, rejecting both arguments.  See August 4, 2022 Memorandum Opinion and Order [Dkt. No. 215].  Thus, not only was the requested discovery unnecessary for Mr. Sutton to in fact bring his motions to dismiss the

7

above, however, under Rule 16(a)(1)(E) "the discovery sought must be related 'to refutation of the government's case in chief,' and not 'to establishment of an independent . . . bar to the prosecution.'" United States v. Apodaca, 287 F. Supp. 3d at 39 (quoting United States v. Rashed, 234 F.3d at 1285)). Whether the government has previously prosecuted a police officer for comparable alleged misconduct is irrelevant to rebutting the government's direct evidence against Mr. Sutton and would not "significantly . . . alter the quantum of proof in his favor." Id. (quoting United States v. Libby, 429 F. Supp. 2d 1, 7 (D.D.C. 2006)). And the purported uniqueness of the charges in this case is not itself a valid basis for compelling disclosure of Requests 1 through 9.

Mr. Sutton also contends that his discovery requests are relevant to "rebutting the government's factual assertions" regarding the mens rea element of both the murder and the obstruction of justice charges. See Reply ISO Sutton 4th Mot. at 11-12. Specifically, he argues that the indictment alleges that he knew both that violating the MPD policy regarding vehicular pursuits would "carry criminal penalties" and that "a civil rights investigation would follow" Mr. Hylton-Brown's collision and resultant death. Id. He suggests that the requested discovery would illuminate whether Mr. Sutton in fact knew such things. See id. The Court disagrees.

To begin, Mr. Sutton mischaracterizes the allegations in this case. Contrary to Mr. Sutton's assertions, the indictment does not in fact allege that Mr. Sutton knew with certainty that violating MPD policies would expose him to criminal liability or that a civil rights investigation was imminent. Rather, the indictment alleges that Mr. Sutton acted with "conscious disregard of an extreme risk of death and serious bodily injury," exhibited in part by

---

indictment, the Court has concluded as a matter of law that Mr. Sutton's underlying arguments for dismissal, which the discovery arguably would have supported, were meritless.

his alleged violation of the MPD policy governing vehicular pursuits. Indictment ¶¶ 8, 29; see United States v. Sutton, 2022 WL 1202741, at *10; see also Williams v. United States, 858 A.2d 984, 998-99 (D.C. 2004) (discussing the elements of second degree murder). And the indictment alleges that he conspired to conceal the circumstances of Mr. Hylton-Brown's death from MPD officials "to prevent an internal investigation of the incident and referral of the matter to federal authorities." Indictment ¶ 32; see id. ¶ 50 (alleging that Mr. Sutton "knowingly engaged in misleading conduct toward another person, and attempted to do so, with intend to hinder, delay, and prevent the communication to a law enforcement officer of the United States information relating to the commission and possible commission of a Federal offense" (emphasis added)); United States v. Sutton, Crim. No. 21-0598, 2022 WL 1183797, at *8 (D.D.C. Apr. 21, 2022) ("Th[e] [obstruction of justice] statute does not require that any federal civil rights investigation actually have occurred, let alone that the existence of one be pled in the indictment. Rather, the government need only prove 'the possible existence of a federal crime and a defendant's intention to thwart an inquiry into that crime.'" (quoting United States v. Ring, 628 F. Supp. 2d 195, 220 (D.D.C. 2009))); see also United States v. Hawkins, 185 F. Supp. 3d 114, 124 (D.D.C. 2016) (enumerating the elements of obstruction of justice).

Moreover, Mr. Sutton has failed to explain how his personal state of mind may have been influenced by the documents and materials that he seeks, which all originate from unrelated cases. He has not, for example, explained how federal prosecutors' investigation and prosecution of other police car chases would have affected his state of mind while pursuing Mr. Hylton-Brown or when he allegedly obfuscated his role in the chase. Nor has he explained how "memoranda and declination letters" drafted by the U.S. Attorney's Office in other cases would have influenced his mens rea. See Sutton 4th Mot. at 1 (Requests 1-2, 6). And although certain

materials may be relevant to establishing whether Mr. Sutton grossly deviated from a reasonable standard of care when he pursued Mr. Hylton-Brown, for purposes of establishing whether he acted with a "malice" so as to have committed second degree murder, see United States v. Sutton, 2022 WL 2828995, at *3, federal prosecutors' treatment of police vehicular pursuits – particularly in other jurisdictions with widely varying factual circumstances – is not relevant to establishing the standard of care that was applicable to Mr. Sutton.  Simply put, Requests 1 through 9 bear only an "abstract relationship to the issues in the case," United States v. Apodaca, 287 F. Supp. 3d at 39 (quotation omitted), and Mr. Sutton has failed to carry his burden to show that the requested discovery would be "material to preparing the defense," FED. R. CRIM. P. 16(a)(1)(E)(i).

