UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 21-0598-1 (PLF) |
| ) | |
| TERENCE SUTTON, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

Currently before the Court is the issue of whether the United States must produce to Mr. Sutton certain documents that the United States claims are privileged and has submitted for in camera review pursuant to this Court's July 1, 2022 opinion. See United States v. Sutton, Crim. No. 21-0598, 2022 WL 2383974, at *10 (D.D.C. July 1, 2022). Upon careful consideration of the documents submitted for in camera review, the relevant legal authorities, and the entire record in this case, the Court concludes that Documents 1 through 12 are not shielded from discovery, although portions of Documents 1 and 2 may be redacted.

I. BACKGROUND

This opinion assumes familiarity with the case and therefore includes only the factual and procedural history that is relevant here. See generally United States v. Sutton, 2022 WL 2383974, at *1-4 (describing the underlying second degree murder charge and the events precipitating Mr. Sutton's motion for Brady sanctions).

On July 1, 2022, this Court concluded that it was necessary to conduct an evidentiary hearing to determine whether any potential prejudice was caused to Mr. Sutton by the government's delay in disclosing the exculpatory statement of an individual ("the witness")

until after government agents had interviewed the witness twice. See United States v. Sutton, 2022 WL 2383974, at *5-6, *10; see also id. at *10 (noting that the Court "may impose appropriate sanctions within its sound discretion to ensure that any further proceedings in this case are not infected by nondisclosure of discoverable evidence" (internal quotation omitted)). The Court also ordered the government to produce to Mr. Sutton "all documents and materials . . . related to the witness's interactions with law enforcement regarding this case." Id. at *9. To the extent the government wished to assert any claims of privilege or work product protection over these documents and materials, the Court ordered the government to submit them for in camera review and to produce to the Court and to Mr. Sutton's counsel a privilege log "identifying the withheld documents and materials and explaining the reasons for their withholding." Id.

On July 22, 2022, the government submitted to the Court via a secure, cloud-based file-sharing platform 13 documents for which it asserted claims of privilege or work product protection. The government also provided a privilege log for these materials and represented to the Court via email that it had provided a copy of the privilege log to Mr. Sutton's counsel that same day. On August 9, 2022, the Court convened a sealed, ex parte conference with government counsel to better understand certain of the withheld documents and the scope of the government's claims of privilege and work product protection with respect to these documents. See August 9, 2022 Minute Entry. On August 10, 2022, at the request of Mr. Sutton's counsel, the government provided a revised privilege log, listing the dates of the withheld documents.

## II. LEGAL STANDARDS

### A. *Attorney-Client Privilege*

The attorney-client privilege is "one of the oldest recognized privileges," Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998), and "protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services." Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice, 538 F. Supp. 3d 124, 135 (D.D.C. 2021) (quoting Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir. 1997)). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice, 538 F. Supp. 3d at 135 (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). To properly assert the attorney-client privilege with respect to a document, a party must show "(1) that there was a communication between an attorney and his or her client, (2) that the communication was made in confidence, (3) that it was made to an attorney by a client, and (4) that it was made for the purpose of seeking or obtaining legal advice." United States v. Naegele, 468 F. Supp. 2d 165, 169 (D.D.C. 2007).

"These principles are not limited to lawyers representing private individuals or entities, but they apply to those who work in the public sector as well." Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice, 539 F. Supp. 3d at 135. In the governmental context, "the agency is the 'client' and the agency's lawyers are the 'attorneys' for the purposes of attorney-client privilege." Judicial Watch, Inc. v. U.S. Dep't of Treasury, 802 F. Supp. 2d 185, 200 (D.D.C. 2011); see also In re Lindsey, 148 F.3d 1100, 1105 (D.C. Cir. 1998) (per curiam) (noting that the attorney-client privilege applies when "the Government is dealing with its attorney as would any private party seeking advice to protect personal interests, and needs the

3

same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors" (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980))). And importantly, "[t]hose attorneys may communicate among themselves; 'the [attorney-client] privilege is not lost because an attorney consults other attorneys about the subject matter of the [privileged] communication.'" Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice, 538 F. Supp. 3d at 135 (second alteration in original) (quoting Mead Data Central, Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 253 n.24 (D.C. Cir. 1977)).

