## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 21-cr-598-PLF |
| | : | |
| v. | : | Filed under seal |
| | : | |
| TERENCE SUTTON and | : | |
| ANDREW ZABAVSKY, | : | |
| | : | |
| Defendants. | : | |

## <u>GOVERNMENT'S OMNIBUS MOTION *IN LIMINE*</u>

The defendants, Terence Sutton and Andrew Zabavsky, are charged with crimes related to the tragic death of Karon Hylton-Brown on October 23, 2020. At trial, the question for the jury will be whether defendant Sutton murdered Mr. Hylton-Brown by chasing him with a police car and flushing him into traffic with conscious disregard of an extreme risk of harm to Mr. Hylton-Brown, and whether both defendants conspired to, and did, attempt to obstruct the potential resulting federal investigation. Throughout the pre-trial proceedings in this matter, the defendants have attacked the government and this prosecution because they claim that it is unprecedented that they, as law enforcement officers, be held accountable for their actions. They have made repeated allegations of government discovery violations and grand jury abuse across multiple filings and in multiple hearings before the Court. And they have publicly denigrated Mr. Hylton-Brown's character. None of these issues go to elements of the offenses with which the defendants are charged, or to the defendants' guilt or innocence, and the defendants should not be permitted to submit improper evidence or argument regarding these claims to the jury at trial. For the reasons given below, such improper evidence and arguments to the jury should be precluded.

**I.     The Court Should Preclude the Defendants from Presenting Evidence or Argument, or Questioning Witnesses, About Irrelevant and Incendiary Issues.**

From the moment of their initial appearance before this Court, the defendants have made incendiary statements and suggested they will attempt to introduce evidence and argument that would not be appropriate at any criminal trial.  Indeed, starting with defendant Sutton's initial appearance, his counsel asserted that Mr. Hylton-Brown was "a significant member" of a local street crew "that operates an open-air drug market on Kennedy Street between 5th and 8th Street," described Mr. Hylton-Brown juvenile criminal record (including an arrest for which there was no conviction), and baselessly asserted that on the night of this incident Mr. Hylton-Brown was "dealing drugs" and "armed to cause havoc and seek revenge on . . . his competitors who were operating in [the Kennedy Street] area." Tr. 9/24/21, at 18:7-17, 19:13-16, 20:8-12.  None of these issues or evidence is relevant, none is appropriate for the jury at trial, and the Court must exclude them.

Only relevant evidence is admissible at trial.  Fed. R. Evid. 402; *United States v. Sesay*, 313 F.3d 591, 599-600 (D.C. Cir. 2002) (holding that for testimony to be admissible it must be relevant); *United States v. Tarantino*, 846 F.2d 1384, 1410 (D.C. Cir. 1988) (noting that a defendant could not introduce evidence that "bears no relevance to any elements of the crimes charged or to any affirmative defenses to those crimes"); *United States v. Sutton*, 801 F.2d 1346, 1360 (D.C. Cir. 1986) ("A jury's verdict should be based upon an assessment of the evidence relevant to the particular crime with which the defendant is presently charged").  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Even if evidence is "marginally relevant," the Court may properly exclude it if it poses "an undue risk of confusion of the issues."  *United States v. Edwards,* 901 F.Supp.2d 12, (D.D.C. 2012); Fed. R. Evid. 403 (relevant evidence may be excluded if its probative value is

substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence).

"The [Court] has wide discretion to admit or exclude evidence where the question is one of relevancy or materiality." *United States v. Morgan*, 581 F.2d 933, 936 (D.C. Cir. 1978).  Indeed, it is the Court's duty to "conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."  Fed. R. Evid. 103(d); *see also United States v. Young*, 470 U.S. 1, 10 (1985) ("the trial judge has the responsibility to maintain decorum in keeping with the nature of the proceeding; 'the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct'" (quoting *Quercia v. United States*, 289 U.S. 466, 469 (1933)).  Furthermore, the Court must guard against evidence and arguments that seek only to encourage jury nullification.  *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975) (upholding trial court's rejection of evidence relevant only to jury nullification).  Accordingly here, to maintain proper order and keep the jury properly focused on its fact-finding duty, the Court should exclude any improper and inadmissible evidence that the defendant may seek to advance through evidence or argument.

### a. The Court Should Preclude Evidence or Argument Denigrating Karon Hylton-Brown's Character, Criminal History, or Associations

Repeatedly before this Court, defendant Sutton has attempted to blame the victim—in this case, a victim who is not alive because of defendant Sutton's actions—and has advanced a counter-factual narrative that on October 23, 2020, Mr. Hylton-Brown was the leader of a street gang whom officers had good cause to suspect posed an immediate threat to the neighborhood.  █████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Based on the government's extensive

3

investigation, including sworn testimony by the three officers who were passengers inside defendant Sutton's police car on the night of the chase, this is simply untrue. And unless defendant Sutton intends to testify in service of this narrative, and explain exactly what facts about Mr. Hylton-Brown informed his state of mind at the time of the charged offenses, the defendants should be precluded from asking questions or presenting evidence or argument regarding Mr. Hylton-Brown's purported gang affiliations or criminal history. Unless tethered to the defendant Sutton's state of mind, any such evidence is irrelevant, prejudicial, and an attempt at jury nullification.

