UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 21-0598 (PLF) |
| ) | |
| TERENCE SUTTON ) | |
| and ) | |
| ANDREW ZABAVSKY, ) | |
| ) | |
| Defendants. ) | |

OPINION AND ORDER

Defendants Terence Sutton and Andrew Zabavsky have separately filed motions to dismiss the indictment, alleging prosecutorial misconduct before the grand jury. See Terence D. Sutton, Jr.'s Motions to Dismiss the Indictment for Prosecutorial Misconduct in the Grand Jury and to Disclose the Full Record of Matters Occurring Before the Grand Jury ("Sutton Mot.") [Dkt. No. 185]; Defendant Zabavsky's Motions to Dismiss the Indictment Pursuant to Rule 12 of the Federal Rules of Criminal Procedure ("Zabavsky Mot.") [Dkt. No. 187]. Mr. Sutton's motion also seeks the production of grand jury minutes and an evidentiary hearing. See Sutton Mot. at 41. The government opposes these motions, arguing that the grand jury investigation was properly conducted and that defendants have failed to demonstrate substantial prejudice stemming from defendants' allegations. See United States' Omnibus Opposition to Defendants' Motions to Dismiss ("Gov't Opp.") [Dkt. No. 196] at 27-28.

Upon careful consideration of the parties' filings, the oral arguments presented by counsel, and the applicable authorities, the Court concludes that defendants have not made a

sufficient showing of prosecutorial misconduct before the grand jury to warrant dismissal of the indictment, production of grand jury minutes, or an evidentiary hearing.[1]

## I. BACKGROUND

On September 23, 2021, a grand jury indictment was unsealed that charged Terence Sutton and Andrew Zabavsky, both officers of the Metropolitan Police Department of the District of Columbia ("MPD"), with conspiracy to obstruct justice, in violation of 18 U.S.C. § 371, and obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3), 2. See Indictment [Dkt. No. 1]. Mr. Sutton was also charged with second degree murder in violation of D.C. Code § 22-2013. Id.

The indictment alleges that on October 23, 2020, Mr. Sutton caused the death of Karon Hylton-Brown by recklessly pursuing Mr. Hylton-Brown in a police vehicle for several blocks and at high speeds. See Indictment ¶¶ 1-2, 10-12, 20-27. Mr. Hylton-Brown, who was riding a rental moped, was mortally wounded when he was hit by oncoming traffic as he exited an alleyway, suffering severe head trauma. See id. ¶¶ 13, 18, 28. The indictment asserts that

---

[1] The Court reviewed the following documents and their attachments: Terence D. Sutton, Jr.'s Motions to Dismiss the Indictment for Prosecutorial Misconduct in the Grand Jury and to Disclose the Full Record of Matters Occurring Before the Grand Jury ("Sutton Mot.") [Dkt. No. 185]; Defendant Zabavsky's Motions to Dismiss the Indictment Pursuant to Rule 12 of the Federal Rules of Criminal Procedure ("Zabavsky Mot.") [Dkt. No. 187]; United States' Omnibus Opposition to Defendants' Motions to Dismiss ("Gov't Opp.") [Dkt. No. 196]; Defendant Andrew Zabavsky's Reply to Government's Opposition to Zabavsky's Motion to Dismiss ("Zabavsky Reply") [Dkt. No. 199]; Terence D. Sutton, Jr.'s Reply in Support of His Motion to Dismiss the Indictment for Prosecutorial Misconduct in the Grand Jury ("Sutton Reply") [Dkt. No. 201]; Government's Supplemental Opposition to Defendant's Motion to Dismiss for Prosecutorial Misconduct in the Grand Jury ("Gov't Suppl. Opp.") [Dkt. No. 222]; Mr. Sutton's Reply in Support of Motion to Dismiss for Prosecutorial Misconduct Before the Grand Jury ("Sutton Suppl. Reply") [Dkt. No. 230]; and Andrew Zabavsky's Consent Motion to Join Sutton's Motion to Dismiss for Prosecutorial Misconduct Before the Grand Jury ("Zabavsky Consent Mot.") [Dkt. No. 233].

