UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>TERENCE SUTTON )<br>and )<br>ANDREW ZABAVSKY, )<br>)<br>Defendants. ) | Criminal No. 21-0598 (PLF) |

## OPINION AND ORDER

Pending before the Court are four motions filed by defendants Terence Sutton and Andrew Zabavsky to admit certain evidence at trial related to information about Karon Hylton-Brown discovered after his death. See Andrew Zabavsky's Supplemental Brief on the Admissibility of Certain Disputed Evidence ("Zabavsky Mot.") [Dkt. No. 342]; Terence D. Sutton, Jr.'s Motion to Admit Evidence that [Karon Hylton-Brown] was Wearing an Ankle Monitor and on Release in a Montgomery County Criminal Case No. 3D00407277 at the Time of his Death ("Sutton Crim. Mot.") [Dkt. No. 343]; Terence D. Sutton, Jr.'s Motion to Admit the Toxicology Report of Karon Hylton-Brown ("Sutton Tox. Mot.") [Dkt. No. 344]; Terence D. Sutton, Jr.'s Motion to Admit Evidence of Money Found on Karon Hylton-Brown's Person ("Sutton Money Mot.") [Dkt. No. 345]. The government opposes these motions and the admission of the evidence. See Government's Supplemental Brief on the Admissibility of Character Evidence Pursuant to Rule 404 ("Gov't Suppl.") [Dkt. No. 334]; Government's Omnibus Opposition to Defendants' Motions to Introduce Evidence of Victim's Character ("Gov't Opp.") [Dkt. No. 353].

The Court heard oral argument on these motions on November 17, 2022, and orally announced its ruling on some of the evidence at issue and explained its tentative decisions on the other disputed issues briefed in the relevant motions on November 18, 2022. See Transcript of Jury Trial, November 18, 2020 (Morning Session) ("Oral Ruling Tr.") at 30:16-35:8. For the reasons stated on the record, the Court granted defendants' requests to admit the toxicology report that was prepared in conjunction with Mr. Hylton-Brown's autopsy for a limited purpose. Id. at 31:8-32:21. For the following reasons, the Court will deny defendants' requests to admit evidence related to the money found on Mr. Hylton-Brown's person and evidence that Mr. Hylton-Brown was wearing an ankle monitor at the time of his death. This evidence will be excluded at trial.

## I. BACKGROUND

As previously described, see United States v. Sutton, Crim. No. 21-0598, 2022 WL 4653216, at *1-2 (D.D.C. Sept. 30, 2022), the indictment in this case charges defendants Terence Sutton and Andrew Zabavsky, both officers of the Metropolitan Police Department of the District of Columbia, with conspiracy to obstruct justice, in violation of 18 U.S.C. § 371, and obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3), 2. See Indictment [Dkt. No. 1]. Mr. Sutton is also charged with second degree murder in violation of D.C. Code § 22-2013. Id.

The indictment alleges that on October 23, 2020, Mr. Sutton caused the death of Karon Hylton-Brown by recklessly pursuing Mr. Hylton-Brown in a police vehicle for several blocks and at high speeds. See Indictment ¶¶ 1-2, 10-12, 20-27. Mr. Hylton-Brown, who was riding a rental moped, was mortally wounded when he was hit by oncoming traffic as he exited an alleyway, suffering severe head trauma. See id. ¶¶ 13, 18, 28. The indictment asserts that Mr. Sutton pursued Mr. Hylton-Brown for a traffic violation – "driving a moped, without a

helmet, on the sidewalk," id. ¶ 10 – in violation of the MPD vehicular pursuit policy, which "prohibit[s] officers from pursuing a vehicle for the purpose of [e]ffecting a stop for a traffic violation," id. ¶ 8 (internal quotation omitted). It further alleges that between October 23 and October 24, 2020, in order to prevent an internal investigation and referral to federal authorities for a criminal civil rights investigation, Mr. Sutton and Mr. Zabavsky conspired to conceal from MPD officials the circumstances of the pursuit and collision. Id. at ¶¶ 3, 31, 33-48.

