# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | Case No: 1:21-cr-598-PLF |
| v. | : | |
| | : | Judge Paul L. Friedman |
| TERENCE SUTTON, et al. | : | |
| | : | |
| Defendants. | : | |

## TERRENCE D. SUTTON JR'S BENCH BRIEF
## REGARDING LESSER INCLUDED OFFENSE INSTRUCTIONS

Comes now Officer Terence D. Sutton, Jr., through counsel HANNON LAW GROUP,

LLP, and respectfully submits this bench brief regarding three questions posed by the Court

related to instructing the jury on lesser included offenses:  (1) whether involuntary manslaughter is

a lesser included offense for second degree murder under the D.C. Code, and the effect on this

analysis, if any, of *United States v. Williams*, 836 F.3d 1 (D.C. Cir. 2016); (2) the evidence required

for the Court to grant such a request, should the government make the request; and (3) what happens

if the government makes such a request and the defense opposes it.

## I.      INVOLUNTARY MANSLAUGHTER IS A LESSER INCLUDED OFFENSE OF SECOND DEGREE MURDER.

Ofc. Sutton agrees with the government that involuntary manslaughter is traditionally

recognized as a lesser included offense of second degree murder.  However, the government did not

try the case in pretrial pleadings, or during the trial on the theory of involuntary manslaughter.

Indeed in its opening statements, AUSA Ahmed Baset on three separate occasions told the jury that

Ofc. Sutton "murdered" Mr. Hylton Brown.    The evidence presented at trial un-relentlessly never

deviated from this theory.  Ofc. Sutton's defense is a complete denial, and it would be unfair to allow

the government to shift gears at this point.  Additional grounds for precluding the manslaughter

instruction are presented below.

1

II.     **THE GOVERNMENT HAS NOT MET THE EVIDENTIARY STANDARD TO INSTRUCT THE JURY ON INVOLUNTARY MANSLAUGHTER.**

Federal Rule of Criminal Procedure 31(c) provides that a "defendant may be found guilty of an offense necessarily included in the offense charged."  A lesser included offense instruction is appropriate only when "(1) all elements of the lesser offense are included within the offense charged, and (2) there is a sufficient evidentiary basis for the lesser charge."  *Boykins v. United States*, 702 A.2d 1242, 1250 (D.C. 1997) (quoting *Rease v. United States*, 403 A.2d 322, 328 (D.C. 1979)).

Although Ofc. Sutton does not dispute that manslaughter is a lesser included offense, he contends that there is an insufficient evidentiary basis to instruct the jury on the charge.  "The decision to grant or refuse an instruction on a lesser included offense turns on the state of the evidence."  *United States v. Comer*, 421 F.2d 1149, 1151 (D.C. Cir. 1970); *see also Belton v. U.S.*, 382 F.2d 150, 155 (D.C. Cir. 1967) (a party "is entitled to instructions on a lesser included crime where there is evidence in the record to support a finding of guilt on that offense.").

In *Belton v. United States*, 382 F.2d 150, 155 (D.C. Cir. 1967), a man was indicted and tried for first-degree murder, and the jury was also instructed on the lesser included offense of second degree murder.  On appeal, the D.C. Circuit considered whether the District Court erred in denying the defendant's request for an instruction on manslaughter.  The Court said that an instruction on a lesser included crime is required "where there is evidence in the record to support a finding of guilt on that offense."  *Id*. at 155.  But despite upholding the conviction for first-degree murder, the Court found there was no evidence "'fairly tending' to bear on manslaughter," and therefore, that the District Court was correct to deny the instruction.

The government had accused the defendant of walking into his house, yelling at his wife, and then pulling out a gun and shooting her dead.  *Id*. at 151.  The defendant offered a different story.  He

claimed that his wife assaulted him while holding a gun in her hand, and that the gun went off during the scuffle.  *Id*. at 155.  The Court reasoned that neither account, nor any fairly inferable version of the accounts, could support a conviction for manslaughter.  *Id*. at 156.  Therefore, even though manslaughter was a lesser included crime, it would have been improper to instruct the jury to consider that offense.  *Id*.

