**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-cr-598-PLF-01 |
| | : | |
| TERENCE SUTTON and | : | Hon. Paul L. Friedman |
| ANDREW ZABAVSKY, | : | |
| | : | |
| Defendants. | : | |

**TERENCE D. SUTTON, JR.'S MOTION TO
DISMISS THE INDICTMENT FOR THE GOVERNMENT'S
PRESENTATION TO THE JURY OF AN APPARENTLY FORGED EXHIBIT
AND CLOSING ARGUMENT RELATED TO THE ALLEGEDLY FORGED EXHIBIT**

Defendant, Terence D. Sutton, Jr., by and through counsel, HANNON LAW GROUP, LLP, respectfully moves this Court to dismiss the Indictment for prosecutorial misconduct in closing argument.

**FACTUAL AND PROCEDURAL BACKGROUND**

On the evening of December 13, 2022, Ofc. Sutton provided the government with a list of the exhibits and documents he intended to use in closing argument the next day. On the morning of closing arguments, December 14, 2022, AUSA Elizabeth Aloi responded that the government's closing PowerPoint was provided through USAFx, the government's download mechanism. The government had not provided access to USAFx to Ofc. Sutton's law clerk, and access was promptly requested. The government's closing PowerPoint could not be found on USAFx by the law clerk. Within the hour before closing arguments, AUSA Elizabeth Aloi notified Ofc. Sutton's counsel that a hard copy of the government's closing PowerPoint was available in the courtroom.

During the government's closing argument, AUSA Ahmed Baset projected to the jury from the PowerPoint a document which was labelled and purported to be a slide from

government Exhibit 413-G (Slide 9).  This slide contained a number of bullet points which appeared to be part of a Training document shown to Ofc. Sutton during his MPD Training Academy session, and sponsored during trial by government training expert Ofc. Carolyn Totaro. During his closing argument, AUSA Ahmed Baset referred directly to a portion of this allegedly forged Exhibit:

> He also was aware to not *flush the motorist into a roadway or into an object*.  And that, ladies and gentlemen, couldn't be more crystal clear and obvious on the body cam.

Tr. 12/14/2022 AM at 30 (emphasis supplied).  The allegedly forged Exhibit contained a bullet point stating that an officer is prohibited from flushing a motorist into a roadway.  AUSA Baset went on:

> You also know that Sutton was trained about the extreme risks when his driving -- when he drove in this manner.  For example, in one of the trainings he received, which you are actually looking at the very slide that he was looking at when he took the training, he was told about the rules of engagement, about how you actually conduct a vehicular pursuit.  And it couldn't be any more clear that Sutton was creating a grave risk when he pursued Mr. Hylton-Brown in the manner in which he did.

Tr. 12/14/2022 AM at 31.

On this same theme, AUSA Baset previously argued to the jury the following:

> Now, let's discuss Sutton's driving in the first half of that alley.  Both he and Mr. Hylton-Brown are now heading in the direction of Friday-night traffic on Kennedy Street, less than one block away.
>
> Now, this first two-thirds of the pursuit occurs here where you see that purple arrow coming off of Eighth Street and into the alley.
>
> Now, like in this next video, you see Sutton closing in right behind Mr. Hylton-Brown as they enter that alley.

Tr. 12/14/2022 AM at 22.

> The driver of that Scion, who was driving on Kennedy at the time, told you he had no idea what was coming his way.  And how could he have?  The emergency lights and

sirens that would have warned him were shut off when Sutton drove into that alley.  so Mr. Urrutia-Chavez, the driver of that Scion, he didn't see or hear any warnings, because there were none.

Tr. 12/14/2022 AM at 23-4.

During the closing argument of AUSA Baset, counsel for Ofc Sutton reviewed the hard copy of the PowerPoint provided only a few minutes before 9:30 a.m.  Not recognizing the allegedly forged page of Exhibit 413-G, in his closing argument counsel for Ofc. Sutton stated the following:

> When this case was brought, and as it continued through trial, some on our team felt outrage.  Now, that's irrelevant to your deliberations.  Whatever I feel about how the government has gone about prosecuting the case is irrelevant to your deliberations unless I can persuade you that it's very important for you to look at what your government has done in this case.
>
> And I want to give Mr. Baset a fair chance to demonstrate to you that the government is playing fair.
>
> [The PowerPoint slide was then displayed to the jury on the Elmo]
>
> \*          \*          \*          \*
>
> Okay.  What you're looking at is one of Mr. Baset's slides that he showed you, and the slide is supposed to be coming from Government Exhibit 413G.  You see it in the upper right-hand corner, and it says one of the things that Officer Sutton ignored was do not flush into a roadway.
>
> Can we switch over to Ms. Clarizio's computer.  And I could be mistaken, but this is Government Exhibit 413G, and it has 30 slides.  And let's go through the slides.  And I cannot find that slide.  I hope I'm wrong*.  I hope after lunch when the government gets the last word, he will explain to you how I'm mistaken*.  And you can look at your notes from the examination of Officer Totaro and see if you find the word "flushing" into a roadway anywhere in her testimony.

Tr. 12/14/2022 AM at 55-56 (emphasis supplied).

In his rebuttal argument, AUSA Ahmed Baset was silent in response to this challenge to the legitimacy of the slide which he had included in his PowerPoint as part of Government Exhibit 413G.

