United States vs. Terence Sutton and Andrew Zabavsky (21cr598) (PLF)

**FINAL INSTRUCTIONS TO JURY**

*Let this be filed*
*PLF 1/6/23*

Ladies and gentleman of the jury, tomorrow you will hear the closing arguments of counsel concerning the evidence in this case. At this time, it is my duty and responsibility as the trial judge to give you instructions as to the law that applies to this case and to the evidence that has been presented. It is your sworn duty to base your verdict upon the law given in these instructions and upon the evidence that has been admitted in this case.

**FUNCTION OF THE COURT**

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law that applies in this case.  It is your duty to accept the law as I instruct you. You should consider all the instructions as a whole. You may not ignore or refuse to follow any of them.

**FUNCTION OF THE JURY**

Your function, as the jury, is to determine what the facts are in this case. You are the sole judges of the facts. While it is my responsibility to decide what is admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence. You alone decide the credibility or believability of the witnesses.

As I explained earlier, as human beings, we all have personal likes and dislikes, opinions, prejudices, and biases. Generally, we are aware of these things, but you also should consider the possibility that you have implicit biases, that is, biases of which you may not be consciously aware. Personal prejudices, preferences, or biases have no place in a courtroom, where the goal is to arrive at a just and impartial verdict. All people deserve fair treatment in the legal system regardless of any personal characteristic, such as race, national or ethnic origin, religion, age, disability, sex, gender identity or expression, sexual orientation, education, or income level, or any other personal characteristic. You should determine the facts solely from a fair consideration of the evidence.

You may not take anything I may have said or done as indicating how I think you should decide this case. If you believe that I have expressed or indicated any such opinion, you should ignore it. The verdict in this case is your sole and exclusive responsibility.

## JURY'S RECOLLECTION CONTROLS

If any reference by me or the attorneys to the evidence, either during questioning or during opening statements or closing arguments, is different from your own memory of the evidence, it is your memory that should control during your deliberations.

**EVIDENCE IN THE CASE**

During your deliberations, you may consider only the evidence properly admitted in this trial.  The evidence in this case consists of the sworn testimony of the witnesses, and the exhibits that were admitted into evidence.  It does not include exhibits that may have been discussed by witnesses but were not admitted into evidence.  It also does not include demonstratives, including PowerPoints, that were used in opening statements and closing arguments.

When you consider the evidence, you are permitted to draw, from the facts that you find proven, such reasonable inferences as you feel are justified in light of your experience.

**STATEMENTS OF COUNSEL**

The statements and arguments of the lawyers – including their opening statements and closing arguments – are not evidence. They are only intended to assist you in understanding the evidence. Similarly, the questions of the lawyers are not evidence.

**INDICTMENT NOT EVIDENCE**

The indictment is merely the formal way of accusing a person of a crime. You must not consider the indictment as evidence of any kind—you may not consider it as any evidence of Terence Sutton's or Andrew Zabavsky's guilt or draw any inference of guilt from it.

**INADMISSIBLE AND STRICKEN EVIDENCE**

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper.  You must not hold such objections against the lawyer who made them or the party s/he represents.  It is the lawyers' responsibility to object to evidence that they believe is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should ignore the question, and you must not speculate as to what the answer would have been. If, after a witness answered a question, I ruled that the answer should be stricken, you should ignore both the question and the answer and they should play no part in your deliberations. Likewise, exhibits as to which I have sustained an objection or that I ordered stricken are not evidence, and you must not consider them in your deliberations.

**BURDEN OF PROOF—PRESUMPTION OF INNOCENCE**

Every defendant in a criminal case is presumed to be innocent.  This presumption of innocence remains with the defendants throughout the trial unless and until the government has proven he is guilty beyond a reasonable doubt.  This burden never shifts throughout the trial. The law does not require Terence Sutton or Andrew Zabavsky to prove his innocence or to produce any evidence at all. If you find that the government has proven beyond a reasonable doubt every element of a particular offense with which Mr. Sutton or Mr. Zabavsky is charged, it is your duty to find him guilty of that offense.  On the other hand, if you find the government has failed to prove any element of a particular offense beyond a reasonable doubt, it is your duty to find Mr. Sutton or Mr. Zabavsky not guilty of that offense.

**REASONABLE DOUBT**

The government has the burden of proving Mr. Sutton and Mr. Zabavsky guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable. In criminal cases such as this one, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Reasonable doubt, as the name implies, is a doubt based on reason—a doubt for which you have a reason based upon the evidence or lack of evidence in the case. If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life. However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason. The government is not required to prove guilt beyond all doubt, or to a mathematical or scientific certainty. Its burden is to prove guilt beyond a reasonable doubt.

