UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Criminal No. 21-cr-598-PLF |
| TERENCE SUTTON and : | |
| ANDREW ZABAVSKY, : | |
| : | |
| Defendants. : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT SUTTON'S MOTION FOR BRADY SANCTIONS

Defendant Sutton asks the Court to find that the Government violated its discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), for failing to disclose notes and a report from an interview of MPD Major Crash Unit Detective Victor DePeralta on November 25, 2022, until December 23, 2022, after the verdict was returned.  ECF No. 441.  Defendant Zabavsky joined the motion.  ECF No. 442 at 6-7.  There was no prejudice to the defendants sufficient to establish a *Brady* violation at all, much less one for which sanctions would be appropriate.  As defendants prepared for trial, the government previously supplied them with numerous prior statements by and materials authored by Det. DePeralta: his grand jury testimony, several pretrial interviews, and 198-page case jacket containing numerous reports he authored, including factual findings and conclusions.  Because defendants point to nothing new in the admittedly late-disclosed notes and report of DePeralta's mid-trial interview, they cannot establish a *Brady* violation nor justify any sanction.

I.  **Factual Background**

On or about November 22, 2022,  Defendant Sutton gave notice of his intention to call Det. DePeralta in the Defendant's case.  He testified for the first and only time on December 6, 2022.  In anticipation of his testimony, the Government conducted a telephonic interview of DePeralta on

1

November 25, 2022. This was after the government rested on November 21, 2022. Law enforcement generated a report of the interview on December 1, 2022, and it was provided to Government counsel on December 2, 2022. *See* Exhibit 1 (December 1, 2022, FBI-302). Given intervening trial demands, Government counsel inadvertently failed to disclose the report to the defendants until December 23, 2022.[1]

DePeralta had previously been interviewed by the prosecution team on April 6, 2021, August 11, 2021, September 16, 2021, and July 28, 2022, and he testified before the grand jury on April 19, 2021. Reports and investigator notes from those interviews were provided to defense counsel on September 14, 2021, October 4, 2021, October 7, 2022, and October 11, 2022. Det. DePeralta's grand jury transcript and exhibits were disclosed on October 4, 2021.[2] The government also produced to the defense a 198-page case jacket containing numerous reports authored by Det. DePeralta, some of which included Det. DePeralta's factual findings and conclusions.

## II.  Standards Governing Defendant Sutton's Motion

Under *Brady v. Maryland*, the government must produce exculpatory information to the defense. *United States v. Bagley*, 473 U.S. 667, 675 (1985) (The government must "disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."). The government's obligations under *Brady* include "an affirmative duty" to look for and produce exculpatory information if the government knows it may exist. *United States v. Safavian*, 233

---

[1] The Government also disclosed an interview of Samantha Tolliver on that date. This is mentioned in Defendant Sutton's motion but otherwise only discussed in Defendant Andrew Zabavsky Motion for Brady Sanctions, ECF 442, and does not appear to form the basis of Defendant Sutton's *Brady* claim.

[2] The relevant grand jury testimony and interview reports are attached as Exhibits 2 through 6.

F.R.D. 12, 17 (D.D.C. 2005). Where a defendant claims a violation of these rules, the D.C. Circuit has explained that the Court must conduct a three-party inquiry:

> A *Brady* violation has three parts. 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'

*United States v. Mason*, 951 F.3d 567, 573 (D.C. Cir. 2020) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). When assessing an alleged *Brady* violation, "even a grossly belated disclosure does not violate *Brady* unless the defendant suffers prejudice from the delay." *Id*. And, for these purposes, "[p]rejudice exists only if there is 'a reasonable probability that . . . the result of the proceeding would have been different' had the disclosure occurred earlier." *Id*. "[M]ere speculation" about such prejudice "is not sufficient to sustain a Brady claim." *Id.* (quotation marks omitted); *see id*. at 573-74 ("Hypothesizing that certain 'information, had it been disclosed to the defense, might have led [defense] counsel to conduct additional discovery that might have led to some additional evidence that could have been utilized' is disfavored." (quoting *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995)).

**III.    Argument**

There was no *Brady* violation caused by the Government's December 23, 2022, disclosures such that sanctions or an evidentiary hearing are appropriate.  There is no *Brady* violation because the Defendant cannot show prejudice due to the Government's late disclosure, nor in Defendant's motion does he make any attempt to do so, noting only that the Defendant's direct examination of DePeralta might have been different with the benefit of the interview report, without any explanation of how it might have been materially different. This is insufficient. See *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015) ("When a defendant challenges the government's alleged delay in disclosure of exculpatory evidence, the defendant must show a reasonable

3

probability that an earlier disclosure would have changed the trial's result." (quotation marks omitted)).

