**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 21-cr-598-PLF** |
| | : | |
| **v.** | : | |
| | : | |
| **TERENCE SUTTON and** | : | |
| **ANDREW ZABAVSKY** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S OMNIBUS OPPOSITION TO**
**<u>DEFENDANT SUTTON'S MOTIONS TO COMPEL DISCOVERY</u>**

Repackaging old claims that the Court has already ruled on and rejected, the defendant continues to press the Court for the disclosure of materials that are irrelevant and not discoverable under applicable case law.  Prior to and during trial, the Court accepted numerous briefs, heard argument, and provided detailed rulings that rejected the defendant's allegations of misconduct regarding government witness Kevonn Mason, and further denied the defendant's demands for discovery concerning the government's adherence to Justice Manual procedures and the grand jury minutes for this case.  Nonetheless, without providing any applicable case law or new facts beyond his own unsupported allegations against the government, the defendant makes voluminous discovery demands on these matters covering large swaths of irrelevant and non-discoverable information in his Motion to Compel Discovery Regarding Kavonn Mason's Criminal Record (ECF 483) and his Motion to Compel Production of Information Regarding Prosecutorial Abuse of Discretion (ECF 484).  Because these filings provide no basis to revisit these matters or to require the discovery the defendant demands, the motions should be rejected.

## I.    **Factual Background**

### A.  **Government Witness Kevonn Mason[1]**

On November 1, 2022, during trial in this matter, the government called civilian witness Kevonn Mason to testify in its case in chief.  Video surveillance evidence established that Mason was present at the corner of Fifth and Kennedy Streets NW at the time that the defendants first encountered Karon Hylton-Brown, made verbal contact with Hylton-Brown, and initiated the police pursuit at issue in this case.  Mason testified about his personal observations of the defendants and Hylton-Brown that night.  Prior to his testimony the defense was provided with all reports of the government's meetings with Mason and agent interview notes from those meetings.[2] Based on a pre-trial NCIC criminal history check for Mason that was run on September 11, 2022 and returned no results, as well as a subsequent conversation with Mason during a pre-trial prep session to the same effect, the government represented to the defense and to the Court that Mason had no criminal history.[3]

---

[1] As this issue was already extensively litigated during trial, the government incorporates by reference the facts and arguments asserted during the prior litigation in ECF 351 and at oral argument on November 9, 2022.  While the government's filing at ECF 351 remains under seal, the facts that are included in the instant filing concerning Kevonn Mason and ECF 351 have already been addressed in open court.

[2] Defense counsel does not contest the fact of these disclosures or their timeliness.  Trial Tr. 11/9/22 PM Session, at 65:16-20 (Mr. Hannon: "I don't have an issue with when we received it [the interview report].  We had it when he testified.").

[3] The NCIC report run prior to the meeting with Mason, which was previously provided to the Court and counsel during trial at ECF 351-1, is also attached to this filing as exhibit 1.  It shows no criminal history for the identifiers entered.  It contains what is known to law enforcement as a "Sounde Hit," which is information relating to a person with similar identifiers.  In this case, the Sounde Hit was from Cook County, Illinois and involved a civil protective order for a person with the surname "Mason" but a different first name.  *See* exhibit 1.

On November 7, 2022, still during the government's case in chief, defendant Sutton filed a motion alleging a *Giglio* violation by the government for failing to disclose Mason's criminal history.  ECF 349.  The motion asserted that the defense had conducted its own criminal background check for Mason and found three prior misdemeanor convictions for him that the government had not disclosed, and which rendered inaccurate the government's representations to the Court and counsel concerning Mason's criminal history.  As a remedy, the defendant's motion demanded a draconian jury instruction that would have struck Mason's full testimony from the record and invited the jury to acquit the defendant because of the discovery violation.  ECF 349, at 3.

In order to respond to the defense motion, the government retraced its steps concerning its prior representations that Mason had no criminal history.  As noted above, on September 11, 2022, in anticipation of the required pre-trial disclosures of witnesses' criminal histories, the government ran NCIC reports for all prospective government trial witnesses, including Mason.  Mason's report, attached as exhibit 1, identified no criminal history for him.  This report informed the government's representations to the Court and to defense counsel, as well as pre-trial meetings with Mason himself, one of which had included a discussion about his prior encounters with law enforcement. During that conversation, Mason reported having been arrested in a domestic dispute, but said the case had not resulted in a conviction.[4]  He also reported being told by the police to stay away from the Starlight store at Fifth and Kennedy Streets NW, but stated that there had not been a criminal charge related to that incident.  Because this was consistent with the September 11, 2022, NCIC

---

[4] This comports with the defendant's findings concerning Mason, which included a 2018 misdemeanor domestic violence case which was dismissed for want of prosecution.  ECF 349-1, at 1.

report showing no criminal convictions, the government did not ask further questions of Mason about law enforcement encounters because there was no specific reason to do so.

