UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| TERENCE SUTTON | ) |
| and | ) |
| ANDREW ZABAVSKY, | ) |
| | ) |
| Defendants. | ) |

Criminal No. 21-0598 (PLF)

OPINION AND ORDER

   Defendant Terence Sutton has filed two post-trial motions to compel discovery.

See Motion to Compel Discovery Regarding Kevonn Mason's Criminal Record ("Mason Mot.")

[Dkt. No. 483]; Motion to Compel Production of Information Regarding Prosecutorial Abuse of

Discretion ("Justice Mot.") [Dkt. No. 484].  Mr. Sutton requests that the Court order the United

States to produce evidence pertaining to three categories of materials:  (1) government witness

Kevonn Mason's criminal history; (2) the U.S. Attorney's Office non-compliance with

Department of Justice policies (the "Justice Manual"); and (3) grand jury materials.  After

careful consideration of the parties' written arguments and applicable authorities, the Court will

deny both motions in full.[1]

---

[1]  Among the documents the Court has reviewed in connection with the pending
motions are the following:  Indictment [Dkt. No. 1]; Final Instructions to Jury ("Jury
Instructions") [Dkt. No. 435]; Motion to Compel Discovery Regarding Kevonn Mason's
Criminal Record ("Mason Mot.") [Dkt. No. 483]; Motion to Compel Production of Information
Regarding Prosecutorial Abuse of Discretion ("Justice Mot.") [Dkt. No. 484]; Government's
Omnibus Opposition to Defendant Sutton's Motion to Compel Discovery ("Gov't Opp.") [Dkt.
No. 494]; Government's Supplement to Its Omnibus Opposition to Defendant Sutton's Motion to
Compel Discovery ("Gov't Supp.") [Dkt. No. 502]; Ofc. Sutton's Reply in Support of Motion to

## I. BACKGROUND

Prior opinions summarize the factual and procedural history in this case.  See United States v. Sutton, Crim. No. 21-0598, 2022 WL 3134449 (D.D.C. Aug. 5, 2022) ("August Mot. to Compel Op."); United States v. Sutton, Crim. No. 21-0598, 2022 WL 1202741 (D.D.C. Apr. 22, 2022) ("April Mot. to Compel Op."); United States v. Sutton, Crim. No. 21-0598, 2022 WL 4653216 (D.D.C. Sept. 30, 2022) ("Mot. to Dismiss Op."); Motion to Dismiss Oral Ruling Transcript, United States v. Sutton (D.D.C. Aug. 3, 2022) ("Mot. to Dismiss Oral Ruling") [Dkt. No. 217].

On September 23, 2021, a grand jury returned an indictment charging Terence Sutton, a police officer with the Metropolitan Police Department ("MPD"), with one count of murder in the second degree, in violation of D.C. Code § 22-2103, one count of conspiracy to obstruct justice, in violation of 18 U.S.C. § 371, and one count of obstruction of justice, in violation of 18 U.S.C. §§ 1512(b)(3), 2.  Indictment ¶¶ 29, 31, 50.  A second MPD officer, Lieutenant Andrew Zabavsky, was also charged with one count of conspiracy to obstruct justice, in violation of 18 U.S.C. § 371, and one count of obstruction of justice, in violation of 18 U.S.C. §§ 1512(b)(3), 2.  Indictment ¶¶ 31, 50

---

Compel Discovery Regarding Kevonn Mason's Criminal Record ("Mason Reply") [Dkt. No. 500]; Ofc. Sutton's Reply in Support of His Motion to Compel Production of Information Regarding Prosecutorial Abuse of Discretion ("Justice Reply") [Dkt. No. 499]; Ofc. Sutton's Response to the Government's Supplement to Its Opposition to the Motion to Compel Discovery Regarding Kevonn Mason's Criminal Record [Dkt. No. 503]; and Transcript of Motion to Dismiss Oral Ruling, United States v. Sutton, Crim. No. 21-598 (D.D.C. Aug. 3, 2022) ("Mot. to Dismiss Oral Ruling") [Dkt. No. 217]. The Court has also reviewed trial transcripts from various dates, which are cited as follows:  Trial Tr. [Date] [Time] [Page:Line].  Throughout the parties' written submissions and trial transcripts, Kevonn Mason's name is sometimes spelled incorrectly as "Kavon" or "Kavonn."  All references to his name in this opinion have been corrected without notation.

The indictment alleges that on October 23, 2020, Mr. Sutton caused the death of Karon Hylton-Brown by recklessly pursuing him in a police vehicle for several blocks at high speeds. See Indictment ¶¶ 1-2, 10-12, 20-27. Mr. Hylton-Brown, who was riding a rental moped, was mortally wounded when he exited an alleyway and was struck by an oncoming vehicle, suffering severe head trauma; he died two days later. See id. ¶¶ 13, 18, 28. The indictment also alleges that Mr. Sutton and his supervisor, Mr. Zabavsky, conspired to cover up their involvement in these events by, among other things, willfully neglecting to collect and preserve evidence at the site of the collision and providing misleading and incomplete details of the incident to their superiors. See id. ¶¶ 33-48. According to the indictment, the defendants obfuscated "the circumstances of the traffic collision leading to Hylton-Brown's death, to prevent an internal investigation of the incident and referral of the matter to federal authorities for a criminal civil rights investigation." Id. ¶ 32. Trial began on October 25, 2022 and concluded with final jury instructions on December 15, 2022. On December 21, 2022, the jury returned a verdict of guilty on all counts. See Verdict Form [Dkt. No. 426].

Post-trial motions for judgment of acquittal, new trial, and arrest of judgment are currently pending before the Court. Mr. Sutton filed the instant motions to compel discovery on May 30, 2023, and May 31, 2023. The government filed its opposition on June 20, 2023, and a supplement to its opposition on July 5, 2023. Mr. Sutton filed two replies on June 30, 2023, and a reply to the government's supplemental filing on July 10, 2023. Mr. Sutton's post-trial motions to compel discovery are now ripe for decision.

