UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                        )
UNITED STATES OF AMERICA                )
                                                        )
           v.                                           )
                                                        )           Criminal No. 21-0598 (PLF)
TERENCE SUTTON                             )
      and                                              )
ANDREW ZABAVSKY,                         )
                                                        )
                         Defendants.            )
_____)

OPINION AND ORDER

After a nine-week trial, a jury convicted Defendant Terence Sutton of second

degree murder, conspiracy, and obstruction of justice, and Defendant Andrew Zabavsky of

conspiracy and obstruction of justice.  Trial began on October 25, 2022, when the government

delivered its opening statement.  Following opening statements, Mr. Sutton moved for a directed

verdict as to Count Two, Conspiracy, 18 U.S.C. § 371, and Count Three, Obstruction of Justice,

18 U.S.C. §§ 1512(b)(3), 2.  Mr. Zabavsky joined the motion.  Mr. Sutton and Mr. Zabavsky

argued orally and in supplemental briefs that insufficiencies in the government's opening

statement warranted the requested relief as to these counts.  The government opposed both

motions.  The Court denied both motions by Minute Order on November 10, 2022.

The government delivered its closing argument on December 14, 2022.

Following closing arguments, Mr. Sutton moved orally for dismissal of the indictment, alleging

that the government had presented a "forged" exhibit during its closing argument.  The Court

denied the motion but invited Mr. Sutton to renew his motion and submit additional argument

after the verdict.  Mr. Sutton renewed his argument following the guilty verdict, and he now

requests that the Court compel discovery and hold an evidentiary hearing related to the allegedly forged exhibit presented during the government's closing argument.

The following opinion explains the basis for this Court's denial of Mr. Sutton's and Mr. Zabavsky's challenges to the government's opening statement, as well as the basis for the Court's denial of Mr. Sutton's original and renewed requests to dismiss the indictment, for an evidentiary hearing, and for compelled discovery relating to the government's closing arguments.[1]

## I.  BACKGROUND

This opinion assumes familiarity with the case and therefore includes only the factual and procedural history that is relevant here.  See generally United States v. Sutton, 636 F. Supp. 3d 179, 189-190 (D.D.C. 2022).

---

[1]      Among the documents that the Court has considered in connection with the pending motions are the following:  Indictment [Dkt. No. 1]; Memorandum of Points and Authorities in Support of Motion to Dismiss for Insufficiencies in the Opening Statement ("Zabavsky Opening Mot.") [Dkt. No. 327]; Government's Brief Concerning Opening Statements ("Gov't Opening Opp.") [Dkt. No. 329]; Memorandum of Points and Authorities in Support of Motion for Directed Verdict ("Sutton Opening Mot.") [Dkt. No. 331]; Final Instructions to Jury ("Jury Instructions") [Dkt. No. 435]; Terence D. Sutton, Jr.'s Motion to Dismiss the Indictment for the Government's Presentation to the Jury of an Apparently Forged Exhibit and Closing Argument Related to the Allegedly Forged Exhibit ("Closing Mot.") [Dkt. No. 412]; Terence D. Sutton, Jr.'s Request for Hearing and Motion to Compel Discovery in Support of His Motion to Dismiss the Indictment for the Government's Presentation of a Forged Exhibit and Closing Argument Related to the Exhibit ("Renewed Closing Mot.") [Dkt. No. 440]; Government's Opposition to Defendant Sutton's Motions Regarding Government's Closing Argument ("Gov't Closing Opp.") [Dkt. No. 450]; Exhibit 1 of Government's Opposition to Defendant Sutton's Motions Regarding Government's Closing Argument ("Closing PowerPoint") [Dkt. No. 450-1]; and Terence D. Sutton, Jr.'s Reply to the Government's Opposition to His Request for Hearing and Motion to Compel Discovery in Support of His Motion to Dismiss the Indictment for the Government's Presentation of a Forged Exhibit and Closing Argument Related to the Exhibit ("Closing Reply") [Dkt. No. 454].  The Court also reviewed transcripts from the trial, which are cited as:  Trial Tr. [Date] [Time] [Page:Line].

On September 23, 2021, a grand jury returned an indictment charging Mr. Sutton with one count of murder in the second degree, in violation of D.C. Code § 22-2103, and charging both Mr. Sutton and Mr. Zabavsky, two Metropolitan Police Department ("MPD") officers, with conspiracy to obstruct justice, in violation of 18 U.S.C. § 371, and obstruction of justice, in violation of 18 U.S.C. §§ 1512(b)(3), 2.  See Indictment ¶¶ 29, 31, 50.  The indictment charges Mr. Sutton with second degree murder for his role in the vehicular chase that culminated in the death of Karon Hylton-Brown.  Id. ¶¶ 1-2, 10-13.  The indictment further alleges that Mr. Sutton and Mr. Zabavsky conspired to obfuscate "the circumstances of the traffic collision" and "to prevent an internal investigation of the incident and referral of the matter to federal authorities for a criminal civil rights investigation."  Id. ¶ 32; see id. ¶¶ 3, 35, 46-50.

## A. Opening Statement

This matter proceeded to trial, and counsel for the government delivered an opening statement to the jury on October 25, 2022.  In relevant part, counsel for the government stated in his opening:

> [I]n the aftermath of this fatal crash, [Mr. Zabavsky] conspired with Sutton to bury this all under a rock to avoid this very day. . . . [I]t was Zabavsky who helped [Mr. Sutton] sweep it all under the rug so we wouldn't be here today. . . .

