UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 21-cr-598-PLF |
| | : | |
| v. | : | |
| | : | |
| TERENCE SUTTON and | : | |
| ANDREW ZABAVSKY | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S OPPOSITION TO TERENCE SUTTON'S
ELEVENTH MOTION TO COMPEL DISCOVERY**

Fashioning misconduct allegations out of whole cloth, defendant Terence Sutton demands discovery concerning an unrelated criminal prosecution in this District by incorrectly claiming it constitutes *Brady* material and by falsely asserting its relevance under U.S.S.G. § 5K2.10. Defendant's claim is meritless and represents yet another thinly-veiled attempt to delay his sentencing hearing. His motion should be swiftly denied.

**I.     RELEVANT BACKGROUND**

This case arises from an October 23, 2020, incident in which defendant Sutton, who was on-duty as a Metropolitan Police Department (MPD) Crime Suppression Team (CST) officer, used an undercover MPD squad car to engage in an unauthorized vehicle pursuit of Karon Hylton-Brown, who was riding a rental moped. The chase ended after defendant Sutton followed Hylton-Brown into an alley, turned off his squad car's emergency lights and siren, and accelerated behind Hylton-Brown. When Hylton-Brown reached the street at the mouth of the alley he was fatally struck by an oncoming motorist. Defendant Sutton and his commanding lieutenant, co-defendant Andrew Zabavsky, then worked together to cover up the circumstances of Hylton-Brown's death and defendant Sutton's cause of it.

A.     Discovery Concerning Hylton-Brown's Associations with KDY

1

The grand jury returned an indictment against both defendants on September 23, 2021, and the Court set the case for trial in October 2022. During the discovery period, in response to defendant Sutton's numerous discovery demands, the government obtained and produced extensive information concerning Hylton-Brown's background. This included, among other things, producing his complete criminal history report and all MPD reports concerning him. In addition—and despite the fact that such evidence would be irrelevant to the charged crimes—the government searched within the U.S. Attorney's Office for any information concerning Hylton-Brown in relation to the Kennedy Street Crew (KDY), a local street gang, beyond anything already included in the produced MPD files. This included reviewing the closed paper files at the U.S. Attorney's Office concerning Hylton-Brown's prior cases to see if they contained any such information. It also included conducting an office-wide inquiry within the U.S. Attorney's Office (including both the Superior Court and District Court divisions) concerning any such information. The prosecution team also conducted specific follow-up with the U.S. Attorney's Office units that could have conceivably been pursuing relevant investigations concerning KDY. These efforts, which concluded shortly before the trial in this case, identified no additional relevant information. As such, there was nothing further to disclose concerning Hylton-Brown's involvement with KDY.

In response to the instant motion and the defense discovery demand, undersigned counsel has communicated with the prosecutors handling the prosecution of alleged KDY members that is referenced in the defendant's motion, *United States v. Olugbenga et al.*, 23-cr-202 (BAH). That team has searched its case files for information concerning Hylton-Brown. The only information they found pertaining to him is contained in an undated excel spreadsheet prepared in connection with the investigation. Consistent with information already known to the defense pre-trial, it included Hylton-Brown on a list of "Other Members & Associates" of KDY, the fact that he is

2

deceased and the circumstances of his death, his date of birth and other personally identifying information, and the fact of the instant prosecution.[1]  It also identified a potential Instagram account for Hylton-Brown ("streetmoney448k") that was preserved by law enforcement in May 2022, more than 18 months after he died.  The prosecution team confirmed that they did not seek legal process to obtain the content of that account in their investigation.

   B. <u>Pre-trial Evidentiary Hearing Concerning Hylton-Brown's Associations with KDY</u>

  Despite the dearth of information connecting Hylton-Brown to KDY activity on the night of his death, the defendant has consistently attempted to manufacture such an association to excuse his own actions and to provide an excuse for having engaged Hylton-Brown in the fatal pursuit.  Prior to trial, the defendant moved to admit such evidence for this purpose.  ECF 257.  The government simultaneously moved to exclude this evidence for lack of a proper foundation that linked it to any relevant fact in issue—namely, the defendant's state of mind on the night of the pursuit.  ECF 261.  Untethered to the defendant's state of mind, the introduction of any such inflammatory evidence would be irrelevant, prejudicial, and an attempt at jury nullification.  ECF 261, at 3-7.  At oral argument on these motions, the Court agreed that the defense had failed to show any evidentiary foundation supporting admission of this highly prejudicial evidence and set an evidentiary hearing to further explore the issue.  *See* Sept. 28, 2022 Hrg. Tr., at 60:1-63:15 ("The proffer will not do, because this is so prejudicial.  Call the officers who will testify. . . We'll have them all in here.  Everyone that is going to support the admissibility of this evidence.").

