# GENERAL ORDER



**DISTRICT OF COLUMBIA**

| Title | | |
|---|---|---|
| **Vehicle Pursuits** | | |
| Topic | Series | Number |
| **OPS** | **301** | **03** |
| Effective Date | | |
| **December 30, 2021** | | |
| Replaces | | |
| GO-OPS-301.03 (Vehicular Pursuits), Effective Date February 25, 2003 | | |
| Related to | | |
| GO-SPT-302.05 (Radio Communications) | | |
| GO-RAR-901.07 (Use of Force) | | |
| Rescinds | | |
| Listed in Part IV. Rescission | | |

| I. | Purpose | Page | 1 |
|---|---|---|---|
| II. | Procedures | Page | 1 |
| II.A. | Vehicle Pursuit Policy | Page | 1 |
| II.B. | Fleeing Suspects | Page | 2 |
| II.C. | Vehicle Pursuit Operations | Page | 3 |
| II.D. | Oversight and Termination | Page | 5 |
| II.E. | Pursuits into Outside Jurisdictions from the District of Columbia | Page | 6 |
| II.F. | Pursuit into the District of Columbia from Outside Jurisdictions | Page | 7 |
| II.G. | Pursuit Investigations | Page | 8 |
| III. | Definitions | Page | 9 |
| IV. | Rescission | Page | 10 |

## I.     PURPOSE

Vehicle pursuits may present a danger to the public, Metropolitan Police Department (MPD) members, and involved suspects. When a member is engaged in a vehicle pursuit, the overriding responsibilities are the protection of human life and property. Members shall exercise caution and operate their vehicle in a safe manner while engaged in a vehicle pursuit. It is the policy of MPD to regulate the manner in which vehicle pursuits are undertaken and performed. The purpose of this general order is to establish guidelines and procedures for members to follow when faced with a pursuit situation.

## II.    PROCEDURES

A.     Vehicle Pursuit Policy

1.     Members may engage in a vehicle pursuit to apprehend a fleeing felon **only** when every other reasonable means of affecting the arrest or preventing the escape have been exhausted **and:**

a.     The suspect fleeing poses an immediate threat of death or serious bodily injury to the member or others; **or**

b.  There is probable cause to believe the crime committed or attempted involved an actual or threatened attack which resulted in or could have resulted in death or serious bodily injury; and

(1)  There is probable cause to believe the subject committed, or attempted to commit, the crime; **and**

(2)  Failure to immediately apprehend the person places a member or the public in immediate danger of death or serious bodily injury; **and**

(3)  The lives of innocent people will not be endangered if the fleeing felon is pursued.

2.  Members **shall not** pursue a vehicle for the sole purpose of affecting a stop for a traffic violation.

3.  Members who initiate a vehicle pursuit shall exercise all caution and operate their vehicle in a safe manner while engaged in the pursuit. As the pursuit progresses, pursuing units and monitoring officials shall continually evaluate and assess the actual conditions of the pursuit in deciding whether to continue or discontinue the vehicle pursuit.

4.  Members involved in a vehicle pursuit shall not intentionally cause physical contact between their vehicle and the fleeing vehicle, nor shall the member attempt to force the vehicle into another object or off the roadway.

5.  The use of roadblocks is prohibited. The only exception to this rule is in cases involving imminent threat of death or serious bodily injury, when no other options are feasible.

6.  MPD members **shall not** participate in a vehicle pursuit initiated by other law enforcement agencies operating within the District of Columbia or a vehicle pursuit initiated by officers of outside jurisdictions, which enters or terminates in the District of Columbia. This does not preclude members from assisting in a non-pursuit support capacity during the pursuit and at the termination point.

7.  Members shall not engage in a pursuit when transporting a prisoner or when a civilian (e.g., ride along) is in the vehicle.

