UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES * | |
| * | |
| v. * | Case No. 21-cr-598-PLF |
| * | |
| TERENCE D. SUTTON and * | |
| ANDREW ZABAVSKY, * | |
| * | |
| Defendants. * | |

**TERENCE D. SUTTON, JR.'S NOTICE OF FILING COUNSEL'S
OUTLINE FOR USE AT THE SENTENCING HEARING**

Terence D. Sutton, Jr., through counsel, respectfully submits the attached outline of counsel J. Michael Hannon's presentation at the hearing today on the sentencing guidelines applicable to this case. This outline is submitted to assist the Court and counsel at today's hearing.

Respectfully submitted,

HANNON LAW, PLLC

*s/J. Michael Hannon*
J. Michael Hannon, #352526
2101 L Street, NW
Suite 300
Washington, DC 20037
Tel: (202) 365-5561
jhannon@hannonlawpllc.com

                         _/s/_____
                         **CARMEN D. HERNANDEZ**
                         Bar No. MD 03366
                         7166 Mink Hollow Rd
                         Highland, MD  20777
                         (240) 472-3391
                         Chernan7@aol.com

                         *Attorneys for Defendant Terence Sutton, Jr.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the instant Notice was served via ECF on all counsel of record this 10th day of September, 2024.

                         ___*s/J. Michael Hannon*____
                         J. Michael Hannon, #352526

UNITED STATES v. TERENCE D. SUTTON, JR.

Sentencing Hearing before The Honorable Paul L. Friedman
September 10, 2024

COUNT I – Murder in the Second Degree

*The District of Columbia Sentencing   Commission*



*Voluntary Sentencing Guidelines Manual September 1, 2023*

THE NATIONAL MOVEMENT TO REDUCE
DISAPARITIES IN SENTENCING FOR SIMILAR
CRIMES AMONG DIFFERENT COURTS AND JUDGES

The D.C. Guidelines are the product of careful and data-driven study of actual sentences in the Superior Court for the District of Columbia up to 2004. The sentencing ranges were determined by ignoring 25% of all sentences at the top end of severity and the 25% of sentences at the bottom of the severity scale. The core 50% is then utilized with other data to form the range for a particular sentence.

1

## THE CORRESPONDING MOVEMENT TO
## TAYLOR SENTENCES TO THE INDIVIDUAL OFFENDER

The second criteria for determining a "guidelines" appropriate sentence is the defendant's criminal history. Officer Sutton is at the lowest end.

### APPENDIX A – MASTER GRID
August 2023 -- Sentencing Ranges Listed in Months

|  | Ranking Group / Most Common Offenses | Criminal History Score ||||| 
|---|---|---|---|---|---|---|
|  |  | to ½ **A** | ¾ to 1¾ **B** | 2 to 3¾ **C** | 4 to 5¾ **D** | 6 + **E** |
| **3 Points*** | **Group 1**<br>1st degree murder w/armed<br>1st degree murder | 360 - 720 | 360 - 720 | 360 - 720 | 360 - 720 | 360 + |
|  | **Group 2**<br>2nd degree murder w/armed<br>2nd degree murder<br>1st degree sex abuse<br>1st degree sex abuse w/armed | 144 - 288 | 156 - 300 | 168 - 312 | 180 - 324 | 192 + |
|  | **Group 3**<br>Voluntary manslaughter w/armed<br>1st degree child sex abuse<br>Carjacking while armed<br>Assault with intent to kill w/armed<br>Armed burglary I | 90 - 180 | 102 - 192 | 114 - 204 | 126 - 216 | 138 + |
|  | **Group 4**<br>Aggravated assault w/armed<br>Voluntary manslaughter | 48 - 120 | 60 - 132 | 72 - 144 | 84 - 156 | 96 + |
|  | **Group 5**<br>PFCOV<br>Armed robbery<br>Burglary I<br>Obstruction of justice<br>Assault with intent to kill | 36 - 84 | 48 - 96 | 60 - 108 | 72 - 120 | 84 + |
| **2 Points*** | **Group 6**<br>ADW<br>Robbery<br>Aggravated assault<br>2nd degree child sex abuse<br>Assault with intent to rob | 18 - 60 | 24 - 66 | 30 - 72 | 36 - 78 | 42 + |
|  | **Group 7**<br>Burglary II<br>3rd degree sex abuse<br>UPF-PCOV<br>Negligent homicide<br>Attempt 2nd degree sex abuse | 12 - 36 | 18 - 42 | 24 - 48 | 30 - 54 | 36 + |
| **1 Point*** | **Group 8**<br>Carrying a pistol (CPWL)<br>UUV<br>Attempt robbery/burglary<br>UPF [43]<br>1st degree theft<br>Assault w/significant bodily injury | 6 - 24 | 10 - 28 | 14 - 32 | 18 - 36 | 22 + |