2. Discovery Requests That Overlap with the Government's Existing Discovery Obligations

Mr. Sutton also requests information and materials that the government is otherwise already obligated to produce.  In Request 10, he asks that the government provide its Rule 404(b) notice of any "prior bad acts" evidence that the government intends to offer at trial.  See Sutton 4th Mot. at 8-9.  And in Requests 11 through 17, Mr. Sutton asks the Court to require the government to produce exculpatory or impeachment evidence "[p]ursuant to Brady and its progeny." Id. at 2.

The Court will deny Request 10 because the government already has an obligation to "provide reasonable notice" of "prior bad acts" evidence.  If the government wishes to use "[e]vidence of any other crime, wrong, or act" for a permissible purpose under Rule 404(b) of the Federal Rules of Evidence, it must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it."  FED. R. EVID. 404(b)(3)(A). Mr. Sutton offers no reason to believe that this requirement, expressly set

10

forth in the Federal Rules of Evidence, is insufficient to safeguard his ability to assess and respond to any "prior bad acts" evidence that the government chooses to rely upon at trial. He provides no argument as to why this evidence must be disclosed now, as opposed to closer to trial. See FED. R. EVID. 404 advisory committee's notes to 2020 amendments ("Advance notice of Rule 404(b) evidence is important so that the parties and the court have adequate opportunity to assess the evidence, the purpose for which it is offered, and whether the requirements of Rule 403 have been satisfied--even in cases in which a final determination as to the admissibility of the evidence must await trial."). Because the government is already obligated to produce the Rule 404(b) notice that Mr. Sutton seeks, the Court will deny Request 10. See United States v. Oseguera Gonzalez, 507 F. Supp. 3d at 170 (citing Pinson v. U.S. Dep't of Justice, Civil Action No. 12-1872, 2017 WL 6883924, at *1 (D.D.C. June 26, 2017)).

The Court will similarly deny Requests 11 through 17 because they seek Brady material to which Mr. Sutton is already entitled.[4] As has been made very clear to the government in this case, it is obligated to disclose exculpatory material to Mr. Sutton "as soon as reasonably possible after its existence is known, so as to enable the defense to make effective use of the disclosed information in the preparation of its case." LCrR 5.1(a); see Transcript of September 24, 2021 Arraignment [Dkt. No. 33] at 10:13-23 (warning the government of its

---

[4] The Court will deny Request 11 to the extent Mr. Sutton seeks a list of all law enforcement officers who may testify at trial. The prosecution has no obligation under either Brady or Rule 16 of the Federal Rules of Criminal Procedure "to disclose its witness list prior to trial in a noncapital case." See United States v. Celis, 608 F.3d 818, 831-32 (D.C. Cir. 2010) (per curiam); see also 2 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 258 (4th ed. 2022) ("It is clear that defendant has no right in noncapital cases to require a list of government witnesses."). In this case, the Court will, however, order the disclosure of the identity of each witness a few days or a week before the witness is expected to testify, as well as the disclosure of any related Giglio material, in order to avoid delay once trial has begun.

Brady obligations); see also United States v. Safavian, 233 F.R.D. at 16.  Mr. Sutton's requests are duplicative of the government's preexisting obligation to produce exculpatory material and therefore are unnecessary.  See United States v. Oseguera Gonzalez, 507 F. Supp. 3d at 170 (denying as moot defendant's motion to compel to the extent it "request[ed] the government to be ordered to review its own files . . . and produce material discoverable under Rule 16 and Brady").  The government is aware of its Brady obligations and this Court's expressed views on that issue.  See United States v. Sutton, Crim. No. 21-0598-1, 2022 WL 2383974, at *5-9 (D.D.C. July 1, 2022); see also United States v. Safavian, 233 F.R.D. at 17 ("[T]he government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed – with the benefit of hindsight – as affecting the outcome of the trial.").