*B. Attorney Work Product Protection*

The attorney work product doctrine protects from disclosure "written materials that lawyers prepare in 'anticipation of litigation,' ensuring that 'lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials.'" United States v. Williams Cos., 562 F.3d 387, 393 (D.C. Cir. 2009) (quoting In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998)). Because "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," the work product doctrine extends to "material prepared by agents for the attorney as well as those prepared by the attorney himself." United States v. Nobles, 422 U.S. 225, 238-39 (1975). And although the work product doctrine "most frequently is asserted as a bar to discovery in civil litigation," the doctrine "applies to criminal litigation as well." Id. at 236, 238.

The work product doctrine is a qualified privilege. See Hickman v. Taylor, 329 U.S. 495, 511 (1947). Attorney work product therefore "is discoverable 'if the party seeking discovery can make a sufficient showing of necessity.'" United States v. Clemens, 793 F. Supp. 2d 236, 244 (D.D.C. 2011) (quoting 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

4

PRACTICE AND PROCEDURE § 2025 (3d ed. 1998)). Fact work product – i.e., "objective facts and information collected by the attorney or her agents," Judicial Watch, Inc. v. U.S. Dep't of Justice, 391 F. Supp. 3d 43, 49 (D.D.C. 2019) – may be discoverable if the party seeking it demonstrates "a substantial need for the materials and an undue hardship in acquiring the information any other way." United States v. Clemens, 793 F. Supp. 2d at 244 (quoting Director, Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1307 (D.C. Cir. 1997)). On the other hand, opinion work product – i.e., "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," United States v. Deloitte LLP, 610 F.3d 129, 135 (D.C. Cir. 2010) (quoting FED. R. CIV. P. 26(b)(3)(B)) – is "virtually undiscoverable," requiring the party seeking it to make "'a far stronger showing of necessity and unavailability by other means' than would otherwise be sufficient for discovery of 'fact' work product." United States v. Clemens, 793 F. Supp. 2d at 244 (first quoting Director, Office of Thrift Supervision v. Vinson & Ellkins, LLP, 124 F.3d at 1307; then quoting Upjohn Co. v. United States, 449 U.S. at 402). "To obtain discovery of opinion work product, a party must show 'extraordinary justification.'" In re HealthSouth Corp. Sec. Litig., 250 F.R.D. 8, 10 (D.D.C. 2008) (quoting In re Sealed Case, 676 F.2d 793, 810 (D.C. Cir. 1982)).

C. Deliberative Process Privilege[1]

The deliberative process privilege is a "qualified, common law executive privilege," Landry v. FDIC, 204 F.3d 1125, 1135 (D.C. Cir. 2000), that protects from discovery

---

[1] Generally, to assert the deliberative process privilege, a party must provide a formal claim of privilege from an agency head providing a detailed explanation of why the material for which the privilege is claimed falls within the scope of the privilege. See Landry v. FDIC, 204 F.3d 1125, 1135 (D.C. Cir. 2000); see also NLRB v. Jackson Hosp. Corp., 257 F.R.D. 302, 309 (D.D.C. 2009) (noting that agencies invoking the privilege "commonly do so through a combination of privilege logs that identify specific documents, and declarations from agency officials explaining what the documents are and how they relate to the [agency] decisions").

5

"documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)). "Two requirements are essential to the deliberative process privilege: the material must be predecisional and it must be deliberative." In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). "Predecisional materials are those that predate an agency's decision or adoption of a policy and which comprise part of a process by which the Government reached that decision or policy." In re Anthem, Inc. Data Breach Litig., 236 F. Supp. 3d 150, 161 (D.D.C. 2017). And "[t]o be 'deliberative,' a document must reflect 'part of the agency give-and-take by which the decision itself is made.'" Id. at 162 (quoting Hinckley v. United States, 140 F.3d 277, 284 (D.C. Cir. 1998)); see also Nat'l Sec. Archive v. CIA, 752 F.3d 460, 463 (D.C. Cir. 2014) (noting that a document is deliberative if it "is intended to facilitate or assist development of the agency's final position on the relevant issue").

  Because the deliberative process privilege is a qualified privilege, it can be "overcome by a sufficient showing of need," made on "a case-by-case, ad hoc basis." In re Sealed Case, 121 F.3d at 737. To determine whether there is a substantial need for disclosure of the privileged documents, courts weigh the public interest in "prevent[ing] injury to the quality of agency decisions" against the "need of the party seeking privileged evidence." Id. at 737, 746; accord In re Anthem, Inc. Data Breach Litig., 236 F. Supp. 3d at 159 ("[P]rivileged materials may be ordered disclosed if the court concludes the private need for disclosure

---

Although the United States' failure to provide such supporting materials would typically be fatal, see Doe v. District of Columbia, 230 F.R.D. 47, 51-52 (D.D.C. 2005), the in camera inspection of the relatively few documents asserted to be privileged allows the Court to make its own findings. See Bigelow v. District of Columbia, 122 F.R.D. 111, 113 (D.D.C. 1988).