As an initial matter, defendant Sutton's claims about the reason for his actions on the night of Mr. Hylton-Brown's death are inconsistent with the factual record. The government took the sworn testimony of four MPD officers who encountered Mr. Hylton-Brown on the evening of his death, and two federal agents also interviewed defendant Zabavsky. None of these officers' statements supports defendant Sutton's salacious claims that Mr. Hylton-Brown was engaged in violent activity that night; that he was involved in a physical fight; or that he was participating in gang activity. If defendant Sutton wishes to present evidence otherwise, he will have to do so through his own testimony.

The Court has already correctly determined that evidence regarding Mr. Hylton-Brown's purported connections to a "KDY crew" or gang is irrelevant to the charged crimes. *See* ECF 159 at 21 (finding that "[g]eneral investigative information about the Kennedy Street Crew is not relevant to determining whether Mr. Sutton acted with conscious disregard of a serious risk of death or serious bodily harm when he allegedly chased Mr. Hylton-Brown through back alleyways at high speeds, leading to Mr. Hylton-Brown's death" and that "[e]ven assuming that Mr. Hylton-Brown was a member of the Kennedy Street Crew, Mr. Sutton offers no argument – and the Court can think of none – that would justify or excuse a reckless disregard for Mr. Sutton's life because

of the unrelated, prior conduct of <u>other</u> gang members") (emphasis in original).  The same principle applies to claims that the defendants might make about Mr. Hylton-Brown's criminal history; generalized evidence that Mr. Hylton-Brown was affiliated with a street crew or had previous arrests or criminal convictions is not relevant to whether defendant Sutton exercised due care when pursuing him on a moped through the streets of the District, or whether the defendants conspired to obstruct a potential civil rights investigation into the circumstances of his death.

At the same time, such information is extremely prejudicial, carries a high risk of nullification, and fails the Rule 403 balancing test.  First, as described above, evidence regarding Mr. Hylton-Brown's character and history is irrelevant and holds no probative value.  Indeed, as defendant Sutton's filings have made clear, his anticipated use of Mr. Hylton-Brown's criminal history is to invite the jury to speculate about why Mr. Hylton-Brown may not have stopped when the defendant tried to pull him over.  ECF 204, at 37 ("At the time of the incident, despite being only 20 years of age, Hylton-Brown had six pending criminal cases in the District of Columbia on which he was on release, and multiple charges in Montgomery County. . . . This evidence would have demonstrated that Hylton-Brown had a strong motive to flee the police, fearing that he would be found in violation of release conditions in his pending cases.").  Opening the door to such speculation is entirely improper and wholly irrelevant to the jury's assessment of the charges: specifically, whether the defendant pursued Mr. Hylton-Brown in a fashion that consciously disregarded known risks.  It should therefore be precluded.

Further, such speculative, derogatory information is extremely unfairly prejudicial.  No witness known to the government has stated that the MPD officers, led by defendant Sutton, pursued Mr. Hylton-Brown because he was a dangerous gang member presenting an active threat, and therefore the defendants do not have a good-faith basis to cross-examine any government

witnesses about Mr. Hylton-Brown's associations or criminal history.  *See United States v. Lin*, 101 F.3d 760, 767-68 (D.C. Cir. 1996) (noting that a defendant could not ask highly prejudicial cross-examination questions where there was no good-faith basis for the line of questioning); *United States v. Sampol*, 636 F.2d 121 (D.C. Cir. 1980) (counsel must have a reasonable basis for asking questions on cross-examination which tend to incriminate or degrade the witness and thereby create an unfounded bias which subsequent testimony cannot fully dispel).  If the defendants are even allowed to ask such questions, the damage will be done regardless of the answer: the jury will be left to draw impermissible, speculative conclusions about Mr. Hylton-Brown's character.  But Mr. Hylton-Brown's character does not go to any issue of the defendants' guilt or innocence, and if the jury were to reach a verdict in any way connected to it, it would be nullification.

In limited circumstances, otherwise irrelevant evidence may be pertinent to a defendant's state of mind.  For instance, it is possible that defendant Sutton could claim that he knew of Mr. Hylton-Brown's alleged gang connections or criminal history, and that it informed his state of mind, and led him to act as he did.  But in order to do so in a manner that complies with the Federal Rules of Evidence, defendant Sutton would need to testify that he knew of the information himself, and that he relied on it during the pursuit.  *See United States v. Libby*, 475 F.Supp.2d 73, 85-86 (D.D.C. 2007) (evidence concerning the state of mind of a defendant was inadmissible in the absence of the defendant's own testimony as the defendant would have to testify to provide a foundation for the information, and without that testimony portions of the statement were irrelevant and cumulative); *United States v. Passaro*, 577 F.3d 207, 220 n.7 (4th Cir. 2009) (excluding defendant's admission of Department of Justice document because "the record lacks any evidence that [the defendant] read or knew of, let alone relied on" it).  To guard against

improper and prejudicial testimony, the Court should require a proffer before allowing the defense to present any such evidence.