Mr. Sutton pursued Mr. Hylton-Brown for a traffic violation – "driving a moped, without a helmet, on the sidewalk," id. ¶ 10 – in violation of the MPD vehicular pursuit policy, which "prohibit[s] officers from pursuing a vehicle for the purpose of [e]ffecting a stop for a traffic violation," id. ¶ 8 (internal quotation omitted). It further alleges that between October 23, 2020, and October 24, 2020, in order to prevent an internal investigation and referral to federal authorities for a criminal civil rights investigation, Mr. Sutton and Mr. Zabavsky conspired to conceal from MPD officials the circumstances of the pursuit and collision. Id. at ¶¶ 3, 31, 33-48.

On June 29, 2022, Mr. Sutton and Mr. Zabavsky filed motions to dismiss the indictment based on allegations of prosecutorial misconduct before the grand jury. See Sutton Mot.; Zabavsky Mot. The Court heard extensive oral argument on the motions on July 26, 2022. See Transcript of Motion Hearing, July 26, 2022 ("Oral Arg. Tr.") [Dkt. No. 213]. Counsel for Mr. Sutton focused his presentation about grand jury abuse on an argument raised for the first time in his reply brief. See id. at 72:20-78:18; see also Sutton Reply at 9-12 (asserting that the summary witness presented to the indicting grand jury "did not summarize any of the testimony given by other witnesses before other grand juries"). Recognizing that this was a new issue that had not been fully briefed by either party, the Court ordered the parties to file supplemental briefs exclusively addressing the issue of "multiple grand juries and a summary witness." Oral Arg. Tr. at 91:7-14. Those supplemental briefs have been filed and the motion is now ripe.[2]

On August 3, 2022, the Court orally denied in its entirety Mr. Sutton's motion to dismiss for failure to state a claim and denied the portions of Mr. Zabavsky's motion seeking dismissal based on the indictment's asserted lack of specificity and its failure to state an offense,

---

[2] Mr. Zabavsky subsequently joined Mr. Sutton's supplemental reply filed in support of his motion to dismiss for prosecutorial misconduct before the grand jury. See Zabavsky Consent Mot. at 1-2 (joining Sutton Suppl. Reply [Dkt. No. 230]).

3

as well as Mr. Zabavsky's claim of selective and vindictive prosecution. See Minute Entry (Aug. 3, 2022); Transcript of Oral Ruling on Motion Hearing, August 3, 2022 ("Oral Ruling Tr.") [Dkt. No. 217]; see also Memorandum Opinion and Order ("Mem. Op.") [Dkt. No. 215] at 3. The Court held in abeyance defendants' claims of prosecutorial misconduct before the grand jury. See id. The Court now denies defendants' motions in full.

## II.  LEGAL FRAMEWORK

Rule 12(b)(3)(A)(v) of the Federal Rules of Criminal Procedure authorizes a defendant in a criminal case to file a motion "before trial" based on "a defect in instituting the prosecution, including . . . an error in the grand-jury proceeding or preliminary hearing." FED. R. CRIM. P. 12(b)(3)(A)(v). When examining these claims, "the Court first affords that proceeding 'a presumption of regularity.'" United States v. Akinyoyenu, 199 F. Supp. 3d 34, 36 (D.D.C. 2016) (quoting United States v. Mechanik, 475 U.S. 66, 75 (1986)). To prevail, the defendant must "clearly establish" a defect in the grand jury proceedings with "particularized proof." Id. Courts require a showing that "the prosecutor instituted some error or irregularity – more than a mere assertion that the prosecutor presented 'inadequate, unreliable or incompetent evidence.'" Id. (quoting United States v. Borda, 905 F. Supp. 2d 201, 204 (D.D.C. 2012)).

If a defendant is able to demonstrate such misconduct before the grand jury, the next question is whether the defendant was prejudiced as a result. Prejudice is assessed under the harmless error standard. See FED. R. CRIM. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); see also Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988); United States v. Akinyoyenu, 199 F. Supp. 3d at 36. "Under this standard, dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave

doubt' that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia v. United States, 487 U.S. at 256 (quoting United States v. Mechanik, 475 U.S. at 78). The defendant must demonstrate that the alleged prosecutorial misconduct "significantly infringe[d] on the grand jury's ability to render an independent judgment." United States v. Akinyoyenu, 199 F. Supp. 3d at 3 (internal quotations omitted).