On September 7, 2022, the parties filed motions in limine seeking the exclusion and admission at trial of certain disputed testimony and evidence related to Mr. Hylton-Brown's character, criminal history, and alleged associations with the Kennedy Street Crew. See Government's Omnibus Motion in Limine [Dkt. No. 256]; Terence D. Sutton, Jr.'s, Motion in Limine to Permit Evidence Regarding Decedent's Criminal Background, the Kennedy Street Crew, and Kennedy Street Drug Corridor [Dkt. No. 257]. On September 29, 2022, the parties appeared for oral argument on these issues. See Transcript of In-Person Motions Hearing, September 29, 2022. Recognizing that the parties proffered vastly different characterizations of the evidentiary foundation for this evidence, the Court decided to hold an evidentiary hearing on limited issues before the start of trial. See id. at 61:5-6 ("[T]his prejudicial evidence is not coming in unless there is an adequate foundation for it."); see also Memorandum Opinion and Order ("Evid. Hr'g Op.") [Dkt. No. 304] (summarizing the underlying issues and setting forth the parameters for the evidentiary hearing).

Following a two-day evidentiary hearing on October 14 and 17, 2022, the Court orally announced its rulings on some of the evidence at issue and reserved ruling and ordered supplemental briefing on other issues. See Transcript of Motions Hearing, October 24, 2022 ("Motions Ruling Tr."). The Court made the following rulings: First, the Court admitted

"evidence about crime rates in the neighborhood where the events in this case took place," including "shootings, the drug sales, et cetera, and the creation or the purpose of the Crime Suppression Team and their role." Id. at 5:16-17, 6:11-13. Second, the Court excluded evidence relating to Mr. Hylton-Brown's alleged affiliation with gangs, stating that there would be "[n]o evidence about the Kennedy Street crew, no evidence about the beat book, no evidence about gang databases and validation of alleged gang members, no music videos or rap videos. No allegations of Mr. Hylton Brown's connection or membership in the Kennedy Street crew." Id. at 6:16-21. And third, the Court left open the possibility of admitting the toxicology report, the ankle monitor, and the money found on Mr. Hylton-Brown's person at the time of his death. The Court stated that it "need[ed] further proffer or foundation laid for that money and for the protective order because we don't have enough information," id. at 12:15-17, and invited supplemental briefing on the admissibility of the toxicology report, stating that "[i]f there is case law that would support [its admissibility] . . . I'd like to have that," id. at 31:11-13.

The government filed a supplemental brief responding to the Court's oral ruling on November 1, 2022, arguing that under Rule 404(b) of the Federal Rules of Evidence "the victim's motive to flee police officers" is not relevant and therefore not admissible under the applicable case law. Gov't Suppl. at 2. On November 4, 2022, the defendants filed supplemental briefs opposing the government's position and arguing for the admission of evidence related to the ankle monitor, the money found on Mr. Hylton-Brown's person, and the toxicology report under Rule 404(b) of the Federal Rules of Evidence. See Zabavsky Mot.; Sutton Crim. Mot.; Sutton Money Mot.; Sutton Tox. Mot. The government filed an omnibus opposition to defendants' motions on November 9, 2022. See Gov't Opp.

## II. LEGAL STANDARD

Rule 404 of the Federal Rules of Evidence prohibits the admission of "[e]vidence of a crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1); see Sutton 404(b) Mot.; Zabavsky Mot. at 9. Under Rule 404(b)(2), however, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2); see also United States v. Abou-Khatwa, 40 F.4th 666, 677 (D.C. Cir. 2022). This is not an exclusive list of permissible purposes, however, so long as the evidence is not offered solely to prove character or criminal propensity. See United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir. 1990); cf. United States v. Mahdi, 598 F.3d 883, 891 (D.C. Cir. 2010); United States v. Pettiford, 517 F.3d 584, 588–89 (D.C. Cir. 2008). "So-called 'propensity' evidence is excluded not because it is irrelevant, but because 'it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.'" United States v. Oseguera Gonzalez, 507 F. Supp. 3d 137, 147 (D.D.C. 2020) (quoting Michelson v. United States, 335 U.S. 469, 475-76 (1948)).