 So under *United States v. Comer* the Court, as the presiding judicial officer at the trial, must assess the evidence and "appraise all the testimony and evidence to determine whether it is capable of more than one inference."  421 F.2d at 1154.  That assessment in this case must recognize that the government has not offered sufficient evidence to support a conviction for manslaughter; or stated a bit differently, the evidence offered is identical as it might be applied to both murder and manslaughter.  To prove involuntary manslaughter, the government must prove that Ofc. Sutton's conduct grossly deviated from the standard of care and he should have been aware of that his conduct created an extreme risk of death or serious injury.

The evidence does not support a charge for involuntary manslaughter because it also does not support the charge of Second Degree Murder.  The government has indicted the case on an all or nothing theory of Second Degree Murder based on depraved heart malice.  The theory of depraved hear malice is entirely predicated on an alleged violation of the MPD General Order on Vehicular Pursuits.  Not only is there no evidence now that the General Order on vehicular pursuits was violated, the evidence is that police may violate the General Orders in their judgment so long as their conduct is "legal", which means in conformity with the Constitution. While the latter reference to the Constitution is not explicit in the record because of the Court's pretrial *in limine* ruling on the admissibility of the MPD General Orders, that is why both Sgt. Michael Wear and Sgt. John J. Brennan secondarily endorsed the actions of Ofc. Sutton's as compliant with the MPD General Order on Field Contacts, Stops and Frisk.

3

The all or nothing theory of depraved heart malice was argued by AUSA Ahmed Baset in opposition to Ofc. Sutton's motion for judgment under Rule 29:

> And that's what -- Your Honor in ECF 198 and in 159, you recognized this; that we can prove that he was in conscious disregard by showing that he deviated from both an objective and a subjective standard of care. And so how do we prove that? How do we establish that? And the government has produced a tremendous amount of evidence in this case, from Totaro, from -- from Drago, as far as what those national standards are. We produced evidence that these are standards that Officer Sutton and Lieutenant Zabavsky were trained on, and that they were tested on.
>
> And so what that standard is, the government should be able to establish that. That standard is also based off of existing law, like the DCMR. I know that Mr. Hannon has an issue with this, but let's be clear. The -- the law itself is noticed to the defendant, and Mr. Hannon has been complaining throughout this case about how his client has not had sufficient notice. Well, the DCMR, which we know he's been trained on, indicates that you are not immune. You are not protected if you -- if you use the emergency vehicle in a grossly negligent way. The consequences that may flow from that, whatever they are, are yours. You're not protected. That's expressly evident and clear in that DCMR statute.
>
> And by the way, *Comber* is C-o-m-b-e-r *v. U.S.*, 584 A.2d 26 at 39. This is D.C. 1990, en banc.
>
> And so I think in terms of what the standards are and how they're established, we can establish it through a variety of means. And our argument, again, is not that a general order violation is a per se violation of the law. It is just one of the factors that -- that establish what the standard of care is. And if we show that this is a factor, that this is within Mr. Sutton's knowledge base, that he would have known about this general order -- which we do.
>
> In fact, a year prior, he had been -- there was an adverse finding against him. He was trained, again, within a year, and he did the same thing. He failed to terminate the pursuit in -- in a time that ensured that the risk was not actually actualized.
>
> And this takes me to the second point here, which is that Mr. Hannon says that, well, you know, you want to look at but-for cause, well, that could have happened because he didn't wake up out of bed for that day. I think that's why we have proximate cause as well, because there has to be a nexus. There has to be a link; right?
>
> And Mr. Sutton knew about this policy. He knew that if you pursued someone in a manner that ignored the risks, the extreme risks, that you're supposed to terminate in those situations. And what were -- what was the situation here? A young man driving on a moped without a helmet for violating traffic ordinances. That was the reason. And so he was aware of it.