3

**ARGUMENT**

Resolution of the issue of whether the PowerPoint slide is a forgery should be a simple process.  D.C. Rule of Professional Conduct 3 governs the resolution of this issue:

 3.3(a) A lawyer shall not knowingly:

    (1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer, unless correction would require disclosure of information that is prohibited by Rule 1.6;

Comment  2

**Representations by a Lawyer**

   [2] An assertion purported to be made by the lawyer, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.  There may be circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation.  If the lawyer comes to know that a statement of material fact or law that the lawyer previously made to the tribunal is false, the lawyer has a duty to correct the statement, unless correction would require a disclosure of information that is prohibited by Rule 1.6.  This provision in paragraph (a)(1) differs from ABA Model Rule 3.3(a)(1), which requires a lawyer to disclose information otherwise protected by Rule 1.6 if necessary to correct the lawyer's false statement. If Rule 1.6 permits a lawyer to disclose a client confidence or secret, D.C. Rule 3.3(a)(1) requires the lawyer to disclose that information to the extent reasonably necessary to correct a false statement of material fact or law.  Nothing in D.C. Rule 3.3(a)(1) limits any disclosure duty under Rule 4.1(b) when substantive law requires a lawyer to disclose client information to avoid being deemed to have assisted the client's crime or fraud.  The obligation prescribed in Rule 1.2(e) not to counsel a client to commit or assist the client in committing a fraud applies in litigation but is subject to Rule 3.3(b) and (d). Regarding compliance with Rule 1.2(e), see the Comment to that Rule. *See also* Rule 8.4.

Comment 8 in part (the rest deals with lies by clients)

**Remedial Measures**

   [8] Paragraph (d) provides that if a lawyer learns that a fraud has been perpetrated on the tribunal, the lawyer must take reasonable remedial measures

Rule 3.3(d) says that duty of correction continues through the end of the proceeding

If for any reason, application of this rule to the issue before the Court fails to resolve all issues regarding the veracity of the allegedly forged exhibit, Ofc. Sutton requests that the Court hold a hearing for presentation of evidence on this issue.  The hearing would include the requirement that the government preserve and provide to the Court all electronic copies of the PowerPoint which would enable an expert if necessary to trace the properties of the slides contained in the PowerPoint, and the manner in which the allegedly forged slide was created.  Such a hearing may require testimony from members of the government team regarding the creation of the PowerPoint and the failure to provide it to the defendants in a timely manner in electronic form.

In reversing a conviction, our Circuit Court stated in *United States v. Davis,* 863 F.3d 894, 901 (D.C. Cir. 2017), the following standard.

> It is well established "that the prosecutor may not refer in the opening or closing statement to evidence not admitted at trial." *United States v. Valdez*, 723 F.3d 206, 209 (D.C. Cir. 2013) (quoting *United States v. Small*, 74 F.3d 1276, 1282 (D.C. Cir. 1996)).  Generally, the court considers three factors in assessing whether improper prosecutorial argument sufficiently prejudiced the defendant to require reversal of the judgment of conviction: "[1] the closeness of the case, [2] the centrality of the issue affected by the error, and [3] the steps taken to mitigate the effects of the error." *Id.* (quoting *Small*, 74 F.3d at 1280); *see United States v. McGill*, 815 F.3d 846, 918 (D.C. Cir. 2016).

See also *Berger v. United States*, 295 U.S. 78 (1935); *United States v. McGill*, 815 F.3d 846, 919 (D.C. Cir. 2016); *United States v. Moore*, 651 F.3d 30, 53 (D.C. Cir. 2011); *United States v. Vargas*, 583 F.2d 380, 384-87 (D.C. Cir. 1978).

These standards cannot be applied in this case until resolution of the origin of the slide presented in the PowerPoint.  Perhaps there is an innocent explanation or counsel for defendants are mistaken.  In pursuing an investigation into the validity of the slide from Govt Ex. 413G in closing argument, counsel for Ofc. Sutton have not found in the trial testimony of Ofc. Carolyn Totaro any reference to this slide, or the concept of "flushing" a suspect into a roadway.  At this point, counsel have not completed their analysis of all grand jury testimony or all witnesses as to

whether this slide was shown to any witness in the grand jury. Nor is counsel aware of the use of this slide during the trial with any government expert or in cross-examination of any of the defendants' experts. Given the nature of the assertion that officers are trained not to engage in this "flushing" conduct, it is difficult to understand why the slide does not have prominence elsewhere in this case's history, in the investigatory phase, the grand jury phase, the pretrial litigation, or the trial itself.

This matter, of course, is of some urgency and importance. Ofc. Sutton requests that the jury not be permitted to deliberate until this issue is resolved, and the Court determines an appropriate remedy, if at all.

WHEREFORE, Ofc. Sutton respectfully requests that the Court conduct a hearing into this matter and grant relief to Ofc. Sutton.

Dated: December 15, 2022      Respectfully submitted,

HANNON LAW GROUP, LLP

*s/J. Michael Hannon*
J. Michael Hannon, #352526
1800 M Street, NW, Ste 850 S
Washington, DC 20036
Tel: (202) 232-1907
Fax: (202) 232-3704
jhannon@hannonlawgroup.com

*Attorney for Defendant Terence D. Sutton, Jr.*