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two types of evidence from which you may determine what the facts are in this case—direct evidence and circumstantial evidence.  When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence.  On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is circumstantial evidence.

Let me give you an example.  Assume a person looked out a window and saw that snow was falling.  If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen.  Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up.  His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact.  The law does not favor one form of evidence over another.  It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial.  You are permitted to give equal weight to both. Circumstantial evidence does not require a greater degree of certainty than direct evidence.  In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

## CREDIBILITY OF WITNESSES

In determining whether the government has proved the charges against the defendants beyond a reasonable doubt, you must consider the testimony of all the witnesses who have testified.

You are the sole judges of the credibility of the witnesses.  You alone determine whether to believe any witness and the extent to which a witness should be believed.  Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.

As I instructed you at the beginning of trial and again just now, you should evaluate the credibility of witnesses free from prejudices and biases.

You may consider anything that in your judgment affects the credibility of any witness. For example, you may consider the demeanor and the behavior of the witness on the witness stand; the witness's manner of testifying; whether the witness impresses you as having an accurate memory; whether the witness has any reason for not telling the truth; whether the witness had a meaningful opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case, stands to gain anything by testifying, or has friendship or hostility toward other people concerned with this case.

In evaluating the accuracy of a witness's memory, you may consider the circumstances surrounding the event, including the time that elapsed between the event and any later recollections of the event, and the circumstances under which the witness was asked to recall details of the event.

You may consider whether there are any consistencies or inconsistencies in a witness's testimony or between the witness's testimony and any previous statements made by the witness. You may also consider any consistencies or inconsistencies between the witness's testimony and any other evidence that you credit. You may consider whether any inconsistencies are the result of lapses in memory, mistake, misunderstanding, intentional falsehood, or differences in perception.

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate. You may consider whether the witness has been contradicted or supported by other evidence that you credit.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in this trial, or motivated by self-interest, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

## EVALUATION OF PRIOR INCONSISTENT STATEMENT OF A WITNESS

The law treats prior inconsistent statements differently depending on the nature of the statements and the circumstances in which they were made. I will now explain how you should evaluate those statements.

You have heard evidence that certain witnesses made a statement on an earlier occasion and that this statement may be inconsistent with his/her testimony here at trial. It is for you to decide whether the witness made such a statement and whether in fact it was inconsistent with the witness's testimony here. If you find such an inconsistency, you may consider the earlier statement in judging the credibility of the witness, but you may not consider it as evidence that what was said in the earlier statement was true.

You also have heard evidence that certain witnesses made an earlier statement under oath, subject to the penalty of perjury before the grand jury and that this statement may be inconsistent with his testimony here at trial. If you find that the earlier statement is inconsistent with the witness's testimony here in court, you may consider this inconsistency in judging the credibility of the witness. You also may consider this earlier statement as evidence that what was said in the earlier statement was true.

## CONVICTION AND BIAS OF KAVONN MASON

You have heard evidence that Kavonn Mason has been convicted of a crime.  You may consider this conviction only in evaluating the credibility of that witness's testimony in this case.

In addition, you have heard evidence that Kavonn Mason made threatening statements and threatened a police officer in front of the Starlight convenience store on December 20, 2018, for which he was arrested.  You may consider this evidence in evaluating whether Kavonn Mason is biased against police officers and defendants Mr. Sutton and Mr. Zabavsky.

**SPECIALIZED OPINION TESTIMONY**

Ordinarily a witness may not testify as to his or her opinions or conclusions.  There's an exception for expert witnesses.  Expert witnesses are allowed to give opinions or conclusions and the reasons for those opinions or conclusions because they have become an expert in some art, science, profession or calling. The jury is not bound by an expert's opinions.  If you find that any opinion an expert gives is not based on sufficient education or practical experience, or that the reasons that support his opinion or conclusion are not sound or that the opinion or conclusion is outweighed by other evidence, you may disregard either completely or partially some or all of the expert's opinions or conclusions.  You should consider expert testimony along with all the other evidence in the case and give it as much weight as you think it fairly deserves.

**MPD GENERAL ORDERS**

      The government has introduced evidence regarding certain MPD general orders. And one in particular is the MPD general order on vehicular pursuits. The MPD general orders set internal policy for the Metropolitan Police Department. The general orders are not laws. Their provisions are administered exclusively by the Metropolitan Police Department.