At most, Defendant Sutton (at 3) makes only the very kind of vague hypothetical argument which *Mason* makes clear will not suffice: "Had counsel … had the FBI 302 for [the Nov. 25 interview of] DePeralta his direct examination would have been entirely different, emphasizing the information contained in the FBI 302." But his motion does not cite any particulars. Thus he cannot and does not show prejudice such that the verdict would have been different because all the supposed exculpatory or impeachment information contained in the report from the November 25, 2022, interview was previously disclosed to the defendants in at least one of the prior interview reports, DePeralta's grand jury testimony, and his investigative reports.

Indeed, the December 1, 2022, FBI 302 reflects that nothing had changed regarding DePeralta's recollection of the incident since his grand jury testimony. He consistently opined that he believed Karon Hylton-Brown to have been in control of his scooter and the cause of his own death. *See, e.g.*, Exhibit 4 at 1 (August 11, 2021, Memorandum of Investigation) (According to DePeralta, "Hylton was ultimately the cause of the accident as Hylton made the decision to drive into the street."). In his grand jury transcript, DePeralta explained that the traffic crash between Hylton-Brown and the striking vehicle was all that he considered in his investigation (April 19, 2021, DePeralta, Grand jury transcript, 41:25-42:11). Likewise, at trial, DePeralta testified to his overall determination of what caused the crash: Hylton-Brown's failure to yield to oncoming traffic, which he based solely on evaluating Hylton-Brown's driving and not Sutton's driving or speeding through the alleyway (December 6, 2022, Trial Transcript, 41:14-42:6; 43:23-25; 46:17-19; 60:9-61:2; 66:5-66:12). Moreover, DePeralta testified in the grand jury that unless there was a direct strike, he did not consider accelerating behind Hylton-Brown in the seconds before the

4

crash a cause of the crash and testified at trial that Sutton never struck Hylton-Brown's moped—a fact never in dispute. (April 19, 2021, Grand jury transcript, 43:24-46:11; December 6, 2022, Trial Transcript, 71:13-74:24). Even the cross-examination testimony elicited from DePeralta that he nevertheless considered Sutton's pursuit of Hylton-Brown to be reckless, which yielded no objection, was previously disclosed to the defense (August 11, 2021, Memorandum of Investigation) ("DePeralta stated that he personally feels that it was reckless for the CST vehicle to pursue Hylton but stated that he thought that Hylton was ultimately the cause of the accident as Hylton made the decision to drive into the street.").

Thus, the information contained within the December 1, 2022, FBI 302 cannot support a *Brady* claim because it was cumulative of information that was already known to the defense. *See United States v. Brodie*, 524 F.3d 259 (D.C. Cir. 2008) (prosecutor's failure to disclose until seven days after trial that the FBI had learned that prosecution witness had been previously involved in a fraudulent loan application on behalf of her niece was merely cumulative of other impeachment evidence, and therefore did not constitute a *Brady* violation.). As such, the Defendant cannot complain that the examination of DePeralta would have been "entirely different" (at 3) where he was already aware of the information in the December 1 report. For the foregoing reasons, there is no basis for a hearing and Defendant Sutton's motion should be denied.[3]

Respectfully submitted,

---

[3] The Defendant's request for a hearing predicated on a "pattern of *Brady* violations" (at 4) misrepresents the Court's rulings on the various *Brady* claims, none of which were sustained. *See, e.g.*, Court's Mem. Op. ECF 279 at 3 (rejecting defendant's *Brady* claims, noting that the defense evidence – after being granted discovery and a hearing – failed to "provide[] any support whatsoever for defendants' arguments that any prosecutor acted unethically or in contempt of this Court").

5

          MATTHEW M. GRAVES
          United States Attorney
          DC Bar No. 481052

By:   */s/ Elizabeth Aloi*
      AHMED BASET
      IL Bar No. 6304552
      RISA BERKOWER
      NY Bar No. 4536538
      ELIZABETH ALOI
      DC Bar No. 1015864
      Assistant United States Attorneys
      U.S. Attorney's Office for the District of Columbia
      601 D St., N.W.
      Washington, D.C. 20532
      Phone: (202) 252-7097 (Baset)
             (202) 252-6782 (Berkower)
             (202) 252-7212 (Aloi)
      Email: Ahmed.Baset@usdoj.gov
             risa.berkower@usdoj.gov
             Elizabeth.Aloi@usdoj.gov