Upon receiving the defendant's November 7 filing, the government investigated the defendant's claims concerning Mason's criminal history. This included double checking the September 11, 2022, NCIC report for Mason. In doing so, the government for the first time noticed two typographical errors in the report: Mason's date of birth had been incorrectly entered (the month and date had been transposed) and there was a typo misspelling his first name (entered as "Kavonn" instead of "Kevonn"). Due to these errors, an incorrect NCIC report was generated, which government counsel had relied upon in its discussion with Mason about his criminal history, as well as for its pre-trial disclosures to the defense and subsequent representations to the Court.

After learning that the September 11, 2022, NCIC report was inaccurate, the government checked its files from further in the past. SA Sean Ricardi first met with Mason on May 18, 2022.[5] Prior to that meeting, he ran an NCIC check for Mason as a matter of routine practice, to make a safety assessment for the meeting and to determine whether Mason had any outstanding warrants (which would have required SA Ricardi to arrest him). Also before the meeting, SA Ricardi sent an email (previously provided at ECF 351-2 and re-attached here as exhibit 2) to two other federal agents and to the undersigned AUSA noting that Mason had no outstanding warrants (*i.e.*, the meeting could go forward) and attaching Mason's NCIC report. The undersigned AUSA did not respond to the email and, with no upcoming testimony of any kind anticipated for Mason, did not

---

[5] As SA Ricardi explained in his trial testimony, he had been attempting to identify Mason since the start of this investigation, in October 2020, but only was able to identify and locate him in May 2022. Because of this, May 18, 2022, was the first time anyone from the government met with Mason about this case.

review the attached NCIC report.[6]  This May 18, 2022, NCIC report had used Mason's correctly spelled name and date of birth and did reflect the misdemeanor convictions (for misdemeanor simple assault and misdemeanor contempt based upon a pre-trial release violation) that were identified in defendant Sutton's November 7, 2022, filing.

Within hours of learning this information, the government's responded to the defendant's motion, acknowledging that its prior representations that Mason had no criminal history were incorrect: he does have two misdemeanor simple assault convictions and one misdemeanor contempt conviction in D.C. Superior Court.  ECF 351 at 3.  The government further noted that, although in error, the government's prior representations concerning Mason were made in good faith and in reliance on the inaccurate September 11, 2022 NCIC report.  *Id*.  As a remedy, the government proposed re-calling Mason in its case-in-chief so that defense counsel could cross-examine Mason about his criminal history.  *Id*. at 3-5.

The Court heard argument on the defendant's motion on November 9, 2022.[7]  Tr. 11/9/22 PM session, at 62:7-97:15.  During that hearing, the government provided a detailed timeline of its interactions with witness Mason, and the mistakes that led to the government's inaccurate representations concerning his criminal history.  *Id*. at 68:11-72:2. The government acknowledged that, because one of Mason's misdemeanor convictions was impeachable under Fed. R. Evid. 609, a remedial measure to address the defendant's prior inability to cross-examine Mason about his criminal history would be appropriate.  *Id*. at 72:19-76:3.  Because the government's case-in-chief

---

[6] SA Ricardi and another federal agent met with Mason later that day for his initial interview with the government.  No prosecutors attended that meeting, and Mason did not meet with the government again until the weeks before trial in this case.  SA Ricardi's MOI and agent notes from the May 18, 2022, meeting were promptly disclosed to the defense.

[7] The defendant's motion incorrectly reports that this hearing occurred on November 11, 2022.

was still open, the government proposed re-calling Mason for the sole purpose of cross-examination by the defense on this issue.