## II. LEGAL STANDARD

Mr. Sutton's motions implicate multiple rules that provide for the government's production of discovery. Rule 16 of the Federal Rules of Criminal Procedure, which generally governs discovery in criminal matters, provides in pertinent part:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

FED. R. CRIM. P. 16(a)(1)(E) (emphasis added). Under Rule 16, evidence is material "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." United States v. Marshall, 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993)). This materiality standard "is not a heavy burden." United States v. Slough, 22 F. Supp. 3d 1, 4 (D.D.C. 2014) (quoting United States v. Lloyd, 992 F.2d at 351); see also 2 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 254 (4th ed. 2021) (noting that the defendant "must make a prima facie showing of materiality"). But to be material under Rule 16, the evidence must "bear 'more than some abstract logical relationship to the issues in the case." United States v. Slough, 22 F. Supp. 3d at 5 (quoting United States v. Marshall, 132 F.3d at 69). Rule 16 does not "authorize a blanket request to see the prosecution's file." United States v. Oseguera Gonzales, 507 F. Supp. 3d 137, 168 (D.D.C. 2020) (quoting United States v. Maranzino, 860 F.2d 981, 985-86 (10th Cir. 1988)). Moreover, the evidence sought must "be related 'to refutation of the government's case in chief,' and not 'to establishment of an independent . . . bar to the prosecution.'" United States v.

Apodaca, 287 F. Supp. 3d 21, 39 (D.D.C. 2017) (quoting United States v. Rashed, 234 F.3d 1280, 1285 (D.C. Cir. 2000)).

The Court is also permitted to compel discovery where a defendant puts forth "some evidence tending to show the existence" of an unconstitutional, discriminatory prosecution. United States v. Armstrong, 517 U.S. 456, 469 (1996); see Wayte v. United States, 470 U.S. 598, 608 (1985) (prosecutorial discretion is not "unfettered" but rather is "subject to constitutional restraints") (quoting United States v. Batchelder, 442 U.S. 114, 125 (1979)). Because a criminal defendant must meet a rigorous standard when levying "an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution," courts apply a "correspondingly rigorous standard for discovery in aid of such a claim." United States v. Armstrong, 517 U.S. at 463-65, 469. Although a Court can review a defendant's claims that his prosecution is unconstitutional, "'judicial authority is . . . at its most limited' when reviewing the Executive's exercise of discretion over charging determinations." United States v. Fokker Servs. B.V., 818 F.3d 733, 741 (D.C. Cir. 2016) (quoting Community for Creative Non-Violence v. Pierce, 786 F.2d 1199, 1201 (D.C. Cir. 1986)).

The government must also produce favorable evidence in its possession tending to exculpate a criminal defendant under Brady v. Maryland, 373 U.S. 83, 87 (1963). The government is obligated to disclose favorable evidence "even in the absence of a defense request." United States v. Celis, 608 F.3d 818, 834 (D.C. Cir. 2020) (per curiam) (citing United States v. Agurs, 427 U.S. 97, 107 (1976)). Favorable evidence encompasses both "exculpatory" and "impeaching" information. United States v. Sitzmann, 893 F.3d 811, 825 (D.C. Cir. 2018) (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)); accord United States v. Bagley, 473 U.S. 667, 676 (1985) (citing Giglio v. United States, 405 U.S. 150, 154 (1972)).

The Jencks Act also requires the government to produce any statement of a witness who has testified on direct examination at trial, so long as that statement is in the government's possession and "relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b); see United States v. Safavian, 233 F.R.D. 12, 15-16 (D.D.C. 2005).

Finally, Rule 6 of the Federal Rules of Criminal Procedure permits the disclosure of grand jury materials "preliminarily to or in connection with a judicial proceeding," subject to a court's authorization. FED. R. CRIM. P. 6(e)(3)(E)(i). To obtain such disclosure, a party must carry the "heavy burden of showing 'that a particularized need exists' that 'outweighs the policy of secrecy'" of grand jury materials. United States v. Apodaca, 287 F. Supp. at 47 (quoting Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959)). "This particularized need requires a 'factual basis'-- 'conclusory or speculative allegations of misconduct' do not suffice." United States v. Wright, 234 F. Supp. 3d 45, 47 (D.D.C. 2017) (quoting United States v. Naegele, 474 F. Supp. 2d 9, 10 (D.D.C. 2007)). "The threshold for such a showing is very demanding, and the disclosure of grand jury information is 'exceedingly rare.'" Id. (quoting United States v. Naegele, 474 F. Supp. 2d at 11). "The determination to disclose grand jury materials under [Rule 6(e)] is committed to the substantial discretion of the district court. . . . A district court must weigh carefully the competing interests in light of the relevant circumstances and standards." In re Sealed Case, 801 F.3d 1379, 1381 (D.C. Cir. 1986) (quotations omitted).

## III. DISCUSSION

### A. Kevonn Mason's Criminal History

#### 1. Trial Proceedings

During the government's case in chief, the jury heard testimony from Kevonn Mason, who went to school with Karon Hylton-Brown and testified that he spoke with Mr.

Hylton-Brown earlier in the evening on October 23, 2020, the night of Mr. Hylton-Brown's

death.  See Trial Tr. Nov. 1, 2022 a.m. at 35:16-36:16.  Mr. Mason testified that on the night of

the collision, Mr. Hylton-Brown was riding around the neighborhood on a Revel electric scooter

looking for his car keys.  Id. at 43:11-44:9.  Mr. Mason told the jury that he did not see Mr.

Hylton-Brown drinking or smoking that evening, nor did he see Mr. Hylton-Brown in possession

of any weapons or engaged in any criminal activity.  Id. at 46:2-47:16.  Mr. Mason also testified

that he observed Mr. Sutton driving an unmarked police vehicle and trying to stop Mr. Hylton-

Brown near the intersection of Fifth Street, Northwest, and Kennedy Street, Northwest.  Id.

at 30:13-16, 49:18-50:16.  He testified that Mr. Sutton did a U-turn in the street and "tried to cut

[Mr. Hylton-Brown] off in the intersection."  Id. at 49:21-25.  Mr. Hylton-Brown "turned around

and asked [Mr. Sutton] 'What [the fuck] are you chasing me for?'"  Id. at 50:2-10.  Mr. Hylton-

Brown then "rode down the street."  Id. at 50:15.  A few minutes later, Mr. Mason heard a crash.

Id. at 51:21-23.  He ran up the street and came upon the scene of the collision.  Id. at 52:4-5.