Trial Tr. Oct. 25, 2022 a.m. at 46:12-20.

> The evidence will also prove beyond a reasonable doubt that Sutton and Zabavsky then agreed to cover up the murder by concealing the grievous nature of Hylton's injuries and the unauthorized pursuit that caused it.  And we will prove that they tried to prevent this information from ever reaching an independent investigator by deliberately failing to report Hylton's injuries to the MPD unit that investigates major crashes . . . .  That's what the evidence in this case will prove to you, a murder and a cover-[up]. . . .

Trial Tr. Oct. 25, 2022 a.m. at 47:5-21.

3

Now let's talk about the cover-up which began moments after the crash. . . . [R]ight away, [Zabavsky] and Sutton took steps to sweep this whole incident under the rug.  They wasted no time, and it started at the crash scene.  You will learn that at MPD, there is an outside unit called the Major Crash Unit, and they are responsible for investigating serious bodily injury and fatal crashes.  And they are supposed to be called as soon as you realize that somebody has a life-threatening injury. . . .   You will also learn that there is an outside unit at MPD called Internal Affairs Division or [IAD] that investigates officer misconduct including vehicular pursuits that result in serious bodily injury or death.  You will also learn that [IAD] refers matters to federal authorities when appropriate.  Neither defendant on this scene and for almost two hours ever made such a notification to either the Major Crash Unit or the Internal Affairs Division. . . .

Trial Tr. Oct. 25, 2022 a.m. at 57:1-22.

To achieve what Sutton and Zabavsky set out to do, they exercised complete control of the flow of information to senior MPD officials to make notifications to the Major Crash Unit and [IAD]. . . . [Mr. Sutton and Mr. Zabavsky] did not notify [IAD] or the Major Crash Unit so they could respond to the scene and start gathering evidence and begin investigations into the crash that involved MPD officers. . . .  They did not investigate this scene at all.  They shut it down as soon as possible, and in doing that derailed[] the routine triggers for independent and comprehensive investigation into a critical incident like this. . . .

Trial Tr. Oct. 25, 2022 a.m. at 57:23-25; id. at 58:1, 25; id. at 59:1-2, 18-21.

[Back at the Fourth District], Sutton and Zabavsky continued their obstruction making sure that the district's most senior officer on duty, Watch Commander Porter, was left in the dark. . . . Only when they received word from an officer at the hospital that Hylton was in critical condition and brain dead did Zabavsky return to Porter's office and tell him that anyone was ever injured at all.  Porter was shocked and immediately notified the Major Crash Unit and the Internal Affairs Division. . . .  [IAD] and the Major Crash Unit came to the scene even though it was hours after the crash, and they began their investigations . . . .  And as is routine when a police chase leads to a civilian's death, within hours, [IAD] had referred the matter for a federal investigation, which is why we are here today. . . .

Trial Tr. Oct. 25, 2022 a.m. at 61:7-10; id. at 62:10- 63:1-4.

> We are here today because Sutton killed Hylton, and Zabavsky
> helped him cover it up. . . .

Trial Tr. Oct. 25, 2022 a.m. at 64:10-11.

> We are also here because Sutton and Zabavsky conspired to cover
> up this murder. . . . A murder and a cover-up, that's why we are here
> today. . . .

Trial Tr. Oct. 25, 2022 a.m. at 65:6-7, 13.

After the government's opening statement, counsel for Mr. Sutton moved for a directed verdict, arguing that the government told the jury in its opening statement that "the conspiracy to obstruct was to cover up a murder and, of course, murder is not a federal offense." Trial Tr. Oct. 26, 2022 a.m. at 25:17-19. He continued: "[T]he failure of the government to identify evidence that they intend to adduce to prove that the investigation was into a federal offense requires the Court to direct a verdict on the conspiracy and obstruction counts for failure of evidence." Id. at 28:4-8; see id. at 29:18-22 ("Because the opening statement of the government does not include proof that there was a federal offense being obstructed, we're entitled to a directed verdict or dismissal of the obstruction [and] conspiracy counts."). Counsel for Mr. Zabavsky also moved for dismissal, arguing that the jury "didn't hear the proper statements related to the elements of the crime" in the government's opening statement. Id. at 37:12-13. Counsel for Mr. Sutton and counsel for Mr. Zabavsky both argued in the alternative that the D.C. murder count should be severed from the federal charges and tried separately. Id. at 28:22-25, 37:10-13.[2] The government responded that its opening statement was sufficient

---

[2]      In support of the motion to sever, counsel for Mr. Sutton argued: "Because the opening statement of the government does not include proof that there was a federal offense being obstructed, we're entitled to a directed verdict or dismissal of the obstruction [and] conspiracy counts. And in the alternative because [the prosecutor] has told the jury that the obstruction and conspiracy was to cover up the murder, we'd ask the Court to sever those counts because of the prejudice that has already occurred in front of the jury." Trial Tr. Oct. 26, 2022

because it contained references to "the federal investigation that was ultimately thwarted" as well as the referral of misconduct claims to federal investigators.  Id. at 30:20-21, 31:1-2.

Within a few days, the parties filed supplemental briefs on this issue.  On November 10, 2022, this Court denied Mr. Sutton and Mr. Zabavsky's motions by Minute Order.