  On October 14 and 17, 2022, the Court conducted an exhaustive evidentiary hearing to allow the defense to lay a proper foundation to admit this evidence at trial, specifically by

---

[1] This portion of the spreadsheet also contains brief notes which are non-discoverable because they are privileged work product.  Accordingly, no description of the content of these notes is included here.

connecting it to the defendant's state of mind when he engaged in the fatal pursuit. *See* Oct. 14, 2022 Evid. Hrg. Tr., at 3:12-23 ("Based on the what the defense argument was I agreed with the government that they had not laid any evidentiary foundation for any of the evidence they proposed to admit"). Over two days, the defense called six witnesses and presented numerous exhibits but still failed to establish any connection between Hylton-Brown, KDY, and the defendant's policing decisions on the night of the fatal pursuit. The Court therefore excluded the evidence at trial. Oct. 24, 2022 Mot. Hrg. Tr., at 6:15-:-9:6 (excluding this evidence); *id*. at 7:10-14 ("And even if I found it [the evidence presented concerning MPD's "beat book"] reliable, credible, and probative and non-hearsay, none of which I can find, I would find it highly prejudicial. The same with gang databases and so-called validation of alleged gang members.").

***

Despite this procedural history—and the defendant's repeated failure to establish any connection whatsoever between Hylton-Brown, KDY's activities, and the defendant's decision to chase him to his death—the defendant now asserts that he is entitled to the complete set of discovery concerning KDY from the wholly separate, on-going prosecution of KDY members in *United States v. Olugbenga et al.*, 23-cr-202 (BAH) under *Brady*, as possible support for a myriad of other motions that would seek to overturn the jury's verdict, and as relevant evidence of victim misconduct under U.S.S.G. § 5K2.10. ECF 560 at 1. He also, again, seeks an evidentiary hearing. For the reasons stated above and that follow, his motion is meritless and should be denied.

## II. LEGAL STANDARD

Under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, the government must disclose all evidence favorable to the defense. This obligation requires the government to take affirmative steps to identify such evidence. See *United States v. Safavian*, 233 F.R.D. 12, 17

(D.D.C. 2005) ("Under Brady, the prosecutors have an affirmative duty to search possible sources of exculpatory information . . . ."). Because the right to exculpatory information is a trial right, *United States v. Ruiz*, 536 U.S. 622, 623 (2002) (recognizing this right "as part of the Constitution's 'fair trial' guarantee" under the Fifth and Sixth Amendments), the Supreme Court has recognized that while "the term '*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence . . . strictly speaking, there is never a real '*Brady*' violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

To establish a *Brady* violation, a defendant must show (1) that the evidence at issue was exculpatory, (2) that the evidence was suppressed by the government, and (3) that "prejudice must have ensued." *Strickler*, 527 U.S. at 282. Absent any one of these three elements there is no *Brady* violation. *See United States v. Mason*, 951 F.3d 567, 575 (D.C. Cir. 2020) ("We hold that [the defendant] has failed to demonstrate prejudice from the government's belated disclosure and that his *Brady* claim thus fails."). To establish prejudice for this purpose, the defendant must show "a reasonable probability" of a different outcome had the disclosure been made sooner. *Mason*, 951 F.3d at 573. "Mere speculation" of such prejudice "is not sufficient" to meet this element. *Mason*, 951 F.3d at 573; id. at 573-74 ("Hypothesizing that certain information, had it been disclosed to the defense, might have led [defense] counsel to conduct additional discovery that might have led to some additional evidence that could have been utilized is disfavored." (quotation marks omitted)). Rather, an affirmative showing of how an earlier disclosure would have helped the defendant is required. *Mason*, 951 F.3d at 575; *see Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60

5

(1987) ("Defense counsel has no constitutional right to conduct his own search of the States' files to argue relevance.").

### III.  ARGUMENT

Based on nothing more than the fact of an unrelated criminal prosecution of members of KDY, the defendant makes wild accusations that the government has misrepresented the facts about Hylton-Brown throughout the duration of this case and suppressed *Brady* evidence. These claims are recycled and remain baseless. They provide no ground for any discovery, nor for an evidentiary hearing or any further delay in moving this case forward to sentencing. There is also no ground for discovery of this material under U.S.S.G. § 5K2.10.

First, the defendant's claim of improperly suppressed evidence rests entirely on defense counsel's own baseless assumptions about how the government handled discovery here, and it is contradicted by the facts. *See* ECF 560 at 5-6 (alleging a *Brady* violation because, "[b]ased on defense counsel's professional experience as a former prosecutor and defense counsel, it is very likely that the Government is sitting on additional information not publicly disclosed that is favorable to Officer Sutton within the meaning of *Brady*."). As explained above, as part of its routine discovery practice prior to trial, the prosecution team reviewed the MPD files concerning Hylton-Brown and searched the U.S. Attorney's Office for additional information linking Hylton-Brown to KDY. The relevant information identified was produced to the defense. A recent review of the *Olugbenga* file found only one reference to him, as described in Part I.A, *supra*. Regardless of what defense counsel may believe to be "very likely," his assumptions about the government's approach to discovery in this matter are simply wrong. Defendant counsel's reckless accusations provide no basis for further discovery on these issues.