8.  Members shall immediately terminate a pursuit when ordered by a department official.

B.  Fleeing Suspects

1.  When a fleeing subject has committed an offense for which a vehicle pursuit is **not** authorized, the member shall:

| Fleeing Suspects |
| --- |
| a. Provide a description of the vehicle and attempt to obtain the tag number; |
| b. Attempt to obtain a description of the operator; |
| c. Contact the dispatcher and request that he or she broadcast a lookout to surrounding jurisdictions to which the fleeing offender may be proceeding; and |
| d. Conduct an investigation of the incident and obtain a warrant so that the offender can be apprehended and prosecuted. |

2.     When a fleeing subject has committed an offense for which a vehicle pursuit is not authorized, members are permitted to pursue suspects on foot or on a mountain bike.

C.     Vehicle Pursuit Operations

Once a vehicle pursuit has been initiated in compliance with this general order, members and officials who are engaged in the pursuit shall observe the following procedures:

1.     The primary unit shall immediately notify the Office of Unified Communications (OUC) dispatcher via the radio zone where the pursuit was initiated and articulate the reason for the pursuit.

2.     The OUC dispatcher will:

   a.     Announce that a pursuit is taking place and that the watch commander or other monitoring official (ranked lieutenant or above from the originating district) is needed to monitor the pursuit.

   b.     Assign no more than two additional department vehicles to join the pursuit: the secondary unit and a supervisor from the organizational element to which the pursuit vehicles are assigned. The dispatcher will voice a command to the effect that no other vehicles shall participate in the pursuit, unless specifically authorized to do so by the watch commander.

   c.     Record all incoming information relating to the pursuit and perform relevant records and vehicle checks in an attempt to identify the owner and or the violator.

   d.     Determine whether a helicopter is available to respond, and if airborne assistance becomes available, the helicopter shall only assist the primary and secondary units with the fleeing vehicle's direction of travel.

   e.     Notify other mobile units, as necessary, of the pursuit in progress.

3.     Upon notification of the pursuit, the watch commander or monitoring official shall voice over the radio permission to pursue or direct pursuing units to terminate the pursuit.  The watch commander or monitoring official shall continuously monitor radio transmissions to determine whether the pursuit should be continued or terminated and approve the assignment of

additional backup units to assist the primary and secondary units, when necessary.

4. Only the primary, secondary, and supervisory units are permitted to engage in a pursuit, unless the watch commander or monitoring official allows additional units to assist in the pursuit.

5. A pursuing unit shall maintain constant communication with the dispatcher as the pursuit progresses, and provide the dispatcher with the number, suspected crime(s) and location, suspect's direction of travel, suspect's vehicle information, number of vehicle occupants, any available suspect descriptions, and pursuing unit's approximate speed and direction of travel.

6. Members shall operate department vehicles as emergency vehicles when engaged in pursuits and:

   a. Activate all emergency equipment, turn on the headlights regardless of the time of day, and ensure that seat belts are securely fastened.

   b. Open both front windows so that the driver can hear other units responding to the area and to avoid a collision.

   c. When operating as a primary pursuit unit, use the wail position on the electronic siren selector and when operating as a secondary pursuit unit, use the yelp position.

   d. Not operate department vehicles at speeds where they cannot control the vehicle, thereby endangering lives. Pursuing members shall monitor their speed and only travel at a speed that is justifiable based on the specific circumstances and conditions.

   e. Maintain a safe distance between their vehicle and the fleeing vehicle, to ensure that there is enough reaction time, should the fleeing vehicle suddenly turn or brake.

   f. Comply with the following traffic regulations:

| Traffic Regulations |
| --- |
| (1) When approaching an intersection controlled by electric signal devices, stop before entering the intersection when facing a red signal, slow to the maximum legal speed limit when a green signal or a flashing yellow signal is displayed, and stop before entering an intersection where four-way pedestrian walk signals are displayed. |
| (2) When approaching an intersection controlled by a stop sign, stop before entering the intersection. |
| (3) When approaching an uncontrolled intersection or an intersection controlled by yield signs, slow to the maximum legal speed limit before entering the intersection and comply with all other requirements applicable to uncontrolled intersections or intersections controlled by yield signs. |

g. When operating a motorcycle equipped as an authorized emergency vehicle, a patrol wagon that is not transporting prisoners, or an unmarked vehicle equipped with emergency devices, members may initiate and continue a vehicle pursuit, until a marked unit joins the pursuit; at which time, members shall immediately discontinue their participation, continue to monitor the pursuit, and proceed to the termination point, with appropriate authorization, to process any necessary reports and arrests.

h. When not in uniform or operating an unmarked vehicle, take enforcement action only after requesting the assistance of a marked vehicle. Once the marked vehicle has arrived on the scene the pursuit shall be discontinued.