2

| | |
|---|---|
| The Government Request | 216 Months |
| Presentence Report Writer Recommendation | 144 Months |
| Officer Sutton Request | Non-Custodial Sentence |

### D.C. MURDER II SENTENCES FROM 2014 to 2023

Our study of these 52 cases reveals that the majority were originally charged as First Degree Murder w/Armed or Felony Murder w/Armed.

This data is helpful only to demonstrate that there is no criminal prosecution in Superior Court similar to that of Officer Sutton.

The Government reports to the Court a "comparator case" for sentencing on the Murder II count, *United States v. David Jones*, affirmed by the D.C. Court of Appeals in Case No. 19-CF-744 (DCCA, Oct. 14, 2021). Mr. Jones was sentenced to 8 years incarceration.

### THE GUIDELINES ARE VOLUNTARY

Judges have discretion to impose any lawful sentence. There are no sanctions for failing to follow the Guidelines, although the Court is required to explain why it imposed a noncompliant sentence.

### DISCRETION FOR INDIVIDUAL OFFENDERS

The bedrock principles underlying the development of the Guidelines was that like offenses/defendants should be sentenced alike and different offenses/defendants should be sentenced differently. However, the Guidelines preserve the judge's discretion to take into account factors other than the offense of conviction and the Criminal History of the defendant in imposing a Guidelines compliant sentence.

3

**COUNTS 2 AND 3 – Conspiracy to Obstruct of Justice**

# UNITED STATES SENTENCING COMMISSION
# GUIDELINES MANUAL 2023



**Guideline Calculation**

**Base Offense Level Computation**
**Count 2 Conspiracy and Count 3 Obstruction of Justice:**

Counts 2 and 3 begins with **§ 2X1.1. (**Conspiracy).

**§ 2X1.1. Attempt, Solicitation, or Conspiracy**

(a) Base Offense Level: The base offense level from *the guideline for the substantive offense*, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty.

The substantive offense for Conspiracy, according to the Government's Objections to the First Draft PSR, is "only obstruction" which included a charge of Aiding and Abetting, 18 USC § 2.

4

The Guidelines for Aiding and Abetting state: "The offense level is the same level as that for the underlying offense." USSG § 2X2.1. (Aiding and Abetting). Therefore, the Court need only look to the Guidelines for Obstruction of Justice as the "substantive offense" for Conspiracy.

### § 2J1.2. Obstruction of Justice

The base offense level for Obstruction of Justice is 14. None of the Specific Offense Characteristics for Obstruction of Justice apply. The Cross Reference for Obstruction of Justice states: "If the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, *if the resulting offense level is greater than that determined above*." § 2J1.2(c)(1).

### § 2X3.1 Accessory After the Fact

(a) Base Offense Level:

(1) **6** *levels lower than the offense level for the underlying offense*, except as provided in subdivisions (2) and (3). The remaining provisions of § 2X3.1 do not apply. The Government states that the substantive offense of the Conspiracy is Obstruction. Since the offense level for Obstruction of Justice is 14, application of USSG § 2X3.1(a)(1) results in a base offense level of 8.

Officer Sutton's position is that the Base Offense Level is 8.