### B.  Mr. Sutton's Fifth Motion to Compel Discovery

In his fifth motion to compel discovery, Mr. Sutton requests that the government produce:

> 1.  Identities of all persons involved in any way with the redrafting of the New MPD General Orders, including attorneys and [law enforcement officers].
>
> 2.  All documents as defined in the discovery rules for civil procedure relating in any way to the redrafting of the New MPD General Orders.
>
> 3.  All MPD training materials for the New MPD General Orders.
>
> 4.  The identities of all persons responsible for training on the New MPD General Orders.
>
> 5.  The identities of all persons involved in any way and/or notified of the decision to remove public access to the IAD Annual Vehicular Pursuit Reports from the MPD website.

>        6. All documents as defined in the rules for civil procedure
>        relating to the removal of public access to the IAD Annual
>        Vehicular Pursuit Reports from the MPD website.

Sutton 5th Mot. at 1. For the following reasons, the Court will deny Mr. Sutton's fifth motion to compel discovery in full.

### 1. Discovery Requests Relating to MPD's Recent Revisions of Pertinent General Orders

In Requests 1 through 4, Mr. Sutton seeks information related to two new MPD General Orders that recently that came into effect. See Sutton 5th Mot. at 1. The first – General Order 301.03 – went into effect on December 30, 2021, and supersedes the MPD vehicular pursuit policy that was in effect on October 23, 2020, when the underlying events in this case occurred. Compare General Order No. 301.03 (Dec. 30, 2021) [Dkt. No. 152] at 6-15, with General Order No. 301.03 (Feb. 25, 2003) [Dkt. No. 150] at 20-36. The second – General Order 901.07 – went into effect on January 1, 2022, and supersedes the MPD use of force policy that was in effect on October 23, 2020. See General Order No. 901.07 (Jan. 1, 2022) [Dkt. No. 152] at 16-39. Mr. Sutton seeks documents and materials concerning the drafting of these revised MPD policies as well as officer training in light of the revisions.

Although his arguments meander, Mr. Sutton essentially argues that documents and materials regarding "how and why the key MPD General Orders applicable to this case have been changed" are relevant and therefore discoverable because they go to the "objective standpoint of the reasonably prudent police officer" from which Mr. Sutton will be judged. Reply ISO Sutton 5th Mot. at 7-8; see id. at 5 (arguing that his "experts should be afforded an opportunity to review the documents requested as they reflect upon the objective reasonableness of the conduct of CST officers in following Karon Hylton-Brown"). As recently noted by this Court, whether a defendant acted with "malice aforethought" – an element of second degree

13

murder under D.C. law – may be established by proving that the defendant grossly deviated from a reasonable standard of care so as to "lead the finder of fact to determine that the 'defendant was aware of a serious risk of death or serious bodily harm.'" United States v. Sutton, 2022 WL 2828995, at *3 (quoting Jennings v. United States, 993 A.2d 1077, 1080 (D.C. 2010)); see also Comber v. United States, 584 A.2d 26, 39 (D.C. 1990) (en banc) ("[I]n the District of Columbia, such depraved heart malice exists only where the perpetrator was subjectively aware that his or her conduct created an extreme risk of death or serious bodily injury, but engaged in that conduct nonetheless."). Moreover, "the violation of an MPD General Order 'is a factor the jury can consider in determining whether the officer [grossly deviated] from the [reasonable] standard of care.'" United States v. Sutton, 2022 WL 2828995, at *3 (alterations in original) (quoting Tillery v. District of Columbia, 227 A.3d 147, 152 n.17 (D.C. 2020)).

Mr. Sutton, however, does not explain how the requested discovery – internal police documents and training materials that relate to the amendment of MPD General Orders after Mr. Hylton-Brown's death – could conceivably shed light on the reasonable standard of care applicable to Mr. Sutton on the evening of Mr. Hylton-Brown's death. Although the MPD General Orders that were in effect on October 23, 2020, and governed how Mr. Sutton and other police officers were to engage in vehicular pursuits may "illuminate the contours of the reasonable standard of care that applied to Mr. Sutton," United States v. Sutton, 2022 WL 2828995, at *3, it is difficult to imagine how the amendments to those MPD General Orders from more than a year later would elucidate that standard of care. It is therefore even more difficult to conceive how internal MPD documents relating to the drafting of those amendments or training materials regarding their implementation would help to better understand the standard of care that applied to Mr. Sutton when he pursued Mr. Hylton-Brown. Requests 1 through 4

seek materials that would not help Mr. Sutton to present his defense or help the jury to determine whether he grossly deviated from a reasonable standard of care, see id., and the Court will deny these requests in full.[5]