6

outweighs the public interest in non-disclosure."). And in doing so, courts consider "factors such as 'the relevance of the evidence,' 'the availability of other evidence,' 'the seriousness of the litigation,' 'the role of the government,' and the 'possibility of future timidity by government employees.'" In re Sealed Case, 121 F.3d at 737-38 (quoting In re Subpoena Served Upon the Comptroller of the Currency, 967 F.2d 630, 634 (D.C. Cir. 1992)).

### III. DISCUSSION

*A. Portions of Documents 1 and 2 May Be Redacted*

Documents 1 and 2 are emails dated September 27, 2021, between Assistant United States Attorneys ("AUSA") Risa Berkower and Ahmed Baset, discussing an email received from an Internal Affairs Division ("IAD") agent of the Metropolitan Police Department of the District of Columbia ("MPD"). The government claims that Documents 1 and 2 are shielded from discovery by the attorney-client privilege, and that Document 2 is also protected because it is attorney work product. As discussed at the August 9, 2022 ex parte conference, the government previously produced to counsel for Mr. Sutton the email from the IAD agent to AUSA Berkower and AUSA Baset, see Defense Exhibit D – September 25, 2021 Email from Joe Della-Camera [Dkt. No. 125-1]. The Court therefore construes the government's claims of attorney-client privilege and work product protection as limited to the communications between government counsel.

The Court concludes that the communications between the two prosecutors contained in Documents 1 and 2 are protected by the attorney-client privilege. These emails, which the Court has reviewed in camera, contain discussions between two prosecutors regarding litigation strategy, and they effectively convey the prosecutors' legal advice and judgment concerning the handling of newly-obtained evidence. The Court concludes that such

7

communications between government lawyers are protected by the attorney-client privilege. See, e.g., Reep v. U.S. Dep't of Justice, 302 F. Supp. 3d 174, 185 (D.D.C. 2018) (finding that documents prepared by an AUSA were properly withheld under the attorney-client privilege because it contained legal advice of the AUSA); Bloche v. Dep't of Def., 414 F. Supp. 3d 6, 43 (D.D.C. 2019) (finding that documents were properly withheld under the attorney-client privilege because they "conveyed [the agency attorney's] position on 'legal concerns' regarding an agency position").

   Although Documents 1 and 2 are not communications between a government attorney and a separate, non-lawyer government employee representing a client agency, the Court finds that the exchange between AUSA Berkower and AUSA Baset effectively was a communication between an attorney and his or her client, the United States, respecting legal advice. In the Court's view, the candid conversation between prosecutors about how best to protect the interests of the United States in the course of a criminal investigation and prosecution implicates the same needs for the "assurance of confidentiality" that justifies the application of the attorney-client privilege to communications between private or public parties and their counsel seeking legal advice. Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d at 863. Requiring the disclosure of such confidential communications between prosecutors would deter "full and frank communications" among co-counsel and would undermine the effective rendering of legal services. Upjohn Co. v. United States, 449 U.S. at 389; see also Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice, 538 F. Supp. 3d at 135 (noting that "the [attorney-client] privilege is not lost because an attorney consults other attorneys about the subject matter of the communication" (quoting Mead Data Central, Inc. v. U.S. Dep't of Air Force, 566 F.2d at 253 n.24)).

8

Documents 1 and 2 must be produced, except that the bodies of the emails between AUSA Berkower and AUSA Baset may be redacted.[2]

*B. Documents 3, 4, 6, 10, and 12 Must Be Produced*

Documents 3, 4, 6, 10, and 12 are emails sent either from or to Special Agent Sean Ricardi, an investigator employed by the United States Attorney's Office for the District of Columbia ("USAO"). Special Agent Ricardi interviewed the witness twice – once on September 28, 2021, and once on October 1, 2021 – and drafted two memoranda of investigation memorializing the interviews. See United States v. Sutton, 2022 WL 2383974, at *3. All five emails withheld by the government pertained to and attached a draft memorandum of investigation of the first witness interview, held on September 28, 2021. See id. Document 10 is an email from Special Agent Ricardi to an acting supervisor; Documents 3 and 4 are duplicate emails from that supervisor in response; Document 6 is an email from Special Agent Ricardi to AUSA Berkower and AUSA Baset; and Document 12 is an email from Special Agent Ricardi to another supervisor. Document 10 is dated September 29, 2021, and the others are all dated October 1, 2021. The government claims that all five emails are protected by the deliberative process privilege; it also claims that Document 6 is protected by the attorney-client privilege.