Finally, the defendants should not be permitted to elicit or provide testimony, or make argument, about the fact that Mr. Hylton-Brown was carrying cash and wearing an ankle monitor from Montgomery County, Maryland when he was killed. Both defendants have indicated that they intend to do so by raising baseless claims that this was allegedly exculpatory information that was omitted from presentation to the grand jury based on the government's "malevolent intent." ECF 204, at 37 (Sutton); ECF 202, at 31 (Zabavsky). Neither the cash Mr. Hylton-Brown possessed nor his ankle monitor bear any relevance to the charges, however. Because neither defendant knew any of this information at the time of the charged conduct, it could not have affected their state of mind or the choices they made. Furthermore, both defendants have indicated they intend to use this information to insinuate to the jury that Mr. Hylton-Brown was engaged in some kind of illegal activity on the night of his death. *See* ECF 204 at 37 (Sutton); ECF 202 at 31 (Zabavsky). The Court should not allow it.

In sum, the Court should not permit the defendants to make before the jury the same denigrating and prejudicial comments regarding Mr. Hylton-Brown that they have made during pre-trial proceedings. And to the extent that the defendants claim that information regarding Mr. Hylton-Brown's character is relevant to their state of the mind, the Court should proceed cautiously, requiring a proffer from the defense before exposing the jury to irrelevant and improper testimony, and permitting the defense to venture into these areas only if offered in a manner that complies with the Federal Rules of Evidence, such as through a defendant's testimony concerning his own state of mind.

**b.   Evidence of Defendant Sutton's Police Reports from Unrelated Incidents and MPD Internal Affairs Reports from Other Vehicular Pursuits are Irrelevant and Confusing**

Defendant Sutton moved for, and the Court ordered on the basis that it "might be relevant," ECF No. 159 at 25, production of PD-163 arrest reports that defendant Sutton prepared over the course of the six months in advance of the charged conduct.[1]  The defendant also moved for the production of five years' worth of MPD internal affairs (IAD) vehicular pursuit investigations, which the Court ordered on the basis that such reports "may illuminate the contours of the reasonable standard of care" that apply to this pursuit.  ECF 198, at 6.  The government produced the IAD vehicular pursuit reports on August 11, 2022 and defendant Sutton's prior arrest reports on August 26, 2022.  Because none of these materials are relevant or probative as to the charged offenses, the Court should not permit the defendant to introduce evidence regarding them.

As an initial matter, the prior reports defendant Sutton wrote are wholly irrelevant and fail the Rule 403 balancing test in multiple ways.  PD-163s are arrest reports; they are different from crash reports.  MPD requires different types of police reports for different types of incidents.  An arrest report (a PD-163), which is prepared at the time that someone is arrested, is a different type of report than that created when there is a traffic crash, known as a PD-10; each type of report is designed to capture different categories of information, depending on what may be relevant to the type of incident being documented.  In this case, the report at issue is the defendant's draft PD 10, which is designed to capture information relevant to a vehicle collision.  As such, the defendant's prior PD 163 arrest reports—each of which documented an arrest—were prepared during incidents

---

[1] Based on the government's representations about the time-consuming process of gathering the reports, the Court ordered the government to produce six months' worth.  *See* ECF 158, 159.  When the government realized that it could gather the reports more quickly than anticipated, it produced a year's worth instead.  *See* ECF No. 237.

that are wholly dissimilar to the traffic collision at issue in this case.  These reports, and the information they are designed to capture, are too dissimilar to the traffic crash reports to provide a probative comparison for the jury, and should therefore be excluded as irrelevant under Rule 401, and an undue waste of time under Rule 403.

In any event, however, not even defendant Sutton's other crash reports hold probative value.  With respect to the obstruction of justice charge in this case, the question for the jury will be whether, on the night of October 23, 2020, the defendants misled the Watch Commander, see ECF No. 1, Indictment, at ¶ 46, and whether defendant Sutton "drafted a traffic crash report that minimized the extent of the observable injuries to Hylton-Brown." *Id*. at ¶ 47.  In order to make sure a determination, the jury will have to assess the information before it regarding Mr. Hylton-Brown's observable injuries, defendant Sutton's knowledge of them, and what defendant Sutton wrote in his draft report.  Whether defendant Sutton wrote fulsome crash reports on other occasions, regarding other incidents, is immaterial to these questions and is not probative.  Further counseling in favor of exclusion of such evidence is that it would fail the Rule 403 balancing test—at the same time that the evidence holds low (or non-existent) probative value, the risk of wasting the jury's time through tangential discussions of other, unrelated crashes is very real.  In order to make any assessment at all of whether defendant Sutton properly drafted reports related to other incidents, the parties would need to delve into the details of those incidents—potentially even calling witnesses to other, wholly irrelevant crashes and taking testimony on the visibility of any injuries—descending into trials-within-the-trial that would confuse the jury and needlessly consume its time.  *See United States v. Tucker*, 12 F.4th 804, 823 (D.C. Cir. 2021) (affirming trial court's decision to limit a cross examination based on the Rule 403 balancing test, in part because of concern that certain questions risked a trial within a trial).

9

The prior IAD vehicular pursuit investigations should be excluded for similar reasons. These investigations arise from any number of factual circumstances; the defendant's request (and the Court's order) required their production regardless of whether the incidents bore any similarity to the facts of this case.  Just as with the PD-163 reports, the introduction of these reports risks confusing the jury with dissimilar and improper comparisons, and also opens the door to innumerable mini-trials over whether other vehicular pursuits are similar enough to permit a comparison to the instant case.  This evidence will be irrelevant, unduly misleading, and a waste of the jury's time on collateral issues.