Rule 6 of the Federal Rules of Criminal Procedure separately permits the disclosure of grand jury materials "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." FED. R. CRIM. P. 6(e)(3)(E)(ii). To obtain such disclosure, a defendant must carry the "heavy burden of showing 'that a particularized need exists' that 'outweighs the policy of secrecy'" of grand jury materials. United States v. Apodaca, 287 F. Supp. 3d 21, 47 (D.D.C. 2017) (emphasis added); see also United States v. Sutton, Crim. No. 21-0598, 2022 WL 1202741, at *3 (D.D.C. Apr. 22, 2022). "This particularized need requires a 'factual basis' – 'conclusory or speculative allegations of misconduct' do not suffice." United States v. Wright, 234 F. Supp. 3d 45, 47 (D.D.C. 2017) (quoting United States v. Naegele, 474 F. Supp. 2d 9, 10 (D.D.C. 2007)). "The threshold for such a showing is very demanding, and the disclosure of grand jury information is 'exceedingly rare.'" Id. (quoting United States v. Naegele, 474 F. Supp. 2d at 11).

### III. DISCUSSION

#### A. Dismissal of the Indictment

The Supreme Court has held that "an indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is sufficient to call for trial on the merits." Costello v. United States, 350 U.S. 359, 363 (1956); see also United States v. Saffarinia, 424 F. Supp. 3d 46, 81 (D.D.C. 2020). A facially valid indictment generally "may not be challenged on

the ground that the grand jury acted on the basis of inadequate, unreliable or incompetent evidence." United States v. Borda, 905 F. Supp. 2d at 206. This Court has already ruled that the indictment in this case is valid on its face. See Oral Ruling Tr. at 9:19-22 ("The facts in the indictment in my view taken as true established that Mr. Sutton's actions were the actual, that is the but for cause of Mr. Hylton-Brown's death and the proximate cause of Mr. Hylton-Brown's death."); id. at 25:18-20 ("[T]he indictment passes muster for obstruction of justice and conspiracy, Counts Two and Three."); id. at 27:13-19 ("The government must supply the defendant with the essential facts and elements of the crimes charged and track the language of the statute. Mr. Sutton -- the indictment in this case is sufficient on this score."); see also Mem. Op. at 3. But even without this ruling, the Court would conclude that Mr. Sutton's arguments concerning grand jury abuse have no merit.

Mr. Sutton first argues that the government engaged in prejudicial "character assassination" before the grand jury. See Sutton Mot. at 7-18. He states that "[t]he grand jury testimony in this case is plagued by repeated and intentional introduction by the prosecutors of gratuitous disparagement of Ofc. Sutton, inadmissible opinion testimony, and confusing and contradictory testimony by police officers about police pursuits, and 'pretextual' traffic stops." Id. at 2. The government responds that Mr. Sutton relies on "cherry-picked passages of testimony taken wholly out of context"; and it asserts that prosecutors are entitled to inquire of witnesses "about any prior relevant conduct by the defendant," including "any history [the witness] knew of between the defendant and Hylton-Brown or his family, and the nature and frequency of police activity in the neighborhood with respect to traffic stops for helmet violations." Gov't Opp. at 31, 35.

The Court agrees with the government. The Supreme Court has made clear that "[a]s a necessary consequence of its investigatory functions, the grand jury paints with a broad brush." United States v. R. Enterprises, Inc., 498 U.S. 292, 297 (1991). It may seek and consider "all information that might possibly bear on [the grand jury's] investigation." Id. Consistent with this precedent, the government was entitled to elicit testimony before the grand jury about a wide range of topics related to its investigation, including evidence of Mr. Sutton's character, evidence about one officer's experience in therapy after Mr. Hylton-Brown's death, see Sutton Mot. at 18-23, and evidence related to MPD General Order 301.03, see id. at 24-31. But even if the court did determine that improper comments were made before the grand jury – which it has not – "it [would] not necessarily result in dismissal of the indictment." Sara Sun Beale & William C. Bryson, Grand Jury Law and Practice ("Grand Jury L. & Prac.") § 9:2 (2d ed. 2021). "Courts are reluctant to dismiss an indictment when the prosecutor has made improper comments, because dismissal interferes with the grand jury's independence and imposes significant costs on society." Id.