In determining whether Rule 404(b)(2) evidence is admissible, the Court applies a two-step analysis. See United States ex rel. Westrick v. Second Chance Body Armor, Inc., 289 F. Supp. 3d 118, 119 (D.D.C. 2018). First, the Court must determine whether "the evidence [is] probative of some material issue [in the case] other than character." United States v. Clarke, 24 F.3d 257, 264 (D.C. Cir. 1994); see also FED. R. EVID. 404(b)(2). Evidence is only relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.

Second, if the Court determines that the evidence is admissible for a relevant and proper purpose, the Court must decide whether it nevertheless should be excluded under Rule 403 of the Federal Rules of Evidence. See FED. R. EVID. 403; see also United States v. Clarke, 24 F.3d at 264 ("The second step requires that the evidence not be inadmissible under Rule 403.").

### III. DISCUSSION

Both defendants argue that evidence of the ankle monitor, the toxicology report, and the money found on Mr. Hylton-Brown's person are admissible under Rule 404(b)(2) to show Mr. Hylton-Brown's motive to flee from the police. With respect to the toxicology report, Mr. Sutton argues that it is admissible to aid the jury in the causation and mental state analysis for the second degree murder charge, and Mr. Zabavsky contends that it is relevant to his obstruction of justice defense. FED. R. EVID. 404(b)(2). But such evidence is only admissible if it is relevant, and evidence is only relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 402, 401. The Court therefore must determine if Mr. Hylton-Brown's motive to flee, or the fact that he may have had drugs in his system on October 23, 2020, are "fact[s] [] of consequence in determining the action." Id.

For the following reasons, the Court concludes that Mr. Hylton-Brown's motive to flee the police is not relevant to any of the charges in this case; the ankle monitor and the money found on Mr. Hylton-Brown's person therefore are not admissible. The Court concludes, however, that portions of the toxicology report are relevant to the causation analysis, Mr. Sutton's mental state, and Mr. Zabavsky's obstruction of justice defense, and therefore will be admitted at trial for a limited purpose.

6

*A. Motive to Flee*

Mr. Sutton argues that evidence that Mr. Hylton-Brown was wearing an ankle monitor is relevant to the charges in this case because on the night of October 23, 2020, "Mr. Hylton-Brown was aware that an arrest could create problems for his ankle monitor. . . [and] [s]uch facts are clearly admissible to show Mr. Hylton-Brown's motive [to flee the police]." Sutton Crim. Mot. at 10; see also Zabavsky Mot. at 4 ("[T]he ankle monitor provides relevant evidence of Hylton-Brown's state of mind prior to the collision."). Mr. Sutton further asserts that the fact that Mr. Hylton-Brown had "a large amount of cash strapped to his legs in a high crime area where he was known to sell drugs in the past is certainly admissible in this case to show his motive for eluding police." Sutton Money Mot. at 4.

The Court requested additional briefing from the parties on these issues after identifying two cases in which the criminal history of a decedent was admitted in matters involving law enforcement officers. See Motions Ruling Tr. at 11:19-24 (citing Knight through Kerr ("Knight") v. Miami-Dade Cnty., 856 F.3d 795 (11th Cir. 2017) and Mendoza v. Gates, 19 F. App'x 514 (9th Cir. 2001)). In Knight, plaintiffs sued under 42 U.S.C. § 1983 after "two officers discharged their firearms, killing two victims, and wounding a third." Gov't Suppl. at 3 (citing Knight through Kerr v. Miami-Dade Cnty., 856 F.3d at 804). A key factual dispute existed in that case over whether the victims had reversed the car toward the officers at the time deadly force was used – namely, before the officers began firing shots. Knight through Kerr v. Miami-Dade Cnty., 856 F.3d at 809-10. This factual dispute was central to a significant issue under Section 1983 because the jury needed to determine whether it was reasonable under the Fourth Amendment for the officers to use deadly force. See id. at 814-15.