And, moreover, in terms of what is the act that Mr. Hannon asked about. Well, we've established that he drove over -- up to 26 miles per hour, accelerated in the final seconds, and only in the final second deaccelerated after Mr. Hylton-Brown had pumped his brakes a few times. And so there is the pushing; there is the conduct; there is the causation. And that is a reasonable -- and those inferences should be drawn in favor of the government.

In addition, the lights and sirens being turned off, we heard powerful testimony from Mr. Chavez about what the effect of that was. Just a civilian driving his car down the street; he was in the blast zone, he was in the danger zone, and his safety was ignored. And it was ignored in disregard of the general order and the requirement that his lights and sirens must have been on at that time. And the reason couldn't have been more clear because it is a warning sign, it's a warning signal to everyone driving around. Mr. Chavez made it clear too that if he had heard it, if he had known, he would have slowed down. He would have pulled over, perhaps, and this would have never happened. That's but-for causation.

Now, in terms of the link in the chain -- that's the language used in *Fleming* -- that also couldn't be more clear. Another evidence or piece of evidence that is -- is -- is what we know from -- from Officer Tejera and Officer Novick, who say that he was given an out. Mr. Sutton was reminded we can get a warrant for this guy. He did nothing. He didn't respond to it. And so I think in terms of whether there is a continuous chain, one in which if you had removed Mr. Sutton with this fatal crash that occurred, the answer to that a jury can reasonably conclude based on the reasonable inferences, that the answer to that is yes.

And then the question is is there a sufficient nexus and proximate cause. Is there something that disrupted that chain? And the answer is there wasn't.

(12/9/2022 p.m. Tr. at 64-67).

There's evidence in the record -- and Mr. Hannon has -- has asserted this in his filings – that Officer Pitt O'Neil may have told Mr. Sutton that Mr. Hylton-Brown was observed earlier in the day high, glassy-eyed. And if -- if that is known to Mr. Sutton, that that elevates the risk of chasing him because then he's more prone to making bad decisions. That's the general sort of understanding of how drugs and alcohol work. There's risk.

Now, if Mr. -- and that's true of anyone you are pursuing who is under the influence. That is part of the risk calculation. And here why that matters is because he couldn't make the right call. He couldn't make the right judgments. That's what affected -- and that's what Mr. Sutton's driving affected is Mr. Hylton-Brown's ability to make a good decision.

(12/9/2022 p.m. Tr. at 68-69).

This is also true of the government's opening statement:

5

But we are here. And you, the jury, will have the opportunity to assess the evidence for yourself and judge what happened that night. And here is what the evidence will prove. It will prove beyond a reasonable doubt that Sutton was reckless when he chased Hylton with conscious disregard of the extreme risk of death that his driving posed to Hylton and others on the street that night. And that, ladies and gentlemen, whether you wear a badge or not, is second degree murder.

(10/25/2022 a.m. Tr. at 46-47).

There is no evidence that Ofc. Sutton did not know the MPD policy regarding vehicular pursuits. To the contrary, there is evidence that Ofc. Sutton received training on the policy, had processed a similar case in the last 18 months, and admitted to his supervisor he was in a pursuit at that time.

## III.     THE COURT SHOULD NOT INSTRUCT THE JURY ON A LESSER INCLUDED OFFENSE OVER THE DEFENDANT'S OBJECTION.

Although the government is correct that both the prosecution and the defense have a right to request a lesser included instruction, both have certain "veto" rights on the decision to instruct the jury on a lesser included offense. Consequently, the Court must properly weigh the defendant's preference. As noted in *Belton* "where the issue is close, the request of defense counsel may properly be given the benefit of the doubt." *Id.* at 156. This is because instructing the jury on the lesser included offense could cause an unjust conviction instead of acquittal. "A Judge should not instruct a jury on a lesser offense over the objection of the prosecution or defense, if that instruction serves only to encourage the jury to exceed its historical function of fact finding. *United States v. Harary*, 457 F.2d 471, 478 (2d Cir. 1972).