      It is up to you whether to accept or reject the evidence that you heard, and any testimony from any witnesses about the Metropolitan Police Department general order on vehicular pursuits. If you find when you deliberate that one or more of the officers on trial violated this general order, you may consider the general order as only one factor in deciding whether the defendants had the necessary mental state or state of mind underlying the crimes charged.

      You may not find either defendant guilty of anything merely because they violated the general order, if you conclude that they did violate the general order.

**EXEMPTIONS FOR AUTHORIZED EMERGENCY VEHICLES**

You are instructed that at the time of the offenses alleged, the following regulation was in effect in the District of Columbia:

The driver of an authorized emergency vehicle may exercise the privileges set forth in this section, subject to the conditions contained in this section, in the following circumstances:

(a)     When responding to an emergency call;

(b)     When in pursuit of an actual or suspected violator of the law; and

(c)     When responding to, but not upon returning from, a fire alarm.

In those circumstances I just described, the driver of an authorized emergency vehicle may do any of the following:

(a)     Park or stand, irrespective of the provisions of this subtitle;

(b)     Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(c)     Exceed the prima facie speed limit so long as it does not endanger life or property; except that this provision does not apply to ambulances; and

(d)     Disregard regulations governing direction of movement or turning in specified directions.

The exemptions granted in this section to an authorized emergency vehicle shall apply only when the driver of the vehicle while in motion sounds an audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped as specified by law.

18

The provisions of this section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall these provisions protect the driver from the consequences of his reckless disregard for the safety of others.

**POLICE OFFICER'S TESTIMONY**

A police officer's testimony should be evaluated by you just as any other evidence in the case. In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because s/he is a police officer.

**RIGHT OF DEFENDANT NOT TO TESTIFY**

Under the Constitution of the United States, every person in a criminal case has an absolute right not to testify.  Mr. Sutton and Mr. Zabavsky have chosen to exercise this right.  You must not be influenced in your decision in this case by their exercise of this right.  Every person in a criminal case has the right to require the government to prove its case beyond a reasonable doubt.

**EVIDENCE OF GOOD CHARACTER**

Defendants have offered evidence of their reputation for good character, integrity, and performance as police officers. You should consider such evidence along with all the other evidence in the case. Evidence of good character may be sufficient to raise a reasonable doubt whether the defendant is guilty, because you may think it improbable that a person of good character would commit the crimes charged. Evidence of a defendant's character, inconsistent with those traits of character ordinarily involved in the commission of the crimes charged, may give rise to a reasonable doubt.

You should also consider any evidence offered to rebut the evidence offered by the defendant. You should always bear in mind, however, that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

**EVIDENCE OF REPRIMAND**

The government has introduced evidence that Terence Sutton was reprimanded in connection with a pursuit of armed robbers.  This evidence has been admitted by me only for your consideration as to whether Terence Sutton was aware of the MPD General Order on Vehicular Pursuits on October 23, 2020.

You may not use this evidence for any other purpose. Terence Sutton is only on trial for the crimes charged.  He is not charged in this case with any offense relating to the reprimand.

## KARON HYLTON-BROWN - CHARACTER

Cory Novick testified that he was aware that Karon Hylton-Brown had an arrest record involving guns.  It is up to you to decide whether to accept that evidence.  You may not consider this testimony as evidence that Mr. Hylton-Brown had a bad character or that Mr. Hylton-Brown had a criminal predisposition.

**NUMBER OF WITNESSES**

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side.  Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe.  You might find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side or you might find the opposite.

**NATURE OF CHARGES NOT TO BE CONSIDERED**

One of the questions you were asked when we were selecting this jury was whether the nature of the charges itself would affect your ability to reach a fair and impartial verdict.  We asked you that question because you must not allow the nature of a charge to affect your verdict. You must consider only the evidence that has been presented in this case in reaching a fair and impartial verdict.

**COUNT ONE: SECOND DEGREE MURDER UNDER D.C. CODE § 22-2103**

Count One charges defendant Terence Sutton with second degree murder.  The Indictment charges that on or about October 23, 2020, in the District of Columbia, defendant Terence Sutton, acting with conscious disregard of an extreme risk of death and serious bodily injury to Karon Hylton-Brown, caused Mr. Hylton-Brown's death – that is Mr. Sutton caused a traffic collision from which Mr. Hylton-Brown sustained injuries and died.

The elements of second degree murder, each of which the government must prove beyond a reasonable doubt, are that:

1. Terence Sutton caused the death of Karon Hylton-Brown; and

2. At the time he did so, Mr. Sutton acted in conscious disregard of an extreme risk of death or serious bodily injury to Karon Hylton-Brown.