The Court issued an oral ruling on the defendant's motion on November 16, 2022. Trial Tr. 11/16/22 AM session, at 4:4-22:3. The Court found that, while the government's inaccurate disclosures concerning Mason's criminal history did constitute a *Giglio* violation, the government had not acted in bad faith. Trial Tr. 11/16/22 AM session, at 17:1-19 ("They ran reports for every potential witness, and disclosed what they had, which turned out to be wrong. And they thought they were complying with their *Giglio*, but they didn't because they inadvertently failed to disclosed exculpatory information or information that would be useful for cross-examination possibly. . . . So having said all of that and finding no bad faith with respect to either, I necessarily reject Mr. Hannon's suggestion that I strike the testimony, and I reject his proposed special jury instruction . . . because, among other things, it says the government acted in bad faith, that the government violated important constitutional principles. And I'm not going to tell the jury that. I'm not going to say that the government violated constitutional principles or acted in bad faith because I find that they didn't."). Noting that the D.C. Circuit has directed district courts to impose proportionate remedies for such violations, the Court then fashioned such a remedy here: re-calling Mason during the government's case in chief to allow the defense to cross-examine him about his misdemeanor convictions. *Id*. at 18:1-22:3. The Court ruled that it would allow the defense to inquire into Mason's contempt conviction as impeachment under Fed. R. Evid. 609, and further permit defense counsel to question Mason about his two simple assault convictions on the ground that the assaults involved police officers, and therefore could be probative of Mason's bias against the police. *Id*. The Court later supplemented this ruling to also allow questioning

about Mason's contempt conviction beyond the strictures of Rule 609 on the ground it could show bias against the police. *Id*. at 51:19-25.

Consistent with that ruling, the government re-called Mason in its case-in-chief later that morning solely for cross-examination by defense counsel about his criminal history. *Id*. at 32:4-23. During this questioning, Mason admitted that he had been convicted of misdemeanor contempt in 2019. *Id*. at 33:13-16. Counsel for defendant Sutton also asked Mason about a separate incident in 2018 in which Mason was arrested after an altercation with an MPD officer at Fifth and Kennedy Streets, NW in which Mason engaged in a shoving match with the officer, threatened him, and allegedly spit on him. *Id*. at 34:2-36:22. Defense counsel then impeached Mason for having previously testified (during defense counsel's initial cross-examination of him during his original trial on November 1, 2022), that he had "stayed out of trouble," when, in fact, he had been convicted of misdemeanor contempt. *Id*. at 36:23-38:16. After Mason was questioned about his criminal history for 25 pages of transcript, Mason was excused. *Id*. at 61:1.

Now, post-trial, despite the extensive time devoted to this matter mid-trial, including briefing, oral argument, a lengthy oral ruling from the Court, and the re-call of Mason in the middle of the government's case-in-chief for further cross-examination by the defense, defendant Sutton seeks to re-open this matter by demanding discovery concerning the government's possession of information relating to Kevonn Mason "to test the truthfulness of the representations made to the Court regarding Mason," in order for the Court to "take into account the cumulative effect of suppressed evidence in determining whether a new trial is required on account of *Brady* violations." ECF 483, at 6, 16. On May 22, 2023, defendant demanded the production of ten broad categories of information:

    1.  The date of the pretrial meeting with Kavonn Mason, during which Mr. Mason reported having been arrested in a domestic dispute, but said the case had not resulted in a

conviction. (See ECF No. 351 at 1).

2. The identity of all persons present during the meeting identified in No. 1 above.

3. Produce all notes, memoranda or other record of the meeting identified in No. 1 above.

4. Regarding Exhibit 1, attached to this letter and filed at ECF No. 351-1, please provide the following information:
    a. The location of any electronic copy of Exhibit 1 in the government's electronic files (broadly construed to include all government agencies and email files) from September 11, 2022, to the present day;
    b. The location of any hard copies of Exhibit 1 from September 11, 2022, to today;
    c. Whether any hard copy of Exhibit 1 was in the United States Courthouse on November 1, 2022.
    d. Whether any electronic copy of Exhibit 1 was accessible electronically by the government (construed broadly to include all government agencies) from the United States Courthouse on November 1, 2022, and every trial day thereafter.

5. Regarding Exhibit 2, attached to this letter and filed with ECF No. 351-2, please provide the following information regarding the eAgent Report contained therein:
    a. The location of any electronic copy of Exhibit 2 in the government's (construed broadly to include all government agencies) electronic files (including email files) from September 11, 2022, to the present day;
    b. The location of any hard copies of Exhibit 2 from September 11, 2022, to today;
    c. Whether any hard copy of Exhibit 2 was in the United States Courthouse on November 1, 2022;
    d. Whether any electronic copy of Exhibit 2 was accessible electronically by the government (construed broadly to include all government agencies) from the United States Courthouse on November 1, 2022, and every trial day thereafter.

6. All subpoenas or other notices for Kavonn Mason to appear at the United States Attorney's Office, at the Grand Jury, and at the trial of this case.