       Prior to Mr. Mason's testimony, counsel for Mr. Sutton explained to the Court

that he had "made a request to the government regarding any juvenile record that Kevonn Mason

may have under Davis v. Alaska.  And I assume if they [the government's attorneys] remain

silent, there is none."  Trial Tr. Nov. 1, 2022 a.m. at 6:13-16.  Subsequently, the following

exchange took place:

> Prosecutor: I'd like to address the issues pertaining to Mr. Mason,
> who will be our first witness this morning.  I'll start by
> addressing [Mr. Sutton's counsel's] issues that he
> raised.  The first of those being Mr. Mason's juvenile
> record.  I want to be clear, Mr. Mason has no
> convictions over the last ten years.  We inquired
> whether he has any convictions.  He stated he does not.
> And so we understand that he has no juvenile
> convictions.  So there's nothing to disclose on that front.

The Court: You asked him specifically about juvenile involvements?

Prosecutor: We asked him if he has any adjudications or convictions in his life and his answer was no.

Trial Tr. Nov. 1, 2022 a.m. at 11:11-23.

On November 7, 2022, counsel for Mr. Sutton informed the Court that Mr. Mason did, in fact, have a criminal history. See Terence D. Sutton Jr.'s Proposed Special Jury Instructions [Dkt. No. 349]. At the time of his testimony, Mr. Mason had a 2019 D.C. Superior Court conviction for two counts of simple assault and a 2019 D.C. Superior Court conviction for contempt. See id. at 1. Mr. Sutton raised this issue initially as a request to strike Mr. Mason's testimony in full. Id. at 3.[2]

On November 8, 2022, the government confirmed that its in-court representations about Mr. Mason's criminal history were incorrect. See Government's Response to Defendant Sutton's Proposed Special Jury Instruction Number 14 [Dkt. No. 351]. On November 9, 2022, the government provided additional explanation orally about this incident, outside the presence of the jury, and the Court heard argument from both parties about potential remedies. The government explained that it ran a National Crime Information Center ("NCIC") report for all prospective government trial witnesses a few weeks before trial, on September 11, 2022, and the report generated for Mr. Mason at that time indicated that Mr. Mason had no prior convictions.

---

[2]     Mr. Sutton also requested that the Court instruct the jury that the government "violated [] important Constitutional principles upon which the fair administration of our system of justice depends" by failing to produce correct information about Mr. Mason's criminal history. Terence D. Sutton Jr.'s Proposed Special Jury Instructions [Dkt. No. 349] at 3. He further requested that the jury be instructed: "[Y]ou can decide what weight, if any, to give to the Government's violations of these Constitutional principles. The Government's actions, standing alone or in combination with other facts presented in this case, may create a reasonable doubt in your mind about the defendants' guilt." Id.

Id. at 1; Trial Tr. Nov. 9, 2022 p.m. at 68:5-19 (prosecutor explained that the government "ran a new NCIC report" for Mr. Mason as it was "getting ready for trial in this case"). This report was consistent with Mr. Mason's own representations to investigators that, although he had previously been arrested, he did not have any criminal convictions. Government's Response to Defendant Sutton's Proposed Special Jury Instruction Number 14 [Dkt. No. 351] at 1-2. After Mr. Mason's testimony, the government re-examined Mr. Mason's September NCIC report and noticed two typographical errors, which resulted in its reporting the inaccurate criminal history. Id. at 2; see Trial Tr. Nov. 9, 2022 p.m. at 68:10-19 (government counsel explained that "due to human error" there was an error in Mr. Mason's first name and date of birth when the September NCIC report was generated).

The government also explained that Special Agent Sean Ricardi had generated a correct NCIC report for Mr. Mason prior to meeting with Mr. Mason on May 18, 2022. See Government's Response to Defendant Sutton's Proposed Special Jury Instruction Number 14 [Dkt. No. 351] at 2. Running NCIC checks before meeting with prospective witnesses is a "matter of routine practice." Id.; see Trial Tr. Nov. 9, 2022 p.m. at 66:23-67:5 (prosecutor explained that Special Agent Ricardi "did what is standard for every person he meets with and he ran an NCIC report to determine if there was an outstanding warrant" for Mr. Mason). The morning of May 18, 2022, before meeting with Mr. Mason, Special Agent Ricardi emailed the NCIC report to one of the government's attorneys, who did not review the accurate NCIC report at that time. Government's Response to Defendant Sutton's Proposed Special Jury Instruction Number 14 [Dkt. No. 351] at 3; Trial Tr. Nov. 9, 2022 p.m. at 68:20-69:9 (prosecutor explained she did not read the NCIC report because there was no "imminent" testimony expected from Mr. Mason). Special Agent Ricardi, who generated and read the correct NCIC report several months

earlier, was seated with government counsel throughout most of the trial and told the Court that

he thought he was present in the courtroom when the prosecutor told the Court that Mr. Mason

had no convictions.  See Trial Tr. Nov. 16, 2022 a.m. at 26:4-10.

On November 16, 2022, the Court explained orally why it would not strike Mr.

Mason's testimony nor instruct the jury as Mr. Sutton had requested.  As to the latter, the Court

found that the government did not act in bad faith or intentionally violate constitutional

principles.  Trial Tr. Nov. 16, 2022 a.m. at 17:11-19.  The Court further explained that, "[w]here

the district court concludes that the government was dilatory in its compliance with Brady to the

prejudice of the defendant, the district court has discretion to determine an appropriate remedy."

Id. at 20:1-4; see id. at 20:15-17 ("[T]he choice of remedy is in the sound discretion of the

district court.") (quoting United States v. Burke, 571 F.3d 1048, 1054 (10th Cir. 2009)).  When

fashioning a remedy for a Brady violation, "the remedy should be narrowly tailored."  Trial Tr.

Nov. 16, 2022 a.m. at 19:10-12.  A narrow remedy that ensures a defendant receives a fair trial is

more appropriate than dismissal of the indictment, which "is appropriate only as a last resort,

where no other remedy would cure prejudice against a defendant."  Id. at 19:15-20:7; see United

States v. Pasha, 797 F.3d 1122, 1139 (D.C. Cir. 2015).

The Court found, on the basis of the prosecutor's and Special Agent Ricardi's

representations, that there was no "bad faith involved with failing to disclose the convictions"

because – although the "government had [the correct NCIC report] in its possession" – the

government "didn't focus on it" in May of 2022, approximately six months before trial began.