### B.  Closing Argument

During its closing argument on December 14, 2022, the government used a PowerPoint presentation containing videos and photos excerpted from exhibits that had previously been admitted in evidence.  In the top right corner of each slide of the government's closing argument PowerPoint was a label explaining which exhibit the slide's content was derived from.  The government used the PowerPoint to display for the the jury maps of the neighborhood where the chase occurred, as well as body worn camera video from the officers who were seated in Mr. Sutton's vehicle during the chase.  After explaining how Mr. Sutton's

---

a.m. at 28:18-29:1.  Mr. Zabavsky joined in Mr. Sutton's argument and also suggested that severance of the murder charge from the conspiracy and obstruction of justice charges would be the proper remedy for the prosecutor's deficient opening statement.  Id. at 37:6-14.

At the Court's instruction, the parties filed additional briefing on this issue on October 27, 2022.  Although the Court did not formally deny the motions for dismissal and directed verdict until November 10, 2022, by that point the Court had effectively denied the motion to sever because trial was well underway on all three charges – murder, obstruction of justice, and conspiracy.  In their written submissions, neither Mr. Sutton nor Mr. Zabavsky has renewed their arguments for severance or provided any authority in support of their motions to sever.  See Sutton Opening Mot.; Zabavsky Opening Mot.

Mr. Sutton and Mr. Zabavsky do, however, reiterate their arguments that they were prejudiced by the prosecutor's persistent references to a "murder and a cover-up" during the government's opening statement in their motions for new trial filed under Rule 33 of the Federal Rules of Criminal Procedure.  See Andrew Zabavsky's Motion for a New Trial and Arrest of Judgment [Dkt. No. 448] at 11-12; Terence D. Sutton, Jr.'s Motion for a New Trial and Arrest of Judgment [Dkt. No. 449] at 7, 59.  The Court thus concludes that this issue is more appropriately addressed in the context of the pending Rule 33 motions, rather than as a motion to sever that has at this point been rendered moot.

6

decision to chase Mr. Hylton-Brown resulted in the collision and Mr. Hylton-Brown's death,

counsel for the government made the following arguments while showing the jury the following

slides:



Image 1:  Slide 18 of the government's PowerPoint.  <u>See</u> Closing PowerPoint at Slide 18.

> Sutton, like all MPD officers, was trained on how to exercise due
> regard during vehicular pursuits by mitigating unnecessary risks to
> the public.

Trial Tr. Dec. 14, 2022 a.m. at 30:2-4.



Image 2:  Slide 19 of the government's PowerPoint.  See Closing PowerPoint at Slide 19.

And so he, therefore, knew that the vehicular pursuit required him to have his lights and sirens activated.  He didn't do that.  He knew that he had to go over the main Fourth District radio channel to notify the central dispatcher, the watch commander, and all other officers in the area that he was in hot pursuit.  He didn't do that either.  Mr. Sutton was also very well aware that he had to proceed through intersections with caution, slowing down, if not stopping, even during hot pursuit.  You didn't see that on any of the body cam.  He was also aware, through the vehicular pursuit policy, that he had to keep a safe distance between him and the vehicle that he's pursuing.  You saw the video.  And that didn't happen either.  He was also aware not to flush the motorist into a roadway or into an object.  And that, ladies and gentlemen, couldn't be more crystal clear and obvious on the body cam.  He also knew as well that the vehicular pursuit policy expressly barred him from chasing anybody to enforce traffic violations.  It could not be more clear in that general order.  And so Sutton ignored each and every one of these requirements during his relentless pursuit of Mr. Hylton-Brown, and that's because he believed that he didn't need to follow it.  The vehicular pursuit general order was not something that he was interested in complying with.  The rules simply just didn't apply to him.

Trial Tr. Dec. 14, 2022 a.m. at 30:5-31:5.



Image 3:  Slide 20 of the government's PowerPoint.  See Closing PowerPoint at Slide 20.

> How do you know that?  Because he [Mr. Sutton], of all MPD
> officers, was especially knowledgeable about this particular general
> order.  If you'll recall, a little over a year before the crash, Sutton
> was involved in a vehicular pursuit that resulted in his reprimand by
> MPD.  That reprimand was for his failure to terminate a chase that
> resulted in a car accident involving property damage, and for using
> the 40 ops radio channel rather than the 4D main air radio channel
> to communicate about the pursuit.  And as a result of these
> violations, Sutton was required to re-review the vehicular pursuit
> general order.  So you know that Sutton knew better.

Trial Tr. Dec. 14, 2022 a.m. at 31:6-16.



Image 4:  Slide 21 of the government's PowerPoint.  See Closing PowerPoint at Slide 21.

> You also know that Sutton was trained about the extreme risks . . .
> when he drove in this manner.  For example, in one of the trainings
> he received, which you are actually looking at the very slide that he
> was looking at when he took the training, he was told about the rules
> of engagement about how you actually conduct a vehicular
> pursuit. . . .   The training itself says don't push.  Give the motorist
> room for error.  He didn't do that.

Trial Tr. Dec. 14, 2022 a.m. at 31:17-32:2.