Second, the defendant's motion still provides no ground for the relevance of any KDY-related information from the on-going prosecution in *Olugbenga,* an investigation that commenced *after* Hylton-Brown's death, much less any demonstration of its exculpatory nature or any prejudice he has suffered, as required to show a *Brady* violation. *See Strickler*, 527 U.S. at 282 (requiring a threshold showing of exculpatory evidence, suppression, and prejudice to establish a *Brady* violation). The defendant's motion appears to assert that somehow the presence of KDY members at the crash scene, and the fact that the defendant had arrested some of them on other occasions, provides a justification for the defendant's decision to recklessly chase Hylton-Brown to his death, and further mitigates his appropriate punishment. ECF 560, at 7-8 (asserting that "[s]everal of those indicted were on the scene . . . [and] appeared on police body-worn camera at the scene of the crash," that "Ofc. Sutton at one time or another had arrested at least 12 of them," and that "the criminal background of those on the scene is relevant to consideration of their efforts to interfere with the police . . . [and] is relevant to sentencing"). He makes similar arguments concerning a host of other information that he speculates could be contained within the *Olugbenga* file: KDY social media posts depicting guns and drugs, locations near the pursuit path where KDY sold drugs, evidence concerning the use of firearms by KDY members, and possible text messages among KDY members concerning Hylton-Brown's death. ECF 560 at 9, 14, 15, 16. These claims lack logic or any support in the law. Just as at trial, absent some link between Hylton-Brown, this alleged KDY activity, and the defendant's decision-making before engaging in the fatal pursuit—of which, to date, the defendant has identified none—this evidence remains as irrelevant to sentencing as it was at trial.

Third, the defendant's effort to seek discovery to re-litigate prior decisions of this Court and the jury's verdict should be rejected. The defendant claims that purported similarities in the

7

circumstances under which MPD initiated a *Terry* stop of one of the *Olugbenga* defendants and the defendant's attempt to stop Hylton-Brown here constitutes favorable, previously undisclosed evidence that justifies the discovery he seeks. ECF 560 at 11-13. This argument is nonsensical. As an initial matter, the legality of a *Terry* stop is a complex, highly fact-specific inquiry; any superficial similarities the defendant may claim to see are far from determinative. *See United States v. Edmonds*, 240 F.3d 55, 60 (D.C. Cir. 2001) ("the question of whether reasonable suspicion existed can only be answered by considering the totality of the circumstances as the officer on the scene experienced them"). Regardless, whether or not an attempted *Terry* stop in another case was legally justified has no bearing on the legality of the police pursuit Sutton engaged in here. The circumstances concerning the defendant's basis for trying to pull over Hylton-Brown were extensively addressed pre-trial and at trial, including during witness examinations and in closing arguments, and the jury ultimately rejected defendant Sutton's explanation of events. This discovery request seeks wholly irrelevant information targeted only at re-litigation of these issues, and should thus be rejected. Moreover, having already litigated these issues extensively, the defendant can show no prejudice. *See Mason*, 951 F.3d at 573 (requiring "a reasonable probability . . . that the result of the proceeding would have been different" to establish prejudice).

      Finally, the defendant's claims that this information is relevant to the potential application of U.S.S.G. § 5K2.10 is unavailing, and instead illustrates his wholesale refusal to accept responsibility for his conduct or to acknowledge that the rule of law applies to him. Section 5K2.10 allows a sentencing court to reduce a defendant's sentence "[i]f the victim's wrongful conduct contributed significantly to provoking the offense behavior." U.S.S.G. § 5K2.10. This provides no basis for the relief sought. As an initial matter, this provision is inapplicable to defendant

Sutton's Second-Degree Murder conviction under D.C. law because it only applies to sentences calculated under the Federal Sentencing Guidelines, while binding D.C. Circuit precedent holds that D.C. Code convictions are governed solely by the D.C. Voluntary Guidelines Manual. *United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016) ("the federal Sentencing Guidelines do not apply to the sentencing of D.C. offenses"). In addition, even if § 5K2.10 could be applied here (which it cannot, as a matter of law), the facts of this case render it inapplicable: throughout the course of this litigation, the defendant has repeatedly failed to show any evidentiary link between Hylton-Brown, KDY, and the defendant's decision to engage in the fatal pursuit, let alone any evidence that wrongful conduct by Hylton-Brown concerning KDY "provoked" the defendant's reckless pursuit of him. While this argument is unsurprising given the defendant's consistent claim that Hylton-Brown caused his own death, it provides no ground for the discovery he seeks here and is wholly contrary to the jury's verdict.

## IV.     CONCLUSION

Grounded in nothing more than speculation, defendant Sutton once again seeks to manufacture claims of improperly suppressed discovery. The facts belie his claims. His motion to compel discovery and hold an evidentiary hearing should be denied, and this case should remain on track for sentencing as currently scheduled.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Risa Berkower*
ELIZABETH ALOI
DC Bar No. 1015864
RISA BERKOWER
NY Bar No. 4536538
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D St., N.W.
Washington, D.C. 20532
Phone: (202) 252-7212 (Aloi)
      (202) 252-6782 (Berkower)
Email: Elizabeth.Aloi@usdoj.gov
      risa.berkower@usdoj.gov