7. The primary unit shall immediately notify the OUC dispatcher when the pursuit is entering another jurisdiction. The watch commander or monitoring official shall approve or disapprove pursuits that enter into another jurisdiction and ensure that units are in compliance with the law.

8. In cases involving crashes, the secondary unit will disengage from the pursuit to provide medical assistance and take reports of injuries and property damage. The watch commander or monitoring official shall respond to all scenes where injury and property damage occur as a result of the vehicle pursuit and ensure that the Major Crash Unit and Internal Affairs Division (IAD) are notified to respond in cases where a pursuit involves a fatality.

9. The Major Crash Unit shall be the primary investigative unit in vehicle pursuits involving a pursuit fatality occurring in the District of Columbia. The investigation of vehicle pursuits involving MPD members where the fatality occurs outside of the District of Columbia shall be handled by the local law enforcement agency. IAD shall conduct administrative investigations of all vehicle pursuits that involve a fatality regardless of where the fatality occurred.

D. Pursuit Oversight and Termination

1. The pursuit shall be continually assessed to determine whether it should be continued, taking into account the associated risk it presents to the member and the public.

2. A decision to continue or terminate a pursuit may be made by the primary unit, watch commander, or monitoring official. This does not replace the obligation to adhere to a lawful order given by an official.

3. Conditions under which a vehicle pursuit shall be terminated include, but are not limited to:

| Pursuit Termination Conditions |
|---|
| a. When it becomes apparent that the vehicle pursuit could lead to unnecessary property damage, injury to persons or members of the department; |
| b. The pursuit is in close proximity to schools and hospitals and other locations |

|   |   |
|---|---|
|   | with high pedestrian or vehicular activity; |
| c. | When the distance between the pursuing member and the violator's vehicle is so great that the pursuing member loses sight of the violator and it becomes futile to continue the pursuit; |
| d. | The violator is identified so that a warrant can be obtained for his or her arrest, and failure to apprehend does not pose an immediate threat of death or serious injury to another person; |
| e. | When the time of day and locations are heavy with vehicular and pedestrian traffic; or |
| f. | At any point that the circumstances of the pursuit change in such a way that the pursuit is occurring in violation of this order. |

4. When it is apparent that a vehicle pursuit should be terminated, the member shall notify the dispatcher and broadcast the suspect's direction and method of travel. If known, a description of the suspect, a lookout for the vehicle, including the tag number and its description shall be included in the broadcast.

5. The watch commander or monitoring official shall secure the location where the pursuit terminates, in order to assist with the preliminary investigation and in the event the incident turns into a foot or bicycle pursuit.

E. Pursuits into Outside Jurisdictions from the District of Columbia

1. The Code of Maryland § 2-305 (Authority of officers of other states to arrest in this state) and Code of Virginia § 19.2-79 (Arrests by officers of other states of the United States) provide that law enforcement officers may enter in fresh pursuit in order to arrest a person on the grounds that he or she is believed to have committed a felony in the pursuing officer's jurisdiction and that the pursuing member has the power to arrest and hold subjects in custody. Apprehended suspects shall be taken before a judge without unnecessary delay for a hearing to determine the lawfulness of the arrest.

2. In fresh pursuit situations, when a pursuit enters another jurisdiction, a pursuing member shall notify the dispatcher and request authorization from the watch commander to proceed into the adjoining jurisdiction. OUC will notify the neighboring jurisdiction of the incoming pursuit.

3. If pursuit authorization is granted, as soon as possible, the member shall allow the pursuing unit from the outside jurisdiction to assume responsibility for the pursuit and discontinue the pursuit. The member shall de-activate all emergency warning devices and continue to monitor the pursuit, via the radio if possible, and proceed to the termination point to identify the suspect and the vehicle.

4. The OUC supervisor will monitor the pursuit and the OUC dispatcher will notify the outside jurisdiction dispatcher that the pursuit has crossed their boundary, and for maintaining liaison, via the Police Mutual Aid Radio System (PMARS), with any jurisdiction that is involved or may become involved.