### THE GOVERNMENT'S POSITION

The PSR Writer and the Government follow the analysis above until they apply USSG 2X3.1(a)(1), which they say leads to an "underlying offense" of a civil rights violation. Then applying USSG § 2H1.1(a)(1) (Civil Rights), they identify the "underlying offense" as Second Degree Murder, presumably because they view it as "the Greatest" base offense level from among the four options under (1)(a). The PSR Writer and the Government then jump immediately to apply USSG § 2A2.1 (Second

5

Degree Murder) resulting in a base offense level of 38 reduced to 30 by application of USSG § 2X3.1(a)(3)(A).

This in turn takes us to the U.S. Sentencing Guidelines Table:

| Offense Level | Criminal History Category (Criminal History Points) | | | | | |
|---|---|---|---|---|---|---|
| | **I** (0 or 1) | **II** (2 or 3) | **III** (4, 5, 6) | **IV** (7, 8, 9) | **V** (10, 11, 12) | **VI** (13 or more) |
| 1 | 0–6 | 0–6 | 0–6 | 0–6 | 0–6 | 0–6 |
| 2 | 0–6 | 0–6 | 0–6 | 0–6 | 0–6 | 1–7 |
| 3 | 0–6 | 0–6 | 0–6 | 0–6 | 2–8 | 3–9 |
| 4 | 0–6 | 0–6 | 0–6 | 2–8 | 4–10 | 6–12 |
| 5 | 0–6 | 0–6 | 1–7 | 4–10 | 6–12 | 9–15 |
| 6 | 0–6 | 1–7 | 2–8 | 6–12 | 9–15 | 12–18 |
| 7 | 0–6 | 2–8 | 4–10 | 8–14 | 12–18 | 15–21 |
| 8 | 0–6 | 4–10 | 6–12 | 10–16 | 15–21 | 18–24 |
| 9 | 4–10 | 6–12 | 8–14 | 12–18 | 18–24 | 21–27 |
| 10 | 6–12 | 8–14 | 10–16 | 15–21 | 21–27 | 24–30 |
| 11 | 8–14 | 10–16 | 12–18 | 18–24 | 24–30 | 27–33 |
| 12 | 10–16 | 12–18 | 15–21 | 21–27 | 27–33 | 30–37 |
| 13 | 12–18 | 15–21 | 18–24 | 24–30 | 30–37 | 33–41 |
| 14 | 15–21 | 18–24 | 21–27 | 27–33 | 33–41 | 37–46 |
| 15 | 18–24 | 21–27 | 24–30 | 30–37 | 37–46 | 41–51 |
| 16 | 21–27 | 24–30 | 27–33 | 33–41 | 41–51 | 46–57 |
| 17 | 24–30 | 27–33 | 30–37 | 37–46 | 46–57 | 51–63 |
| 18 | 27–33 | 30–37 | 33–41 | 41–51 | 51–63 | 57–71 |
| 19 | 30–37 | 33–41 | 37–46 | 46–57 | 57–71 | 63–78 |
| 20 | 33–41 | 37–46 | 41–51 | 51–63 | 63–78 | 70–87 |
| 21 | 37–46 | 41–51 | 46–57 | 57–71 | 70–87 | 77–96 |
| 22 | 41–51 | 46–57 | 51–63 | 63–78 | 77–96 | 84–105 |
| 23 | 46–57 | 51–63 | 57–71 | 70–87 | 84–105 | 92–115 |
| 24 | 51–63 | 57–71 | 63–78 | 77–96 | 92–115 | 100–125 |
| 25 | 57–71 | 63–78 | 70–87 | 84–105 | 100–125 | 110–137 |
| 26 | 63–78 | 70–87 | 78–97 | 92–115 | 110–137 | 120–150 |
| 27 | 70–87 | 78–97 | 87–108 | 100–125 | 120–150 | 130–162 |
| 28 | 78–97 | 87–108 | 97–121 | 110–137 | 130–162 | 140–175 |
| 29 | 87–108 | 97–121 | 108–135 | 121–151 | 140–175 | 151–188 |
| 30 | 97–121 | 108–135 | 121–151 | 135–168 | 151–188 | 168–210 |
| 31 | 108–135 | 121–151 | 135–168 | 151–188 | 168–210 | 188–235 |
| 32 | 121–151 | 135–168 | 151–188 | 168–210 | 188–235 | 210–262 |
| 33 | 135–168 | 151–188 | 168–210 | 188–235 | 210–262 | 235–293 |
| 34 | 151–188 | 168–210 | 188–235 | 210–262 | 235–293 | 262–327 |
| 35 | 168–210 | 188–235 | 210–262 | 235–293 | 262–327 | 292–365 |
| 36 | 188–235 | 210–262 | 235–293 | 262–327 | 292–365 | 324–405 |
| 37 | 210–262 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life |
| 38 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life | 360–life |
| 39 | 262–327 | 292–365 | 324–405 | 360–life | 360–life | 360–life |
| 40 | 292–365 | 324–405 | 360–life | 360–life | 360–life | 360–life |
| 41 | 324–405 | 360–life | 360–life | 360–life | 360–life | 360–life |
| 42 | 360–life | 360–life | 360–life | 360–life | 360–life | 360–life |
| 43 | life | life | life | life | life | life |