2. Discovery Requested Relating to MPD's Alleged Removal of Internal Affairs Reports from its Website

In Requests 5 and 6, Mr. Sutton requests documents relating to the alleged removal of MPD Internal Affairs Division ("IAD") pursuit investigations from the MPD website. See Sutton 5th Mot. at 1. This Court recently held that the IAD pursuit investigations themselves are "material" to preparing Mr. Sutton's defense and therefore are discoverable because they "construe and apply the MPD General Orders to a range of pursuits[,] . . . illuminat[ing] the contours of the reasonable standard of care that applied to Mr. Sutton as he pursued Mr. Hylton-Brown on October 23, 2020." United States v. Sutton, 2022 WL 2828995, at *3. Mr. Sutton now claims that annual compendiums and reports of these IAD pursuit investigations were previously published "on an internal website accessible to MPD officers," United States v. Sutton, 2022 WL 1202741, at *12, but that MPD has now removed public access to them. See

---

[5] In addition, Mr. Sutton argues that the amendments to the MPD General Orders as well as third-party reports that informed them establish that the superseded MPD General Orders were ambiguous and did not provide him with fair notice that his conduct may have been criminal. He therefore suggests that he is immune from prosecution. See Reply ISO Sutton 4th Mot. at 3-9, 11; Reply ISO Sutton 5th Mot. at 2-4. Relatedly, he suggests that he is entitled to qualified immunity because his conduct on October 23, 2020, was reasonable as a matter of law. See Reply ISO Sutton 4th Mot. at 4-5. Setting aside that the Court has rejected such arguments in relation to Mr. Sutton's motion to dismiss the indictment pursuant to FED. R. CRIM. P. 12(b)(3)(B)(v), see August 4, 2022 Memorandum Opinion and Order [Dkt. No. 215], Mr. Sutton simply has not demonstrated why such arguments entitle him to discovery under Rule 16. As noted above, Rule 16 discovery "must be related 'to refutation of the government's case in chief,' and not 'to establishment of an independent . . . bar to the prosecution.'" United States v. Apodaca, 287 F. Supp. 3d at 39 (quoting United States v. Rashed, 234 F.3d at 1285). Moreover, it is unclear how documents and materials regarding the revision and implementation of the MPD General Orders would have helped to establish Mr. Sutton's claimed defenses.

Sutton 5th Mot. at 1.[6]  He therefore seeks the identities of all persons involved in the alleged removal of these IAD pursuit investigations as well as all documents related to such alleged removal.  See id.

The Court recently ordered the government "to file an affidavit or declaration, signed by an official with personal knowledge of IAD's investigation procedures of vehicular pursuits, to attest to the fact . . . that no annual compendiums or reports relating to the IAD pursuit investigations have been prepared for the last five years."  United States v. Sutton, 2022 WL 2828995, at *4 n.2.  Setting aside for now the question whether such a representation is indeed accurate, the Court concludes that Requests 5 and 6 seek information that is not "material" to the issues in this case.  FED. R. CRIM. P. 16(a)(1)(E)(i).  Mr. Sutton has made no attempt to explain how the identities of MPD officials who are allegedly responsible for removing certain annual compendiums and reports (or a statement about the preparation of such documents) from a public website would assist in his defense, let alone "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."  United States v. Marshall, 132 F.3d at 68.

---

[6]     In his supplemental brief, Mr. Sutton seems to modify his argument (and the basis for Requests 5 and 6) by suggesting that his counsel had seen on a public MPD website a statement that IAD prepared annual reports of pursuit investigations and that such a statement apparently was removed.  See Sutton Suppl. Brief at 6-8.

16

Although the IAD pursuit investigations may help to establish the reasonable standard of care that was applicable to Mr. Sutton, materials concerning their removal from a website would not in any way assist Mr. Sutton to prepare his defense or help the jury in its factfinding. See United States v. Marshall, 132 F.3d at 68. Thus, there is no valid basis to Mr. Sutton's discovery requests, and the Court will deny Requests 5 and 6.

For the foregoing reasons, it is hereby

ORDERED that Mr. Sutton's Fourth Motion to Compel Disclosure of Requested Discovery [Dkt. No. 146] is DENIED; and it is

FURTHER ORDERED that Mr. Sutton's Fifth Motion to Compel Disclosure of Requested Discovery [Dkt. No. 152] is DENIED.

SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  August 5, 2022