The Court easily concludes that Documents 3, 4, 6, 10, and 12 are not subject to the deliberative process privilege because none of them qualifies as "deliberative." See In re Sealed Case, 121 F.3d at 737 (noting that one of the two "essential" requirements for the deliberative process privilege is that the material be "deliberative"). None of the five emails contains any substantive information about the September 28, 2021 witness interview or the

---

[2] Because the Court finds that the relevant portions of Documents 1 and 2 are protected by the attorney-client privilege, the Court need not resolve whether Document 2 is independently shielded from discovery by the work product doctrine.

9

contents of Special Agent Ricardi's draft memorandum of investigation. Indeed, three of the emails consist of a single curt, non-substantive sentence, and two of the emails simply consist of a subject line without a body. If the emails convey any information at all, they convey "purely factual" information: that a draft memorandum of investigation – with or without edits – is attached. In re Sealed Case, 121 F.3d at 737 (noting that the deliberative process privilege does not "protect material that is purely factual"). Such emails do not themselves reflect or disclose the views of the government, and they are not protected by the deliberative process privilege. See In re Anthem, Inc. Data Breach Litig., 236 F. Supp. 3d at 162-63 (concluding that pages containing non-substantive information, like "who attended [a] meeting, the topic of the meeting, and the date and time of the meeting," was not deliberative).

    The Court also concludes that Document 6 is not protected by the attorney-client privilege because there is no indication that the email was sent with the "primary purpose" of "securing legal advice." Cause of Action Ins. v. U.S. Dep't of Justice, 330 F. Supp. 3d 336, 347 (D.D.C. 2018). Having reviewed the email in camera, the Court is not persuaded that the email or the attached memorandum of investigation were sent to prosecutors for the purpose of seeking legal advice, as opposed to simply providing notice to government counsel of a memorandum of investigation summarizing the witness's recent interview with Special Agent Ricardi. See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice, 538 F. Supp. 3d at 146 (finding that portions of a document were not privileged because they were transmitted for non-legal purposes that "fall[] outside the scope of the [attorney-client] privilege"); see also In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984).

### C. *Documents 5, 7, 8, 9, and 11 Must Be Produced*

Documents 5, 7, 8, 9, and 11 are draft memoranda of investigation summarizing Special Agent Ricardi's September 28, 2021 interview with the witness. Document 9 is an undated draft memorandum that was sent to Special Agent Ricardi's acting supervisor; Documents 7 and 8 are duplicate draft memoranda (also undated) that contain suggested edits by the acting supervisor; and Documents 5 and 11 (also undated) are near duplicate draft memoranda that were sent to government counsel and to another of Special Agent Ricardi's supervisors, respectively. During the August 9, 2022 ex parte conference, government counsel confirmed that the draft memoranda differ from the final memorandum of investigation that has already been produced to counsel for Mr. Sutton. See Defense Exhibit A – September 28, 2021 Memorandum of Investigation [Dkt. No. 67-2]. The government asserts that all five draft memoranda are shielded from discovery by both the deliberative process privilege and the work product doctrine.

The Court concludes that, although a closer question than the emails discussed above, Documents 5, 7, 8, 9, and 11 are not protected by the deliberative process privilege. Having reviewed the draft memoranda in camera, the Court concludes that the documents do not in fact reflect internal agency decisionmaking and therefore are not "deliberative." See In re Anthem, Inc. Data Breach Litig., 236 F. Supp. 3d at 162 ("To be 'deliberative,' a document must reflect part of the agency give-and-take by which the decision itself is made." (internal quotation omitted)). The memoranda are not "advisory opinions, recommendations, [or] deliberations." Cause of Action Inst. v. U.S. Dep't of Justice, 330 F. Supp. 3d at 353 (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. at 150). Rather, the documents are successive versions of the same memorandum of investigation summarizing Special Agent Ricardi's September 28, 2021 interview with the witness. The only deliberations reflected in the memoranda relate to the

wording and grammar of particular sentences, which in the Court's view does not "expose [the USAO's] policy deliberations to unwarranted scrutiny." Mapother v. Dep't of Justice, 3 F.3d 1533, 1538 (D.C. Cir. 1993). Because these memoranda effectively summarize factual information – the witness's interview statements – without expressing the opinions or policies of the government, they are not shielded from discovery by the deliberative process privilege. See, e.g., Cause of Action Inst. v. U.S. Dep't of Justice, 330 F. Supp. 3d at 354; In re Anthem, Inc. Data Breach Litig., 236 F. Supp. 3d at 162-64; Boyd v. Exec. Office for U.S. Attorneys, 161 F. Supp. 3d 1, 15 (D.D.C. 2015).