And, at the same time, this evidence is minimally probative:  IAD's decision-making on individual vehicular pursuits merely determines whether involved officers, under the circumstances of a particular vehicular pursuit, will be subject to departmental discipline for their conduct.  The results of these investigations are not publicized throughout the department, nor does the outcome of any one investigation have precedential value within MPD for those that come after it.[2]  Accordingly, these decisions simply do not set a standard of care for other officers in MPD as a whole.  And, of course, there is no evidence in this case that the defendant knew about any of these decisions other than one prior incident in which he himself was involved, such that he could testify that he somehow relied (even mistakenly) upon that prior decision.  Given the minimal probative value of this evidence and the high risk that it will confuse the jury and waste time on collateral matters, it should be excluded.

   **c.  References to the Community's Reaction to Mr. Hylton-Brown's Death Are Improper**

---

[2] If IAD determines that a policy violation occurred, then other prior cases are considered with regard to the discipline imposed; prior to that point, however, with regard to *whether* there is a violation of MPD policy, each alleged violation is assessed on its own merits.

In the course of pre-trial litigation, both defendants have referenced public protests at MPD's Fourth District station following Mr. Hylton-Brown's death.  Defendant Sutton requested discovery regarding "riots that occurred outside of the MPD's Fourth District Headquarters on October 27-28, 2020," ECF No. 135 at 17, and similarly, defendant Zabavsky proposed a question for the jury questionnaire regarding "riots at the Fourth District precinct in October, 2020." ECF No. 243-3 at 2.  The community's reaction to Mr. Hylton-Brown's death is irrelevant to the charges, as the Court has already stated.  ECF 159 at 27 ("Individual and community responses to Mr. Hylton-brown's death – even those that are unquestionably criminal – are not relevant to whether Mr. Sutton committed second degree murder or obstructed justice.").  The defendants should therefore be precluded from raising this topic through testimony or argument.

### d.  Changes to the MPD General Orders, More Than a Year After the Charged Offenses, Are Irrelevant

Throughout the pretrial proceedings in this matter, defendant Sutton requested extensive discovery surrounding MPD's amendment, on December 30, 2021, of the MPD General Orders that were operative on October 23, 2020, the date of the charged conduct.  ECF No. 152 at 1.  In the discovery context, the Court recognized the irrelevance of any changes to the General Orders that post-dated the charged crimes.  ECF No. 216 at 14-15 ("Although the MPD General Orders that were in effect on October 23, 2020 and governed how Mr. Sutton and other police officers were to engage in vehicular pursuits may illuminate the contours of the reasonable standard of care that applied to Mr. Sutton . . . it is difficult to imagine how the amendments to those MPD General Orders from more than a year later would elucidate that standard of care." (emphasis in original)). Evidence about the changes to the MPD General Orders that were made long after defendant Sutton's charged conduct concluded would not only fail to elucidate the standard of care he owed—and thus not assist the jury in any way with respect to the second degree murder count—

but it would risk confusing the jury about the terms of the policy that was in place at the time of the charged conduct.  The defendants should be precluded from introducing evidence or making argument about these amendments to the MPD General Orders.

e. **Defendant Sutton Cannot Introduce Hearsay of MPD Detective Victor DePeralta or Incorrectly Imply, Through Questioning or Argument, that His Statements Are Government Admissions**

In a footnote in one of his filings, defendant Sutton suggests that he will attempt to introduce inadmissible hearsay of MPD Major Crash Detective Victor DePeralta on the theory that Detective DePeralta's prior sworn statement is a statement of a party opponent. █████████████████

█████  Defendant Sutton is wrong.  Det. DePeralta is a witness, not a member of the prosecution team, and therefore his prior statements do not constitute government admissions under applicable case law.  Because of this, if Defendant Sutton wants to admit any of Det. DePeralta's prior statements at trial, he will have to do so consistent with the Federal Rules of Evidence—either by questioning Det. DePeralta about it on cross-examination if he is called as a witness by the government, or by calling Det. DePeralta as a defense witness subject to full questioning by all parties.

In particular, defendant Sutton has suggested that he will attempt to admit ████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████████████████████████.  As proposed by the defense, this is inadmissible for two reasons.

████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████



In support of a claim that Det. DePeralta's hearsay statements are not exactly that, defendant Sutton cites one case, *United States v. Morgan*, and quotes its statement that "the federal government is a party-opponent of the defendant in criminal cases, and [the Federal Rules of Evidence] specifically provide that in certain circumstances statements made by government agents are admissible against the government as substantive evidence." ECF No. 185 at 28 n.2 (quoting *United States v. Morgan*, 581 F.2d 933, 937 n. 10 (D.C. Cir. 1978)). The problem for the defendant is that the "certain circumstances" that were present in *Morgan* are not present here.