Mr. Sutton next maintains that the prosecutors "intentionally chose to withhold exculpatory evidence from the grand jury," which he claims "demonstrates the malevolent intent of the prosecutors." Sutton Mot. at 3, 37. Mr. Zabavsky echoes many of these arguments in his motion. See Zabavsky Mot. at 30-35. But the Supreme Court has explicitly rejected any requirement that a prosecutor "must alert the grand jury to the nature and extent of the available exculpatory evidence." United States v. Williams, 504 U.S. 36, 53 (1992); see also 1 Susan W. Brenner & Lori E. Shaw, Federal Grand Jury: A Guide to Law and Practice ("Fed. Grand Jury") § 7:15 (2d ed. 2021) ("Williams eliminated any possibility of requiring a prosecutor to present exculpatory evidence to a federal grand jury."). In Williams, Justice Scalia reasoned that

7

requiring prosecutors to present exculpatory evidence to the grand jury "would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it]." United States v. Williams, 504 U.S. at 54-55 (quoting Costello v. United States, 350 U.S. at 364 (alterations in original)). The grand jury, he said, is not required to consider "more evidence than . . . is proper." Id. at 53. The D.C. Circuit has since reiterated that "a facially valid indictment may not be dismissed on the ground that the government failed to disclose 'substantial exculpatory evidence' in its possession to the grand jury." Brodie v. Jackson, 630 F. App'x 1, 3 (D.C. Cir. 2015) (quoting United States v. Williams, 504 U.S. at 45-46). These precedents therefore explicitly foreclose defendants' arguments that the indictment should be dismissed because favorable evidence was allegedly "suppressed" or "with[e]ld" from the grand jury. Sutton Mot. at 34, 3; see also Zabavsky Mot. at 31-35.

Lastly, Mr. Sutton contends that the prosecutors engaged in misconduct based on "the unprecedented methodology for the use of six grand juries." Sutton Suppl. Reply at 21. Specifically, he asserts that the indicting grand jury ("Grand Jury 21-2") "was nothing but a rubber-stamp for the charges contained in the Indictment" because Grand Jury 21-2 only heard testimony from six witnesses, including a summary witness, the U.S. Attorney's Office case agent. Sutton Reply at 9; see also Oral Arg. Tr. at 82:6-13. Mr. Sutton maintains that "during his two-hours before the Grand Jury, [the summary witness] did not summarize any of the testimony given by other witnesses before other grand juries. Nor were the transcripts of the grand jury testimony of these other witnesses [or the exhibits presented to other grand juries] presented to Grand Jury No. 21-2 for review." Sutton Reply at 9. According to Mr. Sutton, "Grand Jury No. 21-2 had no time in which to review the 73 exhibits presented to them that day, which included video and body camera footage, before they went into the courtroom to return

8

their Indictment." Id. He cites two treatises as support for his argument that the government did not adhere to "the appropriate method" for presenting testimony from one grand jury to another. See Sutton Reply at 10 (citing Fed. Grand Jury at § 7:12); see also Sutton Suppl. Reply at 5 (citing Grand Jury L. & Prac. At § 9:7).

The Court rejects these arguments as unsupported by any statute, rule, or case law and concludes that the government's decision to use multiple grand juries and a summary witness – and to present only six witnesses to the indicting grand jury – was permissible. The government is correct that Mr. Sutton "ignores the practical realities of federal grand jury practice in the District of Columbia in late 2020 through the time of this indictment, in September 2021," including "the ongoing COVID-19 pandemic, which led to a backlog of cases . . . , and due to the January 6, 2021 insurrection at the U.S. Capitol, which resulted in an unexpected influx of hundreds of new cases that required immediate federal indictment in the District." Gov't Suppl. Resp. at 4, 5; see also Oral Arg. Tr. at 85:7-86:2. The government is also correct that "[t]he defendant cites no case law that prohibits the use of grand jury time in this way." Gov't Suppl. Resp. at 5.