7

In Mendoza, another Section 1983 suit, an individual died during a vehicular pursuit by the Los Angeles police. See Mendoza v. Gates, 19 F. App'x at 517. The plaintiffs argued that the decedent ran from the police because he was afraid of a gun that the police pointed in his direction. Id. at 519. The Ninth Circuit permitted the government to introduce evidence that the victim was on probation at the time of the pursuit to rebut the plaintiffs' assertion that he fled because he was afraid of the gun. See id. at 518-19. The court allowed this evidence because it instead demonstrated that the victim might have fled because he was concerned that his probation could be revoked. See id.

The government argues that both Knight and Mendoza "involved a narrow set of circumstances and are easily distinguished from this case. In each, the specific criminal history deemed admissible helped shed light on a disputed fact that was material to a question the jury was required to resolve at trial." Gov't Suppl. at 3. On closer analysis, the Court agrees with the government and concludes that Knight and Mendoza are distinguishable. To start, both cases were decided under Section 1983, under which the defendant law enforcement officers could defend on the ground that their conduct was justifiable or reasonable under the Fourth Amendment to the United States Constitution. The Court has already made clear – numerous times – that because the D.C. second degree murder statute is a criminal statute of general applicability, it does not permit the same defense. See United States v. Sutton, Crim. No. 21-0598, 2022 WL 13940371, at *5 (D.D.C. Oct. 23, 2022); Transcript of Oral Ruling on Motion Hearing, August 3, 2022 [Dkt. No. 217] at 11:21-19:9; United States v. Sutton, Crim. No. 21-0598, 2022 WL 16960338, at *4 (D.D.C. Nov. 16, 2022) ("A determination of an officer's liability in a Section 1983 suit is confined to the analysis of the cases decided under the Fourth Amendment – in use of force cases – or other relevant constitutional principles. . . But the

8

calculus is different under the District of Columbia second degree murder statute." (internal citation omitted)).

Here, the government's theory is that Mr. Sutton's conduct constitutes a violation of the D.C. second degree murder statute because he subjectively knew that his conduct "created an extreme risk of death or serious bodily injury, but engaged in that conduct nonetheless." Williams v. United States, 858 A.2d 984, 998 (D.C. 2004) (quoting Comber v. United States, 584 A.2d 26, 39 & n.12 (D.C. 1990) (en banc)) (emphasis added); see also Indictment ¶ 29 (alleging that Mr. Sutton "act[ed] with conscious disregard of an extreme risk of death or serious bodily injury to Karon Hylton-Brown"). This conduct, if proven at trial, would satisfy the mens rea required for second degree murder under D.C. law if the government demonstrates "a 'gross deviation from a reasonable standard of care' or by other acts that may lead the finder of fact to determine that the 'defendant was aware of a serious risk of death or serious bodily harm.'" Jennings v. United States, 993 A.2d 1077, 1080 (D.C. 2010) (quoting Comber v. United States, 584 A.2d at 39). Put simply, "the question for the jury is whether the defendant consciously disregarded known risks by pursuing Mr. Hylton-Brown in an unsafe manner, and whether the defendant's actions caused Mr. Hylton-Brown's death." Gov't Suppl. at 5.

Mr. Sutton has failed to articulate a single cognizable reason why Mr. Hylton-Brown's motive to flee is relevant to the elements of the D.C. second degree murder statute discussed above or to his defense against that charge. Instead, counsel for Mr. Sutton has repeatedly returned to constitutional principles and Fourth Amendment jurisprudence to advocate for the admissibility of this evidence. At oral argument on November 17, 2022 – the third time the parties have appeared before the Court to argue these issues – Mr. Hannon stated that "Officer Sutton's position is that he acted reasonably in pursuing Mr. Hylton-Brown based upon

9

the information that he was provided. . . He relies on [the MPD] general order which we maintain is coextensive with the Constitution case law regarding Terry stops." Oral Arg. Tr. at 94:3-8. Counsel further asserted that "believing that [Mr. Hylton-Brown] was armed is the defense in the case. And the evidence certainly permits us to argue to the jury that he probably was armed." Id. at 94:22-24. It seems that counsel's argument is that under Terry v. Ohio, the ankle monitor and the money found on Mr. Hylton-Brown's person would be admissible to show that Mr. Sutton had "reasonable, articulable suspicion that criminal activity [was] afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).