If provided the lesser included offense in this case, the jury could be guided to compromise its doubt to the greater offense and convict on the lesser offense based on either the temptation to rush to judgment or to show mercy to the defendant. Neither grounds for a jury on a lesser included offense is permitted under the law. *See also United States v. Tsanas*, 572 F.2d 340, 344-346 (2d Cir. 1978) (discussing the competing interests of the defendant and the

government) (Friendly, J.).  The question of whether to give a lesser included offense instruction

must also consider that under the adversary system, both sides in a criminal case have interests

that should be respected by the Court.  *Bostick v. United States*, 605 A.2d 916, 920 (D.C. 1992).

Instructive in this analysis is Justice Kavanaugh's description of the evidence in his

concurrence in *United States v. Williams*, 836 F.3d 1, 20 (D.C. Cir. 2016):

> The key issue for the jury to understand in assessing Williams' mens rea and
> distinguishing manslaughter from murder was the significance of the victim's statements
> during the gang initiation —namely, the victim's repeated statements during the initiation
> that he was okay and could continue. During closing argument, the defense counsel
> correctly told the jury what the law was: that in assessing Williams' mens rea, the jury
> could consider the statements that the victim had made during the gang initiation. But the
> prosecutor, in her rebuttal, said that the defense counsel was wrong about the law. The
> prosecutor told the jury that it could not consider the statements that the victim had made
> during the gang initiation. This disagreement was central to the outcome of the case.
> Considering the victim's statements likely would lead the jury to convict for
> manslaughter, not murder. But excluding consideration of those statements likely would
> lead the jury to convict for murder, not manslaughter.

In that case there was a critical piece of evidence presented to the jury that clearly demarked that

a jury verdict on manslaughter would be rational and permissible under the Constitution.

In contrast, in this case there is no distinguishing evidence from which a jury could

render a rational verdict on manslaughter.  Ofc. Sutton denies the Second Degree Murder charge,

and his witness Captain Sean Connors confirmed that Ofc. Sutton knows the MPD Policy on

Vehicular Pursuits.  In response to AUSA Ahmed Baset's question (which he tried to retract

twice), Captain Connors testified that when he asked Ofc. Sutton whether he had engaged in a

pursuit in arresting three armed robbers, Ofc. Sutton readily admitted that he did, for which he

was reprimanded.  The government has proven that Ofc. Sutton was trained in this policy.

The duplicity or the identical nature of the evidence on the greater and lesser offenses

precludes giving a lesser included offense instruction.  *Sansone v. United States,* 380 U.S. 343

(1965), is one of the principal cases in the evolution of the lesser included offense doctrine.  In

that case, the Court reported the following from its jurisprudence:

> But a lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses. *Berra v. United States*, 351 U.S. 131, 134, (1956); *See Stevenson v. United States*, 162 U.S. 313 (1896) . . . .  In other words, the lesser offense must be included within but not, on the facts of the case, be completely encompassed by the greater.

*Id*. at 349.

> *United States v. Sinclair,* 444 F.2d 888, 890 (D.C. Cir. 1971) is also instructive:

> [A]s *Belton* held, the refusal to give the lesser-included offense instruction is not error when defendant's testimony is completely exculpatory and, if believed, could only lead to acquittal, and the kind of reconstruction of events needed to support a lesser charge is neither fairly inferable from the testimony nor pointed out by defense trial counsel.

> Under these circumstances, the lesser included offense doctrine requires the Court to

deny the government's request for an instruction which may lead to an irrational verdict by a jury

now backed up against the holiday season.

Dated: December 11, 2022                    Respectfully submitted,

                                            HANNON LAW GROUP, LLP

                                            ___*s/J. Michael Hannon*___
                                            J. Michael Hannon, #352526
                                            1800 M Street, N.W., Suite 850 S
                                            Washington, DC 20036
                                            Tel: (202) 232-1907
                                            Fax: (202) 232-3704
                                            jhannon@hannonlawgroup.com


                                            *Attorney for Defendant Terence D. Sutton, Jr.*