The elements of involuntary manslaughter, each of which the government must prove beyond a reasonable doubt, are that:

1. Defendant Sutton caused the death of Karon Hylton-Brown;

2. The conduct which caused the death was a gross deviation from a reasonable standard of care; and

3. The conduct that caused the death created an extreme risk of death or serious bodily injury.

The difference between second degree murder and involuntary manslaughter is in whether the defendant is aware of the risk. To show guilt of second degree murder, the

government must prove that Defendant Sutton was aware of the extreme risk of death or serious bodily injury. For involuntary manslaughter, the government must prove, not that he was aware of the risk, but that he should have been aware of it.

Now I am going to instruct you as to the order in which you should consider these offenses. You should consider first whether Terence Sutton is guilty of second degree murder. If you find Mr. Sutton guilty of second degree murder, you must not go on to the other charge. If you find Mr. Sutton not guilty of second degree murder, go on to consider involuntary manslaughter. You may not consider involuntary manslaughter unless you first find Mr. Sutton not guilty of second degree murder.

**CAUSATION**

As I've indicated, one of the elements the government must prove beyond a reasonable doubt to establish either the charge of second-degree murder or the charge of involuntary manslaughter is that Terence Sutton caused the death of Karon Hylton-Brown.

To prove that defendant Sutton caused Mr. Hylton-Brown's death, the government must prove two things beyond a reasonable doubt:  actual causation and proximate causation.

First, the government must prove actual causation – that Mr. Hylton-Brown's death occurred as a result of an action by defendant Sutton. In other words, the government must prove that in the absence of an action by defendant Sutton, Mr. Hylton-Brown's death would not have occurred.

Second, the government must prove proximate causation – that there is a close connection between defendant Sutton's action and Mr. Hylton-Brown's death. You may find that a close connection exists if, at the time of defendant Sutton's action, the defendant knew or reasonably should have known that the action might result in the death of or serious bodily injury to Mr. Hylton-Brown. On the other hand, you may not find that a close connection exists if the series of events leading from defendant Sutton's action to Mr. Hylton-Brown's death is highly unusual, abnormal, or extraordinary.

There is evidence in this case that defendant Sutton did not personally inflict Mr. Hylton-Brown's fatal injury and that Mr. Hylton-Brown's fatal injury instead was inflicted by a third party. Under such circumstances, defendant Sutton can be found to have caused Mr. Hylton-Brown's death only if, applying the instruction you were just given, Mr. Hylton-Brown's death occurred as a result of the defendant's action and there is a close connection between the defendant's action and Mr. Hylton-Brown's death.

**COUNT THREE: OBSTRUCTION OF JUSTICE UNDER 18 U.S.C. § 1512(b)(3)**

Each of the defendants, Terence Sutton and Andrew Zabavsky, is charged with obstruction of justice.

In order for you to find either defendant guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt:

1. The defendant engaged in misleading conduct, or attempted to do so, toward another person – in this case, other officials of the Metropolitan Police Department; and

2. The defendant acted knowingly; and

3. The defendant acted with the specific intent to hinder, delay or prevent the communication of information; and

4. It was reasonably likely that the information would have been communicated to a law enforcement officer of the United States; and

5. That the information related to the commission or the possible commission of a federal offense.

"Misleading conduct" includes (1) knowingly making a false statement; (2) intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading; (3) intentionally concealing a material fact, and thereby creating a false impression by such statement; (4) with the intent to mislead, knowingly submitting or inviting reliance on a writing that is false; or (5) knowingly using a trick, scheme, or device with intent to mislead.

"Specific intent" means that the defendant did so voluntarily, on purpose, and not by mistake or accident. Because the statute explicitly refers to the possible commission of a federal offense, the government need not prove that any person was actually guilty of any underlying federal offense.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty of this charge. If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt, then you should find the defendant not guilty.

**AIDING AND ABETTING**

In this case, the government further alleges that the defendants aided and abetted each other in committing Obstruction of Justice as charged in Count Three. A person may be guilty of an offense if he aided and abetted another person in committing the offense.

You may find Terence Sutton and Andrew Zabavsky guilty of Count Three, Obstruction of Justice, without finding that the defendant personally committed each of the acts that make up the crime or that he was present while the crime was being committed. Any person who in some way intentionally participates in the commission of a crime can be found guilty either as an aider and abettor or as a principal offender. It makes no difference which label you attach. The person is as guilty of the crime as he would be if he had personally committed each of the acts that make up the crime.