7. All dates on which Kavonn Mason appeared pursuant to request or notice at the United States Attorney's Offices, at the Grand Jury, and at the trial of this case.

8. All documents contained in the United States Attorney's Office W Drive or other electronic storage system related in any way to Kavonn Mason.

9. Whether the government (construed broadly to include all government agencies) conducted a search for juvenile convictions for Kavonn Mason.

10. All policies of the United States Attorney's Office or the Department of Justice which govern the collection, retention, and production to the defendant of criminal records of prospective witnesses, including retention of such records in an electronic or other

system of record keeping.

The government responded in writing on May 26, 2023.  In response to items 1 through 3, the government explained that all interview reports and agent notes had already been produced, noted the Bates numbers for those materials, explained that those reports and notes listed the participants in the government's meetings with Mason, and further advised that the discussion with Mason about his criminal history occurred during the government's September 18, 2022 pre-trial meeting with him:

> We reviewed your letter.  It is our understanding that you have received all information response to these requests to which you are entitled, including the three interview reports from the Government's meetings with Kevonn Mason (USAO-039783, USAO_015069, and USAO-040656), which identify who was present and the date of the encounters. Our belief is that the information regarding the domestic dispute was provided on September 16, 2022.

Email from AUSA Elizabeth Aloi to J. Michael Hannon (May 26, 2023), attached as Ex. 3. Dissatisfied with the government's response, defendant Sutton now seeks to compel further response to his voluminous requests.

### B.  Discovery Concerning the Justice Manual and Grand Jury Minutes

1.  <u>Justice Manual Procedures</u>

During the pre-trial phase of this case, the defendants demanded discovery concerning whether the government complied with certain internal DOJ procedures under the Justice Manual, including the authority of the U.S. Attorney to sign the Indictment and the government's compliance with Justice Manual Provisions 8-3.120, 8-3.130, and 8-3.140, which concern civil rights prosecutions.  ECF 40, at 1.  At the time, Defendant Sutton sought these internal DOJ documents because he believed that "[i]f the proper authorizations . . . have not taken place, then Officer Sutton should be able to present a motion to dismiss the indictment with a fulsome discussion of the prejudice to him."  *Id*. at 5-6.

At the time, the government opposed the motion on the ground that none of the materials defendant Sutton sought concerning internal DOJ procedures were discoverable, nor would they be the basis of any cognizable legal claim against the pending charges. The government noted that the Justice Manual, by its own terms, "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any manner civil or criminal." Justice Manual 1-1.200. ECF 47, at 2. The government noted that, as the D.C. Circuit has recognized, this explicit disclaimer means that "violations of Manual policies by DOJ attorneys or other federal prosecutors afford a defendant no enforceable rights." *Id*. (citing *United States v. Blackley*, 167 F.3d 543, 548-49 (D.C. Cir. 1999). This, in turn, meant that purported violations of the Justice Manual could not provide a basis for dismissal of the Indictment. *Id*. *See United States v. Manafort*, 312 F.Supp.3d 60, 75 (D.D.C. 2018) (denying motion to dismiss "based upon a claimed violation of the Department of Justice Special Counsel Regulations because those regulations are not substantive rules that create individual rights; they are merely statements of internal departmental policy"). Finally, the government took the position that because the Justice Manual's terms do not give the defendant any "substantive or procedural" rights or any cause of action—including any ground for a motion to dismiss—there was no basis upon which the requested materials are discoverable. *Id*.

Following full briefing and oral argument, the Court agreed with the government and denied the defendant's motion to compel the production of these materials. ECF 159 at 5-12. In a thorough opinion, the Court ruled that the Justice Manual materials were not discoverable because "regulations like the Justice Manual 'are not substantive rules that create individual rights; they are merely statements of internal departmental policy.'" ECF 159 at 10 (quoting *United States v. Manafort*, 312 F. Supp. 3d 60. 75-79 (D.D.C. 2018). Accordingly, "[t]he government's alleged

non-compliance with the Justice Manual would not assist in 'uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal' because it is irrelevant to the factual allegations of Mr. Sutton's charges." *Id*. Rather, the Court concluded, "contrary to defense counsel's suggestions at the January 25, 2022 motions hearing, there appears to be no other use for the requested discovery than to support such a meritless motion to dismiss." *Id*.

Despite this full adjudication of this issue pre-trial, the defendant now seeks to re-litigate the discoverability of these materials because of, he claims, "the unprecedented nature of this prosecution," ECF 484, at 2, and because, in his view, "the USAO in this district has abused its discretion in bringing this case." *Id*. at 4. Notwithstanding this accusation, the defendant's motion does not specify what materials he seeks to compel the government to produce beyond "discoverable information." *Id*. at 1.