See Trial Tr. Nov. 16, 2022 a.m. at 14:8-13.  As counsel for the government explained, they did

not review the correct NCIC report when it was initially generated because they had not yet

determined whether Mr. Mason would testify at trial.  Id. at 16:10-14; see Trial Tr. Nov. 9, 2022

p.m. at 67:1-20 (government counsel explained that the May 2022 NCIC report was made "to just get a sense of whether there were safety concerns . . . before meeting with [Mr. Mason]" and that government attorneys at that point "[d]idn't know if this was someone we would ever call as a witness or use in any way again"). Because the Court found that the government did not act in bad faith, the Court fashioned a narrow remedy to resolve the issue: it directed the government to re-call Mr. Mason to the witness stand, so that Mr. Sutton could have the opportunity to cross examine him about his prior contempt conviction and his potential bias against law enforcement. Trial Tr. Nov. 16, 2022 a.m. at 18:1-21; see id. at 21:1-24. The Court further instructed the jury that it could consider evidence of Mr. Mason's criminal history when evaluating his credibility and potential bias. See Jury Instructions at 15.

### 2. Motion to Compel

On May 22, 2023, in an email to the government's attorneys, counsel for Mr. Sutton requested the following information:

1. The date of the pretrial meeting with Kevonn Mason, during which Mr. Mason reported having been arrested in a domestic dispute, but said the case had not resulted in a conviction. (See ECF No. 351 at 1).

2. The identity of all persons present during the meeting identified in No. 1 above.

3. Produce all notes, memoranda or other record of the meeting identified in No. 1 above.

4. Regarding Exhibit 1 [the erroneous NCIC report], attached to this letter and filed at ECF No. 351-1, please provide the following information:

   a. The location of any electronic copy of Exhibit 1 in the government's electronic files (broadly construed to include all government agencies and email files) from September 11, 2022, to the present day;

b.  The location of any hard copies of Exhibit 1 from September 11, 2022, to today;

c.  Whether any hard copy of Exhibit 1 was in the United States Courthouse on November 1, 2022;

d.  Whether any electronic copy of Exhibit 1 was accessible electronically by the government (construed broadly to include all government agencies) from the United States Courthouse on November 1, 2022, and every trial day thereafter.

5.  Regarding Exhibit 2 [the May 18, 2022 email with the correct NCIC report], attached to this letter and filed with ECF No. 351-2, please provide the following information regarding the eAgent Report contained therein:

a.  The location of any electronic copy of Exhibit 2 in the government's electronic files (broadly construed to include all government agencies and email files) from September 11, 2022, to the present day;

b.  The location of any hard copies of Exhibit 2 from September 11, 2022, to today;

c.  Whether any hard copy of Exhibit 2 was in the United States Courthouse on November 1, 2022;

d.  Whether any electronic copy of Exhibit 2 was accessible electronically by the government (construed broadly to include all government agencies) from the United States Courthouse on November 1, 2022, and every trial day thereafter.

6.  All subpoenas or other notices for Kevonn Mason to appear at the United States Attorney's Office, at the Grand Jury, and at the trial of this case.

7.  All dates on which Kevonn Mason appeared pursuant to request or notice at the United States Attorney's Office, at the Grand Jury, and at the trial of this case.

8.  All documents contained in the United States Attorney's Office W Drive or other electronic storage system related in any way to Kevonn Mason.

9. Whether the government (construed broadly to include all government agencies) conducted a search for juvenile convictions for Kevonn Mason.

10. All policies of the United States Attorney's Office or the Department of Justice which govern the collection, retention, and production to the defendant of criminal records of prospective witnesses, including retention of such records in an electronic or other system of record keeping.

See Mason Mot. at 6-8. In response to this email request, the government noted that the information sought by the first three enumerated requests had already been produced, but otherwise the government declined to provide the requested information. See id.

Mr. Sutton explains that "[t]he obvious purpose of these requests is to determine whether the representations made to the Court by the prosecution team are true or half-truths." Mason Mot. at 8. Mr. Sutton argues that the incident regarding Mr. Mason's criminal history evinces "intentional misconduct." Mason Reply at 13. He further argues that "no reasonable prosecutor" would make such representations, id. at 2, and that this incident is demonstrative of the government's pattern of "intentionally violat[ing] . . . the constitutional standards regarding discovery" and "the ethics of [the] profession." Id. at 10; see D.C. Rule of Professional Conduct 3.8(e) ("Special Responsibilities of a Prosecutor"). Moreover, Mr. Sutton suggests that the government's failure to disclose Mr. Mason's accurate criminal record violates Brady v. Maryland, and that Mr. Sutton was prejudiced by the untimely disclosure because "the Government would not have called Mason" as a witness at all if it had been forced to disclose his criminal convictions in advance of his testimony. Mason Reply at 9; see id. ("Mason was the singular civilian witness who was able to testify that Hylton-Brown was innocently searching for his keys, was not drunk, was not armed, [and] was not dealing drugs."). Mr. Sutton asks the Court to compel the production of the above-requested information "so the Court can make a full record on the Government's misconduct." Id. at 10.

The government opposes Mr. Sutton's motion, contending that Mr. Sutton is attempting to "re-litigate the Court's mid-trial resolution of this issue" without a legal or factual basis for doing so.  Gov't Opp. at 15.  The government further argues that the requested information is not related to Mr. Sutton's culpability and therefore is not discoverable under either Brady or Rule 16.  Id.  The Court agrees with the government that the discovery requests related to Kevonn Mason fall outside the bounds of Brady and Rule 16.

Pursuant to Brady and its progeny, "the government must disclose any evidence in its possession that is favorable to the accused and material either to a defendant's guilt or punishment."  United States v. Trie, 21 F. Supp. 2d 7, 23 (D.D.C. 1998); see also United States v. Safavian, 233 F.R.D. at 16-17 (noting that Brady covers both exculpatory and impeachment evidence) (citing United States v. Bagley, 473 U.S. at 676-77); United States v. Flynn, 411 F. Supp. 3d 15, 28 (D.D.C. 2019) ("Under Brady, 'the Government has no duty to disclose evidence that is neutral, speculative, or inculpatory, or evidence that is available to the defense from other sources.'") (quoting United States v. Pendleton, 832 F.3d 934, 940 (8th Cir. 2016)).  And, as this Court has previously explained, "government counsel's ethical obligations impose disclosure requirements broader than what is constitutionally mandated."  United States v. Sutton, Crim. No. 21-0598, 2022 WL 2383974, at *8 (D.D.C. July 1, 2022); see id. at *8-9 (citing D.C. RULES OF PRO. CONDUCT R. 3.8(e); In re Kline, 113 A.3d 202, 213 (D.C. 2005)).