Counsel for Mr. Sutton subsequently presented his closing argument.  During his closing, counsel for Mr. Sutton pointed out that Slide 19 of the government's PowerPoint was labeled "Gov't Ex. 413-G," the MPD training PowerPoint on General Order 301.03, Vehicular Pursuits.  See Trial Tr. Dec. 14, 2022 a.m. at 55:23-56:11; Closing PowerPoint at Slide 19.  But, counsel for Mr. Sutton explained, the government's Slide 19 – which contained a bulleted list of "vehicular pursuit requirements ignored" – appeared nowhere in the actual MPD training PowerPoint on vehicular pursuits.  See Trial Tr. Dec. 14, 2022 a.m. at 55:23-56:11; Closing PowerPoint at Slide 19; Gov't Ex. 413-G.  The following day, December 15, 2022, Mr. Sutton

filed a motion to dismiss the indictment on the ground that the government had presented a "forged" slide – Slide 19 – during its closing argument.  See Closing Mot. at 1.

The Court addressed this issue with the parties outside the presence of the jury on December 15, 2022.  The government explained that Slide 19 was a "demonstrative" that "summarize[ed] what [the prosecutor] was explaining to the jury was in the evidence."  Trial Tr. Dec. 15, 2022 a.m. at 6:24-7:11; see id. ("There is no suggestion in the transcript that this particular slide [Slide 19] was pulled from defendant Sutton's training.").  After hearing from the government and Mr. Sutton, the Court denied Mr. Sutton's motion to dismiss the indictment.  Id. at 22:2-8.  The Court reasoned that if Slide 19 was "a demonstrative that's not going back to the jury," then there would be no "basis to dismiss the indictment or to have an evidentiary hearing before the case goes to the jury for deliberations."  Id. at 10:22-11:5.  The Court explained that it would instruct the jury that the government's PowerPoint was not evidence and that it was just a tool "used by counsel to assist in presenting their arguments."  Id. at 22:9-14.  Following the jury verdict, Mr. Sutton renewed his motion to dismiss the indictment because of the "forged" exhibit.  See Renewed Closing Mot. at 1.  Mr. Sutton also requested that the Court order the government to produce discovery related to the creation of the closing argument PowerPoint and hold an evidentiary hearing to determine whether the "forged" exhibit warrants dismissal of the indictment.  Id. at 5.

## II.  PROSECUTOR'S OPENING STATEMENT

### A.  Legal Standard

A directed verdict or judgment of acquittal may be granted after the government's opening statement "only when the statement 'clearly and affirmatively' shows 'that the charge against the defendant cannot be sustained under any view of the evidence consistent with the

11

statement.'" <u>United States v. Oliver</u>, 570 F.2d 397, 400 (1st Cir. 1978) (quoting <u>McGuire v. United States</u>, 152 F.2d 577, 580 (8th Cir. 1945)).  <u>See also</u> <u>United States v. Donsky</u>, 825 F.2d 746, 751-52 (3d Cir. 1987) (collecting cases); <u>Webb v. United States</u>, 191 F.2d 512, 515 (10th Cir. 1951); <u>Rose v. United States</u>, 149 F.2d 755, 758-59 (9th Cir. 1945); <u>United States v. Dietrich</u>, 126 F. 676, 677 (8th Cir. 1904).  The standard applied in these cases does not appear to differ whether a defendant moves for dismissal, directed verdict, or judgment of acquittal.

An opening statement "has a narrow purpose and scope.  It is to state what evidence will be presented [and] to make it easier for the jurors to understand what is to follow . . . ." <u>United States v. Dinitz</u>, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring).  An opening statement "is not evidence and is merely for the assistance of the jury." <u>Webb v. United States</u>, 191 F.2d at 515.  Although a trial court may direct a verdict for a criminal defendant after the government's opening statement, the power to do so "is not properly exercised if the opening statement leaves doubt as to the facts or permits conflicting inferences." <u>Best v. District of Columbia</u>, 291 U.S. 411, 415 (1934).  Where an opening statement permits such "different conclusions" to be drawn, "the question is not one of law, but of fact to be settled by the jury." <u>Id</u>.  Moreover, the D.C. Circuit has held that a prosecutor's failure to restate the "precise language of the indictment" in his opening statement does not "prejudice the defendant or entitle him to a directed verdict at that point." <u>United States v. Dobbins</u>, 157 F.2d 257, 258-59 (D.C. Cir. 1946).  In sum, the case law makes clear that an opening statement may warrant dismissal or judgment of acquittal only when the statement clearly indicates that the evidence to be presented at trial would be insufficient to sustain a conviction.  <u>See, e.g.</u>, <u>Webb v. United States</u>, 191 F.2d at 515.

### B.  Discussion

### 1.  Elements of Obstruction of Justice

Mr. Sutton and Mr. Zabavsky move to dismiss the obstruction of justice and conspiracy charges, arguing that the government's opening statement failed to explain how Mr. Sutton and Mr. Zabavsky interfered in the investigation of a <u>federal</u> offense, thus failing to mention an essential element of the offenses charged.  <u>See</u> Zabavsky Opening Mot. at 4; Sutton Opening Mot. at 3.  Their argument is premised on their persistent misunderstanding of the obstruction of justice statute.  Both defendants suggest that the government must have established that an actual federal offense occurred in order to prosecute them for obstruction of justice.  Mr. Sutton argues that the "deficiency" in the government's opening statement "cannot be cured because the facts stated in the government's opening DO NOT make out a federal civil rights violation by any stretch of the law."  Sutton Opening Mot. at 3.  Mr. Zabavsky argues that "the government failed to establish any claim of an underlying offense, a necessary element of obstruction of justice."  Zabavsky Opening Mot. at 4.