5.      If the situation culminates in the apprehension of a fleeing felon, the initiating MPD member shall place the suspect in the custody of the officer from the outside jurisdiction as a fugitive from justice and inform that officer of the crime the suspect will be charged with in the District of Columbia and the intent to request extradition of the suspect.

6.      Felons apprehended in Virginia, Maryland, or any other state **shall not** be returned to the District of Columbia without being processed through the criminal justice system of the state where he or she was apprehended, in accordance with the legal procedures applicable to that jurisdiction. This requirement does not apply to deputized United States Marshal's Service Capital Area Regional Fugitive Task Force (CARFTF) members who are able to sign extradition waivers.

7.      If a felon wants to voluntarily return to the District of Columbia, he or she shall be taken before a local court judge or justice of the peace by the arresting officer from the outside jurisdiction for the purpose of executing a waiver. When the felon does not want to return voluntarily, members shall place the felon in the custody of the officer from the outside jurisdiction and apply for a warrant in the District of Columbia.

8.      The MPD member shall contact the United States Attorney's Office (USAO) in the District of Columbia to begin the extradition process. Once authorization has been granted, members shall notify the holding agency of the outside jurisdiction by:

     a.      Preparing a teletype message to be forwarded to the arresting jurisdiction, including the name and description of the defendant, date, charge, and approved arrest warrant to hold the defendant; and

     b.      Providing the assistant USAO with the arrest affidavit. Upon approval of the warrant, the assistant USAO will handle all further matters concerning the return of the wanted subject.

F.      Pursuits into the District of Columbia from Outside Jurisdictions

1.      A law enforcement officer from another jurisdiction may enter the District of Columbia in pursuit in order to arrest a person on the grounds that he or she is believed to have committed a felony in the pursuing officer's jurisdiction. The pursuing officer has the same authority to arrest the person and hold him or her in custody as MPD members.

2.      When a member of a law enforcement agency, other than MPD initiates a vehicle pursuit, the OUC dispatcher will:

     a.      Advise mobile units, as appropriate, of the general direction and progress of the pursuit, as well as any other pertinent information;

     b.      If the pursuit terminates in the District of Columbia, designate two mobile units and one supervisory vehicle to respond to the

termination point to assist the pursuing law enforcement officer with the apprehension; and

    c.    If the pursued vehicle is lost, broadcast the necessary lookout information to assist other mobile units in locating the vehicle and possible suspects.

3.    In cases where a suspect being pursued by an officer from an outside jurisdiction is apprehended, the suspect may be charged with any crimes committed in the District of Columbia, regardless of other actions taken in the case.

4.    MPD members who respond to assist an officer from an outside jurisdiction and discover that the crime for which the suspect was pursued was not a felony shall assist the law enforcement officer pursuant to GO-SPT-304.01 (Field Contacts, Stops, and Protective Pat Downs). If there is no probable cause to arrest the suspect, the suspect shall be permitted to leave.

5.    The arrested subject shall be taken before a DC Superior Court judge, without unnecessary delay, for a hearing to determine the lawfulness of the arrest. Persons arrested in the District of Columbia, whether by an MPD member or an officer of another jurisdiction, **shall not** be permitted to be removed from this jurisdiction without being extradited through the DC Superior Court. This requirement does not apply to CARFTF members who are able to sign extradition waivers.

6.    Members apprehending a felony suspect in a fresh pursuit shall process the arrest in the same manner as any other fugitive from justice arrest and enter the name of the outside agency, classification of the crime associated with the pursuit, and outside agency's case number on the arrest report. In fresh pursuit situations, the outside law enforcement agency will not have had enough time to apply for and receive an arrest warrant so warrant numbers will not be available. The case number generated when dispatching a radio run shall be used for reference purposes.

G.    Pursuit Investigations

1.    The facts and circumstances of **all** vehicle pursuits involving MPD vehicles shall be investigated to determine whether the pursuit was conducted in compliance with department policy.