| | |
|---|---|
| The Government Request | 121 Months |
| The Presentence Report Writer Recommendation | 90 Months |
| Officer Sutton Request | Non-Custodial Sentence |

**1.**     The federal court in this district may not use the jury's verdict on a D.C. Code offense for any purpose in fashioning a sentence under the federal Sentencing Guidelines. *See United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016), where the Court states the following:

> [T]he federal Sentencing Guidelines do not apply to the sentencing of D.C. offenses. 18 U.S.C. § 3551(a). Likewise, the D.C. Voluntary Sentencing Guidelines do not apply to the sentencing of federal offenses.

**2.**     The Court may not automatically apply the federal sentencing guidelines applicable to federal offenses to the D.C. Code offense. That is so because federal guidelines on murder include several crimes from first degree murder to involuntary manslaughter. USSG § 2A1.1 to 2A1.4. Had Count 1 been a conviction under 18 U.S.C. § 1111(a), the automatic application of USSG § 2A1.2 would be appropriate. But not here, PARTICULARLY BECCAUSE THE GOVERNMENT DID NOT CHARGE A TARGET OFFENSE FOR THE OBSTRUCTION. *See United States v. Thomas R. Flaherty*.

**3.**     The conviction of Officer Sutton of Second Degree Murder was achieved by application of the jury instruction from *Fleming v. United States*, 224 A.3d 213 (D.C. 2020) (*en banc*) which is unique to certain factual circumstances arising in the District of Columbia under the D.C. Code. There is no equivalent case in the federal system where a defendant does not strike a death-dealing blow of any kind, except acting in an accessory role to one who does.

**4.**     The Sentencing Guidelines also recognize that facts which may prove a state offense may not prove a parallel federal offence. To ensure

8

consistency of sentencing, the federal Sentencing Guidelines recognize that if the officer's conduct on the one hand is more reprehensible or on the other hand less serious than the civil rights violation itself, the defendant's sentence should be on par with other defendants who engaged in *similar conduct within a federal jurisdiction. United States v. Cozzi,* 613 F.3d 725, 733 (7th Cir. 2010); *United States v. Byrne,* 435 F.3d 16, 27 (1st Cir. 2006). To achieve this uniformity of sentencing within the federal jurisdiction, the federal courts look to federal law to ascertain how the "underlying conduct" (i.e., the facts) should be evaluated under the guidelines.

**5.** Therefore, unless the Government can prove at sentencing that the evidence presented to the jury constitutes some form of Homicide under federal law, Officer Sutton would be assigned no offense level for the "underlying offense" under USSG § 2H1.1(a)(1). Sections 2H1.1(a)(2) and (a)(3) do not apply. Therefore, the "Greatest" offense level under § 2H1.1(a) is established by (a)(4) which is 6. An additional 6 points for acting under color of law is added under USSG § 2H1.11.1(b)(1)(B) to achieve a guideline score of 12.