Even if the memoranda were "predecisional" and "deliberative," the Court would nevertheless conclude that disclosure is warranted because there is a sufficient need for the documents. See In re Anthem, Inc. Data Breach Litig., 236 F. Supp. 3d at 159 ("[Deliberative process] privileged materials may be ordered disclosed if the court concludes the private need for disclosure outweighs the public interest in non-disclosure."). Here, Mr. Sutton's need to examine materials related to the government's interactions with the witness in order to explore whether any potential prejudice was caused by the government's delay in disclosing the witness's exculpatory statement – the very purpose of the August 16, 2022 evidentiary hearing, see United States v. Sutton, 2022 WL 2383974, at *5-6, *10 – outweighs any public interest in ensuring that government investigators may generally revise memoranda of investigation without external scrutiny. See In re Sealed Case, 121 F.3d at 737, 746.

For similar reasons, the Court concludes that the work product doctrine does not prevent the disclosure of Documents 5, 7, 8, 9, and 11. Because these memoranda contain only "objective facts and information" collected by Special Agent Ricardi, who conducted the investigation at the request of government counsel, they are fact work product. Judicial Watch,

12

Inc. v. U.S. Dep't of Justice, 391 F. Supp. 3d at 49. Such fact work product is discoverable upon a showing of "a substantial need for the materials and an undue hardship acquiring the information any other way." United States v. Clemens, 793 F. Supp. 2d at 244 (internal quotation omitted); see United States ex rel. Landis v. Tailwind Sports Corp., 303 F.R.D. 419, 425 (D.D.C. 2014). And as noted above, Mr. Sutton has a substantial need to know about the government's September 28, 2021 interview with the witness, including how the government modified its summary of the interview across multiple versions of the related memorandum of investigation. Thus, given that these withheld documents go directly to the Brady issue before the Court and because Mr. Sutton could not otherwise obtain the substantial equivalent of these documents without undue hardship, the work product doctrine does not prevent these documents from being discovered. See In re HealthSouth Corp. Sec. Litig., 250 F.R.D. at 14; United States v. Clemens, 793 F. Supp. 2d at 258-59.

*D. Document 13 May Be Withheld*

Finally, Document 13 is AUSA Baset's personal notes, which were prepared over multiple days, detailing the witness's initial interaction with police and his follow-up interviews with Special Agent Ricardi. The government claims that all of Document 13 is protected by the attorney-client privilege and the work product doctrine.

Document 13 consists of two parts. The first part is a multi-page table with three columns. The left-hand column contains time stamps, running a little over seven minutes, that correspond to the time the witness spoke with police on September 25, 2021. The central column contains a near verbatim transcription of the witness's conversation with police on September 25, 2021, which was recorded on a body-worn camera. See United States v. Sutton, 2022 WL 2383974, at *2. During the August 9, 2022 ex parte conference, AUSA Baset noted

13

that although he attempted to accurately write down the witness's interaction with police in the central column as he listened to the body-worn camera recording, he exercised some judgment in deciding what material to include – omitting, for example, personally identifiable information and other material he deemed irrelevant or sensitive. Finally, the right-hand column of the table contains selective commentary by AUSA Baset – noting, for instance, suspected inconsistencies in the witness's statements – based upon his review of Special Agent Ricardi's memorandum of investigation of the witness's September 28, 2021 follow-up interview.

The second part of Document 13 is a short summary of the witness's second follow-up interview with Special Agent Ricardi on October 1, 2021. As explained by AUSA Baset at the August 9, 2022 ex parte conference, AUSA Baset prepared the summary while referencing Special Agent Ricardi's memorandum of investigation detailing the witness's October 1, 2021 follow-up interview. See United States v. Sutton, 2022 WL 2383974, at *3; see also Defense Exhibit C – October 1, 2021 Memorandum of Investigation [Dkt. No. 67-4].