In *Morgan*, the D.C. Circuit considered the trial court's exclusion, on the basis that it was hearsay, of a government agent's statement in a sworn affidavit submitted to a United States Magistrate. 581 F.2d at 938. The Court determined that the agent's statement was not hearsay under Rule 801(d)(2)(B), which provides that a statement is not "hearsay if a party-opponent 'has manifested his adoption or belief in its truth,'" because "[t]he government manifested its belief in

the truth [of the statements] by characterizing them as 'reliable' in a sworn affidavit to a United

States Magistrate." *Id*. The Court further noted that it is the practice in this District for Assistant

United States Attorneys to review warrant applications, and that "when the government authorizes

its agent to present his sworn assurances to a judicial officer that certain matters are true and justify

issuance of a warrant, the statements of fact or belief in the officer's affidavit represent the position

of the government itself, not merely the views of its agent." *Id*. at 937 n.10.

     *Morgan* is inapposite and provides no basis for the defendant to admit Det. DePeralta's

out-of-court statements under the factual circumstances present here. Det. DePeralta specifically,

and MPD generally, are not on the prosecution team, and Det. DePeralta is not the government's

agent. The statements Det. DePeralta made ██████████████ are not the government's

statements, and thus are not the statements of a party opponent to defendant Sutton. And the

government has never adopted Det. DePeralta's statements or expressed a belief in their truth. *See*

*United States v. Warren*, 42 F.3d 647, 656 (D.C. Cir. 1994) (statements made by police officers

on arrests reports were not sworn, and "[t]hus, the Government cannot be said to have manifested

a belief in their truth so as to bring the statements within the non-hearsay classification of Rule

801(d)(2)(B)."); *United States v. Bagcho*, 151 F.Supp.3d 60, 69 (D.D.C. 2015) (reviewing cases

and observing that "[t]he D.C. Circuit appears to be motivated by the principle that holding the

government to the assertions of a public official who is unrelated to the prosecution is unfair,

unless the government manifestly adopts the statement before the court.").

     Because ████████████████████ is hearsay that does not fall into any

exception permitted by the Rules, defendant Sutton cannot admit it into evidence at trial. Instead,

if defendant Sutton wants to present at trial ████████████████████

██, he must do so in accordance with the Rules: either by cross-examining Det. DePeralta about

it if he is called as a government witness, or by calling Det. DePeralta as a witness in the defense case.  Merely introducing ████████████████████████, as the defense appears ready to do, or improperly characterizing his prior statement as a government "admission" would violate the hearsay rules, and should be precluded, including during the questioning of witnesses and in argument.

### f.   The Defendants Cannot Introduce Evidence or Argument About Their Prior Good Acts

Before the Court, defendant Sutton has repeatedly raised his prior good acts as an Metropolitan Police Department (MPD) officer.  For instance, defendant Sutton has noticed expert testimony that Officer Sutton is "a decorated veteran," ECF No. 219-1 at 5, and requested extensive discovery into his own record of accolades.  ECF No. 135 at 18.  Such evidence would constitute improper propensity and character evidence, and it should be excluded if offered by either defendant.

The defendants cannot present evidence or argument about specific good acts—including instances in which they arguably acted admirably or courageously as MPD officers—in order to suggest that that evidence shows they would not have committed the charged crimes on October 23, 2020.  Evidence of specific instances of the defendants' prior good conduct, including their actions as MPD officers, is improper.  Federal Rule of Evidence 404 prohibits character evidence to prove that a person acted in conformity with that character on a specific occasion, Fed. R. Evid. 404(a)(1), (b)(1), and this rule applies to prior good acts just as it does to prior bad acts.  *See United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) ("For the same reason that prior 'bad acts' may not be used to show a predisposition to commit crimes, prior 'good acts' generally may not be used to show a predisposition not to commit crimes.").

Although there is an exception to this rule regarding specific instances of prior conduct "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense," Fed. R. Evid. 405(b), that is not the case here—the defendant's good acts as police officers are not an essential element of any charged offense.  Whether the defendants have performed their MPD duties on other occasions is not relevant to whether on October 23, 2020, defendant Sutton acted in conscious disregard of an extreme risk of death or serious injury to Mr. Hylton-Brown, or whether both defendants agreed to obstruct a possible federal investigation into his death.  *See United States v. Washington*, 106 F.3d 983, 999-1000 (D.C. Cir. 1997) (affirming district court's exclusion of evidence of defendant-police officer's prior commendations in prosecution of bribes-for-drug-security scheme because the officer's "'dedication, aggressiveness and assertiveness' in investigating drug dealing and carjacking is neither 'pertinent' to nor an 'essential element' of his supposed lack of predisposition to engage in the corrupt criminal activity with which he was charged"); *United States v. Ellisor*, 522 F.3d 1255, 1270-71 (11th Cir. 2008) (affirming district court's exclusion of evidence that defendant had actually put on prior events, in prosecution for fraudulently selling tickets to an event that did not occur, because "evidence of good conduct is not admissible to negate criminal intent" (internal quotation marks and citation omitted)); *United States v. Marrero*, 904 F.2d 251, 259-60 (5th Cir. 1990) ("The fact that [the defendant] did not overcharge in every instance in which she had an opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in the indictment.").  Any effort to put such evidence before the jury, therefore, should be precluded.