Furthermore, the two treatises Mr. Sutton references actually support the propriety of the government's conduct. For example, Mr. Sutton argues that the prosecutor's conduct before Grand Jury 21-2 was improper because "'[t]he transcripts of the proceedings before the earlier grand jury are usually read to its successor, and should be left with it for the jurors' use during deliberations.'" Sutton Reply at 10 (quoting Fed. Grand Jury § 7.12). But the Brenner and Shaw treatise also states that "[p]roviding a grand jury with only a portion of the evidence heard by its predecessor is permissible as long as the omission of certain evidence does not mislead the successor grand jury." Fed. Grand Jury at § 7.12 (emphasis added); see also id. at

9

§ 6:5 ("A prosecutor can, when it is appropriate, use agents or other witnesses to summarize admissible evidence available to her which she believes she will be able to introduce at trial."). The treatise further clarifies that "[t]he evidence can be presented in either of two forms: a transcript of one grand jury's proceedings can be read to another; or a grand jury can hear summaries of the evidence that was presented to another grand jury. Obviously, both are hearsay, but this does not prevent their being introduced because hearsay is admissible before a grand jury." Id. at § 7.12. And Professor Beale and Judge Bryson's treatise cited by Mr. Sutton recognizes that it is "wide[ly] accept[ed]" to present summaries of testimony from a prior grand jury to the grand jury. Grand Jury L. & Prac. at § 9:7. They state explicitly that "[c]ourts that generally refuse to review the competency of evidence in grand jury proceedings will not dismiss an indictment based upon summaries absent a showing of flagrant abuse." Id. Mr. Sutton has not made such a showing. Moreover, even if the government's summary witness did testify in a misleading way, "the Supreme Court has held [] that the use of inaccurate, misleading summaries is not grounds for dismissing an indictment, absent evidence of prosecutorial misconduct." Fed. Grand Jury at § 7.12 (citing Bank of Nova Scotia v. United States, 487 U.S. at 260-61 (emphasis added)).

Here, the government proffers that "while logistical constraints limited the availability of grand jury time to read all of the prior two dozen transcripts into the record, those materials were expressly referenced during the summary case agent's testimony and were available for review." Gov't Suppl. Reply at 8. This is consistent with guidance that "[a] grand jury should be informed that the testimonial and/or documentary evidence which was summarized is available for their review." Fed. Grand Jury at § 7.12. The Court therefore concludes that defendants have not met their burden of "clearly establish[ing]" a defect in the

grand jury proceedings with "particularized proof" to warrant dismissal under Rule 12(b)(3)(A)(v). United States v. Akinyoyenu, 199 F. Supp. 3d at 36.[3]

### B. Grand Jury Minutes

Mr. Sutton seeks disclosure of the grand jury minutes "to determine how the Grand Jury was instructed" on the law and policy to reveal whether "the Grand Jury based its vote on legally permissible standards." Sutton Mot. at 29. In ruling on this request for grand jury minutes, the Court is guided by what courts have consistently made clear – "mere suspicion" of misconduct before the grand jury is plainly not sufficient, United States v. Trie, 23 F. Supp. 2d 55, 62 (D.D.C. 1998), to "outweigh[] the policy of secrecy" involved in grand jury materials. United States v. Apodaca, 287 F. Supp. 3d at 47; see also United States v. Sitzmann, 74 F. Supp. 3d 128, 139 (D.D.C. 2014) ("It is settled that 'conclusory or speculative allegations of misconduct do not meet the particularized need standard; a factual basis is required.'" (quoting United States v. Naegele, 474 F. Supp. 2d at 10)).

Courts require the government to disclose grand jury materials pursuant to Rule 6(e) only in "exceedingly rare cases." United States v. Naegele, 474 F. Supp. 2d at 10. Naegele – a case with which this Court is quite familiar – was one of those rare cases. There, this Court ordered the production of "[a]ll minutes from the grand jury proceedings" in a case charging the defendant in an eleven-count indictment related to various violations of bankruptcy fraud. Id. at 11. At least five of those eleven counts were based in whole or in part on a document entitled the "Statement of Financial Affairs" or "SOFA." Id. The government

---

[3] The Court need not analyze defendants' allegations under the harmless error standard because defendants have not made a cognizable claim of prosecutorial misconduct before the grand jury. See FED. R. CRIM. P. 52(a); see also United States v. Akinyoyenu, 199 F. Supp. 3d at 36.

conceded that the last page of the SOFA – which included "the signature section in which a debtor swears to the information contained in the SOFA under the penalty of perjury" – was never presented to the grand jury even though the indictment referred to the signed SOFA. Id. The Court "doubt[ed] that the government [would] ever be able to prove beyond a reasonable doubt that the signature page of the [SOFA] was ever filed with the Bankruptcy Court," despite the fact that "the questions posed and the answers given before the grand jury seemed to suggest that the SOFA filed with the Bankruptcy Court did have a signed signature page." Id. The Court therefore concluded that it was "one of those exceedingly rare cases where the defendant has been able to make a factually based showing of particularized need for the production and inspection of grand jury materials under Rule 6(e)(3)(E)(ii)." Id. at 10.