If this issue were before the Court on a motion to suppress under the Fourth Amendment or as an effort to raise a qualified immunity defense under Section 1983, things would be different. But as the Court has noted before, Mr. Sutton "continues to try to fit a square peg into a round hole." Oral Ruling Tr. at 33:12. It doesn't work. Mr. Sutton has failed to provide a single legally articulable reason why Mr. Hylton-Brown's motive to flee is relevant to his defense under the D.C. second degree murder statute. The Court therefore concludes that evidence related to the ankle monitor and the money is irrelevant and therefore inadmissible. There is simply no factual question that the jury must resolve in this case that involves Mr. Hylton-Brown's state of mind or his motive to flee.

### B. The Toxicology Report

Portions of the toxicology report prepared in conjunction with Mr. Hylton-Brown's autopsy are a different story. Mr. Sutton explains that "[a]fter being transported to MedStar Washington Hospital Center, Hylton-Brown's blood was drawn, tested, and analyzed. The blood tests ultimately revealed that Hylton-Brown had benzodiazepine, oxycodone, THC,

10

and metabolites of THC in his blood stream." Sutton Tox. Mot. at 3. The results of this blood test are relevant and probative for three purposes.

First, Mr. Hylton-Brown's toxicology report is relevant to the causation analysis under the second degree murder charge. See Oral Ruling at 31:12-18. Under the D.C. second degree murder statute, "'a defendant generally may not be convicted unless his conduct is both (1) the actual cause, and (2) the legal cause (often called the proximate cause) of the result.'" Fleming v. United States, 224 A.3d 213, 221 (D.C. 2020) (en banc) (quoting Burrage v. United States, 571 U.S. 204, 210 (2014)). Actual causation "'requires proof that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct.'" Id. (quoting Burrage v. United States, 571 U.S. at 211). Proximate causation "'preclude[s] liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity.'" Id. at 224 (quoting Paroline v. United States, 572 U.S. 434, 444-45 (2014)). The D.C. Court of Appeals has made clear, however, that "the intervening actions of a third party do not by themselves defeat proximate cause if those intervening actions were reasonably foreseeable to the defendant." Id. at 226 (emphasis added).

The government's argument that the toxicology report "cannot support any theory that Hylton Brown was an intervening cause in his death" oversimplifies the proximate causation analysis. Gov't Opp. at 12. This argument implies that because Mr. Hylton-Brown's actions "by themselves" cannot defeat proximate cause, Mr. Hylton-Brown's conduct therefore is irrelevant. Fleming v. United States, 224 A.3d at 226. The Court disagrees. The jury must be able to consider evidence of Mr. Hylton-Brown's alleged intoxication as one factor in determining whether Mr. Hylton-Brown's death had "'a sufficient connection" to Mr. Sutton's conduct or was within "'the scope of the risk created by the predicate conduct.'" Id. at 224 (quoting

11

Paroline v. United States, 572 U.S. at 444-45). As the Court stated in its oral ruling, the toxicology report is "fair game" because "the drugs in [Mr. Hylton-Brown's] system could be one factor under Fleming that [the jury] may consider, just like the Police Department General Orders are one factor that they can consider [for mental state]." Oral Ruling Tr. at 31:23-32:2; see also United States v. Sutton, Crim. No. 21-0598, 2022 WL 13940371, at *4 (D.D.C. Oct. 23, 2022) ("[E]vidence of Mr. Sutton's training on the General Order will be just one factor the jury may consider in determining Mr. Sutton's subjective state of mind at the time of events at issue.").