To find that a defendant aided and abetted in committing a crime, you must find that the defendant knowingly associated himself with the commission of the crime, that he participated in the crime as something he wished to bring about, and that he intended by his actions to make it succeed. Some affirmative conduct by the defendant in planning or carrying out the crime is necessary. Mere physical presence by a defendant at the place and time the crime is committed is not by itself sufficient to establish his/her guilt. However, mere physical presence is enough if it is intended to help in the commission of the crime. It is not necessary that you find that the defendant was actually present while the crime was committed.

The government is not required to prove that anyone discussed or agreed upon a specific time or method of committing the crime. The government is not required to prove that the crime was committed in the particular way planned or agreed upon.

**COUNT TWO: CONSPIRACY UNDER 18 U.S.C. § 371**

Each of the defendants, Terence Sutton and Andrew Zabavsky, is charged with conspiring to obstruct justice to prevent an internal investigation of the incident and referral of the matter to federal authorities for a possible federal criminal civil rights investigation. It is against the law of conspiracy to agree with someone to commit a crime, including the crime of Obstruction of Justice.

The charge of conspiracy to obstruct justice is a separate charge from Obstruction of Justice itself, which is Count Three. You must consider each defendant separately in deciding whether the government has proved each of the elements of conspiracy as to that person. The elements of conspiracy, each of which the government must prove beyond a reasonable doubt, are:

1. That Terence Sutton and Andrew Zabavsky agreed to commit the crime of Obstruction of Justice. This does not have to be a formal agreement or plan, in which everyone involved sat down together and worked out the details. On the other hand, merely because people get together and talk about common interests, or do similar things does not necessarily show that an agreement exists to obstruct justice.

It is enough that the government proves beyond a reasonable doubt that there was a common understanding between Mr. Sutton and Mr. Zabavsky to commit the crime of Obstruction of Justice. So, the first thing that must be shown is the existence of an agreement.

2. That Terence Sutton and Andrew Zabavsky intentionally joined in that agreement. It is
   not necessary to find they both agreed to all the details of the agreement. A person may
   become a member of a conspiracy even if that person agrees to play only a minor part, as
   long as that person understands the unlawful nature of the plan and voluntarily and
   intentionally joins in it with the specific intent to advance or further the unlawful object
   of the conspiracy. The government is not required to prove that the object or objective of
   the conspiracy was achieved.

   Mere presence at the scene of the agreement or of the crime, or merely being with the
   other participant, does not show that the defendant knowingly joined in the agreement.
   Also, unknowingly acting in a way that helps the other participant, or merely knowing
   about the agreement itself, without more, does not make a defendant part of the
   conspiracy. So the second thing that must be shown is that the defendants were part of a
   conspiracy.'

3. That at least one of the defendants did something for the purpose of carrying out the
   conspiracy. This something is referred to as an overt act. The charged overt acts are listed
   in the Appendix to these jury instructions.

   The government need not prove that all of the alleged overt acts were taken. But in order
   to find the defendants guilty, you must all unanimously agree on at least one overt act
   that was done.

A conspiracy can be proved indirectly, by facts and circumstances that lead to a conclusion that a conspiracy existed. The government must prove that such facts and circumstances existed and that they lead to the conclusion that a conspiracy existed.

In determining whether a conspiracy between the defendants existed and whether each defendant was one of its members, you may consider the acts and the statements of one of the defendants as evidence against both of them, whether done in or out of the other's presence while the conspiracy existed. When persons enter into an agreement to commit a crime, they become agents for each other so that everything which is said or done by one of them in furtherance of that purpose is deemed to be the statement of both who have joined in that conspiracy and is evidence against both of the conspirators. However, statements of any conspirator which are made before its existence or after its termination may be considered as evidence only against the person making such statements.

**APPENDIX – OVERT ACTS**

**COUNT TWO: CONSPIRACY UNDER 18 U.S.C. § 371**

The charged overt acts are:

1. ZABAVSKY, the most senior MPD official on the traffic crash scene, waited more than three minutes after the collision to communicate with the communications dispatcher, and did so only after the dispatcher requested the identity of the official in charge of the scene.

2. Despite being the most senior official on scene, ZABAVSKY made no notifications to MCS, IAD, or any senior MPD officials.

3. Nine minutes after the collision, SUTTON and ZABAVSKY agreed that SUTTON would write the police report for the incident.

4. SUTTON told an MPD officer, who had not been involved in the pursuit of Hylton-Brown, and who had already started gathering information for a police report, that SUTTON would write the report.