    2. <u>Grand Jury Minutes</u>

Also during the pre-trial phase of this case, the defendant twice demanded the grand jury minutes for this case. In his first demand, the defendant provided no basis at all for disclosing these materials; the Court denied his motion. *See* ECF 159 at 12 (denying motion to compel and noting that "Mr. Sutton has failed to articulate any need for grand jury materials in light of the substantial grand jury material that already has been produced by the government."). In his second demand, the defendant sought to obtain grand jury minutes because he claimed they would support a motion to dismiss the indictment for prosecutorial misconduct. ECF 204. After extensive briefing and oral argument, the Court again denied his motion in full. ECF 289, at 11-14. Following an assessment of the high legal standard required for such disclosures, the Court ruled

that "Mr. Sutton's allegations amount to no more than speculation, which is simply insufficient"

for disclosure of grand jury minutes. ECF 289, at 13. In so ruling, the Court noted that:

> Mr. Sutton poses open-ended questions as veiled allegations of misconduct, asking, "[d]id a prior grand jury refuse to return an indictment? Did the prosecutors learn from prior grand juries that they were lukewarm to the prosecutors' case, and wait for a group that appeared more favorable? . . . And in his supplemental reply, he states that, "[i]f the Court chooses not to require at least production of the minutes from all grand juries, no one will ever know what occurred." . . . What Mr. Sutton failed to appreciate, however, is that grand juries are designed to function in exactly this way, within the 'long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.'"

ECF 280 at 13 (citing *United States v. Apodaca*, 287 F. Supp. 3d at 47 (quoting *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958)).

Despite this extensive pretrial litigation and the Court's resolution of this particular demand

twice before, the defendant now seeks to again re-open this issue to investigate "whether, in fact,

the Government was ever of the belief that the facts of this case could possibly have a nexus with

a federal civil rights investigation" and "whether the U.S. Attorney brought this case for 'political

or racial animosity' or an arbitrary and unjust political reason." ECF 484 at 5.

## II.    <u>Legal Standards for Discovery</u>

Rule 16 allows for broad, but not boundless, discovery in criminal cases. Rather, discovery

is limited to "material" information, which is evidence that "enable[s] the defendant significantly

to alter the quantum of proof in his favor." *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir.

1998). While establishing materiality "is not a heavy burden," and includes both exculpatory and

inculpatory information, it still requires "a strong indication that [the evidence] will play an

important role in uncovering admissible evidence, aiding witness preparation, corroborating

testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C.

Cir. 1993) (quotation marks omitted). Discovery requests that seek to search government files for

information that could be deemed relevant do not meet this standard. *See Pennsylvania v. Ritchie*,

480 U.S. 39, 59-60 (1987) ("Defense counsel has no constitutional right to conduct his own search of the States' files to argue relevance.").

Further, while the government must disclose material exculpatory evidence under *Brady v. Maryland* and its progeny, information in the government's possession that does not address the defendant's criminal culpability is not *Brady* material.   373 U.S. 83, 87 (1963) (defining discoverable material as information favorable to a defendant that is "material to either guilt or punishment").   Accordingly, this principle exempts as non-*Brady* material "material that would only support jurisdictional challenges, claims of selective prosecution, or any other collateral attacks on the indictment, because prevailing on those claims would not prove [the] defendant free from fault, guilt, or blame." *United States v. Blackley*, 986 F. Supp. 600, 603 (D.D.C. 1997).   For the same reasons, as this Court has recognized, internal Department of Justice decision-making is not *Brady* material.  *United States v. Naegele*, 468 F. Supp. 2d 150, 155 (D.D.C. 2007) ("To the extent that defendant seeks documents or records reflecting the internal deliberations of the Department of Justice leading to the decision to seek an indictment, he is not entitled to them under *Brady*, even if some prosecutor 'expressed doubts' that defendant's conduct 'amounts to a crime or warrants prosecution.'").

Instead, where a defendant seeks discovery that relates to a purported "bar to the prosecution," rather than invoking the broad discovery principles of Rule 16 or *Brady*, the defendant must meet a higher standard set by *United States v. Armstrong*, 517 U.S. 456 (1996) before discovery is granted.  This requires "the defendant, as a condition of discovery, to adduce 'some evidence tending to show the essential elements of' the defense, not just evidence 'material' to that defense as required by Rule 16." *United States v. Rashed*, 234 F.3d 1280, 1285-86 (D.C. Cir. 2000).  This "'rigorous standard'" is necessary "to prevent undue diversion of prosecutorial

13

resources" in providing the discovery.  *Id.* (citing *Armstrong*, 517 U.S. at 468).  Absent such a

showing by the defendant, no discovery is warranted.  *Id.*; *see* ECF 159, at 7 (noting that the

defendant's discovery requests for Justice Manual discovery were not discoverable under Rule 16

for this reason, and citing *Rashed*).