During trial, the government conceded that the correct NCIC report is impeaching and should have been produced under Brady, regardless of whether the government acted negligently or in bad faith by failing to disclose it.  Trial Tr. Nov. 16, 2022 a.m. at 13:16-24; see United States v. Sitzmann, 893 F.3d at 826 (Brady requires the government to produce "favorable" evidence that is "exculpatory" or "impeaching").  But the government submitted that

re-calling Kevonn Mason and allowing counsel for Mr. Sutton to cross examine him about his criminal history would cure any prejudice arising from the inadvertent suppression of the correct NCIC report. See Trial Tr. Nov. 9, 2022 p.m. at 72:23-73:17; Government's Response to Defendant Sutton's Proposed Special Jury Instruction Number 14 [Dkt. No. 351] at 2; Strickler v. Greene, 527 U.S. 263, 281-82 (1999) (to establish a Brady violation, prejudice must result from the suppression of favorable evidence).

   The Court agreed with the government during trial and remains convinced that the remedy fashioned at trial – allowing Mr. Sutton to cross-examine Mr. Mason about the previously undisclosed convictions – ameliorated any potential prejudice caused by the government's failure to produce the correct report. If the government had timely produced the correct NCIC report, the result would have been the same as what in fact occurred at trial: Mr. Sutton was permitted to impeach Mr. Mason using his prior conviction and encounters with law enforcement. Accordingly, it is not the case that the "result of the proceeding would have been different" had the government timely produced the correct NCIC, see United States v. Bagley, 473 U.S. at 682, nor is it the case that the untimely disclosure "put[s] the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995). See also Cone v. Bell, 556 U.S. 449, 470 (2009); United States v. Robinson, 68 F.4th 1340, 1348 (D.C. Cir. 2023).

   Furthermore, with regard to Mr. Sutton's assertions that the government would not have called Kevonn Mason as a witness if defense counsel had been alerted to his prior convictions ahead of trial, such uncorroborated speculation does not give the Court a reason to order the relief Mr. Sutton requests. See Mason Reply at 5. Mr. Sutton's requested discovery – which only pertains to the representations that government counsel made about Kevonn Mason's

criminal history – does not concern exculpatory or impeaching information, nor does it concern information that is "material" to Mr. Sutton's culpability or defense. See Brady v. Maryland, 373 U.S. at 87; FED. R. CRIM. P. 16(a)(1)(E). Notwithstanding Mr. Sutton's other allegations of government misconduct, see Mason Mot. at 5-6; Mason Reply at 1-2, Mr. Sutton has failed to demonstrate a sufficient legal basis for the requested information. See United States v. Rashed, 234 F.3d at 1285 (Rule 16 applies when the defendant seeks information relating "to refutation of the government's case in chief"); Cone v. Bell, 556 U.S. at 469-72 (Brady inquiry is whether suppression of probative evidence relating to guilt or punishment deprived a person "of his right to a fair trial"). His motion to compel such information is denied.

### B.  Justice Manual Non-Compliance

Prior to trial, Mr. Sutton argued that the indictment in this case should be dismissed because the U.S. Attorney's Office had failed to comply with Department of Justice ("DOJ") policies – laid out in the "Justice Manual" – that "govern[] the investigation and prosecution of civil rights cases." See April Mot. to Compel Op. at *3. The "Justice Manual" is a document "'prepared under the supervision of the Attorney General and under the direction of the Deputy Attorney General' that 'provides internal DOJ guidance.'" Id. (quoting Justice Manual § 1-1.200). When Mr. Sutton sought documents relating to the U.S. Attorney's Office compliance with the Justice Manual before trial, he argued that he was entitled to compelled discovery "to explore whether the government's alleged failure to comply" with the Justice Manual "rendered the indictment invalid." See April Mot. to Compel Op. at *6-7. The Court denied his motion and concluded that Justice Manual documents were not "'material' to preparing his defense." Id. at *4. The Court reasoned:

First, Mr. Sutton suggests that the requested documents are necessary to support a contemplated motion to dismiss the indictment, not to "refute any of the government's direct evidence against the defendants." United States v. Apodaca, 287 F. Supp. 3d at 41. As the D.C. Circuit has recognized, Rule 16(a)(1)(E) does not apply when the defendant seeks discovery relating "not to refutation of the government's case in chief but to establishment of an independent . . . bar to the prosecution." United States v. Rashed, 234 F.3d at 1285. Mr. Sutton's broad requests simply are not tailored to developing the evidentiary record for his defense, and they therefore fall outside the permissible scope of discovery under Rule 16.

Second, even assuming that materials unrelated to rebutting the government's case-in-chief were discoverable by Mr. Sutton, the Court does not see how they could meaningfully advance the defense of his case. See FED. R. CRIM. P. 16(a)(1)(E)(i). Without deciding the merits of a motion to dismiss that Mr. Sutton has not yet filed, the Court thinks it highly unlikely that Mr. Sutton could successfully obtain dismissal of the indictment by showing that the government failed to comply with internal DOJ policies set forth in the Justice Manual.

April Mot. to Compel Op. at *4.[3]

Mr. Sutton now argues that the Court should order the government to turn over information about its compliance with Justice Manual procedures because he has made a "colorable claim" that the U.S. Attorney's Office has "abused its discretion in bringing this case" and that the government has "manufactured jurisdiction in this Court by including federal obstruction in the Indictment." Justice Mot. at 3-4. Mr. Sutton maintains that the U.S. Attorney's Office is conducting a "rogue prosecution without complying with the Department of Justice procedures for coordinating the investigation and prosecution with the Civil Rights Division of DOJ." Id. at 2. He also contends that "evidence of non-compliance with the Justice

---

[3]     The Court subsequently denied Mr. Sutton's motion to dismiss the indictment on the grounds that the prosecutors had engaged in misconduct before the grand jury, see Mot. to Dismiss Op. at *3-4, and his motion to dismiss for failure to state an offense. See Mot. to Dismiss Oral Ruling at 25:15-20, 27:18-30:21.

Manual defeats the obstruction [of justice] charge." Justice Reply at 3. Accordingly, Mr. Sutton requests, for the second time, that the Court order the government to produce "evidence as to whether the [U.S. Attorney's Office] has complied with the Justice Manual procedures in bringing the indictment." Justice Mot. at 4.