This argument fails because proof of a federal offense is not required under the obstruction of justice statute.  For the jury to have convicted Mr. Sutton and Mr. Zabavsky of obstruction of justice, the government had the burden of proving beyond a reasonable doubt that: (1) they "engaged in misleading conduct, or attempted to do so" toward Metropolitan Police Department officials; (2) they acted knowingly; (3) they acted with the specific intent to hinder, delay or prevent the communication of information; (4) it was "<u>reasonably likely</u> that the information would have been communicated to a law enforcement officer of the United States"; and (5) the information "related to the commission or the <u>possible commission of a federal offense</u>."  <u>See</u> Jury Instructions at 30 (emphasis added); 18 U.S.C. § 1512(b)(3).  As the jury was

instructed, the government only needed to demonstrate the existence of a <u>possible</u> federal crime – not that any federal crime or federal investigation actually occurred.  <u>See</u> <u>United States v. Guadalupe</u>, 402 F.3d 409, 411 (3d Cir. 2005) ("[P]roving a violation of 18 U.S.C. § 1512(b)(3) does not depend on the existence or imminency of a federal investigation but rather on the possible existence of a federal crime and a defendant's intention to thwart an inquiry into that crime by officials who happen to be federal."); <u>United States v. Bailey</u>, 405 F.3d 102, 108 (1st Cir. 2005); <u>United States v. Sutton</u>, Crim. No. 21-0598, 2022 WL 1183797, at *8 (D.D.C. Apr. 21, 2022) (quoting <u>United States v. Ring</u>, 628 F. Supp. 2d 195, 220 (D.D.C. 2009)).

   Thus, contrary to Mr. Sutton and Mr. Zabavsky's arguments, <u>see</u> Sutton Opening Mot. at 3, Zabavsky Opening Mot. at 4, the government was not required to <u>prove</u> a federal civil rights violation or any federal offense either at trial or in its opening statement.  <u>See</u> Jury Instructions at 30-31.  As the Court repeatedly has stated, the government only needed to show that there was some information related to a <u>possible</u> federal offense that was reasonably likely to make its way to federal law enforcement officials, and that Mr. Sutton and Mr. Zabavsky intentionally acted to hinder communication of that information.  <u>See</u> <u>United States v. Sutton</u>, Crim. No. 21-0598, 2022 WL 1202741, at *7 (D.D.C. Apr. 22, 2022) ("[A] prosecution and conviction for obstruction of justice is not conditioned on a federal civil rights investigation or prosecution ever coming into fruition."); <u>United States v. Sutton</u>, Crim. No. 21-0598, 2022 WL 11744415, at *4 (D.D.C. Oct. 20, 2022) ("The obstruction of justice statute does not require that any [federal] civil rights investigation or offense actually have occurred let alone that one be pled in the indictment.") (internal quotations omitted); <u>United States v. Sutton</u>, Crim. No. 21-0598, 2022 WL 5827718, at *13 (D.D.C. Sept. 23, 2023) (government is not required to establish that a grand jury was asked to return an indictment for a civil rights offense to prove obstruction of

justice's federal nexus).  Mr. Sutton and Mr. Zabavsky's arguments that the indictment should be

dismissed because the government failed to state facts sufficient to establish a federal offense

during its opening statement misconstrue the government's burden as to obstruction of justice

and necessarily fail.

### 2.  The Government's Opening Statement Was Sufficient

Mr. Sutton and Mr. Zabavsky's related contention is that the government

established during its opening statement only that "Sutton and Zabavsky conspired to cover up

this murder," and that murder is not a "possible federal offense."  Trial Tr. Oct. 25, 2022 a.m.

at 65:6-7 (emphasis added); see Zabavsky Opening Mot. at 3-4.  Because, they say, the opening

statement focused only on a violation of the D.C. Code rather than on any potential federal

offense, Mr. Sutton and Mr. Zabavsky maintain that the opening statement was "not sufficient to

properly establish the elements of the [obstruction of justice and conspiracy] charges."  Zabavsky

Opening Mot. at 4; see id. at 3 (the prosecutor's statements that "the defendants were obstructing

a murder investigation . . . run directly counter to" the offenses charged in the indictment)

(emphasis added).  Because the government "affirmatively and exclusively established that the

underlying crime the defendants allegedly sought to obstruct the investigation into was the

murder," Mr. Sutton and Mr. Zabavsky argue that the obstruction of justice and conspiracy

charges should be dismissed.  Id. at 6 (emphasis added).

The Court disagrees with this characterization of the government's opening

statement.  Although the government did frequently state that this incident was a "murder and a

cover-up," the opening statement did not establish that this incident was exclusively a murder

and a cover-up of that murder.  Perhaps the government's repeated assertions of "a murder and a

cover-up" understated the government's theory of guilt on the obstruction of justice and

conspiracy charges, but that language alone does not preclude the government from establishing federal obstruction of justice.  See Best v. District of Columbia, 291 U.S. at 416 (denying motion for directed verdict where plaintiff's opening statement "permitted an inference in petitioner's favor"); United States v. Oliver, 570 F.2d 397, 400 (1st Cir. 1978) (affirming denial of motion for directed verdict where, in opening statement, "some" of the government's "proposed evidence was outlined in detail, while some of it was mentioned but not described").  Despite the government's frequent use of the language "a murder and a cover-up," the jury could infer from the entirety of the opening statement that evidence would be produced showing that Mr. Sutton and Mr. Zabavsky acted with the purpose of obstructing the communication of information related to some potential federal offense in addition to D.C. Code offenses.  This is particularly true considering the rest of the government's opening statement, which contained multiple references to how MPD misconduct cases are routinely referred to federal authorities when civilians are killed.  See Trial Tr. Oct. 25, 2022 a.m. at 57:15-19; id. at 63:1-4.  The government's opening statement in this case did not "fail[] to establish . . . any charge upon which a conviction could emerge."  Zabavsky Opening Mot. at 7.