2.    The watch commander or monitoring official shall gather the facts from all the members involved in the pursuit as soon as practical at the end of each pursuit and submit the completed PD Form 845 (Vehicle Pursuit Report) to the element commanding official by the end of the shift.

3.    In all cases involving deadly force, serious use of force, or any force indicating potential criminal conduct, the involved members shall not be

compelled to make a statement (including interviews that are recorded by video or audio) until one of the following occurs:

    a.    The United States Attorney's Office (USAO) has issued a written declination; or

    b.    The element watch commander receives approval from the on-call IAD official (the rank of lieutenant or above) to issue a reverse *Garrity* warning.

4.    Upon completion, the watch commander shall submit the PD Form 845 directly to the chief of police at cop.admin@dc.gov with copies to the Internal Affairs Bureau (IAB) assistant chief at iab@dc.gov, the involved member's chain of command officials, and the official's administrative captain. The watch commander or monitoring official shall also ensure that all completed PD Forms 845 are attached to the PD Form 150 (Watch Commander's Report) prior the end of the watch commander's shift.

5.    An IAD official (the rank of captain or above) shall determine whether IAD or the pursuing member's chain of command is responsible for investigating the pursuit. In chain of command investigations, the element commanding official shall assign a non-involved element official, the rank of captain or above, to conduct an investigation into the facts and circumstances.

6.    The investigating member shall:

    a.    Based on the facts and circumstances, document one of the following findings:

| Findings |
| --- |
| The pursuit was within MPD policy |
| The pursuit violated MPD policy |

    b.    Determine whether the member requires tactical improvement endeavors or formal retraining.

    c.    Provide additional recommendations related to areas for policy and training improvements, risk management issues, equipment concerns, and areas for member improvement that do not require formal retraining.

7.    Pursuant to GO-RAR-901.07, the Use of Force Review Board (UFRB) shall conduct a documented review of all vehicle pursuit investigations involving a fatality.

## III.    DEFINITIONS

When used in this directive, the following terms shall have the meanings designated.

| | Term | Definition |
|---|---|---|
| 1. | Emergency vehicle | Department vehicle equipped with the operable emergency warning devices. Marked vehicles have identifiable department logos and are equipped with a siren and a beacon light mounted on the roof. Unmarked vehicles that do not have any identifiable markings, but are equipped with a siren and a portable emergency beacon light. |
| 2. | Fresh pursuit | Hot pursuit that crosses the boundary of the District of Columbia, entering into Maryland, Virginia, or another jurisdiction. |
| 3. | Hot pursuit | In progress vehicle pursuit occurring in the District of Columbia. |
| 4. | Monitoring official | Official (the rank of lieutenant or above) from the district where the vehicle pursuit originated, who is actively monitoring the pursuit. |
| 5. | Primary unit | First police unit that initiates a vehicle pursuit or any unit that assumes control of the pursuit. |
| 6. | Probable cause | Set of facts, circumstances, or reliable information that would lead a reasonable and prudent police officer to believe that a crime has been committed, or is about to be committed, and that a certain person committed it. |
| 7. | Reasonable | Fair, proper, or moderate under the circumstances. Determining whether a member has behaved reasonably is an objective standard whereby the court will consider the circumstances, not the intent of the actor. |
| 8. | Secondary unit | Police unit that becomes involved as a backup to the primary unit. |
| 9. | Serious bodily injury | Extreme physical pain, illness, or impairment of physical condition including physical injury that involves: a substantial risk of death; protracted and obvious disfigurement; protracted loss or impairment of the function of a bodily member or organ; or protracted loss of consciousness. |
| 10. | Vehicle pursuit | Attempt by a law enforcement officer in an emergency vehicle to apprehend a suspect who is actively attempting to elude apprehension while operating a motor vehicle. |

## IV.   RESCISSION

**Rescinds:**
EO-16-010 (Cobalt: Fugitive from Justice Arrests Resulting from Fresh Pursuit), Effective Date September 30, 2016
GOC-07-04 [(GO-OPS-301.03) (Vehicular Pursuits)], Effective Date May 4, 2007
TT-03-062-08 (Vehicular Pursuit Guidelines), Issued March 19, 2008

Robert J. Contee III
Chief of Police

RJC:KDO:MOC:CMD:SMM