## THE FORTUITY OF FEDERAL JURISDICTION

This result achieves fairness because Officer Sutton could not have been charged in this or any federal district with violating either 18 U.S.C. § 1111 (Murder) or 18 U.S.C. § 242. Thus, the unprecedented charging decision by the Government in this case raises a "significant risk to fundamental fairness and, ultimately, to a defendant's constitutional rights." *See United States v. James*, Case No. 17-184 (RJL), 2019 WL 2516413, at *2–*3 (D.D.C. June 18, 2019) (Leon, J.) (criticizing the Government for repeatedly seeking upward departures for uncharged conduct in sentencing defendants who plead guilty); *United States v. Bell,* 808 F.3d 926, 929 (D.C. Cir. 2015) (Millet, J., concurring in denial of rehearing *en banc*) ("This case is one in an 'unbroken string of cases' encroaching on the Sixth Amendment right to a trial by jury.") Officer Sutton contends that the Government's unprecedented use of the D.C. Code offense of Second Degree Murder violates his constitutional rights with respect to receiving a fair sentence. The fortuity of the United

9

States Attorney in this district having jurisdiction over D.C. Code offenses does not justify the abusive and manipulative use of that authority to bring this utterly unprecedented attack on a stellar officer in the summer of George Floyd.

November 17, 2017:   George Washington Memorial Parkway, VA – US Park Police Officers pursue hit and run vehicle, conducting four stops of the vehicle. During fourth stop, Officers fatally shot the driver. DOJ investigation resulted in no charges.

July 2020:  Prince George's County, MD - Sgt Shaun Urbina was indicted for misdemeanor misconduct in office for unauthorized pursuit resulting in death of mother and son. He was the supervisor and the only officer charged. Sgt Urbina received probation before judgment.

https://wjla.com/news/local/prince-georges-county-police-officer-indicted-misconduct-clinton-maryland-sergeant-shaun-urbina-states-attorney-aisha-braveboy-lynda-richard-jones-july-9-2020

August 2022: Minneapolis, MN - Officer Brian Cummings pursued stolen vehicle at speeds of 100 mph. Officer's car slammed into side of jeep at 80 mph killing the driver of the jeep. Officer was charged with second degree manslaughter and criminal vehicular homicide. Officer pled guilty and received 9 months county workhouse and was eligible for release on ankle monitor after 3 months.

https://www.cbsnews.com/minnesota/news/mpd-officer-brian-cummings-charged-in-collision-that-killed-leneal-frazier/

March 2023: Baltimore, MD - Officers Bradley Roberson and Menachem Rosenbloom attempted a traffic stop of a "wanted vehicle in reference to an armed robbery." The vehicle fled and officers pursued vehicle. The driver crashed into parked vehicles then collided with a tree killing the driver's wife age 74. NO CHARGES

https://www.wbaltv.com/article/no-charges-against-officers-fatal-pursuit-2023-baltimore/46845086

September 2023: Hickory NC – Ofc. Aria Shamseldin attempted to stop motorcycle for careless and reckless driving. Motorcyclist refused to stop. During the pursuit Ofc. Shamseldin slammed into a minivan killing a woman and her 12 year-old son. OFFICER WAS FIRED but NO CHARGES.

https://www.wcnc.com/article/news/crime/hickory-police-officer-in-deadly-chase-no-longer-employed/275-d000be67-a4b1-4b15-9cb0-b8de04f7f839

July 31, 2023: Minneapolis, MN – State trooper charged with second-degree unintentional murder during traffic stop. Trooper returned to work after charges dropped by prosecutors.

https://www.cbsnews.com/minnesota/news/ryan-londregan-ricky-cobb-ii-returns-to-work-minnesota-state-patrol/

February 2024: Prince George County, VA - attempted traffic stop for speeding; pursuit reached speeds over 100mph, suspect ran red light and collided with vehicle killing 1 man. Suspect charged with second degree murder. OFFICER WAS NOT CHARGED

https://www.wtvr.com/news/local-news/rosa-bassette-lawsuit-feb-13-2024

May 2024:   Henry County, Indiana - Deputy Tanner Strelecky attempted traffic stop of possibly intoxicated driver.  Driver fled at speeds reaching 100 mph, ran multiple red lights, and collided into another vehicle.  Passenger in suspect car died. No charges against the officer at this time.