The Court concludes that the entirety of Document 13 is attorney work product that is not subject to disclosure. The Court first finds that the left-hand and central columns of the table are fact work product. "[C]ourts in this district have held that substantially verbatim statements contained in interview memoranda [prepared by counsel] that have not been 'sharply focused or weeded' by an attorney to be 'fact' rather than 'opinion' work-product." United States ex rel. Landis v. Tailwind Sports Corp., 303 F.R.D. at 425; see also United States v. Clemens, 793 F. Supp. 2d at 252. Although AUSA Baset explained during the August 9, 2022 ex parte conference that he did not perfectly transcribe the witness's statements from September 25, 2021, the Court understands his clear intention was to capture as accurately as possible all that was recorded on the body-worn camera. And though AUSA Baset exercised some

discretion in choosing what information to omit, upon reviewing the notes in camera, the Court finds that those omissions did not amount to "carefully weed[ing] the material in any manner that would reveal [his] mental processes." In re HealthSouth Corp. Sec. Litig., 250 F.R.D. at 12.

On the other hand, the Court finds that the remainder of Document 13 – the right-hand column and the second part of Document 13 – are opinion work product. In contrast to AUSA Baset's notes in the left-hand and central columns of the table, in which he attempted to transcribe the witness's statements to police, his other notes organize and summarize the witness's follow-up interviews with Special Agent Ricardi on September 28 and October 1, 2021. Those notes clearly are not attempts to faithfully transcribe all that was said in those two interviews. Rather, they highlight portions of the witness's statements to the agent that AUSA Baset found especially relevant given the witness's prior statement to police, thereby reflecting AUSA Baset's "opinions, judgment and thought processes." United States ex rel. Landis v. Tailwind Sports Corp., 303 F.R.D. at 425 (quoting In re Sealed Case, 124 F.3d at 236); see also In re HealthSouth Corp. Sec. Litig., 250 F.R.D. at 11 (noting that attorney memoranda of interviews that "sharply focus[] or weed[] the materials" constitute opinion work product (internal quotation omitted)). Because these notes reflect AUSA Baset's "mental impressions, conclusions, opinions, or legal theories," they are afforded a "more absolute protection" as opinion work product. In re HealthSouth Corp. Sec. Litig., 250 F.R.D. at 10 (internal quotations omitted).

Having found that some of Document 13 is fact work product and some is opinion work product, the questions remains whether there has been a "sufficient showing to justify their production." In re HealthSouth Corp. Sec. Litig., 250 F.R.D. at 13. A court may order discovery of fact work product upon a showing of "a substantial need for the materials and an undue

hardship in acquiring the information any other way." United States v. Clemens, 793 F. Supp. 2d at 244 (quoting Director, Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d at 1307). Likewise, a court may order discovery of opinion work product upon "'a far stronger showing of necessity and unavailability by other means' than would otherwise be sufficient for discovery of 'fact' work product." Id. (quoting Upjohn Co. v. United States, 449 U.S. at 402).

As to the fact work product found in Document 13, the Court finds that Mr. Sutton has no substantial need to access AUSA Baset's transcription of the witness's statements to police on September 25, 2021. Mr. Sutton already has access to the body-worn camera footage that recorded the witness's interactions with police, so Mr. Sutton already has access to the information found in the left-hand and central columns of the table in Document 13, in its original form. The Court also finds that Mr. Sutton has no greater need for AUSA Baset's personal impressions of the witness's interviews with Special Agent Ricardi, found in the right-hand column of the table and the second part of Document 13. See In re HealthSouth Corp. Sec. Litig., 250 F.R.D. at 10 (noting that "a party must show [an] extraordinary justification" to obtain opinion work product (internal quotation omitted)). Simply put, Mr. Sutton has access to the same memoranda of investigation that AUSA Baset summarized in his notes, and he has no special need to access AUSA Baset's personal impressions of the witness's statements.[3]

---

[3] Because the Court finds that Document 13 is protected by the work product doctrine, the Court need not resolve whether it is attorney-client privileged.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that portions of Documents 1 and 2 are protected by the attorney-client privilege and that the work product doctrine shields Document 13 from discovery. The remainder of the withheld documents must be produced. It therefore is hereby

ORDERED that, on or before August 12, 2022, at 11:59 p.m., the government shall produce Documents 1 through 12 to Mr. Sutton's counsel in conformity with this Opinion and Order.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 8/12/22