### g.  The Court Should Limit the Defendants' Character Testimony

While no character trait is an essential element of the charges against the defendants, they may be permitted to offer general testimony about a character trait that is relevant to the charged

crimes, such as  truthfulness.  *See United States v. Brown*, 503 F. Supp. 2d 239, 241-42 (D.D.C. 2007) (defendants charged with obstruction and false statements were permitted to offer character evidence to establish reputation for truthfulness).  But under Federal Rule of Evidence 405, there are significant limits on such testimony.  Indeed, a character witness under this rule may speak essentially only to two questions: whether the witness is aware of the defendant's reputation for a specific character trait, and whether the witness has an opinion about the defendant's character for the trait.  Fed. R. Evid. 405(a) ("When evidence of a person's character or character trait is admissible, it may be proved by testimony about the persons reputation or by testimony in the form of an opinion.");  *Michelson v. United States*, 335 U.S. 469, 471-72 (1948) (character evidence at trial consisted of how long witness had known defendant; if witness knew others who knew him; if witness knew of defendant's reputation for truthfulness; and what that reputation was); *United States v. Lewis*, 482 F.2d. 632, 637 (D.C. Cir. 1973) (character evidence "is confined to evidence of [defendant's] reputation in the community").  As described above in Part I.f., character witnesses cannot testify about a defendant's specific acts of good character.  *Michelson*, 335 U.S. 469 at 477 (a character witness "may not testify about defendant's specific acts").

The Court should exercise its broad discretion to manage the defendant's character testimony, including by requiring the defendants to elicit any character testimony in their own cases, rather than through cross-examination, and to limit the number of character witnesses each defendant calls.  First, the defense should be precluded from eliciting character testimony from the government's witnesses on cross-examination during the government's case in chief.  *See United States v. Southers*, 583 F.2d 1302, 1309 (5th Cir. 1978) (upholding trial court's decision, based on potential for confusion, not to allow defendant to elicit character evidence through cross-examination of government witnesses).  Any such testimony would be outside of the scope of the

government's direct examination, and it would also be confusing for the jury to hear mixed fact and character testimony from the same witness in one sitting; if the defendants wish to recall any of the government's fact witnesses as character witnesses in their own cases, they may do so.

Second, the Court can and should limit the number of character witnesses that each defendant calls. Character testimony is subject to Rule 403 just as any other evidence—meaning that it can be excluded if its probative value is substantially outweighed by danger of confusion, waste of time, or cumulative evidence. *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (upholding trial court's exclusion of character witnesses, citing Rule 403). Here, allowing each defendant to present more than one or two character witnesses will waste time and will not assist the jury. The probative value of character testimony will decrease with each witness, and the dangers of confusion, waste of time, and cumulation will increase. *See United States v. Jones*, 43 F.R.D. 511, 515 (D.D.C. 1967) ("It is well established that a trial judge may within his discretion limit the number of 'character' witnesses called by a defendant and sound judicial management would suggest that he do so."); *United States v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999) (upholding trial court's decision to limit defendant to three character witnesses); *United States v. Gray*, 105 F.3d 956, 963 (5th Cir. 1997) (trial court did not err in limiting defendant to two character witnesses); *United States v. Johnson*, 730 F.2d 683, 688 (11th Cir. 1984) (agreeing with trial court that defendant's three character witnesses gave ample opportunity to establish character, and "any further testimony would not have significantly aided the jury").

## II.   The Court Should Preclude Argument or Evidence On Collateral Issues

In pre-trial proceedings, the defendants have raised myriad issues that are collateral to the question of guilt or innocence at trial. They have claimed that the government's theory of prosecution is novel and that the government has selectively prosecuted them, and accused the government of violating its *Brady* obligations. None of these issues, or the potential consequences

for the defendants if convicted, bear on the defendants' guilt or innocence, and they should not be raised before the jury.

> **a. The Defendants Cannot Present Evidence or Argument that the Government's Prosecution is Novel or Unprecedented, or That They Were Selectively Prosecuted**

Defendant Sutton has attacked the prosecution in this case for pursuing what he has called "a unicorn among the criminal cases brought by DOJ against law enforcement officers," ECF 79 at 6, and because the grand jury charged him with second degree murder rather than a civil rights crime. ECF 204 at 1. Defendant Zabavsky alleged that the government "selectively prosecuted [him] for criminal conduct due to improper motivation to prevent further discord in the district based on his race and occupation." ECF No. 202 at 10. Having failed to establish any basis for a selective prosecution claim, neither defendant can make such an argument to the jury, and it would be likewise an improper effort at nullification to put before the jury claims that this prosecution is unprecedented, or an improper exercise of prosecutorial authority because no civil rights crime was charged.

Selective prosecution is not a factual determination for the jury. "[T]he issue of selective prosecution is one to be determined by the court, as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged." *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (internal citations omitted); *see also United States v. Abboud,* 438 F.3d 554, 579 (6th Cir. 2006) ("[T]he defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury."). Having failed to any selective prosecution as a matter of law, ECF 215 at 3, the defense cannot make such a claim before the jury, whether through questioning or argument. Similarly, there is no proper reason for the defendants to expose the jury to their claims that this

prosecution is "a unicorn" or otherwise an abusive use of governmental authority, or to make mention of the fact that they were not charged with a civil rights crime; rather, the only reason to inject these issues into the case before the jury would be an improper effort at nullification. Whether there have been other prosecutions similar to this one is irrelevant and prejudicial.  *See United States v. Young,* 20 F.3d 758, 765 (7th Cir. 1994) (finding that whether another individual was charged with the same crime as the defendant did "not make the facts relating to [defendant's] knowledge and participation in the [crime] more or less probable, and affirming exclusion of such argument at trial).  Moreover, the Court has ruled that there is no requirement that the defendant be charged with a constitutional violation in order to be prosecuted as charged in the Indictment, ECF 215, at 3; accordingly, there is no reason for the absence of such a claim to be brought to the jury's attention.[3]  The Court should preclude the defendants from raising these collateral issues at trial, either through questioning of witnesses or in argument.