In cases without such unique factual circumstances, courts routinely deny defendants' requests for grand jury minutes. For example, the defendant in Apodaca sought in camera inspection of grand jury minutes related to "what legal instructions were provided to the grand jurors." United States v. Apodaca, 287 F. Supp. 3d at 45. The defendant suspected that "the grand jury was not properly instructed about 'controlling law,'" which stemmed from the fact that the prosecutor's extradition request included "an incomplete statement of the law" and provided "good reason to believe that any instructions [to the grand jury] were incomplete." Id. at 45, 49. Chief Judge Howell denied defendant's request for in camera review, reasoning that "the indictment ha[d] already been deemed facially valid, which undermines [defendant's] theory that the grand jury instructions may have been incomplete." Id. at 49; see also United States v. Trie, 23 F. Supp. 2d at 62 (concluding that "the mere suspicion that the grand jury may not have

been properly instructed with respect to the legal definition of [a term in the indictment] is insufficient.").[4]

Here, as in Apodaca and Trie, defendants have identified no "particularized need" for the grand jury minutes. United States v. Apodaca, 287 F. Supp. 3d at 47. In fact, Mr. Sutton's allegations amount to no more than speculation, which is simply insufficient. See United States v. Singhal, 876 F. Supp. 2d 82, 99 (D.D.C. 2012) (denying motion where defendants failed to "identify any portion of the Indictment that suggests that any charge to the grand jury was legally erroneous, and resorts to speculation about what the grand jury was instructed based on what is not stated in the Indictment"). For example, Mr. Sutton poses open-ended questions as veiled allegations of misconduct, asking, "[d]id a prior grand jury refuse to return an indictment? Did the prosecutors learn from prior grand juries that they were lukewarm to the prosecutors' case, and wait for a group that appeared more favorable?" Sutton Reply at 10. And in his supplemental reply, he states that "[i]f the Court chooses not to require at least production of the minutes from all grand juries, no one will ever know what occurred." Sutton Suppl. Reply at 22. What Mr. Sutton fails to appreciate, however, is that grand juries are designed to function in exactly this way, within the "'long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.'" United States v. Apodaca, 287 F. Supp. 3d at 47 (quoting United States v. Procter & Gamble Co., 356 U.S. 677, 681 (1958)).

Defendants have failed to establish "a particularized need" for grand jury minutes. United States v. Apodaca, 287 F. Supp. 3d at 47 (internal quotations omitted). Furthermore, the

---

[4] Mr. Sutton similarly seeks the legal instructions given to the grand jury "to determine how the Grand Jury was instructed" on the law. Sutton Mot. at 29. But the bar is even higher in this case, where defendants are seeking disclosure of grand jury minutes as opposed to in camera inspection by the Court. See United States v. Apodaca, 287 F. Supp. 3d at 49-50. Either way, the request would be denied.

Court has already determined that the indictment is facially valid; and the Court has now determined that defendants have failed to meet their burden of establishing prosecutorial misconduct or a defect in the grand jury proceedings. For these reasons, an evidentiary hearing would serve no purpose. Accordingly, it is hereby

ORDERED that Mr. Sutton's Motion to Dismiss the Indictment for Prosecutorial Misconduct in the Grand Jury and to Disclose the Full Record of Matters Occurring Before the Grand Jury [Dkt. No. 185] is DENIED; and it is

FURTHER ORDERED that the portions of Mr. Zabavsky's Motion to Dismiss the Indictment Pursuant to Rule 12 of the Federal Rules of Criminal Procedure [Dkt. No. 187] that were previously held in abeyance are DENIED.

SO ORDERED.

/s/ Paul L. Friedman
PAUL L. FRIEDMAN
United States District Judge

DATE: 9/30/22