Second, the toxicology report is probative of one of Mr. Sutton's defenses in this case – that he attempted to pull Mr. Hylton-Brown over because he had reasonable suspicion to believe he was under the influence. As the Court stated in its oral ruling, Mr. Hylton-Brown's alleged intoxication "supports Officer Pitt's testimony [at the evidentiary hearing] that earlier in the day [Mr. Hylton-Brown] was driving erratically. She thought he might be high or she thought he was high. She used the term reckless. She thought he was under the influence of something." Oral Ruling Tr. at 32:3-9. This goes directly to Mr. Sutton's mental state under second degree murder, which the Court has concluded – and the government has conceded – is a cognizable basis for the admission of evidence. See Evid. Hr'g Op. at 6 ("[T]he Court agrees with the government that 'there is only one possible way that any of [this evidence] could be relevant, and that is to the extent it informed Mr. Sutton's state of mind with regard to Count 1 on the night of the charged offense.'" (internal quotation omitted)).

Moreover, Mr. Sutton argues that he was also told that Mr. Hylton-Brown may have been under the influence on the night of the events in this case. See Sutton Tox. Mot. at 7 ("Ofc. Pitt-O'Neill testified that she had observed Hylton-Brown driving recklessly, and 'thought

12

he was high at the time' based on '[] the way he was acting, his eyes, kind of glossy, things of that nature.' . . . Ofc. Pitt-O'Neill also testified that she shared this information with Ofc. Sutton." (quoting Transcript of Evidentiary Hearing, October 14, 2022 ("Evid. Hr'g Tr.") [Dkt. No. 312])). At trial, Officer Pitt-O'Neill could not specifically recall whether she actually relayed this information to Mr. Sutton, but said it was possible. See Transcript of Jury Trial, November 28, 2022 (Afternoon Session) at 85:10-15 ("Q. Now, with regard to your observations about Mr. Hylton-Brown appearing high earlier when you saw him in the 5400 block, you're actually not sure whether you told the officers that; is that correct? A. It's correct. It's something I might have said but I'm not a hundred percent sure if I said it or not.").

Third, the toxicology report is relevant to Mr. Zabavsky's defense in this case because of the trial testimony that Mr. Zabavsky told Captain Franklin Porter, the Watch Commander on the night of October 23-24, 2020, that he thought Mr. Hylton-Brown was drunk and slurring his words. See Transcript of Jury Trial, November 17, 2022 (Morning Session) at 55:11-56:6 (direct examination of Captain Porter). As the Court stated in its oral ruling, "if this evidence supports that [testimony], it undercuts the prosecution theory that, that was a misleading statement in furtherance of the conspiracy to obstruct and the obstruction." Oral Ruling Tr. at 32:14-21. Mr. Zabavsky is entitled to present evidence to combat the government's allegation that he engaged in misleading conduct under Section 1515(a)(3), which is defined as "knowingly making a false statement." 18 U.S.C. § 1515(a)(3)(A). Accordingly, it is hereby

ORDERED that Andrew Zabavsky's Supplemental Brief on the Admissibility of Certain Disputed Evidence [Dkt. No. 342] is GRANTED IN PART and DENIED IN PART; it is

13

FURTHER ORDERED that Terence D. Sutton, Jr.'s Motion to Admit Evidence that he was Wearing an Ankle Monitor and on Release in a Montgomery County Criminal Case No. 3D00407277 at the Time of his Death [Dkt. No. 343] is DENIED; it is

FURTHER ORDERED that, subject to the limitations set forth in this Opinion, Terence D. Sutton, Jr.'s Motion to Admit the Toxicology Report of Karon Hylton-Brown [Dkt. No. 344] is GRANTED IN PART and DENIED IN PART; and it is

FURTHER ORDERED that Terence D. Sutton, Jr.'s Motion to Admit Evidence of Money Found on Karon Hylton-Brown's Person [Dkt. No. 345] is DENIED.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 11/30/22