5. ZABAVSKY also told the uninvolved MPD officer that SUTTON would write the police report.

6. ZABAVSKY obtained no witness statements, nor did he direct any other officer to take statements, despite being approached by at least one individual who asserted he was an eyewitness.

7. SUTTON obtained no witness statements other than basic information from the driver of the striking vehicle that had already been gathered by another officer. Nor did he direct

any other officer to memorialize witness statements, despite being approached by at least one individual who asserted he was an eyewitness.

8. Twenty minutes after the collision, SUTTON gave permission to the driver of the vehicle that struck Hylton-Brown to leave the scene with his vehicle, despite considerable damage to the vehicle.

9. Fewer than 21 minutes after the collision, SUTTON and ZABAVSKY turned off their BWCs, stood apart from all other officers, engaged in a private conversation, and then immediately left the scene to return to the Fourth District police station.

10. When ZABAVSKY left the scene, he did not leave any other police official in charge.

11. When SUTTON left the scene, he drove his MPD vehicle from the location where it had come to a stop at the time of the collision.

12. When SUTTON left the scene, he drove his MPD vehicle directly over physical evidence from Hylton-Brown's moped.

13. At the Fourth District police station, SUTTON and ZABAVSKY met with the Watch Commander, the senior-most official in charge, and provided him with a misleading account of the incident:

    a. SUTTON and ZABAVSKY portrayed the incident as a brief attempted traffic stop from which a moped driver took off and was then hit by a vehicle;

    b. SUTTON minimized his conduct, saying that he did not engage in a vehicular pursuit;

    c. ZABAVSKY said that he did not know if SUTTON had engaged in a vehicular pursuit;

    d. ZABAVSKY withheld information concerning his own involvement in the

        pursuit;

    e. ZABAVSKY said that Hylton-Brown had been drunk and had been slurring his

        words; and,

    f. SUTTON and ZABAVSKY withheld all information about Hylton-Brown's

        serious injuries.

14. SUTTON drafted a traffic crash report that minimized the extent of the observable

injuries to Hylton-Brown.

15. ZABAVSKY continued to withhold from the Watch Commander all information about

Hylton-Brown's serious injuries and updates about his condition, despite knowing that it

was critical and worsening.

**"ON OR ABOUT"—PROOF OF**

      The indictment charges that the offenses were committed "on or about"
October 23, 2020. The proof need not establish with certainty the exact date of the alleged
offenses. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the
offenses were committed on a date reasonably near the date alleged.

**PROOF OF STATE OF MIND**

Someone's intent or knowledge ordinarily cannot be proved directly, because there is no way of knowing what a person is actually thinking, but you may infer someone's intent or knowledge from the surrounding circumstances. You may consider any statement made or acts done or omitted by a defendant, and all other facts and circumstances received in evidence which indicate his intent or knowledge.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts s/he intentionally did or intentionally did not do. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.  You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that Terence Sutton and Andrew Zabavsky acted with the necessary state of mind.

**MOTIVE**

Motive is not an element of the offenses charged, and the government is not required to prove motive in this case. You may, however, consider evidence of motive or lack of evidence of motive in deciding whether or not the government has proved the charges beyond a reasonable doubt.

**DEFENSE THEORY INSTRUCTION (TERENCE SUTTON)**

Ladies and Gentlemen, defendant Terence Sutton denies the charges against him.  He asserts that the government has failed to prove the elements of any of the charged offenses beyond a reasonable doubt.

In addition, Mr. Sutton contends as follows:

1. Mr. Sutton's operation of the Crime Suppression Team ("CST") vehicle did not violate the MPD General Order on Vehicular Pursuits;

2. Mr. Sutton's operation of the CST vehicle complied with the MPD General Order on Field Contacts, Stops and Frisks;

3. Mr. Sutton was authorized by his supervisor, Mr. Zabavsky, to follow and stop Mr. Hylton-Brown;

4. Based on the information known to Mr. Sutton about the injuries to Mr. Hylton-Brown while at the scene of the collision, he was not required to notify the Major Crash Unit under the MPD General Order on Traffic Crash Investigations.

5. The Major Crash Unit was notified when officers became aware of the extent of the injuries to Mr. Hylton-Brown;

6. Mr. Sutton did not violate the MPD General Order on Traffic Crash Investigations;

7. Major Crash was able to complete its investigation into the crash in this case.

**DEFENSE THEORY INSTRUCTION (ANDREW ZABAVSKY)**

Ladies and Gentlemen, defendant Andrew Zabavsky denies the charges against him.  He asserts that the government has failed to prove the elements of either of the offenses with which he is charged beyond a reasonable doubt.