Finally, to obtain the disclosure of grand jury minutes a defendant must meet a heavy

burden of "particularized need" that overcomes the strong presumption of grand jury secrecy.

*United States v. Wright*, 234 F.Supp.3d 45, 47 (D.D.C. 2017) (citing *United States v. Naegele*, 474

F. Supp. 2d 9, 10 (D.D.C. 2007)).  As the court in *Wright* explained,

> This particularized need requires a "factual basis"—"conclusory or speculative allegations
> of misconduct" do not suffice. *Naegele*, 474 F.Supp.2d at 10. The threshold for such a
> showing is very demanding, and the disclosure of grand jury information is "exceedingly
> rare." *Id*. at 11.

234 F. Supp. 3d at 47-48 (denying defendant's motion to compel discovery); *see United States v.*

*Tajideen*, 319 F. Supp. 3d 445, 473 (D.D.C. 2018) (same, noting "the exceedingly high burden"

required for such a disclosure).  This burden is especially heavy after a jury verdict, following a

trial where the defendant had the full opportunity to test the government's evidence, because any

non-constitutional error before the grand jury was remedied by the trial process.  *United States v.*

*Borda*, 905 F. Supp. 2d 201, 204 (D.D.C. 2012) ("[A] guilty verdict returned by a petit jury after

a full trial on the merits renders harmless any non-constitutional error in the grand jury's charging

decision." (citing *United States v. Mechanik*, 475 U.S. 66, 72-73 (1986)).

### III.       Argument

The defendant's motions seek to re-litigate prior decisions of this Court to demand

irrelevant, non-discoverable material without any factual or legal basis for doing so.  Each of the

Court's previous rulings—denying discovery concerning Justice Manual materials and grand jury

minutes, and requiring the government to re-call Mason for cross-examination concerning his

14

criminal history—followed thorough briefing, oral argument, and careful consideration by the Court of the factual record and the applicable law.  The defendant does not establish any entitlement to the voluminous discovery he now seeks into areas that are wholly irrelevant to his criminal culpability, nor does he provide any factual or legal basis for revisiting the Court's prior rulings on these matters.  His motions should be denied.

## A.  No Further Discovery Concerning Kevonn Mason's Criminal History Is Warranted

The defendant seeks to compel the government to disclose broad swaths of information concerning the government's meetings with Kevonn Mason, the two NCIC reports run for him, the government's possession and access to those reports during trial, all subpoenas issued for Mason, searches of his juvenile records, Department of Justice Policies concerning witnesses' criminal histories, and "[a]ll documents contained in the United States Attorneys' Office W Drive or other electronic storage system related in any way to Kavonn [sic] Mason.[8]  ECF 483, at 6-7. He claims that these materials concerning "the Kavonn Mason suppression of evidence" are relevant to "the cumulative effect of suppressed evidence in determining whether a new trial is warranted on account of *Brady* violations."  ECF 483, at 16.  None of this discovery is relevant or warranted under applicable law, and instead is an effort to re-litigate the Court's mid-trial resolution of this issue despite no legal or factual reason to do so.

The government has already produced to the defense the discoverable material in its possession concerning Mason.  The interview reports and agent notes from Mason's meetings with the government were timely disclosed before he testified.  *See* Trial Tr. 11/9/22 PM Session, at 65:16-20.  Additional documents concerning the errors that led to the inaccurate representations

---

[8] The defendant's motion and discovery demand repeatedly misspell the witness's name as "Kavonn Mason," not "Kevonn Mason," which is the same error the government made in misspelling Mason's name when it ran the inaccurate September 11, 2022, NCIC report.

about Mason's criminal history (specifically, the May 18, 2022, NCIC report, the email from the case agent to undersigned counsel attaching that report, and the September 11, 2022, NCIC report) were disclosed during the mid-trial litigation of the defendant's motion.    *See* ECF 351-1 (September NCIC report), 351-2 (email and May NCIC report).  On May 23, 2023, the government responded to the first three requests in the defendant's discovery letter by confirming that all reports and agent notes had been provided for Mason's meetings with the government, explaining that the conversation with Mason concerning his criminal history occurred at the September 16, 2022, pre-trial meeting, noted that all participants in the meetings were identified in the reports, and pinpointed the Bates ranges for these materials.