The government opposes Mr. Sutton's request and argues that the Justice Manual materials are not discoverable under either Brady v. Maryland or Rule 16 of the Federal Rules of Criminal Procedure. Gov't Opp. at 18-19. The government also argues that Mr. Sutton has not demonstrated that this material would create an independent bar to prosecution, reasoning that "a defendant's claim that his prosecution was merely unusual does not provide a ground for attacking it" and that Mr. Sutton "has put forth no evidence that this prosecution was legally improper." Id. at 19-20.

The Court has made clear that Mr. Sutton's "assertions that this is an unprecedented criminal case . . . . have no place at trial." United States v. Sutton, 636 F. Supp. 3d 179, 209 (D.D.C. 2022). This line of argument is "irrelevant, inappropriate for consideration by the jury, invite[s] jury nullification, and distract[s] from the issues at trial." Id. at 209-10. The Court similarly excluded certain proffered expert witnesses because the experts' testimony about the unprecedented nature of this prosecution "has no bearing on the defendants' states of mind for this case," "improperly seeks to make the jury second guess the charging decisions of the government and grand jury," and "inappropriately challenge[s] prosecutorial discretion and the decisions of the grand jury." United States v. Sutton, Crim. No. 21-0598, 2022 WL 16960338, at *11 (D.D.C. Nov. 16, 2022). As the Court has stated, "the purported uniqueness of the charges in this case is not itself a valid basis for compelling disclosure" of the requested materials. August Mot. to Compel Op. at *4.

The Court reiterates that the "unprecedented" nature of this prosecution does not justify compelled discovery about the U.S. Attorney's Office's compliance with Justice Manual policies under Rule 16 or any other standard.  Mr. Sutton and Mr. Zabavsky would not have been permitted to argue to the jury or present evidence about the U.S. Attorney's Office charging decisions at trial.  See United States v. Sutton, 636 F. Supp. 3d at 209; August Mot. to Compel Op. at *4 (denying discovery requests for DOJ policies related to internal charging procedures because those requests "relate to the prosecutorial discretion that underlies the decision to charge").  Whether the government ultimately did or did not ask the grand jury to charge a federal civil rights violation under 18 U.S.C. § 242 – and whether this decision was consistent with the Justice Manual procedures – cannot affect the Court's analysis of the sufficiency of the evidence the government presented to the jury at trial relating to the obstruction of justice offense.  The U.S. Attorney's Office's alleged failure to comply with the Justice Manual does not, as Mr. Sutton suggests, warrant dismissal of the indictment, granting a new trial, or acquittal.

Furthermore, despite Mr. Sutton's assertions that the government has "manufactured" federal jurisdiction in this case, the U.S. Attorney's Office's compliance or non-compliance with the Justice Manual in presenting evidence to the grand jury and seeking this indictment is irrelevant to whether the government was able to prove federal obstruction of justice at trial.  Justice Mot. at 2-3; see 18 U.S.C. § 1512(b)(3); Jury Instructions at 30 (elements of obstruction of justice include that a defendant knowingly engaged in misleading conduct with specific intent to hinder, delay, or prevent the communication of information to a federal law enforcement officer relating to the commission or possible commission of a federal offense).  Whether the U.S. Attorney's Office "complied with the . . . Justice Manual to obtain

authorization to investigate and indict" does not go "directly to the innocence or guilt" of the defendants, as Mr. Sutton suggests.  Justice Reply at 3.  Mr. Sutton's contention that the Court should conclude otherwise because the government has "manufactured jurisdiction in this Court" is unavailing.  See Justice Mot. at 2-3.

### C.  Grand Jury Minutes

#### 1.  Pretrial Litigation

Mr. Sutton previously moved to compel the production of grand jury minutes in conjunction with his motion to dismiss the indictment for prosecutorial misconduct before the grand jury.  See Mot. to Dismiss Op. at *5-6.  Mr. Sutton sought "the full minutes of the Grand Jury to determine how the Grand Jury was instructed on [the 'standard of care' as it relates to second degree murder] and whether the jury based its vote on legally permissible voting standards."  See Terence D. Sutton, Jr.'s Motions to Dismiss the Indictment for Prosecutorial Misconduct in the Grand Jury and to Disclose the Full Record of Matters Occurring Before the Grand Jury [Dkt. No. 185] at 29.  He argued that grand jury minutes would "reveal the interactions of the prosecutors with prior and concurrent grand juries," and help "determine whether there was any grand jury shopping by the government."  Terence D. Sutton, Jr.'s Reply in Support of his Motions to Dismiss the Indictment for Prosecutorial Misconduct in the Grand Jury and to Disclose the Full Record of Matters Occurring Before the Grand Jury [Dkt. No. 201] at 19.

Mr. Sutton also moved to compel the production of the audio recordings for all witnesses who testified in the grand jury and all recordings of "the government's presentation of charges to the grand jury."  Officer Sutton's Reply in Support of His Third Motion to Compel Disclosure of Requested Discovery [Dkt. No. 142] at 1.  Among other things, he argued that the

defense needed to "know how the government intend[ed] to prove a reasonable likelihood that a

relevant communication would have been made to a federal law enforcement officer." Id. at 5

(citing Fowler v. United States, 563 U.S. 668, 677 (2011)). The Court denied Mr. Sutton's

motions in full and explained:

> In ruling on this request for grand jury minutes, the Court is guided
> by what courts have consistently made clear – "mere suspicion" of
> misconduct before the grand jury is plainly not sufficient, United
> States v. Trie, 23 F. Supp. 2d 55, 62 (D.D.C. 1998), to "outweigh[]
> the policy of secrecy" involved in grand jury materials. United
> States v. Apodaca, 287 F. Supp. 3d at 47; see also United States v.
> Sitzmann, 74 F. Supp. 3d at 139 ("It is settled that 'conclusory or
> speculative allegations of misconduct do not meet the particularized
> need standard; a factual basis is required.'" (quoting United States
> v. Naegele, 474 F. Supp. 2d at 10)).
>
> Courts require the government to disclose grand jury materials
> pursuant to Rule 6(e) only in 'exceedingly rare cases.' United States
> v. Naegele, 474 F. Supp. 2d at 10 . . . . [C]ourts routinely deny
> defendants' requests for grand jury minutes. For example, the
> defendant in Apodaca sought in camera inspection of grand jury
> minutes related to 'what legal instructions were provided to the
> grand jurors.' United States v. Apodaca. 287 F. Supp. 3d at 45. The
> defendant suspected that "the grand jury was not properly instructed
> about 'controlling law,'" which stemmed from the fact that the
> prosecutor's extradition request included "an incomplete statement
> of the law" and provided "good reason to believe that any
> instructions [to the grand jury] were incomplete." Id. at 45, 49.
> Chief Judge Howell denied defendant's request for in camera
> review, reasoning that "the indictment ha[d] already been deemed
> facially valid, which undermines [defendant's] theory that the grand
> jury instructions may have been incomplete." Id. at 49; see also
> United States v. Trie, 23 F. Supp. 2d at 62 (concluding that "the
> mere suspicion that the grand jury may not have been properly
> instructed with respect to the legal definition of [a term in the
> indictment] is insufficient.").
>
> Here, as in Apodaca and Trie, defendants have identified no
> "particularized need" for the grand jury minutes. United States v.
> Apodaca, 287 F. Supp. 3d at 47. In fact, Mr. Sutton's allegations
> amount to no more than speculation, which is simply insufficient.
> See United States v. Singhal, 876 F. Supp. 2d 82, 99 (D.D.C. 2012)
> (denying motion where defendants failed to "identify any portion of