The government alluded to a potential investigation by federal authorities and explained the role of the Internal Affairs Division ("IAD") in referring cases to the United States Attorney's Office for federal investigation.  See Trial Tr. Oct. 25, 2022 a.m. at 57:15-19 (prosecutor told the jury that IAD "investigates officer misconduct" and "refers matters to federal authorities when appropriate").  The government also explained in detail the allegations of Mr. Sutton's and Mr. Zabavsky's misleading behavior, which resulted in several hours of delay before IAD was notified about this incident.  See id. at 59:11-64:9.  And the government established that IAD routinely refers cases like this for investigation by federal authorities.  Id.

at 63:1-4.  Although the opening statement certainly made reference to obstruction of an investigation into a possible murder, a D.C. Code offense, the government's references in the opening statement to a federal investigation also permitted the inference that Mr. Sutton and Mr. Zabavsky endeavored to hinder an investigation into possible federal offenses as well.  See Best v. District of Columbia, 291 U.S. at 415.  From the government's opening statement alone – and with all doubts resolved in favor of the government as is required on a motion for judgment of acquittal or directed verdict – it was not at all clear that the government's evidence would fail to substantiate a federal obstruction of justice or conspiracy conviction.  See United States v. Oliver, 570 F.2d at 400 (judgment of acquittal after opening statement appropriate only where "the charge against the defendant cannot be sustained under any view of the evidence") (quoting McGuire v. United States, 152 F.2d at 580); 2A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 462 (4th ed. 2022).

### III.  PROSECUTOR'S CLOSING ARGUMENT

#### A.  Legal Standard

It is "well established 'that the prosecutor may not refer in the opening or closing statement to evidence not admitted at trial.'"  United States v. Davis, 863 F.3d 894, 901 (D.C. Cir. 2017) (quoting United States v. Valdez, 723 F.3d 306, 209 (D.C. Cir. 2013)); see United States v. Small, 74 F.3d 1276, 1282 (D.C. Cir. 1996).  Closing arguments "must be confined to 'facts which are in evidence and the reasonable inferences therefrom,'" and a prosecutor may "draw inferences from evidence that support the government's theory of the case so long as the prosecutor does not intentionally misrepresent the evidence."  United States v. McGill, 815 F.3d 846, 916 (D.C. Cir. 2016) (quoting United States v. Jones, 482 F.2d 747, 753 (D.C. Cir. 1973) and United States v. Moore, 651 F.3d 30, 53 (D.C. Cir. 2011)); see United States v. Earle, 375

F.3d 1159, 1163 (D.C. Cir. 2004) (prosecutor must not "propound[] inferences that it knows to

be false or has very strong reason to doubt") (quoting United States v. Blueford, 312 F.3d 962,

968 (9th Cir. 2002)).  "[I]mproper prosecutorial argument" may require vacating a conviction

where a defendant is "sufficiently prejudiced."  United States v. Davis, 863 F.3d at 901.  The

Court considers three factors when assessing whether prosecutorial misstatements during closing

arguments require the Court to vacate the judgment of conviction:  "(1) the closeness of the case,

(2) the centrality of the issue affected by the error, and (3) the steps taken to mitigate the effects

of the error."  Id. (quoting United States v. Small, 74 F.3d at 1280).

### B.  Discussion

#### 1.  The Government's Closing Argument PowerPoint was Misleading

Mr. Sutton argues that that Slide 19 of the PowerPoint the government presented

to the jury during its closing argument "was labelled and purported to be a slide from the

government Exhibit 413-G," and that it was "represented as a page of an MPD training document

admitted into evidence."  Renewed Closing Mot. at 1; see Trial Tr. Dec. 15, 2022 a.m. at 16:3-8

("[The government] represented to us and to the jury that [Slide 19] was a part of Government

Exhibit 413-G, and it followed a previous page from the same exhibit which represents it as a

part of Officer Sutton's training.").  He reasons that the slide must be "forged" because "the

concept of 'flushing' a suspect into a roadway" did not appear in the legitimate MPD training

exhibits that were admitted and was not referenced during the testimony of Officer Carolyn

Totaro, the government's expert witness on MPD vehicle training.  See Closing Mot. at 5;

Closing Reply at 1 ("The word 'flush' is nowhere in the exhibit [Government Exhibit 413-G];

yet it was used in some form or another by [the prosecutor] [five] times in closing.").  Mr. Sutton

argues that the "flushing" language was "powerful evidence" that was "snuck into a PowerPoint,

and the jury was misled to believe that this was a page of [Government Exhibit] 413-G."  Trial Tr. Dec. 15, 2022 a.m. at 14:11-13.