https://fox59.com/indiana-news/deadly-police-chase-involving-rookie-henry-county- sheriffs-deputy-was-unsupervised/

May 2024:   Michigan – Officer engaged in high speed chase of stolen car, crashing into parked cars. Passenger in stolen car fled on foot. Officer pursued passenger in his vehicle while the passenger was on

foot. Officer struck the suspect with vehicle causing death. NO CHARGES

https://apnews.com/article/michigan-teen-killed-police-chase-c013460cff41539be3bbcf2a39037ab6

May 2024:   Fayetteville NC - Officer chased stolen vehicle which crossed into oncoming traffic colliding head on with a civilian vehicle. Passenger in stolen car died.  No charges for officer to date.

https://www.wral.com/story/driver-charged-with-manslaughter-after-chase-crash-that-killed-16-year-old-passenger/21457049/

"[T]he failure of the defendant to identify persons *exactly similarly situated* is a reason to impose, not divert from, a Guidelines compliant sentence." [ECF No. 642] at 9-10 (emphasis supplied). Officer Sutton, ironically, has identified officers who acted similarly; however, none of them were criminally prosecuted. *See Lange v. California*, 141 S.Ct. 2011 (2021); *County of Los Angeles, Calif. v. Mendez*, 137 S.Ct. 1539 (2017); *Mullenix v. Luna*, 577 U.S. 7 (2015); *Plumhoff v. Rickard*, 572 U.S. 765 (2014); *Scott v. Harris*, 550 U.S. 372, 383 (2007); and *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

## SENTENCING MANIPULATION AND DUE PROCESS

Sentencing guidelines are a core part of the criminal law, and all persons are entitled to clear notice of not only conduct which constitutes a crime but also the sentence that may result. Where notice is ambiguous, the rule of lenity may be applied. Resolving ambiguity in favor of the accused ensures "fair warning [,] ... in language that the common world will understand, of what the law intends to do if a certain line is passed." *United States v. Bass,* 404 U.S. 336, 348 (1971) (internal quotation marks omitted). The rule applies "not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco v. United States,* 447 U.S. 381, 387 (1980).

GENERAL DETERRENCE AND IMPACT ON PUBLIC SAFETY

The variability of pursuit policies has recently been evidenced by one of the foremost policing practice organizations in the country. *See* Police Executive Research Forum (PERF). *2023. Vehicular Pursuits: A Guide for Law Enforcement Executives on Managing the Associated Risks.* Washington, DC: DOJ Office of Community Oriented Policing Services (COPS). This report was funded by a federal award, and PERF worked with the Department of Justice Community Oriented Policing Services to produce the guide.

The pursuit policy applied in Officer Sutton's trial was promulgated by MPD on February 25, 2003. At the time of trial, MPD had promulgated a new pursuit policy effective December 30, 2021, prompted by extensive criticism of the 2003 pursuit policy in the Bromwich Report, entitled *The Metropolitan Police Department and the Use of Deadly Force: Four Case Studies 2018-2019.* The MPD pursuit policy was revised again on April 27, 2023, and again on July 20, 2023, which is current.  The current revision of the MPD pursuit policy became effective on July 18, 2024, to coincide with the effective date of D.C. Code § 5–365.02 entitled "Law Enforcement Vehicular Pursuit Reform." This chapter of the D.C. Code codified a pursuit policy for MPD and is an extension of several emergency and temporary bills to come out of the D.C. Council partly as a result of this case. The District of Columbia may now be the only state in the country that has a codified police pursuit policy. The "Law Enforcement Vehicular Pursuit Reform" law also codifies for the District of Columbia what Officer Sutton has referred to during this case as the *Graham v. Connor,* 490 U.S. 386 (1989) law enforcement defense to allegations of excessive force. D.C. Code § 5–365.02(b). With the enactment of this defense, the District of Columbia now joins every state in the union in affording such a defense to local law enforcement officers; whereas, there was no such codified defense in the District of Columbia at the time of the trial of this case.

13