**b.  The Defendants' *Brady* Claims Are Not Appropriate For the Jury**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████  Similarly, defendant Zabavsky proposed that the jury questionnaire ask prospective jurors whether a finding prosecutorial misconduct would influence their judgment of the case.  ECF 243-3, at 4.  Even where the government has committed misconduct—which here, it has not—such evidence or argument is not appropriate for the jury and serves only to influence the jury's assessment of the case based on factors other than the

---

[3] In this regard, the government incorporates by reference the arguments advanced in its Motion *in Limine* to Exclude Inadmissible Expert Testimony, ECF 219, which addressed similar issues in the context of the defendants' proposed expert witness testimony on constitutional standards.

evidence presented—namely, nullification.  The defendants' attempts to seek jury nullification here should be rejected.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████  That is because there is none.  A claim of government misconduct "is, like a claim of selective prosecution, ultimately separate from the issue of [a defendant's] factual guilt," and is not, therefore, an issue for the jury.  *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997); *see also United States v. Wylie*, 625 F.2d 1371, 1378-79 (9th Cir. 1980) ("outrageous involvement by the government agents" is a matter for the court, not the jury).  The Court will resolve defendant Sutton's discovery claims before trial, and neither defendant should be permitted to raise them again before the jury.

### c. The Defendants Cannot Raise Potential Personal or Professional Consequences of Conviction

It is not clear whether the defendants intend to attempt to introduce evidence or argument at trial regarding the consequences of a potential conviction—whether for their personal lives, their professional records, or in terms of potential punishment—but all of these issues constitute improper nullification evidence that should be precluded.  Information about the personal or professional consequences for the defendants is irrelevant and prejudicial.  *See United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974) ("evidence which has the effect of inspiring sympathy for the defendant or for the victim … is prejudicial and inadmissible when otherwise irrelevant.") (internal citation omitted); *United States v. White*, 225 F. Supp. 514, 519 (D.D.C. 1963) (testimony "clearly designed solely to arouse sympathy for defendant" was properly excluded).  Likewise, it would be improper for the defendants to attempt to inform the jury, whether through evidence or argument, of the potential punishment if they are convicted.  *Shannon v. United States*, 512 U.S.

573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task"); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict"); *United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991) (the "question of punishment should never be considered by the jury in any way in deciding the case").

## III.    Defendant Sutton Cannot Raise a Public Authority Defense

At various times, Defendant Sutton has suggested that his defense to the second-degree murder charge against him will involve asserting that his illegal conduct in pursuing Mr. Hylton-Brown was authorized by the government because defendant Zabavsky directed defendant Sutton to conduct the pursuit, and defendant Sutton "was obligated" to obey that command.  ECF 204, at 38 ("Ofc. Sutton was obligated to follow the directives of his supervisor, Lt. Zabavsky, which included . . . to 'go see' whether Hylton-Brown was armed").  This is a public authority defense, and it is unavailable to defendant Sutton both because he failed to provide notice that he intended to raise it, as required by the Federal Rules of Criminal Procedure, and because he cannot make the threshold showing necessary to establish the defense.

As an initial matter, defendant Sutton failed to provide notice of a public authority defense, as required.  *See* Fed. R. Cr. P. 12.3 ("If a defendant intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense, the defendant must so notify an attorney for the government in writing and must file a copy of the notice with the clerk within the time provided for filing a pretrial motion").  The rule provides requirements for a defendant's initial notice and notice of any witnesses he intends to call in support of the defense.  *Id*.  Here, the Court should exclude the defense, or witnesses the defendant may offer in support of it, based on this failure.  *See United*

*States v. Seeright*, 978 F.2d 842, 848-49 (4th Cir. 1992) (court acted "well within its discretion in refusing to admit the public authority testimony" of witnesses whom defendant had failed to properly notice under Rule 12.3).

Even if defendant Sutton had provided proper notice of a public authority defense, assuming that he is relying on his claim that defendant Zabavsky ordered him to "'go see' whether Hylton-Brown was armed," he still would not be able to make the threshold showing required to advance this defense at trial.  In order to present such a defense, a defendant bears the burden of proof and must make a prima facie showing in order to submit evidence of it to the jury.  *See United States v. Theunick*, 651 F.3d 578, 590 (6th Cir. 2011) ("the defendant bears the burden of proving the affirmative public authority defense"); *United States v. Alvarado*, 808 F.3d 474, 485 (11th Cir. 2015) ("[A] defendant will not be allowed to assert the defense, or to demand that the jury be instructed on it, unless he meets certain evidentiary prerequisites").  And here, to do so, defendant Sutton must establish that 1) a law enforcement officer must have actually authorized him to commit the particular criminal act at issue; 2) that he reasonably relied on that authorization when engaging in the conduct; and, 3) that official must have actually had the authority to permit him to commit the criminal act in question.  *Alvarado*, 818 F.3d at 484.  Defendant Sutton has not established any of these elements, nor can he—because he has presented no evidence that defendant Zabavsky authorized a three-minute, ten-block vehicular pursuit of Mr. Hylton-Brown for a traffic violation; because he has presented no evidence that he acted reasonably based on any direction that defendant Zabavsky did give him; and because he has presented no evidence that defendant Zabavsky has the authority to direct defendant Sutton to violate the laws of the District of Columbia.  Having failed to meet any of these prerequisites, defendant Sutton cannot now claim

to the jury at trial that he did not commit a crime because he was "obligated" to follow his superior officer's orders.