In addition, Mr. Zabavsky contends as follows:

1. Prior to the collision between the scooter and the Scion, Mr. Zabavsky did not follow the scooter down a one-way street or down an alley.  Mr. Zabavsky split off from the CST car prior to the crash;

2. Based on the information known to Mr. Zabavsky about the injuries to Mr. Hylton-Brown while at the scene of the collision, he was not required to notify the Major Crash Unit under the MPD General Order on Traffic Crash Investigations;

3. Mr. Zabavsky's supervision of the officers at the scene did not violate any MPD General Orders;

4. When he became aware of the extent of the injuries to Mr. Hylton-Brown, Mr. Zabavsky immediately notified the Major Crash Unit and informed the Watch Commander;

5. Mr. Zabavsky did not violate the MPD General Order on Traffic Crash Investigations.

**SELECTION OF FOREPERSON**

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court. There are no specific rules regarding how you should select a foreperson. That is up to you. However, as you go about the task, be mindful of your mission—to reach a fair and just verdict based on the evidence. Consider selecting a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote a full and fair consideration of that evidence.

**UNANIMITY—GENERAL**

A verdict must represent the considered judgment of each juror, and in order to return a verdict, each juror must agree on the verdict.  In other words, your verdict on each count must be unanimous.

**MULTIPLE DEFENDANTS—MULTIPLE COUNTS**

Each count of the indictment charges a separate offense.  Moreover, each defendant is entitled to have the issue of his guilt as to each of the crimes for which he is on trial determined from his own conduct and from the evidence that applies to him as if he were being tried alone. You should, therefore, consider separately each offense, and the evidence which applies to it, and you should return separate verdicts as to each count of the indictment, as well as to each defendant.

The fact that you may find any one defendant guilty or not guilty on any one count of the indictment should not influence your verdict with respect to any other count of the indictment for that defendant.  Nor should it influence your verdict with respect to any other defendant as to that count or any other count in the indictment.  Thus, you may find any one of the defendants guilty or not guilty on any one or more counts of the indictment, and you may return different verdicts as to different defendants and as to different counts.

**VERDICT FORM EXPLANATION**

You will be provided with a Verdict Form for use when you have concluded your deliberations. The form is not evidence in this case, and nothing in it should be taken to suggest or convey any opinion by me as to what the verdict should be.  Nothing in the form replaces the instructions of law I have already given you, and nothing in it replaces or modifies the instructions about the elements which the government must prove beyond a reasonable doubt. The form is meant only to assist you in recording your verdict.

**EXHIBITS DURING DELIBERATIONS**

I will be sending into the jury room with you the exhibits that have been admitted into evidence. You will also be given a USB Thumb Drive with the video exhibits that have been admitted into evidence. Courthouse staff will give you instructions about how to set up the video display in the jury room. You may examine any or all of the exhibits as you consider your verdicts. Please keep in mind that exhibits that were only marked for identification but were not admitted into evidence will not be given to you to examine or consider in reaching your verdict.

**REDACTED EXHIBITS**

During the course of this trial, a number of exhibits were admitted in evidence. Sometimes only portions of an exhibit were admitted, such as portions of a longer video, a document with some words or pictures blacked out or otherwise removed, or a video played without audio. There are a variety of reasons why only a portion of an exhibit is admitted, including that the other portions are inadmissible or implicate an individual's privacy. As you examine the exhibits, and you see or hear portions where there appear to be omissions, you should consider only the portions that were admitted. You should not guess as to what has been taken out or why, and you should not hold it against either party. You are to decide the facts only from the evidence that is before you.

**POSSIBLE PUNISHMENT NOT RELEVANT**

The question of possible punishment of the defendants in the event of a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

**WITNESS'S USE OF INTERPRETER—FINAL INSTRUCTION**

You have heard testimony from Jonathan Urrutia-Chavez, who communicated through an interpreter.

You are to consider only the evidence provided through the official court interpreters. Although some of you may know Spanish, it is important that all jurors consider the same evidence. Therefore, you must base your decision on the evidence presented in the English interpretation. You must disregard any different meaning.

You should not be biased for or against anyone who uses an interpreter. Do not permit the fact that Jonathan Urrutia-Chavez used the services of an interpreter to influence you in any way.

You should not consider the mere fact that Jonathan Urrutia-Chavez has been provided an interpreter in evaluating his credibility. You must evaluate interpreted testimony as you would any other testimony. That is, you must not give interpreted testimony any greater or lesser weight than you would if the witness had spoken English.