None of the defendant's other demands seek discoverable information.  The remaining seven requests in his discovery letter—demanding the location in the government's files of the copies of Masons' criminal history reports, copies of subpoenas "or other notices" for Mason "to appear," the "dates on which Kavonn Mason appeared pursuant to request or notice at the United States Attorney's Office,"[9] Department of Justice policies concerning the storage of criminal history reports for witnesses, and searches of juvenile records for information about Mason—do not seek information that is in any way relevant to the defendant's criminal culpability.  As such, neither Rule 16 nor *Brady* provides a basis for their production.  *Marshall*, 132 F.3d at 68 (limiting Rule 16 discovery to "material" information, which is evidence that "enable[s] the defendant significantly to alter the quantum of proof in his favor"); *Blackley*, 986 F. Supp. at 603 ("*Brady* is limited by its own language to 'evidence that is material either to guilt or to punishment'"); *see*

---

[9] This demand also sought the dates of any grand jury or trial appearances in this case.  The defense already has this information in its possession.  All parties were present at the time of Mason's trial testimony, and, as the defense is aware, Mason was not identified by federal agents until many months after the Indictment and therefore made no grand jury appearance.

*Ritchie*, 480 U.S. at 59-60 ("Defense counsel has no constitutional right to conduct his own search of the States' files to argue relevance.").

The defendant's claim that the extensive discovery he seeks is necessary "in determining whether a new trial is required on account of *Brady* violations" ECF 483, at 16, misapprehends the legal standard for establishing such a violation, and does not justify the discovery he demands. As an initial matter, and for the reasons explained above, the materials the defendant seeks are neither relevant Rule 16 material nor discoverable under *Brady*. Regardless, to the extent the defendant seeks this discovery as a means of re-visiting the Court's mid-trial rulings concerning Mason on *Brady* grounds, he still has not articulated the basic elements of such a claim. As the Supreme Court has explained, "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene* 527 U.S. 263, 281-82 (1999).

Here, the defendant has articulated no prejudice that he has incurred concerning Mason, let alone any that warrants the discovery he seeks. That is because after the Court addressed this issue mid-trial, there was no prejudice. Following rigorous mid-trial litigation, the Court thoroughly examined the factual record and applicable D.C. Circuit precedents and fashioned an appropriately tailored remedy: because the defense had not been able to cross-examine Mason about his criminal history when the government first called him as a witness, Mason was re-called during the government's case-in-chief for the express purpose of the defense engaging in this exact cross-examination. Trial Tr. 11/16/22 AM Session, at 19:4-22:3 (oral ruling); *id*. at 32:17-42:1 (defense cross-examination). During that examination, the defense explored Mason's criminal history in detail and impeached him for having said in his initial testimony that he had "stayed out of trouble."

*Id*. at 32:17-42:1  This renewed cross-examination put the defense in the exact same position it would have been in had the government not erred in its initial disclosure.  Because the defendant sustained no prejudice once the Court resolved this matter mid-trial (and articulating none now), there is simply no ground re-visiting this ruling, or for granting discovery.  The defendant's motion should be denied.

## B. The Justice Manual Materials Are Not Discoverable

The defendant claims that he is entitled to "discoverable information regarding [the government's] compliance with the Justice Manual," ECF 484 at 1, because he believes "the inclusion of the obstruction charge in the Indictment against Ofc. Sutton is unprecedented," ECF 484 at 3, and therefore these materials will show "that the USAO in this district has abused its discretion in bringing this case."  ECF 484 at 4.  Because he provides no applicable authority or any evidence that comes close to meeting the legal standard for discovery under these circumstances, his motion should be denied.

As the Court has already ruled, the Justice Manual materials are not discoverable under Rule 16 because they are "immaterial to his defense."  ECF 159, at 10.  The Manual provides the defendant with no rights, and therefore no discovery concerning them could contribute to a cognizable defense.  *Id*. at 7-10 ("[C]ontrary to defense counsel's suggestions at the January 25, 2022 motions hearing, there appears to be no other use for the requested discovery than to support . . . a meritless motion to dismiss.").  To date, the defendant has provided the Court with no new ground—factual or legal—for revisiting the Court's thorough ruling on this issue.  That is because there is none.  These materials simply are not discoverable under Rule 16.  For similar reasons, *Brady* provides no ground for the production of these materials.  *Naegele*, 468 F. Supp. 2d at 155 ("To the extent that defendant seeks documents or records reflecting the internal deliberations of

the Department of Justice leading to the decision to seek an indictment, he is not entitled to them under *Brady* even if some prosecutor 'expressed doubts' that defendant's conduct 'amounts to a crime or warrants prosecution.'").