the Indictment that suggests that any charge to the grand jury was legally erroneous, and resorts to speculation about what the grand jury was instructed based on what is not stated in the Indictment"). For example, Mr. Sutton poses open-ended questions as veiled allegations of misconduct, asking, "[d]id a prior grand jury refuse to return an indictment? Did the prosecutors learn from prior grand juries that they were lukewarm to the prosecutors' case, and wait for a group that appeared more favorable?" [Terence D. Sutton, Jr.'s Reply in Support of His Motion to Dismiss the Indictment for Prosecutorial Misconduct in the Grand Jury [Dkt. No. 201]] at 10. And in his supplemental reply, he states that "[i]f the Court chooses not to require at least production of the minutes from all grand juries, no one will ever know what occurred." [Mr. Sutton's Reply in Support of Motion to Dismiss for Prosecutorial Misconduct Before the Grand Jury [Dkt. No. 230]] at 22. What Mr. Sutton fails to appreciate, however, is that grand juries are designed to function in exactly this way, within the "'long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts.'" United States v. Apodaca, 287 F. Supp. 3d at 47 (quoting United States v. Procter & Gamble Co., 356 U.S. 677,681 (1958)).

Mot. to Dismiss Op. at *5-6.

With respect to Mr. Sutton's request for audio recordings of grand jury testimony, the Court denied the motion because written transcripts of all grand jury witness testimony had already been provided to the defense and because the audio recordings of testifying witnesses would be provided at trial under the Jencks Act. See April Mot. to Compel Op. at *8-9; see Government's Opposition to Defendant Sutton's Motion to Compel Disclosure of Requested Discovery [Dkt. No. 134] at 3 (the government represented that Mr. Sutton was "provided with the transcripts of all witnesses who testified"). The Court also reasoned that "[t]he government's explanation of its case to the grand jury is immaterial to Mr. Sutton's ability to bring a motion to dismiss the indictment or to mounting a defense." Id. at *9; see id. (the requested information was not "central or even relevant to a motion to dismiss the indictment").

## 2.  Motion to Compel

Now, in a post-trial request, Mr. Sutton again asks the Court to compel the government to produce "the minutes of the grand jury proceedings." Justice Mot. at 5.  His arguments in support of his request for grand jury material are similar to the arguments he raised in support of his request for discovery relating to the Justice Manual.  See generally Justice Mot.; Justice Reply.  Mr. Sutton asserts that the grand jury "minutes" – which presumably include instructions to the grand jury and whether the grand jury was ever instructed about charging a federal civil rights offense – will show "whether, in fact, the Government was ever of the belief that the facts of this case could possibly have a nexus with a federal civil rights investigation." Id.  He argues that he is entitled to this discovery under United States v. Armstrong, 517 U.S. 456 (1996).  Id. at 1.  He also argues that the Court should order this discovery under Rule 6(e) of the Federal Rules of Criminal Procedure.  Id.  The Court will address each argument in turn.

### a.  Analysis Under United States v. Armstrong

Mr. Sutton asserts that compelling the production of grand jury minutes is warranted under Armstrong because "there is more than sufficient evidence of a colorable claim that the [U.S. Attorney's Office] in this district has abused its discretion in bringing this case." Justice Mot. at 4; see Justice Reply at 4 (arguing that discovery must be produced under United States v. Armstrong because Mr. Sutton "has sufficiently alleged an abuse of discretion").  The government opposes this request and argues that Mr. Sutton's assertions about prosecutorial abuse of discretion fail to meet the standard for compelled discovery relating to selective prosecution under Armstrong.  See Gov't Opp. at 19-20.  The Court finds that compelled discovery under Armstrong is not warranted.

Mr. Sutton's repeated assertions that the government has abused its discretion by "manufactur[ing] jurisdiction in this Court by including federal obstruction in the Indictment," see Justice Mot. at 3, are totally irrelevant under Armstrong.  To state a selective prosecution claim under Armstrong, a person must assert that the "prosecutors who brought the charge [did so] for reasons forbidden by the Constitution" and must "present clear evidence [of] both discriminatory effect and intent."  Mot. to Dismiss Oral Ruling at 32:11-13, 33:5-7.  And, to obtain discovery under Armstrong in support of a selective prosecution claim, a person must put forth "some evidence tending to show the existence of the essential elements" of such a claim. United States v. Armstrong, 517 U.S. at 468 (quoting United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974)).  Mr. Sutton has not made the requisite showing.  See United States v. Rashed, 234 F.3d at 1285-86 (defendant's "'sham prosecution' allegation" was insufficient to satisfy the Armstrong standard for compelled discovery).

Mr. Sutton further argues that the unique nature of this prosecution warrants compelling discovery about "whether the U.S. Attorney brought this case for 'political or racial animosity' or an arbitrary and unjust political reason."  Justice Mot. at 5; see Justice Reply at 4 ("[B]ecause the prosecution of Officer Sutton is a unicorn, there is ample evidence of prosecutorial abuse to justify discovery.").  As Mr. Sutton has maintained throughout this case, the murder charge brought against him is "a unicorn among the criminal cases brought by the [Department of Justice] against law enforcement officers."  Terence D. Sutton's Mot. to Modify Pleading Schedule [Dkt. No. 79] at 6.  He thus argues that he has presented "more than sufficient evidence" in support of his "abusive prosecution" claim.  Justice Mot. at 4; Justice Reply at 5.