   Mr. Sutton is correct that Slide 19 of the government's closing argument PowerPoint does not appear in Government Exhibit 413-G, the PowerPoint used in connection with the MPD vehicular pursuit training.  The entire MPD training PowerPoint was admitted in evidence as Government Exhibit 413-G – including the first slide, which the government presented on Slide 18 of its closing argument PowerPoint.  <u>See</u> Gov't Ex. 413-G at Slide 1.  By contrast, Slide 19 of the closing argument PowerPoint was not a part of the MPD training PowerPoint admitted as Government Exhibit 413-G.  The government acknowledges this fact but represents that Slide 19 was purely a "demonstrative," which accurately "summarized the vehicle pursuit requirements in the MPD general orders" and "did not mischaracterize the MPD general orders."  Closing Opp. at 2.  The government further notes that the Court gave a curative instruction, telling the jury that "[t]he evidence in this case consists of the sworn testimony of the witnesses, and the exhibits that were admitted into evidence.  It does not include . . . . demonstratives, including PowerPoints, that were used in opening statements and closing arguments."  Jury Instructions at 5; <u>see</u> Closing Opp. at 4; Trial Tr. Dec. 15, 2022 a.m. at 22:9-14 (the Court informed counsel it would instruct the jury that "opening statements and closing are not evidence" and that "demonstratives are not going back to the jury because they themselves are not evidence").

   The Court agrees with Mr. Sutton that Slide 19 was misleading.  Slide 19 was immediately preceded by Slide 18, which contained a screenshot of the first slide of the MPD training PowerPoint.  Both slides bore the same "Gov't Ex. 413-G" label.  Nowhere in the prosecutor's closing argument did he explain that Slide 19 was only a "demonstrative" that

19

contained information <u>derived</u> from Government Exhibit 413-G.  Instead, the government

presented Slide 18 and Slide 19 one after the other, labeling both as "Gov't Ex. 413-G."  Thus,

the jury could easily have concluded, when they looked at Slide 19, that they were looking at a

slide from the MPD training PowerPoint rather than at a demonstrative exhibit created by the

government.  <u>See</u> Gov't Ex. 413-G.  The manner in which the government presented Slide 19

strongly suggested to the jury that Mr. Sutton in fact saw Slide 19 during his training.  This

suggestion was inaccurate and inconsistent with the evidence at trial.

### 2. Mr. Sutton Was Not Prejudiced

Although Slide 19 was misleading, the Court does not agree with Mr. Sutton that

dismissal is an appropriate remedy or that an evidentiary hearing or compelled discovery is

warranted.  Closing Mot. at 1; Renewed Closing Mot. at 5.  Nor does the Court endorse Mr.

Sutton's characterization of Slide 19 as an intentional "forgery."  <u>See</u> Closing Mot. at 1.  The

government did not submit its closing PowerPoint in evidence or even attempt to do so; it

therefore is inaccurate to describe Slide 19 as a "forged <u>exhibit</u>."  <u>See</u> <u>id.</u>; Renewed Closing Mot.

at 1.  And, although Slide 19 was confusingly presented as if it were part of the MPD training

PowerPoint introduced in evidence as Government Exhibit 413-G, the content of Slide 19 – the

bullet point statements listed under the title "Vehicular Pursuit Requirements Ignored" –

accurately reflected the content of the training PowerPoint that <u>was</u> admitted in evidence.

Government Exhibit 413-G – the MPD police training material used to explain

MPD General Order 301.03 on Vehicular Pursuits – explains that officers in pursuit shall:

"activate all emergency equipment" and "turn on the headlights regardless of the time of day,"

<u>see</u> Gov't Ex. 413-G at Slide 22; "immediately notify the dispatcher" and "maintain constant

communications with the dispatcher as the pursuit progresses," <u>see</u> <u>id</u>. at Slide 18; "slow to the

20

maximum legal speed limit before entering [an] intersection," see id. at Slide 21; "maintain a safe distance between their vehicle and the fleeing vehicle," see id. at Slide 18; and "shall not intentionally cause physical contact between their vehicle and the fleeing vehicle, nor force the suspect vehicle into another object or off the roadway." See id. at Slide 13.  It further instructs that officers "are prohibited from pursuing a vehicle for the purpose of effecting a stop for a traffic violation." See id. at Slide 16.  Instead of showing the jury five different slides from Government Exhibit 413-G to convey the substance of the entire training PowerPoint, the government reduced the key takeaways into six bullet points, which it presented to the jury in Slide 19 – according to the government, a "summary demonstrative."  One of the bullet points stated:  "Do not flush into a roadway." See Closing Opp. at 2; Closing PowerPoint at Slide 19.

"A misstatement of evidence is error when it amounts to a statement of fact to the jury not supported by proper evidence introduced during trial." United States v. Watson, 171 F.3d 695, 700 (D.C. Cir. 1999).  Slide 19 of the government's closing argument PowerPoint purported to paraphrase and summarize the MPD training PowerPoint.  But it was confusingly labeled, and the prosecutor made little effort to explain to the jury that what they were seeing on Slide 19 was not what Mr. Sutton actually saw during his training.  Nevertheless, the Court concludes that Slide 19 did not "misstate" the government's evidence.  Each of the assertions contained on Slide 19 was supported by the content of the slides that were in fact included in the MPD training PowerPoint, which was admitted in evidence as Government Exhibit 413-G.