## IV.     The Court Should Preclude Argument or Evidence on Legal Issues

Defendant Sutton has suggested that he intends to raise at trial issues that would improperly ask the jury to consider irrelevant legal questions, rather than make factual determinations.   In particular, he has made plain his intention to ask the jury to consider whether defendant Sutton was entitled to attempt a *Terry* stop of Mr. Hylton-Brown, *see, e.g.* ECF 204 at 38 ("Lt. Zabavsky directed the CST team to stop Hylton-Brown and conduct a *Terry* stop to determine whether he was armed"), and he continues to insist that it is appropriate for his proffered expert witnesses to opine on this and other irrelevant Constitutional principles.   *See* ECF 219-1 (Sutton expert disclosure); ECF 232 (Sutton opposition to government motion to exclude such expert testimony). But juries do not decide legal issues; the Court does.  *See United States v. Gaudin*, 515 U.S. 506, 513 (1995) (noting that the jury in a criminal case does not have the power to decide "pure questions of law") (citing *Sparf v. United States*, 156 U.S. 51, 105-106).  And none of these issues are legal issues that the Court needs to decide here, because they are not relevant to the defendants' guilt or innocence.

While the defendants may present fact testimony that explains the facts surrounding the officers' decision to engage with and pursue Mr. Hylton-Brown (and defendant Sutton, if he chooses to testify, may testify to such facts for the purpose of establishing his own state of mind at the time of the pursuit), neither defendant should otherwise be permitted to present evidence, or argue to the jury, that they were legally entitled to conduct a *Terry* stop of Mr. Hylton-Brown on October 23, 2020, or to describe the legal basis for a *Terry* stop, use the term "*Terry* stop," or otherwise put the question to the jury of whether such a procedure was legally appropriate.

Whether or not the defendants were, in fact, performing a *Terry* stop at the outset of what developed into a prolonged vehicular pursuit is irrelevant and holds no probative value for the jury's assessment of the charged crimes, which allege that defendant Sutton's driving decisions consciously disregarded an extreme risk of death or injury to Mr. Hylton-Brown.  Nothing in the MPD General Orders, or any other authority, provides that reasonable articulable suspicion to conduct a *Terry* stop then absolves an officer of a reasonable standard of care if a subject refuses to stop and the officer engages the suspect in a vehicular pursuit.  If the defendants were permitted to use legal terminology and require the jury to listen to evidence or argument concerning the propriety of a *Terry* stop here, it would be time-consuming and confusing to the jurors. Furthermore, it would risk leading the jurors to believe, erroneously, that they are supposed to make a legal determination about the *Terry* stop, or that if the defendants were conducting a legitimate *Terry* stop, it somehow mitigates defendant Sutton's later conduct as he continued to chase Mr. Hylton-Brown over the course of several minutes.  To avoid confusing and misleading the jury in this way, such evidence or argument should be precluded.

Defendant Sutton also continues to insist that his proposed expert witnesses be allowed to testify to "constitutional policing standards and tactics authorized by the Supreme Court."  ECF 232, at 12. The defendants are not charged with a Constitutional violation, and the Court has already determined that these Constitutional issues are not relevant to the charges in this case.  *See* ECF 215 (denying defense motion to dismiss Count 1 on this basis); 8/3/22 Tr. at 18-19 ("It doesn't have to be a Constitutional violation because police officers like everyone else are subject to generally applicable laws . . . The indictment adequately charges second degree murder.  There's no exception for police officers…").  It would, therefore, be confusing to the jury to hear evidence or argument regarding Constitutional standards or principles that are inapplicable, and it would

require the Court either to instruct the jury to disregard the evidence, or to provide legal instruction on wholly irrelevant issues. *See Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 12097, 1212 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards."). This evidence, too, should be excluded, both in the presentation of evidence and in counsel's arguments to the jury.

## V.     Conclusion

For the reasons given above, the government's motions *in limine* should be granted, and the Court should issue an order precluding the defendants from introducing at trial the inadmissible evidence, questioning, and arguments described herein.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:     */s/ Risa Berkower*
AHMED BASET
IL Bar No. 6304552
RISA BERKOWER
NY Bar No. 4536538
GAURI GOPAL
PA Bar No. 306718
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D St., N.W.
Washington, D.C. 20532
Phone: (202) 252-7097 (Baset)
          (202) 252-6782 (Berkower)
          (202) 730-6624 (Gopal)
Email: Ahmed.Baset@usdoj.gov
          risa.berkower@usdoj.gov
          gauri.gopal@usdoj.gov