If you observed that the witness nodded his head during interpretation, you should consider that this did not necessarily indicate agreement or an affirmative answer but may have only indicated that the witness was following the translation.

The fact that the court has provided an interpreter to Jonathan Urrutia-Chavez does not mean that the court has made a ruling on the extent of his ability to speak or understand the English language. Use of an interpreter should not be considered evidence in this case.

**NOTETAKING BY JURORS**

     During the trial, I have permitted those jurors who wanted to do so to take notes. You may take your notebooks with you to the jury room and use them during your deliberations if you wish. As I told you at the beginning of the trial, your notes are only to be an aid to your memory. They are not evidence in the case, and they should not replace your own memory of the evidence. Those jurors who have not taken notes should rely on their own memory of the evidence. The notes are intended to be for the notetaker's own personal use.

**CAUTIONARY INSTRUCTION: PUBLICITY, COMMUNICATION AND RESEARCH**

I would like to remind you that, in some cases, although not necessarily this one, there may be reports in the newspaper or on the radio, internet, or television concerning this case.  If there should be such media coverage in this case, you may be tempted to read, listen to, or watch it.  You must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom.  If any publicity about this trial inadvertently comes to your attention, do not discuss it with other jurors or anyone else.  Just let Mr. Coates know as soon after it happens as you can, and I will then briefly discuss it with you.

As you retire to the jury room to deliberate, I also wish to remind you of an instruction I gave you at the beginning of the trial.  During deliberations, you may not communicate with anyone not on the jury about this case.  This includes any electronic communication such as email or text or any blogging or posting to social media about the case.  In addition, you may not conduct any independent investigation during deliberations.  This means you may not conduct any research in person or electronically via the internet or in another way.  You many not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the internet, any internet service, any text or instant messaging service, any internet chat room, blog, or website or app such as Facebook, Instagram, TikTok, Linkedin, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

## FURNISHING THE JURY WITH A COPY OF THE INSTRUCTIONS

I will provide you with a copy of my instructions. During your deliberations, you may, if you want, refer to these instructions. While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others. If you have any questions about the instructions, you should feel free to send me a note. Please return your instructions to me when your verdict is rendered.

**COMMUNICATIONS BETWEEN COURT AND JURY DURING JURY'S**

**DELIBERATIONS**

If it becomes necessary during your deliberations to communicate with me, you may send a note by the clerk or marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should try to communicate with me except by such a signed note, and I will never communicate with any member of the jury on any matter concerning the merits of this case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any person— not the clerk, the marshal or me—how jurors are voting until after you have reached a unanimous verdict. This means that you should never tell me, in writing or in open court, how the jury is divided on any matter—for example, 6-6 or 7-5 or 11-1, or in any other fashion— whether the vote is for conviction or acquittal or on any other issue in the case.

**ATTITUDE AND CONDUCT OF JURORS IN DELIBERATIONS**


The attitude and conduct of jurors at the beginning of their deliberations are matters of considerable importance. It may not be useful for a juror, upon entering the jury room, to voice a strong expression of an opinion on the case or to announce a determination to stand for a certain verdict. When one does that at the outset, a sense of pride may cause that juror to hesitate to back away from an announced position after a discussion of the case. Furthermore, many juries find it useful to avoid an initial vote upon retiring to the jury room. Calmly reviewing and discussing the case at the beginning of deliberations is often a more useful way to proceed. Remember that you are not partisans or advocates in this matter, but you are judges of the facts.

## EXCUSING ALTERNATE JURORS

The last thing I must do before you begin your deliberations is to excuse the alternate jurors. As I told you before, the selection of alternates was an entirely random process; it's nothing personal. We selected four seats to be the alternate seats before any of you entered the courtroom. Since the rest of you have remained healthy and attentive, I can now excuse the juror in seat 16.

Before you leave, I am going to ask you to tear out a page from your notebook, and to write down your name and daytime phone number and hand this to the clerk. I do this because it is possible, though unlikely, that we will need to summon you back to rejoin the jury in case something happens to a regular juror. Since that possibility exists, I am also going to instruct you not to discuss the case with anyone until we call you. My earlier instruction on use of the Internet still applies; do not research this case or communicate about it on the Internet. In all likelihood, we will be calling you to tell you there has been a verdict and you are now free to discuss the case; there is, however, the small chance that we will need to bring you back on to the jury. Thank you very much for your service, and please report back to the jury office to turn in your badge on your way out.