      The defendant also falls far short of showing any entitlement to the Justice Manual materials to establish "an independent . . . bar to the prosecution" under *Armstrong*.  To allow discovery into any such claim, the defendant must assert a cognizable claim of relief, and "adduce some evidence tending to show the essential elements" of it.  *See Rashed*, 234 F.3d at 1285-86.  Here, the defendant's mere claim of an "unprecedented" prosecution (ECF 484, at 2) and an unsupported accusation of "manufactured jurisdiction in this Court by including federal obstruction in the Indictment" does neither.  It is well-settled that "'so long as the prosecutor has probable cause to believe that the accused committed an offfense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'"  *United States v. Meadows*, 867 F.3d 1305, 1313 (D.C. Cir. 2017) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)); *United States v. Oseguera Gonzalez*, 507 F.Supp.3d 137, 174 (D.D.C. 2020) (Howell, J.) ("Prosecutors . . . generally have broad discretion in enforcing the law, and their decisions are presumed to be proper absent clear evidence to the contrary." (citing *Armstrong*, 517 U.S. at 464)).  While prosecutorial discretion is "subject to constitutional constraints," *Meadows*, 867 F.3d at 1313 (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)), a defendant's claim that his prosecution was merely unusual does not provide a ground for attacking it.  *See id.* (rejecting claim of prosecutorial vindictiveness where the defendant "makes no claim of anything like disparate treatment on the basis of race or religion" but instead asserted "that she was charged with a crime . . . that is rarely prosecuted and routinely addressed administratively").  Here, where the defendant has put forth no evidence that this

prosecution was legally improper—let alone any that "tend[s] to show the essential elements" of a cognizable claim for relief—he simply is not entitled to the discovery he seeks. His motion should therefore be rejected.

### C. The Grand Jury Minutes Are Not Discoverable

Despite extensive pre-trial litigation concerning the defendant's prior demands for grand jury minutes, defendant Sutton once again claims he is entitled to these minutes to "show whether, in fact, the Government was ever of the belief that the facts of this case could possibly have a nexus with a federal civil rights investigation" and whether the case was based on "political or racial animosity or an arbitrary and unjust political reason." ECF 484, at 5. These conclusory and unsupported claims provide no ground whatsoever for this discovery, let alone the "particularized need" required to overcome the presumption of grand jury secrecy. As the Court has already recognized in connection with the defendant's prior demand for grand jury minutes, mere speculation is insufficient to clear the high bar for such disclosures. ECF 289, at 11-13 (discussing cases); *see United States v. Wright*, 234 F.Supp. 3d 45, 47 (D.D.C. 2017) (quoting *United States v. Naegele*, 474 F. Supp. 2d 9, 10 (D.D.C. 2007)) ("This particularized need requires a 'factual basis'- 'conclusory or speculative allegations of misconduct' do not suffice."); *see also Borda*, 905 F. Supp. 2d at 204 ("[A] guilty verdict returned by a petit jury after a full trial on the merits renders harmless any non-constitutional error in the grand jury's charging decision." (citing *Mechanik*, 475 U.S. at 72-73)). Regardless, just as in his prior motions, the defendant provides no factual basis at all for disclosing the grand jury minutes; rather, he relies on the precise type of unsupported accusations that fail to meet this high standard as a matter of law. *See* Having failed to put forward any facts that demonstrate this to be one of the "exceedingly rare cases" in which disclosing grand jury minutes is warranted, *Naegele*, 474 F.Supp.2d at 10, his demand should be denied.

## <u>CONCLUSION</u>

For the reasons given above, the Court should deny defendant Sutton's motions, ECF 483 and 484, in full.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ Risa Berkower
ELIZABETH ALOI
DC Bar No. 1015864
AHMED BASET
IL Bar No. 6304552
RISA BERKOWER
NY Bar No. 4536538
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D St., N.W.
Washington, D.C. 20532
Phone: (202) 252-7212 (Aloi)
        (202) 252-7097 (Baset)
        (202) 252-6782 (Berkower)
Email: Elizabeth.Aloi@usdoj.gov
        Ahmed.Baset@usdoj.gov
        risa.berkower@usdoj.gov