Despite Mr. Sutton's unsubstantiated assertions about potential "political or racial animosity," Justice Mot. at 5, Mr. Sutton has not presented any evidence that the government's

decision to prosecute him is in fact unconstitutional; he only argues that the uniqueness of this

prosecution compels the conclusion that the U.S. Attorney's Office has abused its discretion in

bringing this case.  See id. at 3-4.  For the same reasons that the Court denied Mr. Sutton's

earlier motions to compel, the Court concludes that Mr. Sutton's claim of "abusive" prosecution

does not warrant production of the grand jury minutes.  See August Mot. to Compel Op. at *4

("[T]he purported uniqueness of the charges in this case is not itself a valid basis for compelling

disclosure."); see also United States v. Fokker Servs. B.V., 818 F.3d at 741 ("[F]ew subjects are

less adapted to judicial review than the exercise by the Executive of his discretion in deciding

when and whether to institute criminal proceedings, or what precise charges shall be made.")

(quoting Newman v. United States, 382 F.2d 79, 480 (D.C. Cir. 1967)).

### b.  Analysis Under Rule 6 of the Federal Rules of Criminal Procedure

Mr. Sutton contends that the only evidence the government presented about the

"commission or possible commission of a federal offense" element of the obstruction of justice

charge "is the admittedly hearsay testimony" of Special Agent Sean Ricardi and Internal Affairs

Division Agent Joseph Della Camera.  Justice Reply at 2.  Mr. Sutton argues that the

government's "failure of evidence on this element" supports his theory that the U.S. Attorney's

Office "abused its discretion" by charging him with federal obstruction of justice.  Id. at 1, 3;

Justice Mot. at 4.  He further insists that if the government had actually investigated this matter

as a potential federal civil rights offense, there would have been "simple and abundant" evidence

for the government to present at trial aside from the testimony of Special Agent Ricardi and

Agent Della Camera.  Justice Reply at 3.  Mr. Sutton moves the Court to order production of the

grand jury minutes "for review as to whether the government ever charged the grand jury with

investigating a federal civil rights offense."  Id. at 1.  The government opposes Mr. Sutton's

request for the grand jury minutes, arguing that Mr. Sutton has not demonstrated any

"particularized need" to overcome the presumption of grand jury secrecy, as required by Rule

6(e) of the Federal Rules of Criminal Procedure.  <u>See</u> Gov't Opp. at 20.

> Rule 6(e) states in pertinent part that:
>
> The court may authorize disclosure – at a time, in a manner, and subject to any other conditions that it directs – of a grand-jury matter:  (i) preliminarily to or in connection with a judicial proceeding; [and] (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.

FED. R. CRIM. P. 6(e)(3)(E)(i), (ii).  It is established that those seeking grand jury material under

Rule 6(e) have the burden of showing a "particularized need" for disclosure of the material

requested that outweighs the need for continued grand jury secrecy.  <u>See</u> <u>Douglas Oil Co. v.</u>

<u>Petrol Stops Northwest</u>, 441 U.S. 211, 222 & n.12 (1979); <u>Pittsburgh Plate Glass Co. v. United</u>

<u>States</u>, 360 U.S. 395, 400 (1959); <u>see</u> <u>also</u> <u>United States v. Wright</u>, 234 F. Supp. 3d at 47-48;

<u>United States v. Naegele</u>, 474 F. Supp. 2d at 10.

> "The 'particularized need' standard requires a showing that (1) the requested

materials are 'needed to avoid a possible injustice in another judicial proceeding; (2) the need for

disclosure is greater than the need for continued secrecy; and (3) the request is structured to

cover only material so needed.'"  <u>In re Capitol Breach Grand Jury Investigations Within the</u>

<u>District of Columbia</u>, 339 F.R.D. 1, 24 (D.D.C. 2021) (quoting <u>In re Sealed Case</u>, 801 F.2d 1379,

1381 (D.C. Cir. 1986)); <u>see</u> <u>United States v. Naegele</u>, 474 F. Supp. 2d at 10 ("particularized

need" requires a "factual basis," and "conclusory or speculative allegations of misconduct" do

not suffice); <u>United States v. Trie</u>, 23 F. Supp. 2d at 62 ("[M]ere suspicion that the grand jury

may not have been properly instructed" is insufficient to warrant "disclosure of grand jury

materials.").

Mr. Sutton's abuse-of-discretion allegations are insufficient to meet the "very demanding" standard for establishing a particularized need for grand jury materials. See United States v. Naegele, 474 F. Supp. 2d at 11; Justice Mot. at 4. He incorrectly assumes that "if the Government were indeed conducting a federal civil rights investigation, that information would be contained in the minutes of the grand jury proceedings where the grand jurors would be instructed on the nature of the charges under investigation." Justice Reply at 5. The government, however, may investigate possible federal civil rights offenses without asking a grand jury to return an indictment for any such offense – and, in any event, "a prosecution and conviction for obstruction of justice is not conditioned on a federal civil rights investigation or prosecution ever coming into fruition." April Mot. to Compel Op. at *7; see 18 U.S.C. § 1512(b)(3) (requiring proof at trial only of the "commission or possible commission of a federal offense") (emphasis added).

Mr. Sutton's request is no more than a "fishing expedition" for material that confirms his theory about the insufficiencies in the government's case. See United States v. Nguyen, 314 F. Supp. 2d 612, 617 (E.D. Va. 2004) (movant seeking grand jury materials did not establish "particularized need" where he argued "if all is well, then there is no problem, but if not, it should be known so that it can be addressed"); Justice Mot. at 5 ("Those minutes would show whether, in fact, the Government was ever of the belief that the facts of this case could possibly have a nexus with a federal civil rights investigation."). Without more, such speculation about how the government instructed the grand jury "does not warrant disclosure of the grand jury minutes." United States v. Saffarinia, 424 F. Supp. 3d 46, 81 (D.D.C. 2020). Mr. Sutton has failed to demonstrate a particularized need for grand jury materials under Rule 6(e) of the Federal Rules of Criminal Procedure.

## IV. CONCLUSION

In view of the foregoing discussion, it is hereby

ORDERED that Mr. Sutton's Motion to Compel Discovery Regarding Kevonn

Mason's Criminal Record [Dkt. No. 483] is DENIED; and it is

FURTHER ORDERED that Mr. Sutton's Motion to Compel Production of

Information Regarding Prosecutorial Abuse of Discretion [Dkt. No. 484] is DENIED.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 9|8|23