Mr. Sutton specifically decries the government's decision to use the "flushing" language in Slide 19 and throughout its closing argument.  Contrary to Mr. Sutton's contentions, however, the government's "flushing argument" was not a "far cry from any other information contained in the training materials." Closing Reply at 1.  General Order 301.03 on vehicular

pursuits and the vehicular pursuits training PowerPoint specifically direct officers that they "shall not . . . force the suspect vehicle into another object or off the roadway."  Gov't Ex. 413-G at Slide 13; Gov't Ex. 401-D (MPD General Order 301.03).  Furthermore, Officer Carolyn Totaro testified that MPD officers are trained not to "push" fleeing suspects, meaning that officers should not "force [suspects] into [places] where [officers] want them to stop or where [officers] need them to be."  Trial Tr. Nov. 15, 2022 p.m. at 20:1-10; see id. at 21:2-8 (Officer Totaro explained that MPD officers learn that if they are "pushing" suspects, meaning if "police are directly behind them and they're seeing lights and sirens . . . or feel like they're being pursued," then fleeing suspects "are going to go faster to try to evade").

Thus, although the "flushing" language included on Slide 19 does not appear in the MPD training PowerPoint, it was consistent with the evidence admitted at trial.  That Mr. Sutton knew not to flush a suspect into oncoming traffic is a "reasonable inference" that the prosecutor was permitted to argue to the jury based on the evidence admitted.  United States v. Jones, 482 F.2d at 753; see United States v. Moore, 651 F.3d at 53 (a prosecutor may "draw inferences from evidence that support the government's theory of the case").  The text contained in Slide 19 therefore did not amount to "impermissible inference[s]," United States v. Earle, 375 F.3d at 1163, or references to "evidence not admitted at trial."  United States v. Davis, 863 F.3d at 901.

The Court finds that, while the presentation of Slide 19 during the government's closing argument was misleading, it did not prejudice Mr. Sutton.  The "steps taken to mitigate the effect" of the misleading slide in the closing argument PowerPoint, United States v. Davis, 863 F.3d at 901, outweigh the other considerations outlined in Davis.  See supra at 18.  The jury did not have access to the government's closing argument PowerPoint during its deliberations; it

only had access to the exhibits actually admitted in evidence, including Government Exhibit 413-G.  If the jury was confused about whether Slide 19 appeared in the MPD training PowerPoint that Mr. Sutton saw during his training, the jury could review Government Exhibit 413-G in its entirety and could easily determine that Slide 19 did not appear in that presentation.  And the jury was specifically instructed that "the evidence properly admitted in this trial" did not include "demonstratives, including PowerPoints, that were used in opening statements and closing arguments."  Jury Instructions at 5.  The misleading presentation of Slide 19 thus was sufficiently mitigated.  See United States v. Davis, 863 F.3d at 901; United States v. Valdez, 723 F.3d at 209 (finding no substantial prejudice where district court instructed jury that it could "only consider" what was "admitted into evidence at trial and that the arguments of counsel were not evidence"); cf. United States v. Earle, 375 F.3d at 1165 ("With respect to 'the measures adopted to cure the misconduct,' there simply was none."); see also Trial Tr. Dec. 15, 2022 a.m. at 22:3-8 ("Prejudice has been sufficiently mitigated.").

       Mr. Sutton also contends that the Court should not credit the prosecutor's in-court representations that Slide 19 was only a demonstrative exhibit.  See Closing Reply at 1.  He argues that these "hearsay explanations" are not to be believed.  Id.; see Renewed Closing Mot. at 4.  The Court is not persuaded by Mr. Sutton's assertions that statements from one prosecutor to another are "hearsay" statements that the Court should exclude or discount for the purpose of determining whether the government misrepresented the evidence during its closing argument.  Despite Mr. Sutton's persistent allegations of bad faith, the Court also is not persuaded that the government's misleading presentation of Slide 19 was was intentional.  See Closing Mot. at 1-2.  Moreover, even if the government had intentionally designed Slide 19 to mislead the jury, the

Court nonetheless concludes that Mr. Sutton was not prejudiced by the government's closing argument PowerPoint.

   The Court has also compared Slide 19 with Slides 18 and 21 of the government's closing argument PowerPoint, which in fact contain material from MPD training presentations that Mr. Sutton saw during his training.  See Closing PowerPoint at Slide 18, Slide 21.  These slides contain images of the training material – screenshots of slides pulled directly from MPD training PowerPoints and inserted into the government's closing PowerPoint – whereas Slide 19 contains only text.  Despite Mr. Sutton's assertion that Slide 19 is "identical in background color to the legitimate exhibit," see Closing Reply at 1, Slide 19 is clearly distinct from the other two slides that depicted MPD training material.  These aesthetic differences support the government's explanation that Slide 19 was a demonstrative exhibit – albeit a misleading one – and that the government never intended to pass off Slide 19 as some kind of "forgery."

## IV.  CONCLUSION

   For the reasons stated in this Opinion, Mr. Sutton's Motion for Directed Verdict [Dkt. No. 331] was denied, Mr. Zabavsky's Motion to Dismiss for Insufficiencies in the Opening Statement [Dkt. No. 327] was denied, and Terence D. Sutton, Jr.'s Motion to Dismiss the Indictment for the Government's Presentation to the Jury of an Apparently Forged Exhibit and Closing Argument Related to the Allegedly Forged Exhibit [Dkt. No. 412] was denied. Furthermore, for the reasons stated in this Opinion, it is hereby

ORDERED that Terence D. Sutton, Jr.'s Request for Hearing and Motion to Compel Discovery in Support of His Motion to Dismiss the Indictment for the Government's Presentation of a Forged Exhibit and Closing Argument Related to the Exhibit [Dkt. No. 440] is DENIED.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 10/3/23